Elizabeth L. Deeley (SBN 230798)
Kristin I. Sheffield-Whitehead (SBN 304635)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: elizabeth.deeley@kirkland.com
Email: kwhitehead@kirkland.com

Attorneys for Defendant
*Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO.: 5:17-CV-00551-LHK<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FRCP 12(b)(1) AND 12(b)(6) AND MEMORANDUM IN SUPPORT**<br><br>Amended Complaint Filed: April 5, 2017<br><br>Judge:  Hon. Lucy H. Koh<br>Date:   July 27, 2017<br>Time:  1:30 P.M.<br>Courtroom: 8, 4th Floor |

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................ 5

ARGUMENT ...................................................................................................... 6

I.    PLAINTIFFS LACKS STANDING TO ASSERT THEIR CLAIMS .................................. 6
      A.   Plaintiffs lack Article III standing. ......................................................... 6
      B.   Plaintiffs do not have statutory standing to bring a UCL claim. ........................ 8
      C.   Plaintiffs lack standing to bring claims based on the use of iPhone 4S and based on
           alleged injuries they did not suffer. .................................................... 10

II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR TRESPASS TO CHATTELS. ................... 11

III.  PLAINTIFFS FAIL TO STATE A UCL CLAIM .................................................... 14
      A.   Plaintiffs' allegations fail the tests for an "unfair business practice." ................ 14
      B.   Plaintiffs have not alleged a basis for injunctive or restitutionary relief ............... 16

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Johnson,*
355 F.3d 1179 (9th Cir. 2004) ...............................................................................12

*In re Apple & AT & TM Antitrust Litig.,*
826 F. Supp. 2d 1168 (N.D. Cal. 2011) ................................................................13

*In re Apple & ATTM Antitrust Litig.,*
No. C 07-05152 JW, 2010 WL 3521965 (N.D. Cal. July 8, 2010) .......................13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).........................................................................6, 9, 12, 16

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) ...................................................................................6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................6

*Black Faculty Ass'n. of Mesa Coll. v. San Diego Cmty. Coll. Dist.,*
664 F.2d 1153 (9th Cir. 1981) ...............................................................................10

*Bruton v. Gerber Prod. Co.,*
961 F. Supp. 2d 1062 (N.D. Cal. 2013) ...................................................................8

*Carrico v. City & Cty. of San Francisco,*
656 F.3d 1002 (9th Cir. 2011) ..................................................................5, 6, 8, 19

*Chamberlan v. Ford Motor Co.,*
No. C 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) ....................18

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010) .................................................................................5

*District of Columbia v. Heller,*
554 U.S. 570 (2008)..................................................................................................7

*eBay Inc. v. MercExchange, L.L.C.,*
126 S. Ct. 1837 (2006)............................................................................................17

*Fields v. Wise Media, LLC,*
No. C12-05160 WHA, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013)............11, 12

*Gen. Tel. Co. of Sw. v. Falcon,*
102 S. Ct. 2364 (1982)............................................................................................10

*In re Google Inc.*,
    No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...................................11

*Gratz v. Bollinger*,
    539 U.S. 244 (2003).........................................................................................................5

*Groupion, LLC v. Groupon, Inc.*,
    859 F. Supp. 2d 1067 (N.D. Cal. 2012) .........................................................................17

*Hernandez v. Path, Inc.*,
    No. 12-cv-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012).............................13

*Hyundai Am., Inc. v. Meissner & Wurst GmbH & Co.*,
    26 F. Supp. 2d 1217 (N.D. Cal. 1998) .............................................................................8

*In re iPhone App. Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................................11, 12, 13

*Johns v. Bayer Corp.*,
    No. 09-cv-1935-DMS, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)..................................10

*L.A. Taxi Coop., Inc. v. Uber Techs, Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ...........................................................................17

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) ......................................................................................5, 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................6

*Mazza v. American Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) .........................................................................................11

*Minkler v. Apple Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ..........................................................................7, 13

*Moore v. Apple Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ..........................................................................6, 7

*Phillips v. Apple Inc.*,
    No. 15-CV-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016)..............................18

*Richter v. CC-Palo Alto, Inc.*,
    176 F. Supp. 3d 877 (N.D. Cal. 2016) ..........................................................................7, 8

*Silveira v. Lockyer*,
    312 F.3d 1052 (9th Cir. 2002), *as amended* (Jan. 27, 2003) ........................................7, 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)..........................................................................9, 10

*Van Patten v. Vertical Fitness Group, LLC,*
  No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017) .................................................9

*Varadarajan v. U.S. Cricket Ass'n, Inc.,*
  No. 12-cv-01306-LHK, 2012 WL 1252783 (N.D. Cal. Apr. 13, 2012) ...........................6

*VirnetX Inc., et al. v. Apple Inc.,*
  No. 6:10-cv-00417 (E.D. Tex.) .....................................................................................15

*Wofford v. Apple Inc.,*
  No. 11-CV-0034 AJB NLS, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ......................17

*Yunker v. Pandora Media, Inc.,*
  No. 11-cv-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)............................11

**California Cases**

*Bank of the West v. Superior Court,*
  2 Cal. 4th 1254 (1992) ..................................................................................................18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
  20 Cal. 4th 163 (1999) .............................................................................................14, 16

*Colgan v. Leatherman Tool Group, Inc.,*
  135 Cal. App. 4th 663 (2006) .......................................................................................17

*Cutter Labs., Inc. v. Twining,*
  221 Cal. App. 2d 302 (1963) ...........................................................................................8

*Intel Corp. v. Hamidi,*
  30 Cal. 4th 1342 (2003) ...........................................................................................11, 12

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ................................................................................................16

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310 (2011) ....................................................................................................8

*Puentes v. Wells Fargo Home Mortg., Inc.,*
  160 Cal. App. 4th 638 (2008) .......................................................................................15

*Scripps Clinic v. Superior Court,*
  108 Cal. App. 4th 917 (2003) .......................................................................................16

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
  72 Cal. App. 4th 861 (1999) .....................................................................................14, 15

**California Statutes**

Cal. Bus. & Prof. Code

§ 17200..............................................................................................................1, 14

§ 17203............................................................................................................14, 16

§ 17204..................................................................................................................8

**Federal Authorities and Statutes**

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................5

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................6

1

## NOTICE OF MOTION & MOTION

2

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

3      **PLEASE TAKE NOTICE** that at 1:30 P.M. on July 27, 2017, or as soon thereafter as the

4 matter may be heard, before the Honorable Lucy H. Koh, United States District Judge for the Northern

5 District of California, Defendant Apple Inc. ("Apple"), will and hereby does move for dismissal of this

6 action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6).

