1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| CHRISTINA GRACE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 17-CV-00551 <br><br> **ORDER DENYING APPLE'S MOTION TO DISMISS** <br><br> Re: Dkt. No. 38 |

18     Plaintiffs Christina Grace ("Grace") and Ken Potter ("Potter") sue Defendant Apple, Inc.

19 ("Apple") for trespass to chattels and violation of California's Unfair Competition Law ("UCL"),

20 Cal. Bus. & Prof. Code § 17200.  Before the Court is Apple's motion to dismiss the First

21 Amended Complaint ("FAC").  ECF No. 38.  Having considered the submissions of the parties,

22 the relevant law, and the record in this case, the Court hereby DENIES Apple's motion to dismiss.

23 **I.     BACKGROUND**

24 **A.     Factual Background**

25      **1.  Apple's iPhone 4 and iPhone 4S and Apple's FaceTime**

26      Apple is the designer, seller, and manufacturer of the iPhone smartphone.  FAC ¶ 29.

27 Apple released the iPhone 4 device on June 7, 2010.  *Id.* ¶ 31.  Apple released the iPhone 4S

28

1

United States District Court <br> Northern District of California

1   device on October 14, 2011.  *Id.* ¶ 32.

2       All iPhones, including the iPhone 4 and iPhone 4S, operate through a mobile operating

3   system known as iOS.  *Id.* ¶ 34.  iOS runs the features and applications of the iPhone.  *Id.*  Prior to

4   September 13, 2013—the day that Apple released the "iOS7" operating system, which is discussed

5   further below— iPhones operated on the "iOS6" operating system or an earlier iOS operating

6   system.  *See, e.g.*, ¶ 9–10.

7       The iPhone 4 was the first iPhone device to offer a feature known as "FaceTime."  *Id.* ¶ 37.

8   FaceTime is a video conferencing feature that allows iPhone users to communicate via video calls,

9   as opposed to traditional audio calls.  *Id.*  Apple's press releases about the iPhone 4 described the

10   iPhone 4 as "the new iPhone 4 featuring FaceTime."  *Id.*  In addition, FaceTime was featured

11   prominently in Apple's advertising campaign for the iPhone 4.  *Id.* ¶ 38.  "[S]everal of Apple's

12   television advertisements for the iPhone 4 focused exclusively on FaceTime" and FaceTime's

13   ability to "bridge the gap between friends and loved ones no matter the geographic distance

14   between them."  *Id.*  For example, an iPhone 4 advertisement depicted a deployed solider using

15   FaceTime to view his pregnant wife's sonogram appointment, and a hearing-impaired couple

16   communicating over FaceTime in sign language.  *Id.* ¶¶ 39–40.

17       Prior to November 2012, iPhone 4 and iPhone 4S devices used two methods to connect a

18   FaceTime call: (1) the peer-to-peer method, and (2) the relay method.  *Id.* ¶ 52.  "[T]he two

19   connection methods would occur in parallel, and the call would be connected through whichever

20   method achieved a connection first."  *Id.* ¶ 55.  The call would connect through the peer-to-peer

21   method approximately 90 to 95% of the time.  *Id.*  Through the peer-to-peer method, the caller and

22   callee exchanged data directly between each other over the internet.  *Id.* ¶ 53.

23       "[S]ometimes, however, it was not possible to connect a FaceTime call through the peer-to-

24   peer method," and thus the FaceTime call would instead connect through the relay method.  *Id.* ¶

25   54.  Through the relay method, the caller and the callee connected to a relay server that relayed the

26   data on behalf of the devices.  *Id.* ¶ 5.  Apple used servers from a company called Akamai

27   Technologies, Inc. ("Akamai"), to relay FaceTime calls through the relay method.  *Id.*  Akamai

28

2

1  charged Apple fees based on the amount of FaceTime calls that connected through Akamai's

2  servers.  *Id.* ¶¶ 5, 59.  Accordingly, if a low number of FaceTime calls connected through the relay

3  method, Apple paid Akamai a lower fee than if a higher number of FaceTime calls connected

4  through the relay method.  *Id.*

5       **2.  Patent Infringement Trial and Apple's Transition to Only the Relay Method**

6       On November 7, 2012, a jury found that Apple's use of the peer-to-peer method to connect

7  FaceTime calls infringed patents owned by VirnetX, Inc. ("VirnetX").  *Id.* ¶ 61.  Indeed, due to the

8  willful nature of Apple's infringement, the jury ordered Apple to pay an ongoing royalty to

9  VirnetX that was higher than the effective royalty for use of VirnetX's patents.  *Id.*

10      In order to avoid paying royalty fees to VirnetX for use of VirnetX's patents, Apple

11  eliminated the peer-to-peer method for FaceTime calls.  *Id.* ¶ 61.  Thus, all FaceTime calls on

12  devices using iOS6 or earlier operating systems connected via the relay method 100% of the time.

13  *Id.*  However, Apple's shift to the relay only method meant that Apple's fees to use Akamai's

14  relay servers increased substantially.  *Id.* ¶ 62.  According to the FAC, internal Apple emails show

15  that Apple's switch to the relay only method for FaceTime calls caused Apple's fees to Akamai to

16  increase by $3.2 million per month.  *Id.*

17      **3.  Introduction of iOS7**

18      As a result of Apple's mounting relay fees, Apple began to explore options for decreasing

19  relay usage for FaceTime calls.  *Id.* ¶ 65.  On September 13, 2013, Apple released a new operating

20  system, iOS7.  *Id.* ¶ 67.  Unlike iOS6 and earlier operating systems, iOS7 allowed users to connect

21  a FaceTime call using a peer-to-peer method that had not yet been found to infringe VirnetX's

22  patents.  *Id.* ¶ 68.  Thus, the introduction of iOS7 provided Apple with a way to avoid the millions

23  of dollars in increased relay fees that Apple was paying to Akamai.  *Id.*

24      Problematically, however, the introduction of iOS7 only reduced relay usage to the extent

25  that iPhone users who were operating iOS6 or earlier operating systems voluntarily transitioned to

26  iOS7.  *Id.* ¶ 68.  The upgrade to iOS7 was free of cost.  Nonetheless, iPhone 4 and iPhone 4S users

27  were reluctant to switch to iOS7.  Specifically, "iOS7 was a more robust and powerful operating

28

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

United States District Court
Northern District of California

1   system that acted as a significant drain on the processing capability of any device on which it ran."

2   *Id.* ¶ 71.  Although *new* iPhone devices, such as the iPhone 5 and iPhone 5C, "were designed to

3   include a more powerful processor in order to function properly with iOS7," the iPhone 4 and

4   iPhone 4S devices were not designed with processors that could handle the upgrade to iOS7.  *Id.*

5   ¶¶ 71–72.

