```
Steyer Lowenthal Boodrookas
     Alvarez & Smith LLP attorneys
```

November 3, 2017

**BY ELECTRONIC CASE FILING**

The Honorable Nathanael M. Cousins
United States Magistrate Judge
Northern District of California
Robert F. Peckham Federal Building
   & United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113

   Re: *Grace, et al. v. Apple Inc.,* Case No. 5:17-cv-00551-LHK-NC

Judge Cousins,

  The parties submit this joint letter brief pursuant to Your Honor's January 1, 2016 Civil Standing Order. Despite meeting and conferring multiple times over the last ten weeks, the parties were unable to resolve the outstanding discovery disputes addressed herein.

**PLAINTIFFS' STATEMENT**

  The parties disagree as to whether Apple must: 1) design and implement a document production plan while the parties negotiate search terms; 2) share with Plaintiffs the results of Apple's testing of Plaintiffs' proposed search terms to facilitate the iterative process; and 3) revise and/or explain its objections to Plaintiffs' document requests.

  As acknowledged within internal Apple emails, on April 16, 2014 Apple intentionally "broke" its FaceTime video conferencing feature for millions of its customers, leaving them "basically screwed." Ex. A; First Amended Complaint ("FAC"), ¶¶ 18, 102 (ECF No. 36). Owners of Apple's iPhone 4 and 4S devices (the "Class") were particularly harmed, because their only option to restore FaceTime was to download Apple's iOS 7 software, which would significantly impair the functionality of their device. FAC, ¶¶ 11-12, 28, 70-87. Plaintiffs, on behalf of themselves and the Class, allege trespass to chattels and violation of California Business and Professions Code §17200, *et seq.* arising from Apple's misconduct.

  On May 17, 2017, the Court stayed discovery pending decision on Apple's motion to dismiss ("MTD") (ECF No. 54). The Court cautioned, however, that Apple should not be "obstructionist" and that upon resolution of Apple's MTD, discovery should be "very quick and fast." ECF No. 57, Case Management Conference, May 17, 2017, at p. 11, lines 13-15; *see also* p. 19, lines 14-18. The Court entered a Case Management Schedule setting a March 22, 2018 deadline for Plaintiffs' class certification motion, and an August 17, 2018 fact discovery deadline (ECF No. 54). To date, despite the passage of thirteen weeks since the Court denied Apple's motion to dismiss, Apple has produced only 309 documents, consisting of 1955 pages.

  A. <u>Rolling Document Production</u>

  Plaintiffs request the Court order Apple to design and implement a plan for a rolling production of documents that can be located without search terms. Pursuant to FRCP 34, Plaintiffs served their First Request for Production of Documents ("RFPs") on May 8, 2017. After the Court denied Apple's MTD, Plaintiffs advised Apple on August 2 that discovery should begin

Steyer Lowenthal Boodrookas
     Alvarez & Smith LLP attorneys

immediately rather than after search terms are finalized. Ex. B at pp. 5-6. Plaintiffs specifically requested prompt production of certain categories of documents. *Id*. Despite agreeing to a rolling production of documents that do not require search terms to locate, with a handful of exceptions, Apple has refused to do so. Apple also has refused Plaintiffs' multiple requests for a schedule and details about a rolling production. In *Bird v. Wells Fargo Bank*, Case No. 1:16-cv-01130-DAD-EPG, 2017 WL 1213425, *5 (E.D. Cal. Mar. 31, 2017), the court ordered the defendant to "immediately design and implement a discovery plan to diligently and in good faith produce documents … on a rolling basis to conclude no later than" a date certain. *Id*. at *7. *See also In re Qualcomm Antitrust Litig*., Case No. 17-md-02773-LHK (NC) (Dkt. 155) (N.D. Cal., Oct. 18, 2017) (ordering Apple to "substantially complet[e]" its document production by a date certain). Plaintiffs seek the same relief.

  B. <u>Disclosure of Search Term Metrics and Results</u>

Plaintiffs request the Court order Apple to share metrics and results from its testing of Plaintiffs' search terms. Apple possesses far superior knowledge of – and access to – the documents and databases containing ESI. Thus, on August 2, Plaintiffs asked Apple to prepare draft search terms. Ex. B at pp. 2-4. Apple refused. *Id*. To prevent the process from stalling, Plaintiffs sent Apple a first draft of search terms on August 14. *Id*. at p. 2; Ex. C. Apple failed to test Plaintiffs' initial search terms or provide any specific justification for why they were not appropriate. Instead, after the parties met and conferred, Apple provided a counter-proposal on August 25. Ex. B at p. 2; Ex. D. Again hoping to avoid an impasse, Plaintiffs provided a counter-counter proposal on September 20. Exs. E and F. On October 17, Apple stated that it had run three of Plaintiffs' ten proposed search strings and that they returned over a million hits. To facilitate negotiation and place the parties on more equal footing, Plaintiffs requested more details about the search metrics and results, including: (i) whether specific terms were incurring a large number of hits, (ii) whether the search terms were returning false positives that could be excluded, and (iii) whether the hits fell within any particular date range(s). Apple refused to share any such details, refused to explain *why* it would not provide that information, and refused to propose further revised search terms. Instead, Apple requested that Plaintiffs propose narrowed date ranges for each search term string. Yet Plaintiffs already have proposed date ranges for each of the RFPs, to which Apple has not substantively responded. Additionally, Apple stated that even its preferred date ranges produce a document universe that requires revision of the search terms, thereby confirming that regardless of what date ranges Plaintiffs were to propose, it would be necessary to revise the terms and connectors themselves.

