# Suneel Jain

| | |
|---|---|
| **From:** | Sheffield-Whitehead, Kristin <kwhitehead@kirkland.com> |
| **Sent:** | Thursday, September 21, 2017 9:26 PM |
| **To:** | David Tejtel |
| **Cc:** | Jill Manning; Austin Curry; Suneel Jain; Deeley, Elizabeth L.; Warshaw, Daniel L. |
| **Subject:** | RE: Grace v. Apple |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear David,

I write in response to your email dated September 14, 2017 regarding the parties' September 1, 2017 and September 5, 2017 discussions of Apple's Responses and Objections, which were due and served on August 28, 2017, (together, the "Meet and Confer").

*Relevant Time Period*

Plaintiffs' proposed time period of June 24, 2010 to present is overbroad and not proportional to the needs of this case. Plaintiffs allege that Apple developed the motive to "break" FaceTime after the November 7, 2012 VirnetX verdict and that Apple "broke" FaceTime on April 16, 2014. (*See, e.g.*, Am. Compl. at ¶¶ 6-11 and 15.) Yet Plaintiffs propose (for every Request) a "relevant" time period of over two years prior to the VirnetX verdict and continuing over three years after the alleged "break." As just one example, in Request No. 1, Plaintiffs have requested documents sufficient to establish the total number and total duration of FaceTime calls from June 24, 2010 through the present. But the number and duration of FaceTime calls in June 2010 or August 2017 is not relevant to Plaintiffs' claim that Apple allegedly "broke" FaceTime in 2014 because of alleged costs incurred as of 2012.

Rather than accepting a blanket, 7-year window—the majority of which has no relationship to Plaintiffs' claims—Apple has provided date limitations in its responses and objections that are proportional to the needs of this case and specific to Plaintiffs' individual Requests, as follows:

- Requests Nos. 7, 11, 21, 27, 28—*i.e.*, the requests where Apple has agreed to produce non-privileged documents, if any, concerning the April 16, 2014 digital certificate expiration that impacted FaceTime on iPhone 4 and 4S devices operating on iOS 6 or earlier versions, including documents regarding Apple's attempts to resolve that issue, located after a reasonably diligent search and subject to the parties' agreement on reasonable search terms—will be limited by dates agreed to by the parties with respect to those search terms.

- For Requests Nos. 1 and 9 (regarding FaceTime usage data), and 2, 4, and 5 (regarding Akamai payments and contracts), Apple's date range is November 7, 2012 (the date of the VirnetX verdict) through May 16, 2014 (a month after the digital certificate expired). Apple also has provided its contracts with Akamai applicable to FaceTime relay service from 2010 through the end of 2015.

- For Request No. 6 (regarding upgrades from iOS 6 or earlier to iOS 7) Apple's date range is September 2013 (when iOS 7 was released) through September 2014 (a year later, when iOS 8 was released), to the extent such data is available.

- For Request No. 10 (regarding iOS versions used by iPhone 4 and 4S users) Apple's date range is September 1, 2013 (just prior to iOS 7's release) to April 16, 2015 (a year after the digital certificate expired), to the extent such data is available.

- For Request Nos. 12, 13, and 21 (regarding certain documents related to iOS 7), such documents will necessarily be limited in time, because iOS 7 was not available until September 2013.

- For Request No. 19, (regarding iPhone 4 and 4S trade-in value), Apple's date range is October 2013 through October 2014, a one-year period around the date the digital certificate expired.

To the extent that there is a specific Request where Plaintiffs object to Apple's date limitations, Plaintiffs should propose alternate date limitations and set forth in writing why documents from their proposed time period are relevant, so that the parties can engage in meaningful discussion around specific sets of documents or data.

*Follow-Up Items*

General Objections:  It is unclear what you mean by "Apple agreed to follow up on … whether Apple is withholding--and/or intends to withhold--documents pursuant to any of its General Objections."  As I stated during our Meet and Confer, Apple stands on its General Objections, and with respect to individual Requests, Apple has "state[d] the limits that have controlled [Apple's] search for responsive and relevant materials," including time and scope limits, among others.  Apple's approach is consistent with FRCP 34.  (*See* Committee Notes regarding the 2015 Amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'").)

General Objection No. 10:  Plaintiffs inquired as to why Apple objected to definitions of "FaceTime," "FaceTime Break," "Peer-to-Peer Method," "Relay Method," "Relay Usage," and "VirnetX Actions."  As explained, Plaintiffs' definitions are inaccurate and/or contain vague and ambiguous terms.  Below is a non-exhaustive summary of the definitions' inaccuracies and ambiguities:

- Plaintiffs defined "FaceTime" as "the real-time video conferencing feature released by Defendant Apple in 2010," but Apple's Software License Agreement describes FaceTime as the "video calling feature of the iOS Software."

