# The Sedona Conference Journal®

*Volume 19 ❖ 2018*

## The Sedona Conference Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production

*The Sedona Conference*

Final/Prepublication Version
Cite as: 19 Sedona Conf. J. 1 (forthcoming 2018), *available at* https://thesedonaconference.org/publication/The%20Sedona%20Principles.

Copyright 2017, The Sedona Conference.
All Rights Reserved.



Antitrust Law, Complex Litigation, and Intellectual Property Rights

**11. A responding party may satisfy its good faith obligations to preserve and produce relevant electronically stored information by using technology and processes, such as sampling, searching, or the use of selection criteria.**

*Comment 11.a.     Employing technology to search for relevant ESI is reasonable, and can create cost and time savings.*

Using a manual process to find relevant ESI may be infeasible or unwarranted in cases with complex data systems or large volumes of ESI. Using search methods—based on a combination of technology and process to help search for, preserve, retrieve, and produce relevant ESI—can result in cost and time savings, and should be viewed as reasonable, valuable, and often a practical necessity.[131]

For example, ESI may be found in broad groupings based on the "container" and not the "content," such as in an email "inbox" or "outbox," on a hard drive or mobile device, or on a shared drive or web server. Such unstructured or semi-structured data may not be stored in a manner conducive to identifying relevant ESI.

Success in using any search method based upon a combination of technology and process will be enhanced by a well thought out process with substantial human input on the front end, a basic understanding of the search methodology, including any potential limitations and risks, and an evaluation of how the technology would interface with the data source to be searched. The choice of a specific search method will depend on

---

131.   For additional information, *see* The Sedona Conference, *Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 15 SEDONA CONF. J. 217 (2014).

the specific legal context in which it is employed.[132] Before employing a search technology, the responding party should perform due diligence on alternative information retrieval products or services, understand any potential limitations in capabilities, and test the technology(ies) against a data sample. Due to characteristics of human language, the various types of ESI searched, and the various ways organizations store ESI, the use of search tools does not guarantee that all relevant ESI will be identified in large data collections; but that is not, and never has been, the standard—reasonableness and proportionality is the standard. Moreover, different search methods may produce differing results, subject to a measure of statistical variation inherent in the science of information retrieval. The differences in search methodology, and the limits on the technology, also may hinder uses in different legal contexts. Search methods usually involve an iterative approach that modifies the search parameters based on the results of the searches, and different search methodologies may be applied to different data sources. Absent an agreement on the search methods to be used, parties should be prepared to explain their choice of search methods, especially if there are perceived deficiencies in the identification and preservation efforts or production. *See* Principles 6 and 7. Documenting the search methods, execution, and results may help answer questions from opposing counsel or a court. To meet a party's discovery obligations, and a legal counsel's ethical obligations, any

---

132. For example, some tools may work well in some contexts, but not so well in others. Antitrust investigations and litigation often involve broad allegations relating to marketing and competition. In such matters, technology assisted review may be more time- and cost-effective in culling relevant information than more traditional search terms. Conversely, in a technical case involving a specific patent design, search terms may be a perfectly adequate and cost-effective approach.

search methodology and process employed must be calculated to yield relevant information.

> *Illustration i.* The relevant custodians each have 2 to 8 GB of ESI on their hard drives. The responding party, using a forensically sound process, collects those user-created files and has a third-party vendor process and index them and place them in a review platform. Rather than review every user-created file, the responding party reaches agreement with the requesting party on a series of search terms that capture the key concepts relevant to the claims and defenses, including restrictions for the relevant time frame. The responding party then reviews this subset to cull out (and log) privileged matter and confirm the relevance of other ESI for production. The responding party has satisfied its obligation to identify and produce relevant ESI.

Courts should encourage and promote the use of technology and processes to search, preserve, collect, review, and produce ESI to ensure that the costs and burdens associated with the preservation, collection, review, and production of responsive ESI is proportional to the needs of the case.[133]

---

133.  *See* The Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18 SEDONA CONF. J. 141 (2017) ("Principle 2: Discovery should focus on the needs of the case and generally be obtained from the most convenient, least burdensome, and least expensive sources."); Maura R. Grossman & Gordon V. Cormack, *Comments on "The Implication of Rule 26(g) on the Use of Technology-Assisted Review,"* 7 FED. CTS. L. REV. 285 (2014); Bennett B. Borden & Jason R. Baron, *Finding the Signal in the Noise: Information Governance, Analytics and the Future of Legal Practice*, 20 RICH. J.L. & TECH. 7 (2014); George L. Paul & Jason R. Baron, *Information Inflation: Can the Legal System Adapt?*, 13 RICH. J.L. & TECH. 10 (2007).