January 12, 2018

The Honorable Nathanael Cousins
U.S. District Court for the Northern District of California
280 South 1st Street
San Jose, CA 95113

      RE:    *Grace v. Apple Inc.*, 5:17-cv-00551-LHK-NC (N.D. Cal.)

Dear Judge Cousins:

      Plaintiffs and Defendant Apple submit this joint letter brief pursuant to the Court's January 6, 2016 Standing Order Concerning Discovery Disputes. Although the parties have met and conferred about the issues below numerous times via both e-mail and phone, the parties are at an impasse, requiring the Court's resolution.

<b><u>Plaintiffs' Statement</u></b>

      Even after the Court granted Plaintiffs' first motion to compel, Apple has persisted in evasive discovery maneuvering. Plaintiffs request complete responses to various interrogatories and production of relevant, readily obtainable documents.

**I.     INTERROGATORIES**

      Plaintiffs served their first interrogatories on August 29, 2017. Ex. A. Apple's first responses, served September 28, 2017, provided essentially no response at all. Ex. B. Plaintiffs waited months for *any* response. Apple finally served supplemental responses on December 12, 2017 (Ex. C), but these responses remain deficient, as detailed below.

   **A. Apple's Refusal to Identify the Executives (and Other Employees) Involved in the FaceTime Break (Interrogatory No. 3)**

     Interrogatory No. 3 seeks the identity of Apple employees involved in the FaceTime Break—the very misdeed at the heart of this litigation. Apple's response discloses just six individuals by reference to its initial disclosures. This is insufficient. Apple's document production shows that there were more than six people involved in the FaceTime Break.[1] Moreover, an internal Apple email indicates that ███████████ Ex. E (APL-GRACE_00002942). But Apple has refused to identify a single Apple executive in response to this interrogatory. Below, Apple tries to suggest that Kurt Knight is the executive involved in the FaceTime break, but that is misleading. Kurt Knight is ***not*** an executive at Apple, and ███████████

    Apple's attempt to paint this interrogatory as overly broad is a red herring. This is not a scenario where Apple has undertaken a reasonable effort to identify the people involved in the FaceTime Break or where identifying additional, relevant people would pose a great burden. Again, Apple has only identified six people, and is refusing to identify the unnamed executives involved in the FaceTime break. The Court should compel Apple to provide a complete response identifying all employees (and executives) with knowledge of the FaceTime Break.

   **B. Apple's Noncompliance with Rule 33(d) (Interrogatories 1, 2, 4, 5, 6, 8 and 9)**

     Interrogatories 1, 2, 6, and 8 seek different, discrete categories of information related to identifying the class members, and information relevant to establishing numerosity and

---

[1] An email chain reveals that there are at least 24 employees missing from Apple's response, highlighting that Apple's response is plainly inadequate and calling into question whether Apple has conducted a reasonable investigation into the requested topic. Ex. D (APL-GRACE_00000988)

The Honorable Nathanael Cousins
January 12, 2018
Page 2

ascertainability of the class.  Interrogatories 6 and 9 seek information about iOS adoption rates and trends for all categories of iDevices.  Interrogatories 4 and 5 seek information related to types of FaceTime call connection (*i.e.*, peer-to-peer versus relay) and various Apple information about estimates and costs of relay connections.  For each, Apple has relied on Federal Rule 33(d) but has failed to comply with its Rule 33(d) obligations.

   <u>Class Member Interrogatories (Nos. 1, 2, 6, and 8)</u>.  Apple responded to these interrogatories by citing to massive[2] spreadsheets that identify serial numbers and iOS versions of users who conducted an iTunes transaction within the relevant time frame.  Those spreadsheets alone fail to comply with Apple's Rule 33(d) obligations because the burden of understanding the spreadsheets is not the same for either party.  Plaintiffs have asked basic questions of Apple regarding whether and how the data in the spreadsheets answer the interrogatories.  But Apple has declined to answer many of them.  *See* Ex. F (Dec. 29, 2017 email from A. Curry to K. Sheffield-Whitehead).  For example, Apple has indicated that spreadsheets list only those users who conducted an iTunes transaction, but Apple has refused to explain whether an iOS update *alone* qualifies as an includable iTunes transaction.  Apple has also refused to explain whether the spreadsheets are limited to U.S. devices.[3]  Apple's position is that Plaintiffs could take a deposition to derive answers, but this "assertion that Plaintiffs can obtain the missing information through deposition is a concession that the documents themselves do not contain all of the responsive material [under Rule 33(d)]."[4]  *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (granting motion to compel).  And remarkably, on the parties' January 9, 2018 meet and confer, Apple stated that it would ***not provide a witness*** to testify to any topic in Plaintiffs' Rule 30(b)(6) notice because some topics were not specific enough to Apple's liking.[5]  Simply put, the spreadsheets are esoteric and devoid of critical context—context