7      Apple seeks dismissal of the above-entitled action under Federal Rule of Civil Procedure

8 12(b)(1) for lack of standing and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

9 upon which relief can be granted.  This Motion is based on this Notice of Motion and Motion, the

10 accompanying Memorandum of Points and Authorities, the Declaration of Elizabeth L. Deeley,

11 Defendant's Request for Judicial Notice, the papers on file in this matter, the arguments of counsel, and

12 any other matter the Court wishes to consider.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Nearly three years after a digital certificate expired causing a temporary interruption in FaceTime service for certain iPhone 4 and 4S users, Plaintiffs claim that interruption in Apple software services was a "trespass" on their iPhone 4 and 4S "chattels" and violated California's Unfair Competition Law ("UCL").   But Plaintiffs' claims fail because they are based on the deprivation of a right that Plaintiffs explicitly agreed they did not have:  the right to uninterrupted, continuous, error-free iOS software and services. Apple always aims to provide the best service, but in recognition of potential limitations of complex technology, makes it clear to customers that service may be interrupted and not continuously available.  Apple explicitly states as much and Plaintiffs agreed to the same per Apple's Software License Agreement.   Plaintiffs thus lack standing because they have no legally protected interest in uninterrupted operation of iOS software or services.  For this reason alone, Plaintiffs' claims should be dismissed with prejudice because they have not pleaded and cannot plead facts sufficient to confer standing when they agreed that they had no right to what they now allege Apple took away.

Plaintiffs' allegations rely heavily on a patent trial brought by one of Plaintiffs' law firms, Caldwell Cassady & Curry, against Apple Inc. in the Eastern District of Texas, without alleging the requisite "significant reduction in service" to state a claim for trespass to chattels, such as how long they were without FaceTime or that the many other services and features available on their iPhone 4 devices stopped working.

Similarly, they have not stated a claim for "unfair" business practices because Apple's alleged conduct (though denied by Apple), *i.e.*, allegedly steering some iPhone users towards a more cost-effective method of placing FaceTime calls, would be a justified business consideration that provided utility to Apple as well as to Apple's other iPhone customers.  This outweighs whatever potential injury Plaintiffs may have experienced from a temporary interruption in FaceTime service, especially where Plaintiffs have not alleged facts describing the extent to which they did not have access to FaceTime.

Because Plaintiffs lack standing and have not stated claims for trespass to chattels or violation of the UCL—even after amending their complaint to add allegations in response to Apple's first motion to dismiss—their claims should be dismissed with prejudice.

## BACKGROUND[1]

Apple has marketed its industry-leading smartphone, the iPhone, since June 2007, and Apple has periodically released newer versions of the iPhone with enhanced and updated features.  First Am. Compl. ¶ 30.  Apple released the iPhone 4 on June 24, 2010, and the iPhone 4S on October 14, 2011. *Id.* ¶¶ 31-32.  The iPhone can do "everything a personal computer can do, and because of its mobility, much more…."  First Am. Compl. ¶ 30, fn 1.  It "combines a cellphone with e-mail and Web, music and movie player, camera and camcorder, GPS navigation, voice dictation for messaging and a voice search for asking questions about anything." *Id.*

All iPhones, including the iPhone 4 and 4S, operate through a proprietary Apple mobile operating system called "iOS." *Id.* ¶ 34.  Among other things, iOS operates the features and applications on the iPhone. *Id.*  Apple also periodically provides iPhone users with free iOS updates, which may include new features and improved interfaces, as well as increased security and fixes for bugs. *Id.* ¶ 83.  These free updates provide Apple iPhone users with the benefit of new technology, without having to upgrade to a new iPhone. *See id.*

By using their iPhones and by downloading free software updates, Plaintiffs (and any other iPhone user) agree to be bound by the terms of the relevant Apple iOS Software License Agreement and notices from Apple.[2] *See, e.g.*, iOS 6 Software License Agreement, attached to the concurrently filed Declaration of Elizabeth L. Deeley in Support of Apple Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint ("Deeley Decl.") Ex. 1 ("BY USING YOUR iOS DEVICE OR DOWNLOADING A SOFTWARE UPDATE, AS APPLICABLE, YOU ARE AGREEING TO BE BOUND BY THE TERMS OF THIS LICENSE. IF YOU DO NOT AGREE TO THE TERMS OF THIS LICENSE, DO NOT USE THE iOS DEVICE OR DOWNLOAD THE SOFTWARE UPDATE."); *see also* iOS 7 Software License Agreement, Deeley Decl. Ex. 2 (same).  If Plaintiffs did not want to agree to the terms of the Software License Agreements, they had the option to return their iPhones within the Return

---

[1]  This background is based on the First Amended Complaint, and while assumed to be true solely for purposes of this motion, Apple disputes many of these allegations.

[2]  Concurrent with this motion, Apple has filed a Request for Judicial Notice, respectfully requesting the Court to take judicial notice of the relevant Software License Agreements.