6       According to the FAC, "transitioning to iOS7 on an iPhone 4 or iPhone 4S significantly

7   impaired" the device's functionality.  *Id.* ¶ 72.  For example, iPhone 4 and iPhone 4S devices that

8   transitioned to iOS7 experienced problems such as "non-responsiveness, keyboard sluggishness,

9   extremely slow app[lication] launching and device crashes."  *Id.* ¶ 72.  Plaintiffs also allege that

10  "[f]or a sizeable portion of the iPhone 4 and 4S population, a defect in iOS 7 meant that

11  transitioning to iOS 7 would prevent [iPhone 4 and iPhone 4S users] from accessing Wi-Fi and/or

12  Bluetooth," which are two critical features of the iPhone.  *Id.* ¶¶ 80–86.  Moreover, "Apple made

13  it impossible for users who had transitioned to iOS7 to revert back to an earlier version of iOS,"

14  even though Apple previously allowed users to install older operating systems,  *Id.* ¶ 80.  Thus, if

15  an iPhone 4 or iPhone 4S user transitioned to iOS7 and experienced lost functionality, the user

16  could not transition back to iOS6 or an earlier operating system.  *Id.*

17          **4.   Apple's Disabling of FaceTime for iOS6 and Earlier Operating Systems**

18       Because of the functionality problems discussed above, "a sizeable percentage of Apple's

19  user base" continued to use iOS6 or an earlier operating system after the introduction of iOS7.  *Id.*

20  ¶ 88.  Plaintiffs allege that this was problematic for Apple because, as set forth above, iPhone 4

21  and iPhone 4S devices that used iOS6 or earlier operating systems connected on FaceTime

22  through the relay method, rather than the new peer-to-peer method used on iOS7.  *Id.* ¶ 89.  Thus,

23  Apple continued to pay Akamai substantial fees.  *Id.*

24          According to the FAC, Apple decided to "break" FaceTime for iOS 6 and earlier operating

25  systems.  *Id.* ¶ 90.  Specifically, Apple "cause[d] a digital certificate necessary to the operation of

26  FaceTime on iOS6 and earlier operating systems to prematurely expire" on April 16, 2014.  *Id.* ¶

27  91.  As a result, FaceTime stopped working on iPhone 4 and iPhone 4S devices that used iOS6 or

28

United States District Court
Northern District of California

earlier operating systems.  *Id.*

In order to regain usage of FaceTime, iPhone 4 and iPhone 4S users were required to upgrade to iOS7, which utilized the new peer-to-peer method to connect FaceTime calls.  *Id.* However, as set forth above, transitioning to iOS7 on an iPhone 4 or an iPhone 4S caused the device to "buckle under the weight of the new software."  *Id.* ¶ 12.

Thus, Plaintiffs allege that after Apple disabled FaceTime for iOS6 and earlier operating systems on April 16, 2014, Apple in effect gave iPhone 4 and iPhone 4S users three options.  The iPhone 4 or 4S user could either: (1) continue to use iOS6 or an earlier operating system, but never regain the ability to use FaceTime; (2) upgrade to iOS7, but suffer the lost functionality that iOS7 caused iPhone 4 and iPhone 4S devices; (3) purchase a new iPhone device, such as an iPhone 5 or 5C, that had the processing capability to successfully operate using iOS7, and thus regain the ability to use FaceTime on iOS7.  *See id.*

The FAC alleges that, at the time that Apple decided to disable FaceTime for users of iOS6 and earlier operating systems, Apple knew that "[a]ll users with [iOS] 6.0 and older c[ould not] make FaceTime [calls] any longer" as a result of Apple's conduct.  *Id.* ¶ 98.  Further, Apple "fully recognized that FaceTime was a very important tool" for iPhone 4 and 4S owners "that allowed loved ones separated by geographic distance to remain connected in a meaningful way."  *Id.* ¶ 95. Nonetheless, Apple broke FaceTime in order to gain a financial advantage and reduce relay fees. *Id.*  Further, although Apple knew that it had intentionally disabled FaceTime, Apple told consumers that FaceTime had stopped working because of a "bug resulting from a device certificate that expired."  *Id.* ¶ 108.  Apple did not tell users that Apple had intentionally caused the digital certificate to expire prematurely.  *Id.*

### 5.  Named Plaintiffs' Experiences

Plaintiff Grace is a California resident who owns an iPhone 4 that utilized iOS6.  *Id.* ¶ 23. Grace used the FaceTime feature on her iPhone to communicate with her family.  *Id.* ¶ 24. However, FaceTime stopped working on her phone on April 16, 2014, the day that Apple disabled FaceTime for iOS6 and earlier operating systems.  *Id.*  Apple's disabling of FaceTime has

1    "interfered with Plaintiffs Grace's use of her iPhone 4 because" Grace has been "unable to use the

2    FaceTime feature," which has "significantly reduced the value of Plaintiff Grace's iPhone 4." *Id.*

3    ¶ 24.

4        Plaintiff Potter is also a California resident. *Id.* ¶ 25.  Potter owns two iPhone 4 devices

5    that were running on iOS6 or an earlier operating system. *Id.*  Potter used FaceTime to

6    communicate with his family on a daily basis. *Id.* ¶ 26.  However, FaceTime stopped working on

7    Potter's iPhones the day that Apple disabled FaceTime for iOS6 and earlier operating systems,

8    April 16, 2014. *Id.*  Potter alleges that the disabling of FaceTime "substantially interfered with

9    [Potter's] use of his iPhone 4 devices because [Potter] was unable to use the FaceTime feature to

10   communicate with his family." *Id.*

11       Potter upgraded one of his iPhones to iOS7 in order to regain the ability to use FaceTime.

12   *Id.*  However, Potter's iPhone began experiencing lost functionality as a result of the upgrade to

13   iOS7, such as "slow and erratic behavior, and Wi-Fi disconnections." *Id.*  Potter eventually

14   purchased an iPad for his family and a new iPhone 5S for himself "in order to have both a

15   functional smartphone and mobile access to FaceTime." *Id.* ¶ 28.

16   **B.    Procedural History**

17       On February 2, 2017, Grace filed a putative class action complaint in this Court against

18   Apple.  ECF No. 1.  Plaintiff sought to represent a class consisting of "All owners of Apple iPhone

19   4 or Apple iPhone 4S devices in the United States who on April 16, 2014, had the iOS6 or earlier

20   operating system on their iPhone 4 or iPhone 4S." *Id.* ¶ 107.  The complaint alleged causes of

21   action against Apple for (1) trespass to chattels, and (2) violations of the UCL, each based on

22   Apple's intentional disabling of FaceTime on iOS6 and earlier operating systems.  *See id.* ¶ 1.

23       On March 22, 2017, Apple moved to dismiss the complaint.  ECF No. 33.  According to

24   Apple, Grace lacked standing under Article III and the UCL because Grace had no right to

25   uninterrupted FaceTime service under the terms of Apple's Software License Agreement. *Id.* at

26   13-17.  Further, Apple argued that Grace lacked standing to bring claims based on the use of

27   iPhone4S, which Grace did not own, and that Grace lacked standing to raise issues relating to the

28

United States District Court
Northern District of California

6
Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

1    upgrade to iOS7, which Grace never alleged that she downloaded. *Id.* at 18. In addition, Apple

2    argued that Grace failed to state a claim for trespass to chattels or violations of the UCL. *See, e.g.,*

3    *id.*

4           Rather than oppose Apple's motion to dismiss, Grace filed the FAC on April 5, 2017. ECF

5    No. 36. The FAC added Potter as a named Plaintiff. Potter alleged that he upgraded to iOS7 on

6    one of his iPhone 4 devices, and that Potter experienced lost functionality as a result of his

7    upgrade. *Id.*

8           Grace's amendment of the complaint on April 5, 2017 was an amendment as of right under

9    Federal Rule of Civil Procedure 15(a)(1)(B) because Grace amended the complaint within 21 days

10   of Apple's motion to dismiss the original complaint. *See* Fed. R. Civ. P. 15(a)(1)(B).

11   Accordingly, on April 6, 2017, the Court denied as moot Apple's motion to dismiss the original

12   complaint. *See* ECF No. 37.

13          On April 19, 2017, Apple filed a motion to dismiss the FAC, which largely raised the same

14   arguments that Apple raised in its motion to dismiss the original complaint. ECF No. 38 ("Mot.").

15   Apple also filed a request for judicial notice. ECF No. 39 ("RJN").[1] On May 3, 2017, Plaintiffs

16   filed an opposition to Apple's motion to dismiss. ECF No. 47 ("Opp."). On May 10, 2017, Apple

17   filed a Reply. ECF No. 50 ("Reply").