Although Plaintiffs are willing to provide specific date ranges for the search terms (and/or to further revise the terms and connectors), to meaningfully do so Plaintiffs need access to the search term metrics and results that Apple is inexplicably withholding. Apple's refusal to share that highly relevant information contravenes the Northern District Court's Guidelines for the Discovery of Electronically Stored Information, which (i) contemplate cooperation "on issues related to the preservation, collection, search, review, and production of ESI" and (ii) underscore "the importance of cooperative exchanges of information at the earliest possible stage of discovery …" As this Court has recognized, "the clear thrust of the discovery-related rules, case law, and commentary suggests that 'communication among counsel is crucial to a successful electronic discovery process[.]'" *In re Facebook PPC Advertising Litig*., No. C09-03043 JF (HRL), 2011 WL 1324516, * 1 (N.D. Cal. Apr. 6, 2011); *see also TVIIM, LLC v. McAfee, Inc*., Case No. 13-cv-

Steyer Lowenthal Boodrookas
      Alvarez & Smith LLP attorneys

04545 VC (KAW), 2014 WL 5280966, *2 (N.D. Cal. Oct. 15, 2014) (ordering defendant to "run test searches for both final proposed searches, and provide the number of results (or "hits") for each in the joint letter.").

    C.  Inscrutable Objections to Plaintiffs' RFPs

Plaintiffs request the Court order Apple to (i) state whether it is withholding responsive documents based on its general objections, and (ii) identify the specific RFPs in response to which it intends to produce responsive ESI.

In its August 28 responses and objections to Plaintiffs' RFPs (the "Responses and objections"), Apple objected to every request and stated 28 general objections that it incorporated into each response. Ex. G. Such boilerplate, generalized objections are highly disfavored. *See* FRCP 34(b)(2)(B) ("*Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons*") (emphasis added). *See also Dao v. Liberty Life Assurance Co. of Boston*, No. 14-CV-04749-SI (EDL), 2016 WL 796095, at *4 (N.D. Cal. Feb. 23, 2016) ("boilerplate objections are insufficient"); *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *3-4 (N.D. Cal. May 3, 2016) ("an objection must state whether any responsive materials are being withheld on the basis of that objection."). After an unsuccessful meet and confer, Plaintiffs asked Apple "[w]hether Apple is withholding – and/or intends to withhold – documents pursuant to any of its General Objections." Ex. H at p. 10. Apple responded that it "stands on its General Objections." *Id.* at p. 2. Plaintiffs' concerns on this issue are not merely hypothetical. For example, Apple objects to Plaintiffs' usage of certain terminology within the RFPs, yet refuses to state whether it will withhold documents based on those objections. *See, e.g.*, Ex. G, RFP 16; General Objection 10.

Compounding these issues, rather than stating whether it will produce ESI responsive to each of Plaintiffs' document requests, Apple refuses in its Responses and Objections to produce *any* ESI other than ESI that Apple deems responsive to a single, subjective responsiveness category of its own design (the "Apple Category") – *i.e.*, "documents, if any, concerning the April 16, 2014 digital certificate expiration that impacted FaceTime on iPhone 4 and 4S devices operating on iOS 6 or earlier versions—including documents regarding Apple's attempts to resolve that issue…." Ex. G. Apple has orally represented that despite refusing in its Responses and Objections to produce ESI corresponding to certain document requests, it might in fact do so if it deems such ESI responsive to the Apple Category. Thus, Plaintiffs are left to guess what ESI Apple will decide to produce under that subjective category, which is further complicated by the fact that any such production will be subject to Apple's Gordian Knot of general and specific objections.