- Plaintiffs defined "FaceTime Break" as "the sudden inoperability of FaceTime on all pre-iOS 7 versions of iOS beginning on or about April 16, 2014," but the phrase "inoperability" is vague and ambiguous.  Moreover, Plaintiffs' use of the term "FaceTime Break" throughout its Requests is plainly an attempt to get Apple to use this term—which wrongly presupposes and suggests that the impact to FaceTime from the April 16, 2014 digital certificate expiration was intentional or nefarious—in its responses.

- Plaintiffs' definitions of "Peer-to-Peer Method" and "Relay Method" both make reference to a "method of exchanging audio/video media," but FaceTime Audio was not available until iOS 7; moreover, these definitions misconstrue the way in which FaceTime works.

- Plaintiffs defined "Relay Usage" as "Defendant Apple's usage of data and/or bandwidth on Akamai's servers in connection with FaceTime calls connected through the Relay Method," which incorporates Plaintiffs' defined terms "FaceTime" and "Relay Method."

- Plaintiffs defined "VirnetX Actions" as "any and all lawsuits filed against Defendant Apple in the United States District Court for the Eastern District of Texas by VirnetX, Inc." but that definition is vague and overbroad.

Regarding your follow-up questions on the extent, type and availability of certain Apple documents, as discussed, Apple has been diligently working to determine what data is available, in what forms, and for which time periods.  Currently, we have the following updates:

- FaceTime usage data (Request No. 1, and any overlapping Requests) -- As discussed, this information is likely only available to the extent and in the manner that it exists in emails from the time period set forth in Apple's responses

2

and objections. Our current understanding is that there is no database containing FaceTime usage data from before 2015, but we will update you if our understanding changes.

- "Relay Usage" data (Request Nos. 2, 4 and 5, and any overlapping Requests) -- As discussed, this information may only be available to the extent that it exists in emails from the time period set forth in Apple's responses and objections. We continue to investigate whether historical data is available in a database and will update you when we know more.

- iOS usage data (Request Nos. 6 and 10, and any overlapping Requests) -- As discussed, we are still investigating what data is available, in what forms, and for which time periods. Our current understanding is that there is no report that can be run to show iOS versions for all iPhone 4 and 4S devices at the device level at certain points in time or across periods of time. We are investigating other ways to get at information regarding iOS usage, including at the device level and including upgrades from iOS 6 and earlier to iOS 7, during the time period set forth in Apple's responses and objections and as limited to iPhone 4 and 4S devices. Our current understanding is that any such information will be limited due to constraints around the way it was made available to Apple. For example, we are investigating whether Apple may be able to provide the iOS version as a field in the customer care data, but that information is only captured for service calls (not for in-store visits) that resulted in the creation of a case ID, and even then, the information was not captured for all such calls in 2014. To the extent the caller's iOS version was captured, Apple intends to include that in the customer care data it will produce. We will know more in a few weeks and will update you when we know what is available.

- Customer care log (Request No. 13) -- As discussed, we are still assessing the best way to collect, review, and produce a customer care log subject to Apple's responses and objections to this Request. For example, as we discussed, people call in to request assistance on any number of issues, many of which are completely irrelevant to the claims and defenses at issue here. As Mr. Curry agreed during our Meet and Confer, we have to, at a minimum, limit this data by device to just iPhone 4 and 4S, but the parties also need to agree on a reasonable, relevant time period. We suggest September 2013 to September 2014.

- Apple's performance assessment (Request No. 12) -- As we discussed, we are still investigating what data is available, if any, with respect to Apple's assessment of performance of iOS 7 on iPhone 4 and iPhone 4S devices. Once we have located that data, if any, we will have a sense of what information it includes, including, for example, whether battery life was part of that assessment. We were recently able to get access to what we understand is the data, so will update you soon regarding this issue.

Apple has been working diligently to confirm whether data can be made available in the manner in which Plaintiffs have requested (subject to Apple's objections, *e.g.*, limited to iPhone 4 and 4S devices). Generally speaking, data is not tracked in the way in which Plaintiffs' Requests presume, so Apple has been diligently investigating alternative sources for similar information, although (as noted above) there are limits to what is available. We appreciate your patience while Apple works through these issues, and while I cannot give a precise date for when I will have updates, I will update you promptly when we have relevant information.

*Other Issues Discussed During the Meet and Confer*

Apple's General Objection 4 is, as stated, an objection to producing documents protected by the attorney-client privilege, work product doctrine, or any other available legal privileges or protections. As I said during the Meet and Confer, Apple has no intention of using this General Objection as a blanket excuse not to collect or review a document simply because an attorney's name might be on it. With respect to the portion of that objection that states "Apple objects . . . to collecting, searching, or producing documents (including communications) with outside or in-house counsel generated in response to this lawsuit," I stated that such documents are protected by the attorney-client privilege and work product doctrine, and that in any event, the relevant time period for this lawsuit ended well before Plaintiffs filed their Complaint, and there is no indication that outside or in-house counsel are relevant custodians here. There is nothing more to "alert" Plaintiffs to with respect to this general objection.