---

[2] The vast majority of the nearly 100 spreadsheets contain roughly one million rows of user information.  Plaintiffs are delivering a hard drive with the productions to the Court for use in evaluating this Joint Letter Brief.

[3] Despite Apple's statement in this letter brief that it had already indicated that all spreadsheets pertained to U.S. devices, it refused to confirm that for the spreadsheets located at APL-GRACE-00001993 to APL-GRACE-00002055.  *See* Ex. F.  In any event, Apple's statement in this letter brief does not moot this issue.  This and other pertinent information is still not included in Apple's interrogatory response.

[4] Apple's counsel contends that it is "more efficient" to take a deposition than to provide answers to Plaintiffs' questions.  But it is only more efficient *for Apple's counsel* because it would force Plaintiffs, rather than Apple's counsel, to seek the relevant answers from Apple—and force Plaintiffs to use its limited deposition time in the process.  Given that Apple's counsel—unlike Plaintiffs' counsel—can freely and frequently communicate with Apple, their client, the parties' respective burdens under Rule 33(d) are not nearly the same.

[5] Below, Apple claims that it did not refuse to provide a witness to Plaintiffs' 30(b)(6) notice.  That is absolutely false.  The meet and confer ended in a complete impasse, with Apple explicitly refusing to provide a witness on topics 1 and 2 for alleged lack of specificity (amongst Apple's other objections), and with Apple explicitly refusing to provide a witness on topic 3 just in case it wanted the same witness to testify on all three topics.  After Plaintiffs amended their section of this letter brief to observe how Apple was refusing to provide a deposition witness, Apple—apparently realizing how its obstruction of deposition discovery was undermining its argument in this letter brief—amended its section to falsely claim it that never refused to provide a 30(b)(6) deposition.  Counsel for Plaintiffs gave counsel for Apple an opportunity to retract its misrepresentations to the Court, but regrettably, counsel for Apple declined.  The unfortunate thing is that Apple had options *other* than lying to the Court.  For example, Apple could have said that the meet and confer ended in an impasse, but it hopes the parties can resolve the dispute regarding the Plaintiffs' 30(b)(6) notice without Court intervention.  But instead, Apple chose to falsify its position on the meet and confer, and in the process of fabricating facts, it accused Plaintiffs of misstating the meet and confer.  It is contemptible that Apple's counsel would misrepresent facts to the Court solely to salvage its position on a discovery dispute.

The Honorable Nathanael Cousins
January 12, 2018
Page 3

explaining the nature of the data source, the criteria used in the query, and the limitations of the spreadsheets—preventing Plaintiffs from determining how the spreadsheets actually answer the interrogatories.

iOS Adoption Interrogatories (Nos. 6 and 9). Apple responded to these interrogatories by citing to a single spreadsheet, produced at APL-GRACE_000001956. Ex. G. This spreadsheet is inadequate to provide a complete, Rule 33(d)-compliant response for several reasons.

First, the spreadsheet does not adequately explain the methodology used to derive the information. As with the class member interrogatories, Apple has declined to provide the answers to questions and told Plaintiffs to simply take a deposition, confirming the inadequacy of the interrogatory response. *Lithium Ion Batteries*, 2015 WL 4999762, at *3. Second, the spreadsheets provide no information about non-iPhone 4 and 4S devices. This additional omitted information is relevant. A comparison in iOS adoption rates between devices affected and unaffected by the Break presents relevant trend information for determining the relative effects of the Break in promoting iOS upgrade adoption. Finally, the spreadsheets are inadequate because they stop at April 2015, even though iPhone 4 and 4S upgrade information is relevant through the present. For this, Apple attempts to graft an agreement the parties made for a document request onto these interrogatories. This is nonsensical. The parties' agreement regarding documents was intended to narrow the realm of possibly relevant documents to something more targeted. But this spreadsheet is a single document, generated for this litigation—and Apple truncated post-April 2015 data when it could have just as easily included that data. Indeed, Apple likely took *additional* steps to exclude post-April 2015 information.