Period for a refund, subject to Apple's Return Policy.  *See* Ex. 1 ("IF YOU DO NOT AGREE TO THE TERMS OF THIS LICENSE . . . YOU MAY RETURN THE iOS DEVICE WITHIN THE RETURN PERIOD . . . FOR A REFUND, SUBJECT TO APPLE'S RETURN POLICY[.]"); Ex. 2 (same). Plaintiffs did not do so.  *See* First Am. Compl. ¶¶ 23, 25.  Accordingly, Plaintiffs expressly agreed that Apple's iOS Software, which includes FaceTime—the "video calling feature of the iOS Software"—was "PROVIDED 'AS IS' AND 'AS AVAILABLE,' WITH ALL FAULTS AND WITHOUT WARRANTY OF ANY KIND."  Ex. 1, §§ 4(d) and 7.3; Ex. 2, §§ 4(d) and 7.3.  Plaintiffs also agreed that:

> APPLE DOES NOT WARRANT AGAINST INTERFERENCE WITH YOUR ENJOYMENT OF THE iOS SOFTWARE AND SERVICES, THAT THE FUNCTIONS CONTAINED IN, OR SERVICES PERFORMED OR PROVIDED BY, THE iOS SOFTWARE WILL MEET YOUR REQUIREMENTS, THAT THE OPERATION OF THE iOS SOFTWARE AND SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, THAT ANY SERVICE WILL CONTINUE TO BE MADE AVAILABLE, [or] THAT DEFECTS IN THE iOS SOFTWARE OR SERVICES WILL BE CORRECTED[.]

Ex. 1, § 7.4; *see also* Ex. 2, § 7.4 (same).  Plaintiffs further agreed that "Apple, at its discretion, may make available future iOS Software Updates for your iOS Device," that those "iOS Software Updates, if any, may not necessarily include all existing software features," and that "USE OF THE iOS SOFTWARE AND ANY SERVICES PERFORMED BY OR ACCESSED THROUGH THE iOS SOFTWARE IS AT YOUR SOLE RISK AND THAT THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY AND EFFORT IS WITH YOU."  Ex. 1, §§ 1(b) and 7.2; *see also* Ex. 2, §§ 1(b) and 7.2 (same).

FaceTime allows users to place audio/video calls with other FaceTime users.  First Am. Compl. ¶ 35.  According to Plaintiffs, FaceTime initially operated by allowing users to exchange audio/video media in two ways: (1) the peer-to-peer method and (2) the relay method.  *Id.* ¶ 52.  Plaintiffs allege that the relay method required use of a third-party's servers, for which Apple paid a monthly fee.  *Id.* ¶ 63. Plaintiffs allege that, in late 2012, following an adverse judgment in patent litigation with VirnetX Holding Corp., *id.* ¶ 57, Apple ceased operating FaceTime through the peer-to-peer method, and 100% of FaceTime calls were connected through the relay method instead.  *Id.* ¶ 61.  According to Plaintiffs,

increasing FaceTime calls connected through the relay method also increased Apple's monthly costs for use of the third-party's servers. *Id.* ¶¶ 62-63.

Given the ever-evolving nature of technology, these increased costs were short-lived. In less than a year, on September 13, 2013, Apple released iOS 7. *Id.* ¶ 67. Among other features and updates, the newly released iOS 7 enabled FaceTime calls to connect again through the peer-to-peer method by using technology not at issue in the VirnetX litigation. *Id.* Thus, as iPhone users upgraded to iOS 7, fewer than 100% of FaceTime calls were connected through the relay method.

On April 16, 2014, certain iPhones running iOS 6 *and earlier iOS versions* became unable to make or receive FaceTime calls, due to the expiration of a digital certificate necessary to the software application's operation. *Id.* ¶ 91. Plaintiffs allege that Apple "broke iOS 6" on this date and did so in this manner to force users to upgrade to iOS 7 so that Apple could avoid paying for increased relay usage. *Id.* ¶¶ 17, 91-92. But at this point, Apple had already been paying for increased relay usage for a year and a half, and due to the release of iOS 7 seven months earlier, relay usage was already down and decreasing, and only a percentage of Apple's user base was still using iOS 6 or earlier operating systems. *Id.* ¶¶ 7, 9, 15, and 88. Plaintiffs allege that upgrading to iOS 7 allowed users "[t]o regain FaceTime capability," *id.* ¶ 11, and that iOS 7 was available well before the April 16, 2014 FaceTime digital certificate expiration. *Id.* ¶ 67. Thus, users who were impacted by the expired digital certificate and who wanted to continue using FaceTime could do so immediately. *Id.* ¶¶ 11, 67.

On these facts, Plaintiffs make two claims: trespass to chattels and violation of California's UCL. *Id.* ¶¶ 123-135. Plaintiffs allege they owned iPhone 4, not iPhone 4S, devices, *id.* ¶¶ 23, 25, but seek to represent a nationwide class defined as "All owners of Apple iPhone 4 or Apple iPhone 4S devices in the United States who on April 16, 2014, had iOS 6 or earlier operating systems on their iPhone 4 or iPhone 4S devices." *Id.* ¶ 112. While Plaintiffs amended their complaint to now allege that they tried and were unable to use FaceTime, *see* First Am. Compl. ¶¶ 24, 27, they do not allege how often they tried and were unable to use FaceTime; how long they went without FaceTime; or that they ever sought and were denied assistance from Apple to download a compatible iOS upgrade to fix the FaceTime service interruption. Further, Potter does not allege when he upgraded to iOS 7.0.4. Nor does he allege that after upgrading he could not access FaceTime, or that he tried and was unable to upgrade his other

iPhone 4.  While he alleges that he "experienced lost functionality, including slow and erratic behavior, and Wi-Fi disconnections" when he upgraded to iOS 7, *id.* ¶ 28, he does not allege what about his device was "slow and erratic," or to what extent, or how often, nor does he allege any detail about his "Wi-Fi disconnections," including how many times he was disconnected, for how long, or how those disconnections were supposedly caused by his iOS upgrade as opposed to, for example, a weak Wi-Fi connection.

Plaintiffs allege generally that interruption of FaceTime service on affected iPhones diminished the value of those devices.  *Id.* ¶¶ 127, 134.  But Plaintiffs do not allege that they sold or tried to sell their iPhones and were offered a below-market price because of this temporary FaceTime interruption. On behalf of the putative class, Plaintiffs request monetary and punitive damages as well as restitution and unspecified injunctive relief.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (dismissing claim under 12(b)(1) where plaintiff lacked standing).  To establish the irreducible constitutional minimum of standing, a plaintiff invoking federal jurisdiction must establish "injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury."  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (student failed to show injury required to challenge sexual harassment policy) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id* at 785 (internal citations and quotations omitted).  To establish standing, plaintiffs purporting to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) (internal quotation marks and citations omitted).  Where plaintiff's allegations are "insufficient to confer standing," dismissal is warranted.  *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (remanding

with instructions to dismiss because plaintiff landlords failed to allege injury necessary for standing). Dismissal should be with prejudice if "amendment would be futile," including where a plaintiff has the "inability (or, perhaps, unwillingness) to make the necessary amendment" to cure insufficient allegations. *Id.* (internal citations and quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (Koh, J.) (quoting *Iqbal*, 556 U.S. at 678). A complaint that provides no more than a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Instead, Plaintiffs must provide factual allegations sufficient "to raise a right to relief above the speculative level," *id.* at 545, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678. Accordingly, a complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (affirming dismissal of claims against police department).