18   **II.    LEGAL STANDARD**

19   **A.    Motion to Dismiss Under Rule 12(b)(1)**

20          A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule

21   12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires

22   dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires

23

24   ─────────────────
     [1] Apple requests judicial notice of Apple's iOS Software License Agreement for both the iOS6
25   and iOS7. *See* RJN. The Court GRANTS Apple's unopposed request for judicial notice of
     Apple's iOS6 and iOS 7 License Agreements and takes judicial notice of the adjudicative facts
26   contained therein. The contents of these documents are necessarily implicated by Plaintiffs' FAC,
     and neither party contests the authenticity of the documents. *See* Fed. R. Evid. 201; *Moore v.*
27   *Apple, Inc.*, 73 F. Supp. 3d 1191, n.1 (N.D. Cal. Nov. 10, 2014) (taking judicial notice of Apple's
     iOS5 and iOS4 License Agreements under similar circumstances).

28
     Case No. 17-CV-00551-LHK
     ORDER DENYING APPLE'S MOTION TO DISMISS

United States District Court
Northern District of California

dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

## B.      Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1061, 1064 (9th Cir. 2011). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179 1183 (9th Cir. 2004).

## C.     Leave to Amend

If the court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

## III.    DISCUSSION

Apple moves to dismiss the FAC on three bases. First, Apple contends that both of Plaintiffs' claims fail because Plaintiffs do not have Article III standing to sue. Second, Apple contends that Plaintiffs have failed to plead a trespass to chattels claim because Plaintiffs have failed to allege sufficient "harm." Third, Apple contends that Plaintiffs have failed to plead a UCL claim because Plaintiffs do not have standing under the UCL, Plaintiffs have failed to plead that Apple violated the "unfairness" prong of the UCL, and because Plaintiffs have failed to plead entitlement to equitable relief. The Court addresses these three arguments below.

## A.     Article III Standing

Apple first contends that Plaintiffs lack Article III standing to sue. In a class action,

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

standing is satisfied if at least one named plaintiff meets the requirements." *Bates*, 511 F.3d at 985.  Article III standing to sue requires that (1) the plaintiff suffered an injury in fact, i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable' to the challenged conduct," and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.  "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.  At the pleading stage, "[g]eneral allegations of injury may suffice . . . ." *Friends of the Earth, Inc.*, 528 U.S. at 198.

Apple raises two Article III standing arguments.  First, Apple argues that Plaintiffs fail to allege that they have suffered an "injury-in-fact" because "[t]he ability to use FaceTime, or indeed any iOS software or service, is not a 'legally protected interest.'"  Mot. at 13–14.  Specifically, Apple argues that Plaintiffs "have no right to uninterrupted, continuous, or error-free" FaceTime service under the terms of Apple's iOS Software License Agreement ("Software License").  *Id.* at 13–14.  Second, Apple contends that Plaintiffs lack standing to bring claims based on the use of the iPhone 4S and based on iOS7 functionality issues that Plaintiffs did not suffer.  *See id.* at 17.

### 1.   Injury-in-Fact

First, Apple contends that Plaintiffs lack Article III standing because, under the terms of Apple's Software License, Plaintiffs "have no right to uninterrupted, continuous, or error-free" FaceTime service, and thus Plaintiffs' loss of FaceTime is not the invasion of a "legally protected interest" such that Plaintiffs have suffered an injury-in-fact.  *See* Mot. at 13–14.  The Court first discusses Apple's Software License, and then discusses Apple's argument.

All users of Apple devices, either under iOS6 or iOS7, agree to Apple's Software License.  RJN, Exs. 1 & 2.  The Software License provides that "By using your iPhone, iPad or iPod Touch ("iOS Device"), you are agreeing to be bound" by the Software License's terms.  *Id.* Ex. 1, at 1.  The Software License provides that iOS is "licensed, not sold," to users by Apple "for use only under the terms of th[e] [Software] License."  *Id.*  Among other provisions, the Software License

1    contains a "disclaimer of warranties." *Id.* at 7.  This disclaimer states that "To the maximum

2    extent permitted by law, the iOS Software and Services are provided 'as is' and 'as available,'

3    with all faults and without warranty of any kind." *Id.*  Further, the Software License states that

4    "Apple does not warrant against interference with your enjoyment of the iOS Software and

5    Services, that the functions contained in, or Services performed or provided by, the iOS Software

6    will meet your requirements, that the operation of the iOS Software and Services will be

7    uninterrupted or error-free, that any Service will continue to be made available, that defects in the

8    iOS Software or Services will be corrected, or that the iOS Software will be compatible or work

9    with any third party" software or services.  *Id.*

10           According to Apple, because Apple stated in its Software License that "Apple does not

11   warrant . . . that the operation of the iOS Software and Services will be uninterrupted or error-free,

12   [or] that any Service will continue to be made available," Plaintiffs' loss of FaceTime, as a matter

13   of law, cannot constitute "injury-in-fact" sufficient to confer Article III standing.  *See* Mot. at 14.

14   However, for the reasons discussed below, the Court disagrees with Apple.

15           First, Apple's reliance on its statement that "Apple does not warrant . . . [that] any Service

16   will continue to be made available" is non-meritorious because Apple's Software License does not

17   define FaceTime as a "Service."  In Section 5 of the Software License, entitled "Services and

18   Third Party Materials," Apple's Software License provides that "[t]he iOS Software may enable

19   access to Apple's iTunes Store, App Store, Game Center, iCloud, Maps and other Apple and third

20   party services and web sites (collectively and individually, "Services")."  *Id.* at 5.  Section 5

21   further states that "Apple and its licensors reserve the right to change, suspend, remove, or disable

22   access to any Services at any time without notice.  In no event will Apple be liable for the removal

23   of or disabling of access to any such Services."  *Id.* at 6–7.

24           Significantly, FaceTime is not among the applications defined as a "Service," and

25   FaceTime is not listed under the "Service and Third Party Materials" portion of the Software

26   License.  *See id.* at 5–7.  To the contrary, FaceTime is explicitly discussed elsewhere in the

27   Software License, and FaceTime is described as "[t]he FaceTime video calling *feature of the iOS*

28

11

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

United States District Court
Northern District of California

*Software.*"  *Id.* at 4 (emphasis added).  No provision of the Software License describes FaceTime as a "Service," even though the Software License explicitly refers to other applications as either a "Service" or a "Service *and* feature of the iOS Software"  *See, e.g.*, *id.* at 4–5 (describing FaceTime and iMessage as "feature[s] of the iOS Software," but describing "Maps" as the "maps service and features of the iOS Software").   Moreover, the portion of the Software License that explicitly discusses FaceTime disclaims only that users of FaceTime "agree that Apple may transmit, collect, maintain and process" certain personal identifiers of FaceTime users.  *Id.*  The Software License does not contain any disclaimers regarding Apple's ability to disable access to FaceTime or remove FaceTime.  *See id.*

In sum, although the Software License disclaims that "any Service will continue to be made available," this disclaimer does not apply to FaceTime under the terms of the Software License because FaceTime is not defined in the Software License as a "Service."  *Id.*  Indeed, the fact that Apple explicitly disclaimed the continued availability of "Services," but did not similarly disclaim the continued availability of FaceTime or the iOS Software itself—of which FaceTime is a "feature"—cuts against Apple's argument that Apple disclaimed the continued availability of FaceTime.  *Id.* at 4–5.  If Apple wished to disclaim the availability of FaceTime or iOS Software, Apple would not have disclaimed only the availability of "Services," which are specifically defined in the Software License and do not include FaceTime.  *Id.*

Second, Apple's reliance on its statement in the Software License that "Apple does not warrant . . . that the operation of the iOS Software and Services will be uninterrupted or error-free" is also not persuasive.  Plaintiffs do not allege that FaceTime operation was interrupted, or that it contained errors.  Rather Plaintiffs allege that Apple in effect made FaceTime *unavailable* to owners of iPhone 4 and 4S devices.  Specifically, the FAC alleges that Apple intentionally and *permanently* disabled FaceTime on iOS and earlier operating systems, and that Plaintiffs cannot practically transition to iOS 7 because transitioning to iOS7 causes the iPhone 4 and iPhone 4S to "buckle under the weight of the new software."  FAC ¶¶ 12, 70–87.  The *unavailability* of FaceTime is different from "interruptions" or "errors" in FaceTime.  Indeed, if Apple's statement

12

that it does not warrant that "the operation of the iOS Software and Services will be uninterrupted or error-free" was sufficient to disclaim the availability of iOS Software and Services, there would be no reason for Apple to separately and specifically disclaim in the next sentence that "any Service will continue to be made available." *Id.* at 4–5.