### DEFENDANT'S STATEMENT

Apple did not "intentionally break" FaceTime. FaceTime stopped working on certain iPhone devices running iOS 6 or earlier iOS versions on April 16, 2014, when a security-related digital certificate expired (for security purposes, digital certificates have expiration dates). *See, e.g.*, Ex. A, at APL-GRACE_00000992 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. When Apple discovered that certain iPhone users might experience an authentication error because the digital certificate was set to expire in 2014, Apple engineers worked to prevent impact to users (*see, e.g.*, *id.*, at APL-GRACE_00000989 (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬), and when the certificate

```
Steyer Lowenthal Boodrookas
     Alvarez & Smith LLP attorneys
```

expired, iPhone 4 and 4S users were able to access FaceTime immediately by updating to iOS 7, which had been freely available and widely adopted for more than six months and which was compatible with iPhone 4 and 4S devices. *See, e.g.*, *id.*, at APL-GRACE_00000992 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Plaintiffs' cherry-picked description of Exhibit A in its complaint and in this letter is emblematic of their approach to discovery: the requests are not aimed at revealing the underlying facts but rather presume that their distorted theories are true and force Apple to prove a host of negatives. In keeping with their strategy, Plaintiffs have taken unreasonably expansive discovery positions, as recognized by the Court from the outset, having "already [gotten] a sense of how . . . expensive and aggressive [Plaintiffs were] going to be about discovery" and the resulting "burden" on Apple, (*see* ECF No. 57, Transcript of Case Management Conference, May 17, 2017, 10:2-10). Apple, began a rolling production on August 28, 2017, the same day it served objections and responses to Plaintiffs' RFPs. Apple has continued to collect, review, and produce additional documents—all despite Plaintiffs' unwillingness to engage in meaningful discussions about how to reasonably and proportionally limit their overly broad discovery requests.

    A. <u>Rolling Document Production</u>

Plaintiffs' claim that Apple "has refused" to produce documents "that do not require search terms to locate" misrepresents Apple's conduct and its position stated during the parties' numerous meet and confers, including as recently as October 17. As Apple has explained, it is in the process of executing its plan for a rolling production:

<u>Produced</u>: Apple's contracts with Akamai covering 2010-2015 (RFPs 2, 4 and 5); documents sufficient to show that FaceTime did not impact the price of the iPhone (RFP 15); radars (*i.e.*, entries from Apple's bug tracking database) related to the digital certificate expiration (RFPs 7 and 28); the Apple internal documents cited in Plaintiffs' Amended Complaint (various RFPs); print ads advertising FaceTime in iPhone 4 (RFP 15); Plaintiffs' Apple customer records (RFP 25); and buyer surveys regarding iPhone 4 and 4S devices (RFP 15).

<u>Documents In Progress</u>: documents sufficient to show payments to Akamai (RFPs 2, 4 and 5); documents sufficient to show trade-in values for iPhone 4 and 4S devices (RFP 19); customer care log data regarding FaceTime and/or at-issue aspects of iOS 7 performance on iPhone 4 and 4S devices (RFPs 7 and 13); and relevant source code (various RFPs).

Further, Apple does not track data to the extent and in the manner in which Plaintiffs' RFPs 6, 8, 10, and 14, assume. But rather than assert, as it could, that such information does not exist in a reasonably searchable format, Apple has spent tremendous time and effort locating and querying data to determine if it is possible *to create* reports to respond to Plaintiffs' discovery requests. Apple has consistently updated Plaintiffs on the progress it is making on these reports and will produce them as soon as it is able, but has not been able to commit to a date certain because creating them is a time-intensive, iterative process. *See, e.g.*, Ex. H at p. 3.

What remains is ESI. As Apple stated on October 17, Apple cannot currently provide a schedule for a rolling production of ESI, because Plaintiffs have taken unreasonable positions, including refusing to discuss date ranges for their proposed search strings. Apple, on the other hand, has been trying in good faith to negotiate search terms. As stated on October 17, despite Plaintiffs' refusal to cooperate, Apple will continue its rolling production. Thus, Plaintiffs' cases

Steyer Lowenthal Boodrookas
      Alvarez & Smith LLP attorneys

are inapposite. *See Wells Fargo*, 2017 WL 1213425, \*6 (unlike Apple, Wells Fargo had not yet started its rolling production even after fact discovery cut-off).

B. <u>Disclosure of Search Term Metrics and Results</u>

Plaintiffs' proposed search terms were facially overbroad from the start, including because they did not include date ranges and heavily relied on "AND" as a connecting term. Ex. C; *see also, e.g.,* Ex. J, 19 Sedona Conf. J. 1, 166 (forthcoming 2018), *available at* https://thesedonaconference.org/download-pub/5339 (search terms should "includ[e] restrictions for the relevant time frame"). Apple's initial counter-proposal was to address those obvious defects by including a reasonable date range for each search string and changing "AND" to "within 10" before undertaking more time-intensive and detailed analysis of the terms. Ex. D. Four weeks later, Plaintiffs countered by adding new search strings, proposing *no date ranges*, and changing only some "AND"s to "within 200" (effectively no change). Ex. F.