General Objection No. 14 states that "Apple objects to the Requests to the extent that they purport to require Apple to respond on behalf of any person or entity other than Apple," and that "Apple responds to these Requests only on behalf of itself."  Because Apple is only responding to Plaintiffs' Requests on behalf of itself, it is unclear what documents you think would be "withheld on the basis of" this objection.

Your description of Apple's position with respect to Request Nos. 3, 16, 17, 18, 20, and 24 is not accurate and ignores the categories of documents that Plaintiffs have agreed to produce.

First, with respect to Request Nos. 17, 18, and 20, it is not the case that Apple "did not agree" to these Requests and is "standing on its … refusal."  Rather, as we discussed during our Meet and Confer, it is our understanding based on our investigation that Apple does not track resale value as requested in Request Nos. 17 and 18 or "the reasons why customers traded in iPhone 4 and 4S devices" as requested in Request No. 20.  Thus, following a reasonable good faith search for such documents, we do not believe they exist.

With respect to Request Nos. 3 and 16, the problem is Plaintiffs' vague and inaccurate terms and their presuppositions about the case.  For example, Request No. 3 wrongly presupposes and suggests that Apple intentionally "broke" FaceTime to reduce Apple's payments to Akamai.  The same is true for Request No. 16, which presupposes that any unavailability of FaceTime affected the value of iPhone 4 and 4S devices.  Apple has objected to these Requests on these bases, among others.  Setting aside this fundamental issue, Apple's responses and objections as a whole demonstrate that Apple is working to locate, review, and produce documents relevant to the claims and defenses in this case.  For example, Request No. 3 seeks "[a]ll documents concerning the impact of the VirnetX Actions" on "Relay Usage" and FaceTime.  Although Apple has objected to Request No. 3, in response to Request Nos. 7, 11, 27, and 28, Apple has agreed to produce relevant and responsive documents, if any, that contain the parties agreed-upon search terms.  And the current proposed search terms include the term "VirnetX."  Apple is also working on providing "Relay Usage" and FaceTime data, as set forth above.  Similarly, Request No. 16 seeks "[a]ll documents reflecting, referencing or relating to how the FaceTime break affected the value of 4 and 4s devices." And although Apple objected to that Request, Apple has agreed to produce certain categories of documents regarding value in response to Request Nos. 15 and 19, as set forth in Apple's responses and objections.

As for Request No. 24, as previously discussed, Apple does not have organizational charts, and the documents produced in response to Request Nos. 7, 11, 21, 27, and 28 should make clear which Apple employees have knowledge about the issues relevant to the parties' claims and defenses.  Plaintiffs' concern that they will be "preclud[ed] from knowing about the involvement of individuals not identified within the documents" makes no sense.  If an individual is not identified in the documents, it is highly unlikely that individual would have any meaningful level of knowledge about the issues relevant to this case.

You are correct that Apple objects to and will not be producing documents in response to Request Nos. 22, 23, and 26.

With respect to Request Nos. 22 and 23, Apple has repeatedly stated during prior meet and confers, and in the Joint Case Management Statements, that Apple will not be running the parties' agreed-upon search terms through the documents sought in Request Nos. 22 and 23, nor is there any reason to do so.  The *VirnetX* litigation did not include any of the Requests that Plaintiffs have propounded here.  Apple's collection, search, and production of documents responsive to Plaintiffs' Requests here should include relevant documents that are responsive to Plaintiffs' Requests whether they happen to also have been produced in the *VirnetX* litigation or not.

As for Plaintiffs' request for Apple to run agreed-upon search terms through the confidential transcripts in *VirnetX*, Plaintiffs have not articulated why there would be relevant information in sealed portions of an entirely separate action—involving claims and defenses, iOS versions, and iOS software features not at issue and therefore irrelevant here—that would not otherwise be made available to Plaintiffs in the ordinary course of discovery in this case.

Request No. 26, seeking "[a]ll documents concerning [Apple's] document retention and destruction policy or policies," seeks documents irrelevant to any party's claim or defense here.  Plaintiffs claimed that these documents are relevant to

what Apple preserved in this case, but the parties previously discussed preservation at length, reached agreements regarding preservation, and memorialized those agreements in their Stipulation and Order Regarding Discovery of Electronically Stored Information and Paper Documents (Dkt. No. 63).

***Requests Subject To Agreed-Upon Search Terms.***

For the avoidance of doubt, with respect to Request Nos. 2, 4, and 5, Apple has agreed to produce certain payment and contract information, as set forth in Apple's responses and objections. But for Request Nos. 7, 11, 21, 27, and 28, Apple has also agreed to produce non-privileged documents, if any, concerning the April 16, 2014 digital certificate expiration that impacted FaceTime on iPhone 4 and 4S devices operating on iOS 6 or earlier versions—including documents regarding Apple's attempts to resolve that issue—located after a reasonable search and subject to the parties' agreement on search terms.