Relay Information Interrogatories (Nos. 4 and 5). In response to Plaintiffs' request for information related to relative usage of peer-to-peer connections versus relay connections and for Apple's "projections, estimates, and actual data" for various relay usage metrics, Apple has cited contracts with Akamai and a spreadsheet showing payments to Akamai. These responses are insufficient. Regarding No. 4, Apple has merely promised to produce responsive information in the future, a plainly inadequate response. *Helm v. Alderwoods Grp, Inc.*, 2010 WL 2951871, at *1 (N.D. Cal. July 27, 2010) (insufficient to "simply refer generally to past or future production of documents"). Regarding No. 5, which seeks "projections, estimates, and actual data" of "(i) peak bandwidth; (ii) average bandwidth; and (iii) cost and expenses," Apple has provided *no* information about bandwidth and no projections or estimates of any kind. Apple's response discloses only its actual costs. The rest of the interrogatory remains unanswered.

C. **Apple's Refusal to Provide Any Response to Interrogatory No. 10**

Plaintiffs sought discovery of Apple's contentions concerning the certifiability of Plaintiffs' class. Apple objected that the request was premature. Yet in Apple's answer, it repeatedly "denie[d] that class treatment is appropriate." Dkt. No. 66 at ¶¶ 112-122. Courts regularly compel complete responses under analogous circumstances. *See Yingling v. eBay, Inc.*, 2010 WL 373868, at *2-3 (N.D. Cal. Jan. 29, 2010) (overruling identical objection); *Garza v. Brinderson Constructors, Inc.*, 2017 WL 2861128, at *2 (N.D. Cal. July 5, 2017) (similar). Below, Apple complains that this interrogatory seeks *all* of its contentions regarding class certification. That is a red herring. The issue is whether Apple is justified in providing *no* response. Similarly, Apple's answer demonstrates that it has some contentions regarding certifiability. Those contentions, whatever they are, are not premature. Apple's objections simply cannot justify its refusal to provide any response to this interrogatory.

II.     <u>BUYER SURVEYS AND DOCUMENTS RELATED TO VALUE OF FACETIME</u>

Plaintiffs propounded specific RFPs targeted at understanding the value of the FaceTime feature. For example, Plaintiffs sought "internal assessments, analyses, discussions and/or determinations concerning" the value of FaceTime, its importance to customers and its impact on the value of iPhone devices. While Apple claims that it has "agreed" to produce documents showing its internal assessments and analysis of the value of FaceTime, this purported agreement is purely academic. Apple has produced *zero* documents showing how it internally values FaceTime, despite being halfway through its ESI production. Whatever Apple is doing in its ESI review—whether in its review for responsiveness or in its selection of custodians—something is clearly not working properly. Apple should be compelled to investigate where these highly critical documents are, and it should be compelled to produce them.

Relatedly, Apple has produced *some* buyer surveys, but it is refusing to produce surveys from the following relevant time periods: Q3 FY10, Q1-Q3 FY11, all of FY12, Q1-Q3 FY13 and Q3-Q4 FY14. Apple attempts to justify its selective production of surveys on (conclusory) relevance grounds, but its arguments are misplaced. This dispute is about discoverability. Apple damages expert are free to differentiate the surveys like Apple does below, and the jury will weigh the evidence as it sees fit. But Apple cannot impose its subjective, hyper-nuanced view of these surveys on Plaintiffs simply by withholding the ones it does not like. These thirteen surveys are plainly discoverable, and Apple has identified no burden in producing them.