## ARGUMENT

## I.   PLAINTIFFS LACKS STANDING TO ASSERT THEIR CLAIMS.

### A.   Plaintiffs lack Article III standing.

Plaintiffs cannot establish standing based on alleged invasion of rights that they never had. The ability to use FaceTime, or indeed any iOS software or service, is not a "legally protected interest"—the invasion of which is required to confer Article III standing. *Lujan*, 504 U.S. at 560–61; *see also Lopez*, 630 F.3d at 785 ("injury in fact must constitute an invasion of a legally protected interest") (citation and internal quotation marks omitted); *Varadarajan v. U.S. Cricket Ass'n, Inc.*, No. 12-cv-01306-LHK, 2012 WL 1252783, at *5 (N.D. Cal. Apr. 13, 2012) (Koh, J.) (denying motion for preliminary injunction where plaintiff "has not clearly shown a legally protected interest, the invasion of which is sufficient to confer Article III standing"); *cf. Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1199 (N.D. Cal. 2014) (Koh,

J.) (plaintiff had Article III standing where she "alleged the invasion of a legal right that has resulted in an actual concrete injury: deprivation of a service she has paid for as part of" her Verizon contract). Plaintiffs allege that they were injured because they were "prevent[ed] … from using FaceTime" on their iPhones.  *See, e.g.*, First Am. Compl. ¶ 127; *see also id.* ¶¶ 132, 134.  But, unlike in *Moore*, where the plaintiff had standing because she alleged invasion of a legal right—*i.e.*, the right to receive text messages pursuant to her contract with Verizon, 73 F. Supp. 3d at 1199—Plaintiffs here  cannot allege invasion of a legally protected interest because they *agreed* that they have no right to uninterrupted, continuous, or error-free iOS software or services, including FaceTime service.  Plaintiffs explicitly agreed in Apple's Software License Agreements that iOS 6 and iOS 7 were "PROVIDED 'AS IS' AND 'AS AVAILABLE,' WITH ALL FAULTS AND WITHOUT WARRANTY OF ANY KIND."[3]  Ex. 1, § 7.3; *see also* Ex. 2, § 7.3 (same).   They agreed: "APPLE DOES NOT WARRANT . . . THAT THE OPERATION OF THE iOS SOFTWARE AND SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, THAT ANY SERVICE WILL CONTINUE TO BE MADE AVAILABLE, [or] THAT DEFECTS IN THE iOS SOFTWARE OR SERVICES WILL BE CORRECTED[.]"  Ex. 1, § 7.4; *see also* Ex. 2, § 7.4 (same).  In other words, uninterrupted or error-free operation of the iOS software or services, including FaceTime—as a matter of law—is not legally protected, and therefore, Plaintiffs lack Article III standing.  *See, e.g.*, *Silveira v. Lockyer*, 312 F.3d 1052, 1066–67 (9th Cir. 2002), *as amended* (Jan. 27, 2003) (plaintiffs lacked standing to sue on right they did not have), *abrogated on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008); *see also Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877 (N.D. Cal. 2016).

In *Richter*, the plaintiffs, retirement community residents, had a contract with the community requiring them to pay fees.  They brought several claims against the retirement community, claiming, among other things, that the fees were excessive.  *Id.* at 887-96.  But because the fees were "expressly provided for by the plain language of the" Residency Contract between the plaintiffs and the defendant, the court held that plaintiffs lacked Article III standing.  *Id.* at 891.  The same is true here.  Plaintiffs

---

[3]  *See Minkler v. Apple Inc.*, 65 F. Supp. 3d 810, 818-19 (N.D. Cal. 2014) (enforcing the "AS-IS" language in Apple software license agreement, which "prominently and conspicuously states that Apple Maps is sold 'as is,' thereby excluding all implied warranties under California law").

1  bring claims predicated on alleged FaceTime and iOS service interruptions on their iPhones, but they

2  expressly agreed in the Software License Agreement that they did not have the right to uninterrupted

3  service.  *Id.*  Just as the plaintiffs in *Richter* had no legally protected interest in avoiding payment of the

4  fees, Plaintiffs here have no legally protected interest in uninterrupted or error-free iOS software or

5  services, including FaceTime service.   Accordingly, they lack Article III standing, and the First

6  Amended Complaint should be dismissed.  *Id.*; *see also, Silveira*, 312 F.3d at 1066–67 (plaintiffs

7  lacked standing to sue on right they did not have).  And because Plaintiffs did not cure this deficiency in

8  their First Amended Complaint, and cannot cure this deficiency through subsequent amendment, the

9  dismissal should be with prejudice.  *See Carrico*, 656 F.3d at 1008.[4]

10      **B.      Plaintiffs do not have statutory standing to bring a UCL claim.**

11      Plaintiffs fail to allege statutory standing under the UCL.  "[T]o have standing to bring a claim

12  under the UCL . . . a named plaintiff must: '(1) establish a *loss or deprivation of money or property*

13  sufficient to qualify as injury in fact, *i.e.*, *economic injury*, and (2) show that that economic injury was

14  the result of, *i.e.*, . . . *caused by*, the unfair business practice or false advertising that is the gravamen of

15  the claim.'"   *Bruton v. Gerber Prod. Co.*, 961 F. Supp. 2d 1062, 1087 (N.D. Cal. 2013) (Koh, J.)