Indeed, it is reasonable for consumers to expect occasional errors or interruptions in FaceTime, either due to cellular connectivity issues or other temporary circumstances. For this reason, several cases have addressed situations in which software services have temporarily experienced disruptions. These cases have relied on software license terms that are substantially identical to Apple's Software License to hold that consumers have not suffered harm as a result of temporary service interruptions. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Security Breach*, 996 F. Supp. 2d 942, 969 (S.D. Cal. Jan. 21, 2014) (relying on Sony's disclaimer of that Sony did not warrant that PlayStation Network service would be "uninterrupted" to deny Plaintiffs' claims related to the temporary interruption of the PlayStation Network Service); *Von Nessi v. XM Satellite Radio Holdings, Inc.*, 2008 WL 4447115, at *3 (D.N.J. Sept. 26, 2003) (finding Plaintiffs could not state a claim for breach of license agreement based on 24-hour "interruption of service" because the license agreement did not require the defendant "to provide uninterrupted service"). In contrast to these cases, Plaintiffs' allegations refer to the continued *unavailability* of FaceTime for their iPhone 4 and iPhone 4S devices, not a temporary interruption or error in FaceTime service. *See, e.g.*, *id.* ¶ 12, 70–87.[2]

Accordingly, based on the allegations in the FAC, Apple's statements that "Apple does not warrant . . . that the operation of the iOS Software and Services will be uninterrupted or error-free, [or] any Service will continue to be made available," do not establish that Plaintiffs lack an injury in fact for purposes of Article III. As set forth above, Plaintiffs allege that Apple intentionally and permanently disabled FaceTime on iOS6 and earlier operating systems, and that Plaintiffs cannot

---

[2] At most, Apple's license agreement is ambiguous regarding whether Apple has disclaimed the continued availability of FaceTime, in which case the court "should deny the motion to dismiss." *San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2016 WL 3766364, at *5 (S.D. Cal. July 6, 2016).

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

United States District Court
Northern District of California

1   practically transition to iOS7 on their iPhone 4 and iPhone 4S devices.  *Id.*  Apple's Software

2   License does not disclaim that FaceTime would continue to be made available to Plaintiffs.  *See*

3   RJN, Ex. 1, at 4–5.  As a result of Apple's conduct, Plaintiffs allege that they have suffered harm

4   in the form of a diminution in value of their iPhones.  *See, e.g.*, ¶¶ 23–27, 102 ("[A]s a direct and

5   proximate result of the FaceTime Break, every Apple iPhone 4 and iPhone 4S user whose device

6   was operating on iOS6 or an earlier operating system suffered a significant decrease in the value

7   of their device.").  The Court finds that Plaintiffs' allegations are sufficient, at this stage of the

8   proceedings, to allege an "injury-in-fact" sufficient to satisfy Article III's requirements.  *See*

9   *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1199 (N.D. Cal. 2014) (finding Plaintiffs sufficiently

10  alleged injury in fact where "Plaintiff allege[d] that Apple's interference with the receipt of her

11  text messages deprived her of the full benefit of her contractual bargain with Verizon Wireless").

12  **2.  Standing to Sue for iPhone 4S and Injuries Plaintiffs Did Not Suffer**

13          Apple also argues that Plaintiffs lack standing to bring claims based on the use of the

14  iPhone 4S, and based on injuries that Plaintiffs did not suffer.  Mot. at 17.  According to Apple,

15  both Grace and Potter purchased only an iPhone 4, not an iPhone 4S, and thus Plaintiffs lack

16  standing to bring claims based on the use of the iPhone 4S.  *Id.*  In addition, Apple argues that the

17  FAC alleges injuries as a result of iPhone 4 and iPhone 4S users upgrading to iOS7—such as

18  "inability to access Wi-Fi or Bluetooth" and "keyboard sluggishness"—which neither Grace nor

19  Potter personally experienced.  *Id.*  Thus, Apple argues, Plaintiffs lack standing to bring claims

20  based on these harms.

21          For the reasons discussed below, the Court disagrees with Apple.  The Court first discusses

22  Plaintiffs' standing to bring claims based on the use of the iPhone 4S, and the Court then discusses

23  Apple's arguments regarding Plaintiffs' injuries.

24  **a.  Claims Based on Use of iPhone 4S**

25          First, Apple argues that Plaintiffs lack standing to bring claims on behalf of iPhone 4S

26  owners.  Both Grace and Potter purchased only an iPhone 4, not an iPhone 4S, FAC ¶¶ 24–27, but

27  seek to represent a class consisting of "[a]ll owners of Apple iPhone 4 or Apple iPhone 4S devices

28

United States District Court
Northern District of California

14
Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

in the United States who on April 16, 2014, had iOS6 or earlier operating systems on their iPhone 4 or iPhone 4S devices," *id.* ¶ 112. For the reasons discussed below, the Court finds that Plaintiffs can assert claims based on the use of the iPhone 4S, even though Plaintiffs did not themselves purchase an iPhone 4S.

"The majority of the courts in this district and elsewhere in California reject the proposition that a plaintiff can not suffer injury in fact based on products that the plaintiff did not buy." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *9 (N.D. Cal. Sept. 12, 2016). Some courts reserve the question of whether plaintiffs may assert claims based on products they did not buy until ruling on a motion for class certification. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013). Others "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing cases).

This Court has consistently applied the "substantially similar" approach when analyzing standing challenges. *See, e.g.*, *Coleman-Anacleto*, 2016 WL 4729302, at *10; *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *6 (N.D. Cal. July 7, 2015); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *8 (N.D. Cal. Jan. 15, 2014); *Kane v. Chobani*, 2013 WL 5289253, at *10–11 (N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.*, 2013 WL 5312418, at *7–8 (N.D. Cal. Sept. 23, 2013). As explained in the Court's prior orders, "in asserting claims based on products a plaintiff did not purchase, but which are nevertheless substantially similar to products a plaintiff did purchase, a plaintiff is not suing over an injury she did not suffer. Rather, a plaintiff in that scenario is suing over an injury she personally suffered and asserting that others who purchased similar products suffered substantially the same injury, even if the products that caused the injury were not identical in every respect." *Bruton*, 2014 WL 172111, at *8 (citations omitted).

Moreover, this Court has previously explained that the substantially similar approach is

United States District Court
Northern District of California

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

1  consistent with the Ninth Circuit's admonition that courts "should not be too rigid in applying

2  standing requirements to proposed classes." *Brazil*, 2013 WL 5312418, at *4 (quoting *Lanovaz v.*

3  *Twining's N.Am., Inc.*, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013)). In particular, when

4  evaluating whether a plaintiff has standing to sue on behalf of others who have suffered similar,

5  but not identical injuries, the Ninth Circuit has held that in "determining what constitutes the same

6  type of relief or the same kind of injury, we must be careful not to employ too narrow or technical

7  an approach. Rather, we must examine the questions realistically: we must reject the temptation to

8  parse too finely, and consider instead the context of the inquiry." *Id.* (quoting *Armstrong v. Davis*,

9  275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S.