On September 29, Apple explained that it would do a preliminary test using a sample set of Plaintiffs' overbroad terms, and Apple shared the results on October 16: just three of Plaintiffs' search strings resulted in over one million documents. *See* Ex. I at p. 1. Apple suggested that at a minimum, the Parties agree to relevant date ranges to limit the pool of documents for further search-term refinement. Plaintiffs refused to discuss narrowing the date range from their initial proposal of June 24, 2010-present. Contrary to their assertion, Apple has shared details; it explained which three searches it tested, how those were de-duped, how many documents resulted, and how that large volume reinforced the facially obvious need for narrower date ranges tied to specific search strings. *See TVIIM, LLC*, 2014 WL 5280966, \*1-2 (combined terms with almost 500,000 results "not sufficiently narrowed").

Plaintiffs' unreasonable position on search terms and time scope, forced Apple to spend additional time and resources to demonstrate what is facially obvious: Plaintiffs' proposed search terms and date range are grossly overbroad and not tailored as required. Indeed, out of a sample set of 359 documents randomly pulled using Plaintiffs' proposed search terms, only ***three*** documents were even arguably responsive, and those three documents were from March and April 2014, well within Apple's proposed date limits—which, for many of the search strings is November 2012 (the month Plaintiffs allege Apple's motive to "intentionally break" FaceTime first arose) through December 2014 (eight months after the digital certificate expired). *See* Ex. D. At this point, Apple cannot continue to wait for Plaintiffs to cooperate, so Apple will move forward with searching its ESI using its proposed time scope.

C. <u>Apple's Objections to Plaintiffs' RFPs</u>

Plaintiffs' twenty-eight RFPs are vastly overbroad (*see, e.g.*, Ex. G, RFP 10 seeking "All Documents concerning iOS usage rates during [June 24, 2010-present]"), duplicative (*see, e.g.*, *id.*, RFPs 2, 3, 4, 5, and 7, seeking "Relay Usage" costs), and intentionally riddled with Plaintiffs' slanted terminology (*see, e.g.*, *id.*, RFPs 7, 11, 14, 16, 21, 24, and 28). Apple has made appropriate objections in response to these and other issues, and has repeatedly discussed with Plaintiffs both its general objections and what it has produced and intends to produce (reiterated above). *See, e.g.*, Ex. H at pp. 2-4. Unlike in *Dao*, where the defendant only objected and did not specify what was overbroad as to time or scope, 2016 WL 796095, at \*3-4, or *Loop AI Labs*, where the defendant merely agreed to "produce any additional documents not already produced in the case," 2016 WL 2342128, at \*4, Apple's objections specify what is objectionable (*see, e.g.*, Ex. G, Response to RFP No. 10, objecting to request as not limited "to the devices and versions of iOS at issue in this

case"), and Apple's specific responses "state[] the limits that have controlled [Apple's] search for responsive and relevant materials," including specific time and scope limits, among others, consistent with FRCP 34. *See* Committee Notes regarding the 2015 Amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'").

Apple has already provided Plaintiffs with explanations regarding its objections to Plaintiffs' slanted terminology. *See* Ex. H at pp. 2 and 5. For example, although Apple objected to Plaintiffs' definition of "FaceTime Break"—both as vague and ambiguous and because Apple has no obligation to adopt Plaintiffs' slanted terminology in its responses and objections, (*see* Ex. H at pp. 2 and 5)—Apple has "agree[d] to produce non-privileged documents, if any, concerning the April 16, 2014 digital certificate expiration that impacted FaceTime on iPhone 4 and 4S devices operating on iOS 6 or earlier versions—including documents regarding Apple's attempts to resolve that issue—located after a reasonably diligent search and subject to the parties' agreement on reasonable search terms[.]" Ex. G, Responses to RFPs 7, 11, 21, 27 and 28. This is not "a single, subjective responsiveness category of [Apple's] own design," as Plaintiffs claim. Plaintiffs allege that the so-called FaceTime "break" was caused by a digital certificate expiring on April 16, 2014, (*see, e.g.*, Am. Compl. ¶ 91)—and have used almost verbatim the same language to describe what they seek in discovery (*see* EFC No. 67 at VII.B.1.a)—so there is no subjectivity involved: either a document will or will not concern the digital certificate that expired and impacted FaceTime. There is no basis for Plaintiffs' implied concern that Apple will withhold documents relevant to the claims and defenses at issue here. While Apple disagrees that documents regarding the digital certificate expiration will in any way support the allegation that Apple intentionally "broke" FaceTime, the fact remains that Apple has agreed to produce documents regarding that digital certificate expiration that impacted FaceTime and is conducting a good faith search for those documents, including using Plaintiffs' proposed term "break[.]"

Respectfully Submitted,

Jill M. Manning
Counsel for Plaintiffs

Kristin Sheffield-Whitehead
Counsel for Defendant