Notably, Plaintiffs' Request No. 7 seeks in part "[d]ocuments concerning … the impact of the FaceTime Break on Your Relay Usage, and any fees, costs, charges or expenses related thereto," and as discussed during our Meet and Confer, the parties' search terms currently include terms that Plaintiffs have referred to as "relating to Relay Usage." In other words, part of Plaintiffs' Request No. 7 is duplicative of Request Nos. 2, 4, and 5, and further, all four Requests are fraught with Plaintiffs' slanted terminology. That is why, as we discussed during the Meet and Confer, as much as Plaintiffs want to discuss each of their Requests individually, Apple's responses need to be viewed holistically. In this example, between Request Nos. 2, 4, 5, and 7, Apple has produced or will be producing: documents sufficient to show Apple's payments to Akamai from November 7, 2012 to May 16, 2014 for FaceTime calls, <u>and</u> Apple's contracts with Akamai applicable to FaceTime relay service from 2012 through the end of 2015, <u>and</u> relevant, non-privileged documents concerning the April 16, 2014 digital certificate expiration that impacted FaceTime on iPhone 4 and 4S devices operating on iOS 6 or earlier versions, located after a reasonable search and subject to the parties' agreement on search terms, where the parties are negotiating a set of terms "relating to Relay Usage." It is unclear what else Plaintiffs would need with respect to this issue, in light of relevancy and proportionality requirements.

I note, too, that your contention that Apple will be "deeming" documents to "concern[] the April 16, 2014 digital certificate expiration" and that Apple is therefore "effectively proposing to withhold documents on the basis of Apple's subjective belief as to a highly disputed factual issue" is inaccurate. Plaintiffs allege that the so-called FaceTime "break" was caused by a digital certificate expiring on April 16, 2014, (*see, e.g.*, Am. Compl. ¶ 91), so there is no subjectivity involved: either a document will or will not concern that digital certificate that expired and impacted FaceTime. Further, the parties are negotiating and will mutually agree upon the set of search terms that will be used to identify documents for Apple's responsiveness review. If Plaintiffs are claiming that Apple intends to withhold documents that hit on those search terms and are relevant to the claims and defenses at issue here, there is no basis for that claim. While Apple disagrees that documents regarding the digital certificate expiration will in any way support that Apple intentionally "broke" FaceTime, the fact remains that Apple has agreed to produce documents regarding that digital certificate expiration that impacted FaceTime and is conducting a good faith search for those documents, including by using agreed-upon search terms. But Apple need not and will not adopt Plaintiffs' slanted terminology in responding to Plaintiffs' Requests.

***Requests Implicating Non-Parties' Privacy Rights***

Request Nos. 8, 14, and 21 expressly seek private and confidential information of non-parties protected by privacy laws, and other Requests may also implicate those rights, depending on the form in which data is available to Apple. Apple has objected—both to specific Requests and as a General Objection—to the extent that any Request seeks private and confidential information of non-parties, on the basis that Apple is not authorized and cannot waive third parties' privacy rights.

Federal courts, including in the Northern District of California, recognize a constitutionally based right of privacy that can be raised in response to discovery requests, and there are a number of state laws and constitutions that may be implicated here, depending on where Apple's customers reside. As just one example, the California Constitution provides that one "inalienable right[]" is the right to "pursu[e] and obtain[] … privacy." Cal. Const. § 1. *See also* Cal. Civ. Code § 1798.81.5(b) ("A business that owns, licenses, or maintains personal information about a California resident shall implement and

5

maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.").

Rather than risk violating non-parties' privacy rights, to the extent there is a need to understand data on an individualized basis, Apple has offered to use unique, pre-existing serial numbers to the extent they are available.

*Other Specific Requests*

With respect to discussions regarding Request No. 6, Apple considers iOS 7 and iOS 6 and earlier versions on iPhone 4 and 4S devices to be relevant iOS versions in this case.

With respect to Request No. 10, Apple has currently agreed to produce non-privilege documents, if any, sufficient to show the number of iPhone 4 and 4S users who upgraded from iOS 6 or earlier versions to iOS 7 from September 2013 through September 2014, to the extent such data is available. Because Apple is still confirming this, I cannot confirm whether percentages are available.