### Apple's Statement

Plaintiffs are attempting to manufacture a discovery dispute when none exists. Plaintiffs have propounded overbroad, imprecise, and duplicative requests seeking complex and voluminous data. In contrast to Plaintiffs, who have produced only two pages to date, Apple has *created* numerous reports that do not exist in the ordinary course of business to respond to Plaintiffs' RFPs and Interrogatories, is more than halfway through its review of the over 400,000 documents that hit on Plaintiffs' search terms, and has produced over 42,000 pages of ESI and over 200,000 customer care log records. Yet Plaintiffs now complain that Apple's reports—many of which were created in consultation with Plaintiffs—are incomplete. Not so. The reports contain the information requested by Plaintiffs and were produced in full compliance with Rule 33(d). Plaintiffs' counsel's endless stream of follow-up questions are better suited for the 30(b)(6) deposition they have already noticed and, in any event, are not before the Court because the answers were not sought in the pending discovery requests.

**I.  INTERROGATORIES**

This alleged dispute is premature because Apple continues to produce responsive information on a rolling basis. On September 28, Apple timely responded to Plaintiffs' Interrogatories, which largely seek the same information as their RFPs. (*See, e.g.*, Interrogatory No. 6, seeking "iOS version adoption data" and RFP No. 10, seeking documents sufficient to show the number of "customers who moved to different iOS versions"). During its meet and confer with Plaintiffs on September 29, 2017, Apple explained that it would be producing documents and creating reports in response to certain of Plaintiffs' RFPs that would also answer certain of Plaintiffs' Interrogatories, but that—as Plaintiffs were aware—Apple was still in the process of determining what data was available and in what form, and would supplement its responses with Bates ranges as soon as the reports and documents were produced. Apple is and has been supplementing its responses on a rolling basis to reference specific Bates ranges, including detailed descriptions of the documents referenced, consistent with Rule 33(d).

**Apple's Response Regarding Interrogatory No. 3:** Plaintiffs' Interrogatory No. 3 is

The Honorable Nathanael Cousins
January 12, 2018
Page 5

overbroad (seeking, *e.g.*, *every* employee who "was involved in *any* capacity"), vague (seeking employees "involved" without any clarification), and seeks inappropriate, irrelevant information, such as the *home addresses* of *current* Apple employees. Further, its use of terms such as "planning of" and "implementation of" the "FaceTime Break," defined as "the sudden inoperability of FaceTime on all pre-iOS 7 versions of iOS beginning on or about April 16, 2014," Ex. A, presupposes that Apple intentionally caused FaceTime to abruptly stop working, when in fact Apple employees were working diligently to address that a digital certificate was set to expire, including preventing impact to users. This Interrogatory's counter-factual presuppositions make it nonsensical: were the engineers working to fix the issue caused by the digital certificate expiring "involved" in "implementation of" the "FaceTime Break;" of course not, because there was no "implementation of" a "FaceTime Break." But rather than responding that nobody was involved in implementing the alleged break—an appropriate response given the Interrogatory's language—Apple has identified through its initial disclosures the six individuals who Apple has determined, after diligent investigation, are most knowledgeable about the issues in this case. And Plaintiffs' reliance on an internal Apple email here is misleading; that e-mail ██████████████████████████████████████████ Apple identified him in its initial disclosures. Ex. H.