16  (emphasis added) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)); Cal. Bus. &

17  Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who

18  has . . . lost money or property as a result of the unfair competition.").   Importantly, the alleged

19  economic injury must be "(a) concrete and particularized . . . and (b) actual or imminent, not

20  conjectural or hypothetical."  *Kwikset Corp.*, 51 Cal. 4th at 322 (citations and internal quotations

21  omitted).

22      Plaintiffs do not sufficiently plead a concrete and particularized economic harm as required for

23  UCL claim standing.  *Bruton*, 961 F. Supp. 2d at 1087.  Plaintiffs' conclusory allegation that iPhone 4

24  and 4S owners "suffered substantial injury in fact, and lost money and/or property," First Am. Compl.

25
26
27
28

---

[4]  Indeed, to allow Plaintiffs to sue on a right that they expressly agreed they do not have would be contrary to the "well-established principle" of California law "that unambiguous contracts are enforced according to their terms," *Hyundai Am., Inc. v. Meissner & Wurst GmbH & Co.*, 26 F. Supp. 2d 1217, 1219 (N.D. Cal. 1998), and the long-recognized rule that "courts will not rewrite a contract fairly made and voluntarily entered into."  *Cutter Labs., Inc. v. Twining*, 221 Cal. App. 2d 302, 316 (1963).

¶ 134, is insufficient.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.")  (internal quotations and citations omitted).  The only injury Plaintiffs allege is the diminution in the value of their iPhones, *see* First Am. Compl. ¶¶ 127, 134, without alleging how long they went without FaceTime or that they sold or tried to sell their iPhones and were offered a below-market price because of a FaceTime interruption. Without more, the alleged diminution in value resulting from a service interruption is too speculative to confer standing.  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (holding the alleged interruption in a gaming service was insufficient to confer standing because the plaintiffs' "contentions that the interruption of [service] caused damage to the value of their consoles [was] simply too speculative to constitute 'lost money or property'").  Because Plaintiffs cannot point to any concrete monetary damage they personally suffered as a result of Apple's alleged conduct, but rather assert only a "hypothetical and conjectural" theory of damages inapplicable to them, the allegations are insufficient to support UCL standing.  *Van Patten v. Vertical Fitness Group, LLC*, No. 14-55980, 2017 WL 460663, at *10 (9th Cir. Jan. 30, 2017).  Indeed, Plaintiffs cannot allege economic injury because they were receiving FaceTime service "free of cost" to begin with.  *In re Sony Gaming Networks*, 903 F. Supp. 2d at 966.

Further, Plaintiffs do not have standing to bring any claim, including a UCL claim, based on the allegation that FaceTime or other iOS software or service functionality was interrupted, because they expressly agreed in the Software License Agreement that they do not have such a right.  *See* Ex. 1, § 7.4; *see also* Ex. 2, § 7.4.  On similar facts, the court in *In re Sony Gaming Networks* held that plaintiffs cannot allege an injury based on a defendant's failure to deliver something the plaintiffs agreed they had no right to receive.  In that case, plaintiffs alleged diminution in value of their gaming consoles because they experienced service interruptions.  *Id.* at 965.  The court held that the service interruption was not a concrete economic injury sufficient to confer standing under the UCL because the plaintiffs agreed in their consumer terms of service that they did not have a right to be free from service interruptions.  *Id.* at 966.  The court explained that "although Plaintiffs' [gaming network service] may have been temporarily suspended, they have not alleged they surrendered more than they otherwise would have because the [gaming network's] Terms and Service

Agreement disclaimed any rights to uninterrupted service." *Id.*   The same is true here, where Plaintiffs agreed they did not have any rights to uninterrupted or error-free iOS software or service.  *See* Ex. 1, § 7.4; *see also* Ex. 2, § 7.4.   As in *In re Sony Gaming Networks*, Plaintiffs' UCL claim should be dismissed for lack of standing.  903 F. Supp. 2d at 966.

### C.   Plaintiffs lack standing to bring claims based on the use of iPhone 4S and based on alleged injuries they did not suffer.

In addition to the standing issues described above, Plaintiffs also lack standing to bring claims based on the use of an iPhone 4S, a model they never alleged they owned.  Plaintiffs allege injuries that were supposedly suffered only by iPhone 4S users.  *See, e.g.*, First Am. Compl. ¶ 85 ("For many iPhone 4S users, upgrading to iOS 7 also triggered another serious problem: the loss of Bluetooth capability."). But Plaintiffs have no factual basis to assert claims related to injuries allegedly suffered by iPhone 4S users.  *See, e.g.*, *Johns v. Bayer Corp.*, No. 09-cv-1935-DMS, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (a plaintiff "cannot expand the scope of his claims to include a product he did not purchase"). Similarly, Plaintiffs also allege that upgrading an iPhone 4 or an iPhone 4S to run iOS 7 caused a "generalized reduction in functionality."  First Am. Compl. ¶ 73; *see generally id.* ¶¶ 12, 18, 72–87, 109-11.   But Grace does not allege that she upgraded her iPhone 4 to iOS 7, and Potter, despite upgrading to iOS 7 on one of his devices, alleges that he "experienced lost functionality, including slow and erratic behavior, and Wi-Fi disconnections," *id.* ¶ 28, and does *not* plead that he suffered the injuries that are alleged generally in the First Amended Complaint, including:  inability to access Wi-Fi or Bluetooth (caused by the "grayed-out issue" or otherwise), "non-responsiveness, keyboard sluggishness, extremely slow app launching [or] device crashes," or an increase in his data charges.  *Id.* ¶¶ 72-87. These injuries thus cannot confer standing on Plaintiffs.  *Black Faculty Ass'n. of Mesa Coll. v. San Diego Cmty. Coll. Dist.*, 664 F.2d 1153, 1156 (9th Cir. 1981) (plaintiff "cannot establish his own standing by asserting the rights of some hypothetical third parties who were allegedly harmed by [defendant's] . . . practices").   That same result applies in the class action context: a proposed named plaintiff must personally "'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 102 S. Ct. 2364, 2370 (1982).   Accordingly, Plaintiffs' claims in this regard also should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR TRESPASS TO CHATTELS.[5]

Plaintiffs fail to state a claim for trespass to chattels because they have not alleged that Apple impaired the condition, quality, or value of their iPhone 4 devices, or that they were deprived of use of their iPhone 4 devices for a substantial time. "Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property *has proximately caused injury.*'" *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003) (reversing judgment because trespass to chattels does not encompass electronic communications that neither damaged nor impaired plaintiff's computer system).