10  499, 504–05 (2005)).

11      Here, Apple does not contest that both the iPhone 4 and iPhone 4S operate using iOS, that

12  FaceTime was available for both devices, and that Apple's April 16, 2014 disabling of FaceTime

13  affected both iPhone 4 and iPhone 4S devices the same if those devices were operating on iOS6 or

14  an earlier operating system. Rather, Apple argues only that the iPhone 4S "was launched over a

15  year after the iPhone 4 and was not just a reiteration" of the iPhone 4, and thus the iPhone 4S does

16  not suffer the same problems in transitioning to iOS7 as the iPhone 4. Reply at 14. Accordingly,

17  Apple argues, an important component of Plaintiffs' allegations—that Plaintiffs could not, in

18  practice, transition to iOS7 to have FaceTime restored on their devices—is not substantially

19  similar across users of the iPhone 4 and iPhone 4S devices. *Id.*

20      However, on a motion to dismiss, "the court must presume all factual allegations of the

21  complaint to be true and draw all reasonable inferences in favor of the nonmoving party."

22  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) (internal quotation

23  marks omitted). Plaintiffs allege that "iOS7 subjects iPhone 4 and iPhone 4S devices to

24  substantially reduced functionality." *See id.* ¶¶ 70–72. Plaintiffs allege that "the iPhone 4 and

25  iPhone 4S," as compared to the iPhone 5 and iPhone 5C, "possess[] approximately half of the

26  onboard random access memory (or "RAM") of the later-generation iPhones for which iOS7 was

27  designed," and thus iOS7 is too demanding of an operating system for the iPhone 4 and 4S

28

16

devices.  *Id.* ¶¶ 12, 72.  The FAC quotes from a representative customer complaint, which Apple received on April 25, 2014, which states "iOS 7 does not function well on iPhone 4 and iPhone 4S."  *Id.* ¶ 109.  Plaintiffs allege that Apple knew that "for anybody with an iPhone 4 or an iPhone 4S, a transition to iOS 7 meant significant impairment of the functionality and value of their device."  *Id.* ¶ 111.  Thus, Plaintiffs allege that for users of *both* the iPhone 4 and iPhone 4S, transitioning to iOS7 in order to regain FaceTime was not, in practice, a possibility.  *Id.* Accordingly, Plaintiffs allege that users of both the iPhone 4 and the iPhone 4S lost the ability to use FaceTime when Apple disabled FaceTime for iOS6 and earlier operating systems on April 16, 2014.

In sum, taking the FAC's allegations as true, the FAC alleges that owners of both the iPhone 4 and iPhone 4S suffered substantially the same injury: a diminution in value of their iPhone 4 and iPhone 4S devices as a result of the loss of FaceTime on April 16, 2014.  *See, e.g.*, *id.* ¶ 102.  At this stage of the proceedings, Plaintiffs have sufficiently alleged that the iPhone 4 and iPhone 4S are "substantially similar" products for purposes of the Article III standing analysis. *See Giuliano v. SanDisk Corp.*, 2014 WL 4685012, at *3 (N.D. Cal. Sept. 19, 2014) (finding plaintiff had standing to bring claims based on the purchase of different memory cards because the relevant "flash memory products are related" and because "the asserted injury to purchasers of both [products] is predicated on the same alleged wrongful conduct").

**b.  Allegations Regarding Injuries Plaintiffs did not Suffer**

Second, Apple argues that Plaintiffs are seeking to bring claims for injuries that they did not suffer.  *See* Mot. at 17–18.  Specifically, Apple contends that Plaintiffs' FAC alleges numerous problems that occur when an iPhone 4 or iPhone 4S user upgrades to iOS7—such as the loss of Bluetooth functionality or "keyboard sluggishness"—that neither Grace nor Potter experienced. *Id.*  Thus, Apple contends, Plaintiffs do not have standing to bring claims asserting these injuries. *Id.*

However, Apple's argument confuses Plaintiffs' alleged injury.  Plaintiffs' alleged injury is that Apple permanently deactivated FaceTime for iOS6, which has caused Plaintiffs' iPhones to

17

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

United States District Court
Northern District of California

1    diminish in value.  *See, e.g.*, FAC ¶ 27 (alleging that the loss of FaceTime has "significantly

2    reduced the value of plaintiff Potter's iPhone 4 devices").  Plaintiffs' allegations that the iPhone 4

3    and iPhone 4S lose functionality when transitioning to iOS7 are not allegations of injury for

4    purposes of Plaintiffs' causes of action, but are rather allegations to support Plaintiffs' argument

5    that they cannot practically transition to iOS7 in order to regain FaceTime.  *See, e.g.*, ¶¶ 92–94

6    (alleging that Plaintiffs needed to transition to iOS7 to regain FaceTime, but "transitioning to iOS7

7    was extremely problematic for iPhone 4 and iPhone 4S users").  Accordingly, contrary to Apple's

8    arguments, Grace and Potter allege that they suffered the same injury that the putative class

9    suffered:  loss of value of their iPhone devices as a result of Apple's disabling of FaceTime for

10   iOS6 and earlier operating systems.  *See, e.g.*, ¶¶ 23–27, 127 (alleging that the disabling of

11   FaceTime caused significant diminution in the "condition, quality, and value" of Plaintiffs and the

12   Class Members' iPhone devices).

13          Moreover, even if Plaintiffs were alleging injury from the iOS7 update, Apple's standing

14   argument fails because it asks the Court to "parse too finely" Plaintiffs' allegations to determine

15   standing, which the Court may not do under Ninth Circuit law.  *See Brazil*, 2013 WL 5312418, at

16   *4.  For example, Apple contends that Plaintiffs do not have standing to assert injuries based on

17   the "inability to access Wi-Fi," "keyboard sluggishness," or "extremely slow app launching" after

18   upgrading to iOS7 because neither Grace nor Potter experienced these specific problems.  Mot. at

19   17.  However, Potter alleges that his iPhone 4 experienced "lost functionality, including slow and

20   erratic behavior, and Wi-Fi disconnections" when Potter upgraded from iOS6 to iOS7 on his

21   iPhone 4 device.  FAC ¶ 28.  These problems are substantially identical to the problems of

22   "keyboard sluggishness" and "inability to access Wi-Fi."  *See* Mot. at 17.

23          At bottom, Plaintiffs allege that Apple disabled FaceTime on iOS6 and earlier operating

24   systems, which both the iPhone 4 and iPhone 4S devices used, and that Plaintiffs were practically

25   prevented from transitioning to iOS7 to regain FaceTime because iOS7 caused or threatened to

26   cause Plaintiffs' iPhone 4 devices to suffer a significant loss of functionality.  *See, e.g.*, *id.* ¶¶ 24–

27   27.  This is the same injury allegedly suffered by the class as a whole.  *Id.* ¶¶ 124–34.