As for Request No. 15, which seeks "[a]ll documents reflecting [Apple's] internal assessments, analyses, discussions and/or determinations concerning FaceTime's (i) economic and/or non-economic value, (ii) importance to customers, and/or (iii) impact on the cost and/or value of any iPhone product," Apple has agreed to produce advertisements for iPhone 4 or 4S devices that reference FaceTime, as well as documents sufficient to show the impact of FaceTime on the price of the iPhone, if any. Relatedly, in response to Request No. 19, Apple has also agreed to produce documents sufficient to show Apple's trade-in values for iPhone 4 and 4S devices from before and after the digital certificate's expiration. Other documents—such as your hypothetical email between two Apple employees where one employee says to the other: "Wow, with the introduction of FaceTime, everybody is going to buy the iPhone instead of the competitor's product"—are not relevant. Plaintiffs' position that such a (hypothetical) document would be relevant to the "value" of FaceTime is contrary to Plaintiffs' own allegations. The only "value" of FaceTime that is relevant is the alleged "diminution in value" of the iPhone 4 and 4S that Plaintiffs claim was "caused" by FaceTime's "unavailability" when the digital certificate expired. That "value," by definition, can only relate to market values for those devices at that point in time. The documents Apple has agreed to produce, to the extent they exist, are all that is relevant to that issue.

*          *          *

In closing, I note that Plaintiffs stated during the Meet and Confer that they will not file a motion to compel without first providing Apple with Plaintiffs' position in writing and giving Apple an opportunity to respond. Although your email states that "to the extent [Apple] has not changed its position with respect to the matters set forth above, [Plaintiffs] intend to file a Motion to Compel," it is not at all clear from our Meet and Confer, your email, or this sentence's vague reference to "the matters set forth above" what Plaintiffs intend to move to compel. Apple is fully complying with its discovery obligations. To the extent that Plaintiffs believe that Apple is not complying with its obligations, Apple hopes that the parties can work together to resolve their disagreements before resorting to motion practice. To that end, please specify the grounds on which Plaintiffs intend to move to compel, including the specific Requests.

For the avoidance of doubt, this response is not a waiver of any of Apple's objections to Plaintiffs' Requests, nor does it alter any of Apple's responses to those Requests.

Finally, thank you for sending Plaintiffs' proposed revisions to the search terms. I will respond separately with respect to those.

Regards,

Kristin

**Kristin Sheffield-Whitehead**

**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1420   **M** +1 310 927 0910
**F** +1 415 439 1500

kristin.sheffield-whitehead@kirkland.com

**From:** David Tejtel [mailto:dtejtel@fotpllc.com]
**Sent:** Wednesday, September 20, 2017 4:44 PM
**To:** Sheffield-Whitehead, Kristin <kwhitehead@kirkland.com>
**Cc:** Jill Manning <jmanning@steyerlaw.com>; Austin Curry <acurry@caldwellcc.com>; Suneel Jain <sjain@steyerlaw.com>; Deeley, Elizabeth L. <edeeley@kirkland.com>; Warshaw, Daniel L. <dwarshaw@pswlaw.com>
**Subject:** Re: Grace v. Apple

Kristin:

As previewed in my September 14 email, although we were hoping to receive information from you regarding some of the outstanding items on which Apple committed to follow up, in an attempt to keep things moving we have drafted revised proposed ESI search terms, which are attached. For the avoidance of doubt, the attached terms may require revision based upon the information that you ultimately provide with respect to the outstanding follow-up items.

Please let us know as soon as possible whether these terms are acceptable.

Thank you.

Best,
Dave


David Tejtel
**Friedman Oster & Tejtel PLLC**
240 E. 79th Street
New York, NY 10075
(646) 661-5881 (Office)
(434) 825-6330 (Cell)
dtejtel@fotpllc.com


On Wed, Sep 20, 2017 at 9:43 AM, David Tejtel <dtejtel@fotpllc.com> wrote:

> Understood, and thank you. We look forward to receiving your response.
>
> Best,
> Dave
>
>
> David Tejtel
> **Friedman Oster & Tejtel PLLC**
> 240 E. 79th Street
> New York, NY 10075

(646) 661-5881 (Office)
(434) 825-6330 (Cell)
dtejtel@fotpllc.com

On Wed, Sep 20, 2017 at 9:40 AM, Sheffield-Whitehead, Kristin <kwhitehead@kirkland.com> wrote:

Dave,

I am aiming to get you a substantive response today or tomorrow.  As I noted on Monday, I am catching up on matters after being tied up virtually all of last week, including making sure I have the latest updates with respect to the matters we've been discussing.

Regards,
Kristin

Kristin Sheffield-Whitehead
------------------------------------------------------
KIRKLAND & ELLIS LLP
555 California Street, San Francisco, CA 94104
T +1 415 439 1420  M +1 310 927 0910
F +1 415 439 1500
------------------------------------------------------
kristin.sheffield-whitehead@kirkland.com

On Sep 20, 2017, at 6:11 AM, David Tejtel <dtejtel@fotpllc.com> wrote:

Kristin:

I write to follow up on my emails below.  Can you please let me know when you will substantively respond to my September 14 email regarding Apple's responses and objections to Plaintiff's requests for production?

Thank you.