**Apple's Response Regarding "Class Member" Interrogatories (Nos. 1, 2, 6, and 8):**
Plaintiffs asked Apple to "identify" certain iPhone users,[6] and Apple informed Plaintiffs of the available data from which a report could be generated, the information the reports would contain, and the general limitations of the data.[7] Apple then produced those reports on December 1 and 15, 2017. Apple has identified by precise Bates number and description documents which show the iOS version used by U.S.-only iPhone 4 and iPhone 4S users by serial number for each of April 15, 16 and 17, 2014 and the serial numbers for U.S.-only iPhone 4 and iPhone 4S users who were on iOS 6 or earlier from April 14, 2016 onwards. These descriptions give Plaintiffs all the information necessary to understand how the reports answer Plaintiffs' Interrogatories, including some of the questions that Plaintiffs claim have not been answered, such as whether the spreadsheets are limited to U.S. devices. Despite Apple's continued cooperation, Plaintiffs argue that Apple's Interrogatory responses are incomplete because Apple did not detail the methodology it used to create these reports. But Plaintiffs' Interrogatories do not ask Apple to explain the methodology underlying these reports. It was only after the reports were produced that Plaintiffs began asking technical questions about these reports in piecemeal emails to Apple's outside counsel. *See* Ex. J and K. Counsel for Apple answered certain of these questions to the best of their ability, but explained that because of the on-going and technical nature of Plaintiffs' follow-up questions, those questions were more appropriate for the deposition Plaintiffs had already noticed. *See* Ex. L. Because these follow-up questions are not part of the Interrogatories, *In re Lithium Ion Batteries Antitrust Litigation* is distinguishable. 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015). Here, Apple has provided the information that Plaintiffs requested, and Plaintiffs' new questions can be answered at the forthcoming 30(b)(6) deposition. Plaintiffs' claim—now asserted with inflammatory zeal in footnote 5 above—that Apple refused to provide a witness on any topic in Plaintiffs' Rule 30(b)(6) notice is false. Apple's written responses to Plaintiffs are clear: Apple will provide a witness to testify to Plaintiffs' topics, subject to Apple's objections.

---

[6]  Interrogatories Nos. 1, 2, 6, and 8 are duplicative of RFP Nos. 8 and 14. Thus, Apple has been discussing with Plaintiffs what data is available and what these reports would look like since at least early September.

[7]  Plaintiffs even provided Apple with a specific query, which (as Plaintiffs know) was the basis for one of the reports Apple produced. *See* Ex. I. Apple is in the process of supplementing its responses to reference this report.

The Honorable Nathanael Cousins
January 12, 2018
Page 6

Ex. M. Apple simply asked Plaintiffs to "describe with reasonable particularity the matters for examination," as Federal Rule of Civil Procedure 30(b)(6) requires. Plaintiffs refused. Apple nevertheless has agreed to make a witness available, but Plaintiffs have been warned that their topics are not sufficiently particularized. *See* Ex. N (1/11/18 e-mail from Sheffield-Whitehead to Curry: "Apple is not refusing and has never refused to provide a witness on Topics 1 and 2. To the contrary, we have said at every turn that we will provide a witness on all three of Plaintiffs' topics.").

**Apple's Response Regarding iOS Adoption Interrogatories (Nos. 6 and 9):** Interrogatory No. 6 asks Apple to "identify iOS version adoption data." Similarly, RFP No. 10, seeks documents sufficient to show the number of "customers who moved to different iOS versions." During a September 29, 2017 meet and confer, Apple identified the burdens in compiling the data Plaintiffs sought—which is not data that Apple maintains in a readily accessible form—and proposed to Plaintiffs that it would create a single report in response to Plaintiffs' Interrogatories Nos. 6 and 9 and RFP Nos. 6 and 10. Apple proposed a date range of September 2013 through September 2014. *See* Ex. O. On October 1, 2017, Plaintiffs proposed an expanded date range of September 2013 through April 2015 for RFP No. 10, to which Apple agreed.[8] Ex. P. Now, after Apple spent significant time and resources creating the report using Plaintiff's proposed date range, Plaintiffs argue that, while it was fine for Apple to limit this data to the parties' agreed upon date in response to Plaintiffs' RFPs, Apple should have produced a *different* report from September 2013 *to the present* in response to Plaintiffs' duplicative Interrogatory. But there is no logical reason why a date range sufficient for a document production, is insufficient for an interrogatory response, especially when the interrogatory asks for the same adoption data.

Plaintiffs also claim that the iOS adoption rate report is insufficient because it did not include data for devices not at issue here. But Plaintiffs never raised this issue during the meet and confers and they have not explained the relevance of adoption rates for non-iPhone devices, or why the burden of creating such a report would be justified given its irrelevance.

Finally, Plaintiffs complain that Apple's responses to Interrogatory Nos. 6 and 9 are inadequate because they do not contain "the methodology used to derive the information." But these interrogatories asked Apple to "identify" adoption data, and that is what Apple's report does. They did not ask Apple to include information about methodology. To the extent Plaintiffs have such questions, they can ask them at the deposition they have already noticed.