> To allege a plausible claim for trespass to a computer system or similar device, California law requires that plaintiffs plead with factual particularity that the purported trespass: (1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time.

*Fields v. Wise Media*, LLC, No. C12-05160 WHA, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013). Moreover, for interference with a mobile device to be an actionable trespass, plaintiffs must "establish a significant reduction in service constituting an interference with the intended functioning of the system." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (Koh, J.); *see also Yunker v. Pandora Media, Inc.*, No. 11-cv-03113 JSW, 2013 WL 1282980, at *16 (N.D. Cal. Mar. 26, 2013) (dismissing trespass to chattels claim because plaintiff's allegation that defendant "installed unwanted code that consume[d] portions of [his device's] memory" was insufficient harm). Plaintiffs have not met and cannot meet this standard.

---

[5] Plaintiffs purport to assert their trespass to chattels claim, on behalf of a nationwide class, as a claim "under California law," First Am. Compl., First Cause of Action. The Ninth Circuit has instructed that California law may only be applied to non-California residents where "the interests of other states are not found to outweigh California's interest in having its law applied," which requires a choice of law analysis. *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012). This choice of law analysis—which will be relevant to both Plaintiffs' trespass to chattels and UCL claims—may ultimately require the application of other states' laws. But because "the rigorous choice of law analysis required by *Mazza* cannot be conducted at the motion to dismiss stage," *In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *19 (N.D. Cal. Sept. 26, 2013) (Koh, J.), Apple evaluates Plaintiffs' claims under California law for purposes of this Motion.

1    Plaintiffs have not alleged that Apple's alleged interference caused any physical damage to their

2    iPhone 4 devices.  Nor have they alleged that they were deprived of the use of their iPhone 4 devices at

3    all, much less "for a substantial time."  *Fields*, 2013 WL 5340490, at *4.  Although Plaintiffs claim

4    they were deprived of the use of FaceTime, *see, e.g.*, First Am. Compl. ¶¶ 127, 132,134, that alleged

5    deprivation is insufficient for two reasons.  First, Plaintiffs do not allege how long they went without

6    access to FaceTime, so there is no way to know whether it was a "substantial time."  Second, and more

7    fundamentally, because Plaintiffs have not alleged that Apple's interference caused an injury to their

8    chattel (*i.e.*, their iPhone 4 devices), they must allege an injury "to [their] rights in it."  *Intel Corp.*, 30

9    Cal. 4th at 1350. But any inability to use FaceTime did not affect Plaintiffs' "rights in" their iPhone 4

10   devices because Plaintiffs expressly agreed that they did not have the right to uninterrupted or

11   continuous FaceTime service.  *See* Ex. 1, §§ 7.3-7.4; *see also* Ex. 2, §§ 7.3-7.4.

12   Similarly, Plaintiffs have not sufficiently pleaded that Apple's alleged interference "impaired the

13   condition, quality, or value of" their iPhone 4 devices.  *Fields*, 2013 WL 5340490, at *4.  Plaintiffs

14   allege that Apple's interference "actually and substantially harmed the functioning of the devices by

15   preventing Plaintiffs and the Class members from using FaceTime on their devices," and that "[t]his

16   harm to the functioning of the devices significantly impaired the devices' condition, quality and value."

17   First Am. Compl. ¶ 127.  This is a textbook example of "a formulaic recitation of the element[] of a

18   cause of action," which "will not do" to state a claim.  *Iqbal*, 556 U.S. at 678.  Plaintiffs do not allege

19   *any* facts to support such impairment, including, for example, that the inability to use FaceTime caused

20   other applications or features to stop working on their iPhones or that they sold or tried to sell their

21   iPhones and received lower offers than they would have if they had been able to use FaceTime.

22   Plaintiffs' "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion

23   to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (dismissing *Bivens* action for

24   failure to state a claim).

25   Moreover, Plaintiffs have not alleged a "significant reduction in service" on their iPhone 4

26   devices as required to state a claim for trespass to chattels.  *In re iPhone App. Litig.*, 844 F. Supp. 2d at

27   1069 ("While these allegations [taking up bandwidth and storage space on devices and shortening

28   battery life] conceivably constitute a harm, they do not plausibly establish a significant reduction in

1  service constituting an interference with the intended functioning of the system, which is necessary to

2  establish a cause of action for trespass."); *Hernandez v. Path, Inc.*, No. 12-cv-01515 YGR, 2012 WL

3  5194120, at *7 (N.D. Cal. Oct. 19, 2012) ("More problematic is that Plaintiff has not alleged that the

4  functioning of his mobile device was *significantly* impaired to the degree that would enable him to plead

5  the elements of a trespass.")  The iPhone is a "smartphone," a combination "cellphone and handheld

6  computer that created the greatest tech revolution since the Internet.  A smartphone can do everything a

7  personal computer can do, and because of its mobility, much more . . . .  A smartphone combines a

8  cellphone with e-mail and Web, music and movie player, camera and camcorder, GPS navigation, voice

9  dictation for messaging and a voice search for asking questions about anything . . . ".  First Am. Compl.

10  ¶ 30 n. 1; *see also Minkler*, 65 F. Supp. 3d at 819 ("The iPhone 5 has a multitude of uses (including a

11  phone, music player, game console, and web browser)[.]").  Plaintiffs do not allege that their iPhones

12  could not fulfill each of these functions.  And their allegation that a software application—in this case,

13  FaceTime—would, as a general matter, not work until iPhone 4 and iPhone 4S users upgraded to iOS 7,

14  is as a matter of law insufficient to show a "significant reduction in service"—particularly where (i) they

15  agreed that they did not have a right to uninterrupted or continuous use of FaceTime; (ii) they do not

16  allege how long they went without FaceTime; and (iii) they do not allege that any of their iPhones' other

17  applications or features stopped working after the FaceTime digital certificate issue arose.  *Cf. In re*

18  *iPhone App. Litig.*, 844 F. Supp. 2d at 1069 (alleged "interference" in the form of taking up bandwidth

19  and storage space on devices was not "a significant reduction in service").