28

1    Accordingly, for the reasons discussed above, Apple's motion to dismiss for lack of Article

2    III standing is DENIED.  The Court next turns to Apple's arguments that Counts One and Two

3    must be dismissed because Plaintiffs have failed to state a claim.  The Court first addresses

4    Plaintiffs' trespass to chattels claim, and then addresses Plaintiffs' UCL claim.

5    **B.    Trespass to Chattels**

6    Count One of Plaintiffs' FAC alleges a cause of action for trespass to chattels.  Under

7    California law, trespass to chattels "lies where an intentional interference with the possession of

8    personal property has proximately caused injury."  *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–

9    51 (2003).  Apple does not contest that Plaintiff has adequately alleged an "intentional interference

10   with the possession of personal property."  *See* Mot. at 18.  Rather, Apple moves to dismiss

11   Plaintiffs' claim for trespass to chattels because, according to Apple, Plaintiffs have failed to

12   allege that the loss of FaceTime caused "injury."  *Id.*  Thus, the Court turns to address whether

13   Plaintiffs have sufficiently alleged injury for a trespass to chattels claim.

14   The California Supreme Court has explained that, "while a harmless use or touching of

15   personal property may be a technical trespass (see Rest. 2d of Torts, § 217), an interference (not

16   amounting to dispossession) is not actionable under modern California and broader American law

17   without a showing of harm."  *Intel Corp.*, 30 Cal. 4th at 1350–51.  Specifically, in the context of

18   trespass to a computer system or other similar devices, injury is adequately alleged where the

19   plaintiff pleads "that the purported trespass: (1) caused physical damage to the personal property,

20   (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of

21   the use of personal property for a substantial time."  *Fields v. Wise Media, LLC*, 2013 WL

22   5340490, at *4 (N.D. Cal. Sept. 24, 2013).

23   Here, Plaintiffs allege that the loss of FaceTime "substantially harmed the functioning of

24   the[ir] [iPhone] devices," which "significantly impaired the devices' condition, quality, and

25   value."  FAC ¶ 127.  According to Apple, however, Plaintiffs' allegations are insufficient because

26   (1) Plaintiffs do not allege that "other applications or features stopped working on their iPhones";

27   and (2) Plaintiffs could transition to iOS7 free of cost and regain the ability to use FaceTime.  *See*

28   19

*United States District Court*
*Northern District of California*

1   Mot. at 18–19.[3]  The Court addresses each of Apple's arguments in turn.

2        First, Apple argues that Plaintiffs have not alleged a sufficient impairment to the

3   "condition, quality, or value" of their iPhone because Plaintiffs do not allege that other

4   applications or features stopped working on their iPhones. *Id.* at 19.  Thus, according to Apple,

5   Plaintiffs' allegations show that Plaintiffs' iPhones were still able to function, and thus Plaintiffs

6   did not suffer "harm." *Id.*

7        In support of this argument, Apple relies on *In re iPhone Application Litigation*, 844 F.

8   Supp. 2d 1040, 1069 (N.D. Cal. 2012).  There, the plaintiffs alleged that Apple created "location

9   history files and app software components" on the plaintiffs' Apple devices, which consumed the

10  devices' memory and "shortened the[ir] battery life." *Id.*  The Court in *In re iPhone Application*

11  *Litigation* found that these allegations were insufficient to state a trespass to chattels claim because

12  these allegations did not suggest that Apple's trespass caused "an interference with the intended

13  functioning of the" devices themselves. *Id.*  Thus, the Court found that the plaintiffs failed to

14  plausibly allege sufficient injury from Apple's installation of history files or app software

15  components on plaintiff's Apple devices.  *Id.*; *see also Yunker v. Pandora Media, Inc.*, 2013 WL

16  1282980, at *15–16 (N.D. Cal. Mar. 26, 2013) (relying on *In re iPhone Application Litigation* and

17  dismissing trespass to chattels claim for failure to allege harm where the plaintiff alleged only that

18  the defendant's "installat[ion] of unwanted code" "consume[d] portions of the memory on

19  [Plaintiff's] mobile device" ).

20        However, the harm alleged in *In re iPhone Application Litigation* is distinguishable from

21  the instant case.  Here, Plaintiffs do not simply allege that Apple's conduct has taken up "memory

22  on their devices," or that it has reduced the battery life of their iPhones without causing any harm

23  to the "intended functioning of the system" itself.  *See In re iPhone Litig.*, 844 F. Supp. at 1069.

24  To the contrary, Plaintiffs allege that FaceTime was heavily advertised by Apple as a function of

25  _____

26  [3] Apple also alleges that Plaintiffs cannot show "harm" because Plaintiffs "expressly agreed" in
    the Software License that "they did not have the right to uninterrupted or continuous FaceTime
27  service."  Mot. at 18.  This argument is duplicative of Apple's argument regarding Plaintiffs'
    Article III standing to sue, which as discussed above, is not meritorious.

28  Case No. 17-CV-00551-LHK
    ORDER DENYING APPLE'S MOTION TO DISMISS

20

United States District Court
Northern District of California

United States District Court
Northern District of California

the iPhone 4, that FaceTime played a "prominent role in the lives of Apple users," and that Plaintiffs themselves used FaceTime on a daily basis to communicate with family members. *See, e.g.*, FAC ¶¶ 23–27, 39–42, 104. Plaintiffs allege that Apple permanently disabled the FaceTime feature for users of iOS6 and earlier operating systems, which "harmed the functioning" of Plaintiffs' iPhone 4 devices. *Id.* ¶ 127. Plaintiffs allege that, as a result of Apple's conduct, "every Apple iPhone 4 and iPhone 4S user whose device was operating on iOS6 or an earlier operating system suffered a significant decrease in the value of their device." *Id.* ¶ 102, 127. Plaintiffs allege that Apple knew that its users on iOS6 and earlier operating systems were "'basically screwed'" as a result of Apple's disabling of FaceTime. *Id.* ¶ 103.

In sum, the FAC alleges that FaceTime was integral to the intended function of the iPhone 4 and 4S devices, that Apple disabled FaceTime for Plaintiffs, that the loss of FaceTime harmed the intended function of Plaintiffs' iPhone devices, and that Plaintiffs have experienced a significant decrease in the "condition, quality, or value" of Plaintiffs' iPhones as a result. *See, e.g.*, *id.* ¶¶ 23–27, 36–43, 123–29. "Accepting Plaintiffs' allegations as true for purposes of [Apple's] motion to dismiss, the court is satisfied that Plaintiffs have alleged some measurable loss based on" Apple's disabling of FaceTime. *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *9 (N.D. Cal. Oct. 27, 2016) (finding complaint sufficiently alleged trespass to chattels claim, and distinguishing *In re iPhone Application Litigation*, because the plaintiff alleged that Lenovo's actions "significantly degraded the performance of the Lenovo computers," such as by slowing "internet upload speeds by as much as 55 percent" and causing webpages to not load).

Second, to the extent that Apple argues that Plaintiffs have failed to allege sufficient "injury" because Plaintiffs could transition to iOS7 and regain the ability to use FaceTime, this argument also does not warrant dismissal of Plaintiffs' trespass to chattels claim. As set forth above, Plaintiffs allege that transitioning to iOS7 was, in effect, not a practical reality for Plaintiffs because transitioning to iOS7 on an iPhone 4 or iPhone 4S device caused the device to "buckle under the weight of the new software." FAC ¶ 12. Plaintiffs allege that transitioning to iOS7 caused "slowness, system crashes, erratic behavior" and, on some occasions, the loss of critical

21

features such as Wi-Fi.  *Id.* ¶ 12, 80.  In effect, Plaintiffs allege that by disabling FaceTime on iOS6 and earlier operating systems, Apple gave Plaintiff two choices, either of which resulted in the loss of their devices' functionality.  Specifically, after Apple disabled FaceTime for iOS6 or earlier operating systems, Plaintiffs could either continue to use iOS6, and thus permanently lose the ability to use FaceTime, or Plaintiffs could transition to iOS7 and regain FaceTime but suffer lost functionality in other significant ways.  *See, e.g.*, *id.* ¶ 92.  Thus, although iOS7 was available for free, Plaintiffs allege that it was not a practical way to regain FaceTime.  *See id.*