Best,
Dave


David Tejtel
**Friedman Oster & Tejtel PLLC**
240 E. 79th Street
New York, NY 10075
(646) 661-5881 (Office)
(434) 825-6330 (Cell)
dtejtel@fotpllc.com


On Mon, Sep 18, 2017 at 5:04 PM, David Tejtel <dtejtel@fotpllc.com> wrote:

Thanks Kristin.  Recognizing that tomorrow is the earliest you think you could provide a response, what is the earliest date by which you can commit to provide a substantive response?

Best,
Dave

David Tejtel
**Friedman Oster & Tejtel PLLC**
240 E. 79th Street
New York, NY 10075
(646) 661-5881 (Office)
(434) 825-6330 (Cell)
dtejtel@fotpllc.com

On Mon, Sep 18, 2017 at 4:58 PM, Sheffield-Whitehead, Kristin <kwhitehead@kirkland.com> wrote:

> David,
>
> Thank you for your email.  I am just back in CA after being in NY all last week on another case and am still catching up (for example, as Austin knows, we had a meet and confer this morning regarding source code in this case).  From a quick read, it looks like you wanted a response today, but I need some time to review everything you've laid out here so my response will likely come tomorrow at the earliest.
>
>
> Regards,
>
> Kristin
>
>
> **Kristin Sheffield-Whitehead**
>
> **KIRKLAND & ELLIS LLP**
> 555 California Street, San Francisco, CA 94104
> T +1 415 439 1420  M +1 310 927 0910
> F +1 415 439 1500
>
> kristin.sheffield-whitehead@kirkland.com
>
>
> **From:** David Tejtel [mailto:dtejtel@fotpllc.com]
> **Sent:** Thursday, September 14, 2017 6:13 PM
> **To:** Sheffield-Whitehead, Kristin <kwhitehead@kirkland.com>
> **Cc:** Jill Manning <jmanning@steyerlaw.com>; Austin Curry <acurry@caldwellcc.com>; Suneel Jain <sjain@steyerlaw.com>; Deeley, Elizabeth L. <edeeley@kirkland.com>
> **Subject:** Re: Grace v. Apple

9

Dear Kristin:

Thank you for meeting and conferring with us with respect to Apple's August 28, 2017 responses and objections (the "Responses and Objections") to Plaintiffs' First Requests for the Production of Documents (the "Requests"), which Plaintiffs served on Apple on May 8, 2017.  I write to follow up on our September 1, 2017 and September 5, 2017 discussions of Apple's Responses and Objections (together, the "Meet and Confer").

One universal issue on which the parties have not yet agreed is the relevant time period.  The parties had extensive negotiations about this in connection with the ESI Stipulation.  Plaintiffs' compromise position then, which has not changed, is that June 24, 2010 to the present is the relevant time period and that Apple must produce documents during this time period. However, to the extent Apple has agreed to produce documents responsive to certain of the requests for a limited time period, it should (1) produce those documents immediately, notwithstanding the parties' dispute, and (2) provide a written explanation of Apple's position that a more limited time frame is appropriate.

Follow-Up Items

During the Meet and Confer, Apple agreed to follow up on several issues, including:

- Whether Apple is withholding – and/or intends to withhold – documents pursuant to any of its General Objections;

- The basis for Apple's objections to Plaintiffs' definitions of the terms "FaceTime," "FaceTime Break," Peer-to-Peer Method," "Relay Method," "Relay Usage," and "VirnetX Actions" (*i.e.*, General Objection No. 10);

- The extent, type and availability of Apple documents concerning the number and duration of FaceTime calls during the relevant period (*i.e.*, Request No. 1);

- The extent, type and availability of Apple documents reflecting raw data relating to Relay Usage (as defined in the Requests) during the relevant period (*i.e.*, Requests Nos. 2, 4 and 5);

- Whether – and how far back – Apple can query for Relay Usage data (*i.e.*, Requests Nos. 2, 4 and 5);

- The extent, type and availability of Apple documents reflecting the breakdown of iOS version usage by product during the relevant period (*i.e.*, Request No. 6);

- The extent, type and availability of Apple documents reflecting in absolute and percentage terms iOS usage rates and transitions between iOS versions during the relevant period (*i.e.*, Request No. 10);

- The extent, type and availability of Apple documents concerning customer complaints or concerns regarding performance and/or functionality issues related to iOS 7 during the relevant period (*i.e.*, Requests Nos. 12 and 13); and

- Whether Apple's agreement to produce documents regarding the "***performance*** of iOS 7" (emphasis added) includes ***all*** issues potentially caused by or arising from iOS 7, including issues arguably unrelated to the "performance of iOS 7" such as reduced battery life (*i.e.*, Request No. 12).

With respect to this list, please let us know (1) for each bulleted item, whether you have additional information to provide; (2) to the extent you do not have additional information to provide for a particular bulleted item, when you expect to have additional information to provide; and (3) whether Apple intends to provide additional information with respect to any items in addition to those in the bulleted list.