**Apple's Response Regarding Relay Information Interrogatories (Nos. 4 and 5):** In Interrogatory Nos. 4 and 5, Plaintiffs have again asked for voluminous data regarding FaceTime "usage" and "Relay Usage." In response, Apple has produced its contracts with Akamai and documents showing its payments to Akamai for Relay Usage. These documents show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exs. Q & R. Further, on January 5, 2018, Apple produced additional "Relay Usage" reports, *see, e.g.*, Ex. S, and is in the process of updating its Interrogatories to cite to these reports. Starting in early September, Apple told Plaintiffs that additional data regarding FaceTime "usage" or "Relay Usage" was likely only available to the

---

[8] Even the Court's Amended Order on Discovery Disputes, which Plaintiffs drafted, described this report as ending September 30, 2014. *See* Am. Order (1)(b)(i)(c). That order was entered while the report was still being generated, and Apple adopted Plaintiffs' proposed date range when finalizing the report. Apple agreed to a broader date range in the spirit of compromise, not because it believed that this date range was relevant to this case, in stark contrast to Plaintiffs' consistent refusal to agree to any reasonable and legitimate scope of discovery.

The Honorable Nathanael Cousins
January 12, 2018
Page 7

extent and in the manner it exists in emails, so Apple has been updating and will continue to update its Interrogatory responses with specific Bates ranges as it completes its document production. Otherwise, Apple cannot produce data that does not exist, and, as Apple has repeatedly informed Plaintiffs, much of what they have requested here does not exist.

**Apple's Response Regarding Interrogatory No. 10:** Interrogatory No. 10 seeks ***all*** of Apple's contentions as to why this action should not be certified as a class action. This request was and remains premature in light of the parties' ongoing discovery efforts. In the eight weeks since Plaintiffs' responses to Apple's RFPs were due, Plaintiffs have produced only ***two pages*** of documents and have yet to even begin searching certain of Plaintiffs' files for relevant documents. It is appropriate to defer answering this interrogatory until after the "designated discovery is complete." Rule 33(a)(2); *see also Campbell v. Facebook Inc.*, No. 13-CV-0599-6PJH(MEJ), 2015 WL 3533221, at *3 (N.D. Cal. June 3, 2015) ("[C]ourts tend to deny contention interrogatories filed before substantial discovery has taken place[.]"); *see also Yingling v. eBay, Inc.*, 2010 WL 373868, at *2-3 (N.D. Cal. Jan. 29, 2010).

## II.   APPLE'S RESPONSE REGARDING BUYER SURVEYS AND DOCUMENTS RELATED TO VALUE OF FACETIME

Plaintiffs' statement that Apple is refusing to produce documents regarding its "internal assessments" of the value of FaceTime is false. Apple has ***agreed*** to produce all such documents (to the extent they even exist) located after a diligent search using Plaintiffs' proposed search terms. Following the Court's Amended Order on Discovery Disputes, Apple ran Plaintiffs' search terms through its ESI, including three search strings "Regarding the Value of FaceTime," as Plaintiffs dubbed them. During the parties' December 20, 2017 meet and confer, Apple explained that it ran those search strings and that documents regarding the so-called "value" of FaceTime would have been marked responsive during the review, if they exist, but that review is still ongoing. Apple also agreed to update its responses to clarify its response to this request. Plaintiffs' arguments ignore that Apple is still making its way through around 200,000 documents and has until February 2 to do so.

Apple also produced six marketing surveys discussing the reasons why customers purchased the iPhone 4 and 4S and the reasons why customers purchased new iPhone devices around April 2014, when the digital certificate expired. Plaintiffs have now requested every iPhone marketing survey from the 3rd quarter of fiscal year 2010 through 2014, claiming that these surveys could impact their damages calculation and that they were "obviously relevant." But Plaintiffs have provided no detail regarding how these marketing surveys are relevant to its damages calculation or why the produced surveys are insufficient, given proportionality and the highly sensitive business information contained in these surveys. Although Apple disputes that any of these marketing surveys are relevant or responsive here, and despite Plaintiffs' consistent refusal to compromise or cooperate, Apple is willing to compromise and agrees to produce additional marketing surveys from 2011 through 2014, to the extent they exist.