20        Finally, any harm to Plaintiffs based on their inability to use FaceTime was a result of their own

21  choices, because as they acknowledged, iOS 7 was available to them the same day that the FaceTime

22  digital certificate bug could have interrupted service and would have enabled them to use FaceTime

23  again immediately.  *See* First Am. Compl. ¶¶ 9, 11, 15-18.  Grace does not allege whether she upgraded

24  to iOS 7 and, if so, when.  And Potter does not allege when he upgraded one of his iPhones to iOS 7 or

25  whether he ever upgraded his other iPhone 4.  If Plaintiffs had upgraded to iOS 7, then they would not

26  have suffered the trespass to chattels harm they allege—*i.e.*, loss of FaceTime service.  *In re Apple &*

27  *ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 WL 3521965, at *6–7 (N.D. Cal. July 8, 2010),

28  *vacated in part sub nom. In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal.

2011) (finding no actual harm due to "loss of use of a personal phone for a few days").  Plaintiffs'

decisions to delay upgrading or not to upgrade at all were their choices, not Apple's interference with

their iPhone 4 devices.

For each of these reasons, Plaintiffs' trespass to chattels claim should be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A UCL CLAIM.

### A.   Plaintiffs' allegations fail the tests for an "unfair business practice."

Aside from the statutory standing issues, Plaintiffs have not adequately pleaded that Apple's

alleged conduct was "unfair," and their UCL claim fails independently on that basis.   California's UCL

provides for injunctive and restitutionary relief against "[a]ny person who engages, has engaged, or

proposes to engage in unfair competition."  Cal. Bus. & Prof. Code § 17203.  "Unfair competition"

includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

misleading advertising and any act prohibited by [the false advertising law]."  Cal. Bus. & Prof. Code

§ 17200.  Consequently, the UCL proscribes three types of business practices, referred to as the three

prongs of the UCL: unlawful practices, unfair practices, and fraudulent practices.   Here, Plaintiffs

allege only a violation of the unfairness prong.[6]

The precise test for UCL "unfairness" is unsettled in the case law.  In early UCL cases, courts

applied a balancing test to determine whether conduct was "unfair":

> The test of whether a business practice is unfair involves an examination of [that
> practice's] impact on its alleged victim, balanced against the reasons,
> justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the
> utility of the defendant's conduct against the gravity of the harm to the alleged victim.

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999) (citation and

internal quotation marks omitted).  But *Cel-Tech Communications, Inc. v. Los Angeles Cellular

Telephone Co.*, 20 Cal. 4th 163 (1999), later rejected the balancing test in a direct competitor case,

requiring that "any finding of unfairness  . . . be tethered to some legislatively declared policy[.]" *Id.* at

---

[6]  Plaintiffs explicitly disclaim a misrepresentation or fraud-based claim.  *See* First Am. Compl. ¶ 130
n.31 ("For the avoidance of doubt, Plaintiff and the Class members are not asserting any claims based on
any alleged misrepresentations by Apple.").  Nor do Plaintiffs assert unlawful conduct as a basis for
their UCL claim. *See id.* ¶¶ 130-35.  Only the unfairness prong is at issue.

186–87.  Subsequently, in consumer cases, courts in the Northern District apply both tests, although the balancing test is more common.  *See Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 646 (2008) (courts divided over whether *Cal-Tech* applies to consumer cases).  Plaintiffs h e r e cannot assert a viable claim for relief under either of these unfairness tests.

Under the balancing test, Plaintiffs cannot allege an injury sufficient to constitute an unfair business practice that outweighs the utility of Apple's conduct.[7]  *South Bay Chevrolet*, 72 Cal. App. 4th at 886.  Plaintiffs acknowledge that Apple's alleged conduct was based on business considerations. First Am. Compl. ¶ 89 (alleging that "Apple's financial interests would substantially benefit from preventing users from using FaceTime on iOS 6 or earlier operating systems").  Those alleged business considerations are necessarily a "reason[], justification[] and motive[]" that outweighs Plaintiffs' alleged injury, *South Bay Chevrolet*, 72 Cal. App. 4th at 886, where Plaintiffs' claim is premised on the right to uninterrupted service that they expressly agreed they do not have.  Without a cognizable injury, Plaintiffs cannot contend that the balancing test weighs in their favor, regardless of the utility of Apple's alleged conduct.  Such was the conclusion in *South Bay Chevrolet*, where the court determined that the plaintiff's harm did not outweigh the utility of the allegedly unfair business practice because the defendant was contractually authorized to engage in the disputed practice (*i.e.*, the use of a specific interest calculation), which was financially beneficial to the defendant.  72 Cal. App. 4th at 887.  Here, Plaintiffs agreed that Apple has no obligation to provide uninterrupted FaceTime service, *see* Ex. 1, § 7.4; Ex. 2 § 7.4, so they cannot now claim that this interruption caused them injury entitling them to relief under California's UCL.

Even if Plaintiffs had alleged a cognizable injury, which they have not, the Court should nonetheless find that the lack of gravity of that injury is far outweighed by the alleged business justification to Apple.  Plaintiffs alleged that, in order to comply with the judgment in *VirnetX Inc., et al. v. Apple Inc.*, No. 6:10-cv-00417 (E.D. Tex.), "Apple could no longer connect FaceTime calls through the peer-to-peer method."  First Am. Compl. ¶ 61.  But relying solely on the relay method

---

[7]  Apple disputes the allegation that it took any action to purposefully disrupt or interfere with the functionality of FaceTime.  Nonetheless, acknowledging the posture of a motion to dismiss, Apple analyzes the utility of its conduct *as alleged* in applying the unfairness test.

allegedly increased costs for the company, *id.* ¶¶ 61-62, which sought to provide reasonably accessible products for its customers, including the provision of free software upgrades to enhance the security and functionality of their products, *id.* ¶ 83.  Thus, Apple's conduct alleged in the First Amended Complaint (though denied by Apple), *i.e.*, allegedly steering some iPhone users towards a more cost-effective method of placing FaceTime calls by requiring an upgrade to iOS 7, would be a justified business consideration that provided utility to Apple as well as to Apple's other iPhone customers.  Importantly, that alleged utility outweighs whatever potential injury Plaintiffs may have experienced from a temporary interruption in FaceTime service.  This is especially so given that Plaintiffs have not alleged how long they were without FaceTime.