Apple relies on *In re Apple & ATTM Antitrust Litigation*, 2010 WL 3521965, at *6–7 (N.D. Cal. July 8, 2010), to argue that the availability of iOS7 precludes Plaintiffs' trespass to chattels claim.  That case, however, is markedly different from the facts alleged here.  The plaintiffs in *In re Apple & ATTM Antitrust Litigation* lost access to their iPhones "for a few days before receiving a free replacement phone" from Apple.  *Id.* at *6.  Plaintiffs attempted to state a trespass to chattels claim, and argued that they were injured because they were deprived of their iPhones for a "substantial" period of time.  *Id.*  However, the Court held on summary judgment that the plaintiffs failed to "produce[] sufficient evidence of injury" because no plaintiff was without use of their phone "for more than a few days before receiving a free replacement."  *Id.*

By contrast, Plaintiffs here allege that FaceTime was *permanently* disabled on iOS6 and earlier operating systems, and that Plaintiffs could not transition to iOS7 in order to regain FaceTime on their iPhone 4 and iPhone 4S devices because iOS7 caused iPhone 4 and iPhone 4S devices to experience other significant performance issues.  *See, e.g.*, *id.* at FAC ¶ 92.  Accepting Plaintiffs factual allegations as true, as the Court must on a motion to dismiss, Plaintiffs allegations are sufficient to allege that Apple's disabling of FaceTime "impaired the condition, quality, or value" of their iPhones.  *Fields*, 2013 WL 5340490, at *4.

Accordingly, the Court DENIES Apple's motion to dismiss Plaintiffs' claim for trespass to chattels.

## C.     California's UCL

Count Two of Plaintiffs' FAC alleges that Apple violated the "unfair" prong of the UCL.

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*

Apple moves to dismiss this claim on three grounds.  First, Apple argues that Plaintiffs lack statutory standing to assert a UCL claim.  Mot. at 15–16.  Second, Apple argues that Plaintiffs have failed to allege that Apple engaged in an "unfair business practice."  *Id.* at 22–23.  Third, Apple contends that Plaintiffs are not entitled to equitable relief, which is the only remedy available under the UCL.  *Id.* at 23–25.  The Court addresses each argument below.

**1.  Statutory Standing Under the UCL**

First, Apple challenges Plaintiffs' statutory standing to assert a UCL claim.  To establish statutory standing under the UCL, plaintiffs must show that they personal lost money or property "as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011).  "There are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary."  *Kwikset Corp.*, 51 Cal. 4th at 323.

Plaintiffs allege that as a result of Apple's disabling of FaceTime, Plaintiffs have "suffered a significant decrease in the value of their" iPhone device.  FAC ¶102; *see also id.* ¶¶ 24, 27, 111, 127.  According to Apple, Plaintiffs' allegation is "too speculative to confer standing."  Mot. at 16.[4]  In support of this argument, Apple relies on *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012).  There, owners of PlayStation gaming consoles brought suit after a third-party data breach caused a temporary, month long disruption in plaintiffs' ability to use the "PlayStation Network," an online computer network system.  *Id.*  The loss of the PlayStation Network prevented plaintiffs from "play[ing]

_____

[4] Apple also contends that Plaintiffs cannot establish standing under the UCL because Plaintiffs "expressly agreed in the Software License Agreement that they do not have such a right."  Mot. at 16.  However, this argument is identical to Apple's argument regarding Plaintiffs' Article III standing which, as discussed above, is not meritorious.

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS

multi-player online games" on their PlayStation gaming consoles, and it prevented plaintiffs from accessing "online services available through the" PlayStation Network, including third party services. *Id.* at 951.  Plaintiffs alleged that this loss of the PlayStation Network caused plaintiffs economic harm because they lost use of their PlayStation gaming consoles while the PlayStation Network was down, and because they suffered a diminution in value to their PlayStation gaming consoles. *Id.* at 965–66.  However, the Court in *In re Sony Gaming Networks* held that the plaintiffs could not allege an economic loss, and thus could not state a UCL claim, because the harm to plaintiffs' PlayStation gaming consoles as a result of the temporary loss of the PlayStation Network was "too speculative." *Id.* at 965.  Specifically, the plaintiffs in *In re Sony Gaming Networks* did not allege "their [PlayStation] consoles [were] somehow defective after the [PlayStation Network] was restored," or that they "value[d] their [PlayStation] consoles less as a result of the Data Breach" that caused the temporary disruption. *Id.*  Moreover, although Plaintiffs could not access third party services while the PlayStation Network was temporarily unavailable, "Plaintiffs [did] not allege[] they were unable to access such services through an alternative medium." *Id.* at 965.

In contrast to the plaintiffs in *In re Sony Gaming Networks*, Plaintiffs here *do* allege that they "value their [iPhone 4 devices] less as a result of" the loss of FaceTime. *Id*; *see* FAC ¶ 27 (alleging that the inability to make FaceTime calls "significantly reduced the value of Plaintiff Potter's iPhone 4 devices").  Unlike *In re Sony Gaming Networks*, where the PlayStation Network was temporarily offline for a month before being fully restored, Plaintiffs allege that Apple *permanently* disabled FaceTime for iOS6 and earlier operating systems, and that owners of iPhone 4 and iPhone 4S devices cannot practically upgrade to iOS7 in order to regain the ability to use FaceTime. *See, e.g.*, *id.* ¶ 111.  Plaintiffs allege that they have suffered "diminution in value of their" iPhones as a result of the loss of FaceTime. *Id.* ¶ 134.  Taking Plaintiffs' factual allegations as true, as the Court must on a motion to dismiss, Plaintiffs have sufficiently alleged economic injury for purposes of Plaintiffs' UCL claim. *See, e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 919–20 (N.D. Cal. May 10, 2012) (finding Plaintiff's allegation of a "signal meter" defect on

24

United States District Court
Northern District of California

1    her iPhone was sufficient to establish standing under the UCL because "the diminution in the

2    value of plaintiff's phone resulting from the defect," although likely "minor," was "at least in

3    theory—calculable").[5]

4    ### 2. The "Unfair" Prong

5        Next, Apple argues that Plaintiffs' UCL claim fails on the merits because "Plaintiffs have

6    not adequately pled that Apple's alleged conduct was 'unfair.'"  Mot. at 21.  "Under the unfairness

7    prong of the UCL, 'a practice may be deemed unfair even if not specifically proscribed by some

8    other law.'"  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015) (quoting *Korea

9    Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (Cal. 2003)).  The California Court

10   of Appeal, in *Drum v. San Fernando Valley Bar Association*, 182 Cal. App. 4th 247 (2010),

11   "articulated three possible tests defining 'unfair.'"  *See In re Carrier IQ*, 78 F. Supp. 3d at 1115.