Summary of Certain Other Issues Discussed During the Meet and Confer

Regarding General Objection #4, you stated that despite Apple's objection to "collecting, searching, or producing documents (including communications) with outside or in-house counsel generated in response to this lawsuit," Apple would not refuse on the basis of that objection to collect or search any documents pre-dating the filing of Plaintiffs' Complaint. You committed to alert Plaintiffs if it appears that General Objection #4 will result in the exclusion from Apple's document collection and/or search process any document(s) that, but-for General Objection #4, would have been included.

You stated that you did not believe Apple would withhold any documents on the basis of General Objection #14, but that you would alert Plaintiffs' counsel to the extent that belief changes.

You confirmed that where Apple did not agree within its Responses and Objections to produce documents in response to a particular Request (*e.g.*, Requests Nos. 3, 8, 16, 17, 18, 20, 22, 23, 24, 26), Apple was standing on that objection/refusal and would not be providing any documents in response to that particular Request.

For several of Plaintiffs' Requests, you explained that despite indicating in your Responses and Objections to those particular Requests that you would not produce certain documents, you would in fact produce certain responsive documents so long as (1) the documents hit on ESI search terms to be agreed upon by the parties, and (2) Apple deemed those documents to "concern[] the April 16, 2014 digital certificate expiration that impacted FaceTime on iPhone 4 and 4S devices operating on iOS 6 or earlier versions—including documents regarding Apple's attempts to resolve that issue—located after a reasonably diligent search[.]"  Examples of documents that would be produced pursuant to the process described in the preceding sentence include: (1) for Requests Nos. 2, 4 and 5, documents (including communications) concerning, *e.g.*, Apple's desire to reduce Relay Usage, Apple's attempts to reduce Relay Usage and the impact of iOS 7 on Relay Usage; (2) for Request No. 11, documents concerning Apple's ability after April 16, 2014 to restore FaceTime to devices running on iOS 6 and earlier; and (3) for Request No. 27, documents concerning iOS 6.1.6, including documents concerning how FaceTime worked on iOS 6.1.6 and documents showing why iOS 6.1.6 was only available on certain devices.  To the extent you believe any other categories of documents would be produced pursuant to the process described in the first sentence of this paragraph, please identify them.

During discussions regarding Request No. 6, you confirmed that Apple considers iOS 7 and all prior iOS versions relevant to this action.

You stated Apple's belief that the United States Constitution and certain privacy laws prevent Apple from disclosing to Plaintiffs' counsel, even on a confidential basis, Apple users' personal identifying information (including a user's name, billing address, Apple ID, phone number and/or DSID).  You stated that the only user identifying information Apple will agree to provide is preexisting user serial numbers internally used by Apple.  Please identify the specific language within the United States Constitution and/or any law that you believe prevents Apple from providing users' personal identifying information to Plaintiffs' counsel pursuant to the Protective Order entered in this case.

For Request No. 10, you confirmed that Apple does not intend to withhold documents concerning the ***percentage*** of users using different iOS versions (as opposed to absolute numbers relating to iOS usage).

For Request No. 12, after Plaintiffs' counsel asked whether Apple would produce documents relating to customer concerns regarding the impact of iOS 7 on product performance rather than just "***Apple's assessment*** of performance of iOS 7" (emphasis added), counsel for the parties agreed to revisit this issue once Apple

has a better sense of the available documents regarding performance issues related to iOS 7.

During discussions regarding Request No. 14, after Plaintiffs' counsel reiterated its concerns regarding Apple's refusal to provide identifying information for Apple users, and after Plaintiffs' counsel also asked at what point and in what form Apple anticipates providing Plaintiffs and/or Plaintiffs' counsel with information sufficient to identify putative class members, you stated that it is premature to address Plaintiffs' concerns regarding identification of putative class members and that Apple would not address the issue unless and until Plaintiffs succeed in certifying a class in this action.

For Request No. 15, you confirmed that aside from documents concerning the monetary value of FaceTime, Apple would not produce documents reflecting Apple's internal views or assessments of the value, importance and/or impact of FaceTime.

During discussions regarding Request No. 16, you would not state whether Apple was withholding – and/or intending to withhold – documents based on its repeated objection that Plaintiffs purportedly wrongly presuppose that Apple intentionally "broke" FaceTime. Rather, you stated that Apple would provide documents relating to the expiration of the digital certificate, which you believed would convince Plaintiffs that Apple had not, in fact, "broken" FaceTime. You stated that if the documents that Apple ultimately produces do not convince Plaintiffs that Apple did not "break" FaceTime, then Plaintiffs could follow up regarding production of additional documents at that later time. Counsel for Plaintiffs explained that Apple was effectively proposing to withhold documents on the basis of Apple's subjective belief as to a highly disputed factual issue. Counsel for Plaintiffs further explained that it would likely be impossible for Plaintiffs to determine whether information was being withheld, and that Apple is plainly in a far better position to do so. You maintained your position that, after Apple produces documents, Plaintiffs could revisit this issue.