Plaintiffs' allegations are also insufficient under *Cel-Tech*'s public policy test.  Plaintiffs have not identified any public policy allegedly violated, much less explained how any such policy is "tethered to specific constitutional, statutory or regulatory provisions," as required.  *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (holding that trial court should have granted summary adjudication on unfair competition claim) (internal citations omitted).   Plaintiffs' allegation that Apple's alleged conduct is "contrary to legislatively declared and public policy," First Am. Compl. ¶ 131, is nothing more than a legal conclusion devoid of any factual support and is therefore insufficient to withstand a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (citation and internal quotation marks omitted).  Because Plaintiffs fail to plead that Apple's alleged conduct was "unfair" under either test, they fail to state a UCL claim.

**B.  Plaintiffs have not alleged a basis for injunctive or restitutionary relief.**

Plaintiffs also have failed to demonstrate that they are entitled to the only forms of relief available under the UCL:  injunctive and restitutionary relief.  *See* Cal. Bus. & Prof. Code § 17203; *Cel-Tech*, 20 Cal. 4th at 179 ("Prevailing plaintiffs are generally limited to injunctive relief and restitution."); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("the Legislature did not intend to authorize courts to order monetary remedies other than restitution").

*First*, Plaintiffs request "appropriate," but unspecified, "injunctive relief."  First Am. Compl., Prayer for Relief.  But "[a]ccording to well established principles of equity," Plaintiffs are not entitled to

injunctive relief unless they can demonstrate (1) "irreparable injury"; (2) "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) that the balance of hardships weigh in their favor; and (4) "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006).  Plaintiffs have failed to allege facts that could support any one of these findings, let alone all of them.  First, there is nothing "irreparable" about Plaintiffs' alleged injury—the "diminution in the value of their personal property associated with the loss of FaceTime."  First Am. Compl. ¶ 134.  Indeed, Plaintiffs allege that Apple provided free upgrades that fixed the FaceTime issue, *id.* ¶ 11.  *Wofford v. Apple Inc.*, No. 11-CV-0034 AJB NLS, 2011 WL 5445054, at *3 (S.D. Cal. Nov. 9, 2011) ("Injunctive relief is inappropriate as well because the Defendant remedied the software defect on September 8, 2010, when it released a patch through iOS 4.1.").  Nor have Plaintiffs alleged why monetary damages would be inadequate, what the balance of hardships here entails (much less how it weighs in their favor), or what public interests are implicated (much less that those public interests would not be disserved by an injunction).

*Second*, setting aside the fact that Plaintiffs have not alleged any actual monetary loss, "the loss of use and loss of value of Plaintiff[s'] iPhone[] [is] not recoverable as restitution because they provide no corresponding gain to [Apple]."  *Wofford*, 2011 WL 5445054, at *3 (dismissing UCL claim based on allegations of lost use and value of plaintiffs' iPhones resulting from an iOS upgrade's consequent impairment of iPhone functionality, *citing Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) ("A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.")).  That is so even though Plaintiffs allege that they purchased their iPhone 4 devices from Apple.  *Id.*  Plaintiffs also allege that Apple saved money in relay usage fees, but Plaintiffs do not allege that Apple "took [money] directly from" them or that they had a "vested interest" in any of the money that Apple allegedly saved. *L.A. Taxi Coop., Inc. v. Uber Techs, Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015); *accord Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012) (holding that restitution was unavailable because plaintiff "ha[d] not submitted any evidence, or . . . argument, to show that [defendant] obtained money from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest [in] any of [defendant's] profits," *citing Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663,

699 (2006) (a plaintiff can seek money or property as restitution only when the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession")); *see also Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1268 (1992) (when restitution is ordered, "defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct"). Accordingly, Plaintiffs have not stated a claim for restitution.

Because Plaintiffs fail to allege facts supporting claims for injunctive relief or for restitution, they have not stated a UCL claim on which relief can be granted, and the Second Cause of Action must therefore be dismissed. *See, e.g.*, *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 5846992, at *10 (N.D. Cal. Oct. 6, 2016) (Koh, J.) (dismissing UCL claim against Apple because plaintiffs failed to state a basis for restitution where their monetary harm was money paid to wireless carriers and not Apple); *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003 WL 25751413, at *9 (N.D. Cal. Aug. 6, 2003) (dismissing UCL claim based on restitution:  "Plaintiffs [were] not direct victims who [sought] the return of money that was taken from them by Defendant. Therefore, the remedy that Plaintiffs seek is not restitutionary and their claim for restitution under the UCL is dismissed.").

**CONCLUSION**

Plaintiffs' claims should be dismissed with prejudice.  Plaintiffs lack Article III and statutory standing, and they are suing to enforce a right they expressly agreed they do not have.  There is no valid claim, no cognizable injury, and nothing to warrant anything other than putting an end to this lawsuit. *See Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (dismissal with prejudice where court determined plaintiff would be unable to establish standing through amendment). Further, Plaintiffs drafted their First Amended Complaint after Apple's initial motion to dismiss was filed and served; if they were capable of correcting the deficiencies in the Complaint, they should have done so in their Amended Complaint.  Because they failed to do so, Apple respectfully requests that the Court grant this motion with prejudice.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.")


 DATED:  April 19, 2017

Respectfully submitted,
KIRKLAND & ELLIS LLP


*/s/ Elizabeth L. Deeley*
_____

Elizabeth L. Deeley (SBN 230798)
Kristin I. Sheffield-Whitehead (SBN 304635)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: elizabeth.deeley@kirkland.com
Email: kwhitehead@kirkland.com

Attorneys for Defendant
*Apple Inc.*

**CERTIFICATE OF SERVICE**

On April 19, 2017, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.


/s/ Elizabeth L. Deeley
Elizabeth L. Deeley