12   First, "the 'tethering test' requires that the 'public policy which is a predicate to a consumer unfair

13   competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional,

14   statutory, or regulatory provisions.'"  *Id.* (quoting *Drum*, 182 Cal. App. 4th at 257).  Second, the

15   "balancing test" "asks whether the alleged business practice is 'immoral, unethical, oppressive,

16   unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of

17   the defendant's conduct against the gravity of the harm to the alleged victim.'"  *Id.*  Finally, the

18   third test "requires: (1) that the consumer injury be substantial; (2) that the injury not be

19   outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one

20   that consumers could not have reasonably avoided."  *Id.*

21       Plaintiffs and Apple both rely upon the "balancing test."  *See* Opp. at 18.  Plaintiffs allege

22   that the harm to Plaintiffs caused by Apple's disabling of FaceTime far outweighs the utility to

23

24   ---

     [5] Apple also argues that Plaintiffs have not suffered harm because FaceTime was a "free" service
25   for Plaintiffs, and thus Plaintiffs cannot have suffered an economic loss from the disabling of
     FaceTime.  Reply at 8 n.3.  However, Plaintiffs paid for their *iPhones*, and FaceTime is a "feature"
26   of the iPhone and thus a component of the iPhone's cost.  *See* FAC ¶¶ 37–42.  Indeed, Apple
     advertised FaceTime as "one more thing that makes an iPhone an iPhone."  *Id.* ¶ 42.  Thus, it is
27   irrelevant that Plaintiffs did not separately pay Apple for FaceTime service because Plaintiffs
     necessarily paid Apple for the FaceTime feature in buying the iPhones themselves.
28

1    Apple in saving Apple money.  *See, e.g.* FAC ¶¶ 132–33.  By contrast, Apple contends that

2    Plaintiffs' UCL claim must be dismissed because Plaintiffs injury "is far outweighed by the

3    alleged business justification to Apple" in avoiding excessive relay costs.  Mot. at 22–23.[6]

4            However, Apple's argument that Plaintiffs' alleged injury is outweighed by Apple's

5    business justifications is not suitable for resolution on a motion to dismiss.  *See, e.g.*, *In re:*

6    *Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. Feb. 14, 2016) (denying

7    motion to dismiss claim under unfair prong of UCL because the balancing inquiry is not suited for

8    the motion to dismiss stage); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1117 (recognizing that "[t]he

9    cost-benefit analysis th[e] [balancing] test calls for is not properly suited for resolution at the

10   pleading stage").  Plaintiffs allege that Apple disabled FaceTime on iOS6 and earlier operating

11   systems in order to save money, that Apple knew that iPhone 4 and 4S users who operated iOS6

12   and earlier operating systems would be "'basically screwed'" as a result of Apple's disabling of

13   FaceTime, and that Plaintiffs suffered harm from Apple's disabling of FaceTime in the form of a

14   diminution in value of their iPhones.  *See* FAC ¶¶ 23–27, 102.  These allegations are sufficient, at

15   this stage of the proceedings, to allege that Apple's conduct was "unfair" under the UCL.  "While

16   the benefits of Apple's conduct may ultimately outweigh the harm to consumers, this is a factual

17   determination that cannot be made at this stage of the proceedings."  *In re iPhone Application*

18   *Litig.*, 844 F. Supp. at 1073.   Accordingly, "[a]t this point, the Court declines to dismiss

19   Plaintiffs' UCL claim under the unfair prong."  *Id.*

20       **3.  Restitution and Injunctive Relief**

21           Finally, Apple argues that Plaintiffs' UCL claim fails because Plaintiffs have not

22   sufficiently alleged entitlement to injunctive or restitutionary relief, which are the only forms of

23   relief available under the UCL.  *See* Mot. at 23–25.  The Court first addresses Plaintiffs' ability to

24   obtain restitutionary relief, and then addresses Plaintiffs' ability to obtain injunctive relief.

25

26   [6] Apple also argues that Plaintiff fails to allege that Apple's conduct was "unfair" because Apple
     was "contractually authorized" to interrupt FaceTime service pursuant to Apple's Software
27   License.  Mot. at 22.  However, this argument fails for the same reason discussed above regarding
     Apple's Article IIII standing argument based on its Software License.
28
                                                            26
     Case No. 17-CV-00551-LHK
     ORDER DENYING APPLE'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1       First, Apple argues that Plaintiffs have not alleged entitlement to restitutionary relief.

2   "[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which the

3   plaintiff has an ownership interest (or is claiming through someone with an ownership interest)."

4   *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (Cal. Ct. App. 2005).  "Under the UCL, an

5   individual may recover profits unfairly obtained to the extent that these profits represent monies

6   given to the defendant or benefits in which the plaintiff has an ownership interest."  *Pom*

7   *Wonderful LLC v. Welch Foods, Inc.*, 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009).

8       Here, Plaintiffs allege that they "conferred a financial benefit to Apple by purchasing

9   iPhone 4 and 4S devices with the FaceTime feature," but that Plaintiffs were deprived of the

10  benefit of their bargain with Apple because Apple disabled FaceTime for Plaintiffs' iPhones,

11  which caused Plaintiffs to suffer "diminution in the value of their" iPhones.  *See* FAC ¶¶ 131–134.

12  These allegations are sufficient to demonstrate that Plaintiffs "may seek restitution in the instant

13  action."  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 986 (N.D. Cal. 2016)

14  (finding plaintiffs adequately alleged entitlement to restitution where the plaintiffs alleged they

15  paid defendants money for data security, that defendants failed to undertake the data security

16  measures, and that Plaintiffs therefore "overpa[id]" defendants).  At bottom, Plaintiffs seek to

17  recover in restitution the "profits [that Apple] unfairly obtained" from Plaintiffs as a result of

18  Apple's intentional and permanent disabling of FaceTime for iOS6 and earlier operating systems.

19  *Pom Wonderful*, 2009 WL 5184422, at *2; *see* FAC ¶134–35.

20      Nonetheless, Apple contends that Plaintiffs cannot seek restitution because Plaintiffs have

21  failed to allege that "that they were deprived of an agreed-upon benefit to begin with."  Mot. at 18

22  (internal citations omitted).  This argument appears to be based on Apple's claim that Plaintiffs

23  had no right to "uninterrupted" or "error-free" FaceTime service because Apple disclaimed

24  uninterrupted and error-free service in its Software License.  *See id.*  However, for the reasons

25  discussed above with regards to Plaintiffs' Article III standing, Apple's reliance on its Software

26  License is not meritorious.  The Court finds that Plaintiffs have sufficiently alleged entitlement to

27  restitution sufficient to withstand a motion to dismiss.

28

United States District Court
Northern District of California

27

Second, Apple contends that Plaintiffs have failed to allege entitlement to injunctive relief. According to Apple, Plaintiff cannot plead an "irreparable injury," as required to establish Article III standing, because "Apple provided iOS7, which fixed FaceTime" and Plaintiffs do not have "any right to a solution other than the software update that Apple provided." Reply at 19. Again, however, the Court must take Plaintiffs' allegations as true on a motion to dismiss. As discussed in detail above, Plaintiffs allege that transitioning to iOS7 was not a practical reality for Plaintiffs because transitioning to iOS7 caused iPhone 4 and iPhone 4S devices to "buckle under the weight of the new software." *See, e.g.*, FAC ¶ 12. Plaintiffs allege that they still own their iPhone 4 devices, and that Apple has not provided Plaintiffs with a viable way to restore FaceTime on iOS6 and earlier operating systems. *See, e.g.*, *id.* ¶¶ 23, 25. Although Plaintiffs may ultimately not be entitled to injunctive relief, at this stage of the proceedings, Plaintiffs have alleged that they continue to suffer an injury and that a solution is not presently available. *See Saitsky v. DirecTV, Inc.*, 2009 WL 10670629, at * 9–10 (C.D. Cal. Sept. 22, 2009) (denying motion to dismiss UCL claim, and finding plaintiff sufficiently alleged entitlement to injunctive relief under the UCL, where plaintiffs alleged they "were currently subscribing to the satellite phone service" and that they continued to suffer harm).

Accordingly, because the Court concludes that (1) Plaintiffs have adequately alleged standing under the UCL, (2) Plaintiffs have adequately alleged Apple's conduct was "unfair," and (3) Plaintiffs have adequately alleged entitlement to injunctive relief, the Court DENIES Apple's motion to dismiss Plaintiffs' UCL claim.

## IV.    CONCLUSION

For the foregoing reasons, Apple's motion to dismiss the FAC is DENIED.

**IT IS SO ORDERED.**

Dated: July 28, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

28

Case No. 17-CV-00551-LHK
ORDER DENYING APPLE'S MOTION TO DISMISS