For Requests Nos. 22 and 23, you stated that Apple refused to search and/or produce (1) any portion of any transcript (confidential or otherwise) from the VirnetX Action, whether or not relevant to the issues in this action; and/or (2) the documents produced in the VirnetX Action. When asked whether Apple would run agreed upon search terms on the confidential transcripts from the VirnetX Action – to which Plaintiffs do not have access – you stated that Apple would not.

For Request No. 24, you stated that Apple does not have or maintain organization charts. Plaintiffs' counsel asked whether Apple would agree to provide a list of

Apple employees whose work concerned and/or involved (i) the FaceTime Break (as defined in the Requests), and/or (ii) Apple's attempts to reduce Relay Usage.  You stated that Apple would not provide any such list, that Plaintiffs could glean the relevant Apple employees from whatever documents Apple ultimately produces, and if Plaintiffs believe that relevant individuals have not been identified within those produced documents, then Plaintiffs can raise that issue with Apple at that later time.  Counsel for Plaintiffs explained that forcing Plaintiffs to rely on documents produced by Apple to identify the relevant individuals would necessarily preclude Plaintiffs from knowing about the involvement of individuals *not* identified within the documents produced by Apple.  Apple stood on its position that it was premature for Plaintiffs to seek the identities of relevant Apple employees, and that Plaintiffs should review whatever documents Apple ultimately produces and then, if review of those documents leads Plaintiffs to believe that relevant individuals have not been identified within those documents, Plaintiffs should raise the issue.

*   *   *

To the extent you disagree with any of the above, please identify (1) the precise points on which you disagree, and (2) the precise reason for your disagreement.  For the avoidance of doubt, the issues addressed above do not constitute the full universe of Plaintiffs' concerns, issues or disputes with respect to Apple's Responses and Objections, or discovery generally, and Plaintiffs reserve all rights.

As discussed during the Meet and Confer, Plaintiffs have endeavored to work collaboratively on these and other discovery issues and have no desire to unnecessarily involve the Court.  Nevertheless, in order to meet the deadlines set forth in the Court's schedule, Plaintiffs promptly will seek judicial relief where Apple refuses to honor its discovery obligations, and where judicial intervention is necessary to protect Plaintiffs' rights to prosecute their claims.  As such, in the spirit of good faith and candor, Plaintiffs hereby inform Apple that, to the extent it has not changed its position with respect to the matters set forth above, they intend to file a Motion to Compel.  If Apple has changed its position with respect to any of the requests set forth above, please let us know by September 18, 2017.

Finally, by way of update, we have been working on revised search terms and to be able to do so on an informed basis were hoping to receive further information from you regarding some of the follow-up items listed above, but given the passage of time without any updates, we now intend to provide a revised draft to you in the near term even if no updates are provided.  To the extent that you believe you are waiting on Plaintiffs to follow up on any other items or issues discussed during the Meet and Confer (or otherwise), please let us know.

Thank you.

Best regards,

David


David Tejtel

**Friedman Oster & Tejtel PLLC**

240 E. 79th Street

New York, NY 10075

(646) 661-5881 (Office)

(434) 825-6330 (Cell)

dtejtel@fotpllc.com


On Fri, Sep 1, 2017 at 3:56 PM, Sheffield-Whitehead, Kristin <kwhitehead@kirkland.com> wrote:

> sure
>
> **Kristin Sheffield-Whitehead**
>
> **KIRKLAND & ELLIS LLP**
> 555 California Street, San Francisco, CA 94104
> T +1 415 439 1420  M +1 310 927 0910
> F +1 415 439 1500
>
> kristin.sheffield-whitehead@kirkland.com
>
>
> **From:** David Tejtel [mailto:dtejtel@fotpllc.com]
> **Sent:** Friday, September 1, 2017 12:52 PM
> **To:** Jill Manning <jmanning@steyerlaw.com>
> **Cc:** Austin Curry <acurry@caldwellcc.com>; Suneel Jain <sjain@steyerlaw.com>; Sheffield-

Whitehead, Kristin <kwhitehead@kirkland.com>; Deeley, Elizabeth L. <edeeley@kirkland.com>
**Subject:** Re: Grace v. Apple

I just spoke to Jill who had a power outage issue, but has found a workaround.  Can everybody dial back into the same conference line?  Kristin, I know you only have a few minutes.

David Tejtel

**Friedman Oster & Tejtel PLLC**

240 E. 79th Street

New York, NY 10075

(646) 661-5881 (Office)

(434) 825-6330 (Cell)

dtejtel@fotpllc.com

On Wed, Aug 30, 2017 at 2:32 PM, Jill Manning <jmanning@steyerlaw.com> wrote:

> Call in: 1-888-806-5025
>
> Participate Code: 357650#

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis

> International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.