1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEYER LOWENTHAL BOODROOKAS
    ALVAREZ & SMITH LLP
Allan Steyer (State Bar No. 100318)
Jill M. Manning (State Bar No. 178849)
D. Scott Macrae (State Bar No. 104663)
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (State Bar No. 96241)
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com
dwarshaw@pswlaw.com
asimon@pswlaw.com

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiffs and*
*Proposed Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:17-cv-00551-LHK-NC |
| Plaintiffs, | **CLASS ACTION** |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| APPLE, INC., | |
| Defendant. | Date:  August 2, 2018 Time:  1:30pm Court:  8, 4th Floor Judge:  The Honorable Lucy H. Koh |

**REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 3 |
|  | A. Background of the iPhone 4, the iPhone 4S and FaceTime | 3 |
|  | B. The *VirnetX* Verdict Dramatically Increases Apple's Relay Usage and Costs | 4 |
|  | C. Apple Seeks to Reduce Relay Usage Through iOS 7, Which Significantly Impairs The Functionality of iPhone 4 and 4S Devices | 5 |
|  | D. Apple Exploits Its Digital Certificates to Force Customers to "Upgrade" | 6 |
|  | E. Apple Intended to and Did Break FaceTime on All Class Members' Devices | 9 |
| III. | ARGUMENT | 11 |
|  | A. The Proposed Class Satisfies the Requirements of Rule 23(a) | 11 |
|  |  1. The Class is Sufficiently Numerous | 12 |
|  |  2. Questions of Law or Fact Are Common to the Proposed Class | 13 |
|  |  3. Plaintiffs' Claims are Typical of the Proposed Class | 14 |
|  |  4. Plaintiffs Will Adequately Represent the Interests of the Class | 15 |
|  | B. The Proposed Class Satisfies the Requirements of Rule 23(b)(3) | 16 |
|  |  1. Common Issues Predominate | 16 |
|  |   a. Unfair Competition Law Claim | 17 |
|  |   b. Trespass to Chattels Claim | 18 |
|  |  2. The Court May Apply California Law to the Claims of Non-Resident Class Members | 18 |
|  |   a. Applying California Law is Neither Arbitrary Nor Unfair | 19 |
|  |   b. No State Has a Greater Interest in Having its Law Applied | 20 |
|  |  3. Damages and Restitution Can be Calculated on a Class-wide Basis | 21 |
|  |  4. A Class Action Is a Superior Method by Which to Adjudicate Plaintiffs' Claims | 24 |
|  | C. The Proposed Class Meets the Requirements of Rule 23(b)(2) | 25 |
| IV. | CONCLUSION | 25 |

1

# TABLE OF AUTHORITIES

2

**CASES** **Page**

3

*Allen v. Hyland's Inc.* (C.D. Cal. 2014)
    300 F.R.D. 643 ................................................................................. 20

4

*Amchem Prods. v. Windsor* (1997)
    521 U.S. 591 ................................................................................. 16

5

6

*Amgen Inc. v. Conn. Ret. Plans* (2013)
    568 U.S. 455 ................................................................................. 16

7

*Apple iPod iTune Antitrust Litig.* (N.D. Cal. Nov. 22, 2011)
    No. C 05-00037 (JW), 2011 WL 5864036 ................................ 24

8

9

*Berrien v. New Raintree Resorts Int'l, LLC* (N.D. Cal. 2011)
    276 F.R.D. 355 ......................................................................... 15, 18

10

*Briseno v. ConAgra Foods, Inc.* (9th Cir. 2017)
    844 F.3d 1121 ............................................................... 12, 13

11

12

*Brown v. The Hain Celestial Grp., Inc.* (N.D. Cal. Nov. 18, 2014)
    No. C 11-03082 LB, 2014 WL 6483216 ................................... 17

13

*Carnegie v. Household Int'l, Inc.* (7th Cir. 2004)
    376 F.3d 656 ................................................................................. 24

14

15

*Chavez v. Blue Sky Nat. Beverage Co.* (N.D. Cal. 2010)
    268 F.R.D. 365 ............................................................................. 24

16

*Clothesrigger, Inc. v. GTE Corp.* (1987)
    191 Cal. App. 3d 605 ................................................................. 21

17

18

*Comcast Corp. v. Behrend* (2013)
    133 S. Ct. 1426 ................................................................. 21 - 24

19

*Cummings v. Connell* (9th Cir.2003)
    316 F.3d 886 ................................................................................. 15

20

21

*Drum v. San Fernando Valley Bar Ass'n* (2010)
    182 Cal.App.4th 247 ................................................................. 17

22

*Ehret v. Uber Techs., Inc.* (N.D. Cal. 2014)
    68 F. Supp. 3d 1121 ................................................................. 20

23

24

*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011)
    657 F.3d 970 ................................................................. 14, 15, 25

25

*Estakhrian v. Obenstine* (C.D. Cal. 2017)
    320 F.R.D. 63 ............................................................................. 19

26

27

28

-ii-

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF
POINTS AND AUTHORITIES        Case No. 5:17-cv-00551-LHK-NC

*Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014)
  No. CV 12-1983-GHK MRWX, 2014 WL 1410264 .................................................. 20

*Gonzalez v. Arrow Fin. Servs., LLC* (S.D. Cal. 2007)
  489 F. Supp. 2d 1140 .......................................................................................... 12

*Grace v. Apple Inc.* (N.D. Cal. July 28, 2017)
  No. 17-CV-00551, 2017 WL 3232464 ................................................................... 18

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
  150 F.3d 1011 ............................................................................................ 14, 17, 25

*Hanon v. Dataproducts Corp.* (9th Cir. 1992)
  976 F.2d 497 ....................................................................................................... 14

*Herskowitz v. Apple, Inc.* (N.D. Cal. 2014)
  301 F.R.D. 460 .................................................................................................... 18

*In re Adobe Sys., Inc. Privacy Litig.* (N.D. Cal. 2014)
  66 F. Supp. 3d 1197 ............................................................................................. 17

*In re High-Tech Employee Antitrust Litig.* (N.D. Cal. 2013)
  289 F.R.D. 555 .................................................................................................... 22

*In re Lenovo Adware Litig.* (N.D. Cal. Oct. 27, 2016)
  No. 15-md-02624-RMW, 2016 WL 6277245 ................................................. 16, 17, 18

*In re Lidoderm Antitrust Litig.* (N.D. Cal. Feb. 21, 2017)
  No. 14-MD-02521-WHO, 2017 WL 679367 ........................................................... 22

*In re Online DVD Rental Antitrust Litig.* (N.D. Cal. Dec. 23, 2010)
  No. M 09-2029 PJH, 2010 WL 5396064
  aff'd sub nom) ............................................................................................... 14, 24

*In re Online DVD-Rental Antitrust Litig.* (9th Cir. 2015)
  779 F.3d 934 ....................................................................................................... 14

*In re Optical Disk Drive Antitrust Litig.* (N.D. Cal. Dec. 18, 2017)
  No. 10-MD-02143-RS, 2017 WL 6448192 ............................................................. 12

*In re Qualcomm Antitrust Litig.* (N.D. Cal. Nov. 10, 2017)
  No. 17-MD-02773-LHK, 2017 WL 5235649 ..................................................... 19 - 21

*In re Static Random Access (SRAM) Antitrust Litig.* (N.D. Cal. Sept. 29, 2008)
  2008 WL 4447592 ............................................................................................... 12

*In re Tableware Antitrust Litigation* (N.D. Cal. 2007)
  241 F.R.D. 644 .................................................................................................... 24

*In re Yahoo Mail Litig.* (N.D. Cal. 2015)
  308 F.R.D. 577 .............................................................................................. 14, 23

*Intel Corp. v. Hamidi*, (2003)
    30 Cal. 4th 1342   ................................................................................... 18

*Kartman v. State Farm Mut. Auto. Ins. Co.* (7th Cir. 2011)
    634 F.3d 883, cert. denied, 565 U.S. 878 (2011) ........................................ 25

*Kennedy v. Jackson Nat'l Life Ins. Co.* (N.D. Cal. June 23, 2010)
    No. 10-07-0371 CW, 2010 WL 2524360 ................................................... 23

*Kumar v. Salov N. Am. Corp.* (N.D. Cal. July 15, 2016)
    No. 14-CV-2411-YGR, 2016 WL 3844334 ....................................... 17, 22

*Lambert v. Nutraceutical Corp.* (9th Cir. 2017)
    870 F.3d 1170.............................................................................. 23, 24

*Larson v. TransUnion, LLC* (N.D. Cal. Jun. 26, 2015)
    No. 12-cv-05726-WHO, 2015 WL 3945052 ............................................. 25

*Leyva v. Medline Indus.* (9th Cir. 2013)
    716 F.3d 510.............................................................................................. 23

*Lilly v. Jamba Juice Co.* (N.D. Cal. 2014)
    308 F.R.D. 231  ............................................................................... 12, 22

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001)
    244 F.3d 1152 ............................................................................................. 15

*Lozano v. AT & T Wireless Servs., Inc.* (9th Cir.2007)
    504 F.3d 718.............................................................................................. 18

*Mazza v. Am. Honda Motor Co.* (9th Cir. 2012)
    666 F.3d 581................................................................................ 19 - 21

*McMillion v. Rash Curtis & Assocs.* (N.D. Cal. Sept. 6, 2017)
    No. 16-CV-03396-YGR, 2017 WL 3895764  ........................................... 21

*Mullins v. Premier Nutrition Corp.* (N.D. Cal. Apr. 15, 2016)
    No. 13-cv-01271-RS, 2016 WL 1535057  ............................... 12, 13, 21, 25

*Newton v. Am. Debt Serv., Inc.* (N.D. Cal. June 9, 2015)
    2015 WL 3614197 ..................................................................................... 18

*Nitsch v. Dreamworks Animation SKG Inc.* (N.D. Cal. 2016)
    315 F.R.D. 270  ......................................................................................... 13

*Opperman v. Path, Inc.* (N.D. Cal. July 15, 2016)
    No. 13-cv-00453-JST, 2016 WL 3844326 ............................. 13, 19, 20, 25

*Pecover v. Elec. Arts Inc.* (N.D. Cal. Dec. 21, 2010)
    No. 08-CV-02820-VRW, 2010 WL 8742757   ................................... 20, 21

*Pettit v. Procter & Gamble Co.* (N.D. Cal. Aug. 3, 2017)
    No. 15-CV-02150-RS, 2017 WL 3310692  ............................................. 22

*Phillips Petroleum Co. v. Shutts* (1985)
    472 U.S. 797 ................................................................................................... 19, 20

*Pulaski & Middleman, LLC v. Google, Inc.*, (9th Cir. 2015)
    802 F.3d 979, *cert. denied*, 136 S. Ct. 2410 (2016) .............................................. 23, 24

*Rodriguez v. West Publ'g Corp.* (9th Cir. 2009)
    563 F.3d 948 ................................................................................................... 15

*Rutledge v. Hewlett-Packard Co.* (2015)
    238 Cal. App. 4th 1164 .................................................................................... 20

*Story Parchment Co. v. Paterson Parchment Paper Co.* (1931)
    282 U.S. 555 ................................................................................................... 24

*Torres v. Mercer Canyons Inc.* (9th Cir. 2016)
    835 F.3d 1125 ................................................................................................. 14

*Vaquero v. Ashley Furniture Indus., Inc.* (9th Cir. 2016)
    824 F.3d 1150 ................................................................................................. 22

*VirnetX Inc. v. Apple, Inc.* (E.D. Tex.)
    Case No. 6:13-cv-211 at ECF No. 53 (March 6, 2014) .............................................. 4

*Wahl v. Am. Sec. Ins. Co.* (N.D. Cal. May 10, 2010)
    No. C 08-00555 RS, 2010 WL 1881126 .................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes* (2011)
    564 U.S. 338 ................................................................................................... 13

*Wershba v. Apple Computer, Inc.* (2001)
    91 Cal.App.4th 224 ......................................................................................... 20, 21

*Wit v. United Behavioral Health* (N.D. Cal. 2016)
    317 F.R.D. 106 ................................................................................................. 25

*Wolph v. Acer Am. Corp.* (N.D. Cal. 2011)
    272 F.R.D. 477 ........................................................................... 12, 14, 17, 19, 21

*Wolin v. Jaguar Land Rover North America, LLC* (9th Cir. 2010)
    617 F.3d 1168 ................................................................................................. 24

*Yokoyama v. Midland Nat. Life Ins. Co.* (9th Cir. 2010)
    594 F.3d 1087 ................................................................................................. 22

*Zeisel v. Diamond Foods, Inc.* (N.D. Cal. June 7, 2011)
    No. C 10-01192 JSW, 2011 WL 2221113 .............................................................. 17

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P.
    23(a) ................................................................................................ 11, 12, 14
    23(a)(1) ............................................................................................. 12, 13
    23(a)(2) ............................................................................................. 13
    23(a)(3) ............................................................................................. 15
    23(a)(4) ............................................................................................. 16
    23(b) ................................................................................................. 11
    23(b)(2) ............................................................................................. 25, 26
    23(b)(3) ............................................................................ 11, 16, 18, 22, 25

**OTHER AUTHORITIES**

1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
    § 3:3 (4th ed. 2002) ...................................................................... 12

**NOTICE OF MOTION AND MOTION**

**TO APPLE, INC. AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 2, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 8, 4th Floor, located at the Robert F. Peckman Federal Building, 280 South First Street, San Jose, California, Plaintiffs will, and hereby do, move for an order granting certification of a nationwide class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. This motion is based on the notice of motion and motion, the memorandum of points and authorities, the accompanying declarations of Jill M. Manning, Daniel L. Warshaw, John Austin Curry, David F.E. Tejtel, Alexander L. Simon, Christina Grace, and Ken Potter, the Expert Report of Professor Justine S. Hastings, Ph.D, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Plaintiffs respectfully request this Court enter an order:

1. Certifying a nationwide class as defined in the First Amended Class Action Complaint, ¶112:

> All owners of Apple iPhone 4 or Apple iPhone 4S devices in the United States who on April 16, 2014, had iOS 6 or earlier operating systems on their iPhone 4 or iPhone 4S devices.

2. Appointing Christina Grace and Ken Potter as Class Representatives.

3. Appointing Jill M. Manning of Steyer Lowenthal Boodrookas Alvarez & Smith LLP, Daniel L. Warshaw of Pearson, Simon & Warshaw LLP, John Austin Curry of Caldwell Cassady & Curry LLP, and David F.E. Tejtel of Friedman Oster & Tejtel PLLC, as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

In the alternative, Plaintiffs respectfully request this Court enter an order:

1. Certifying a California state class defined as:

> All owners of Apple iPhone 4 or Apple iPhone 4S devices in California who on April 16, 2014, had iOS 6 or earlier operating systems on their iPhone 4 or iPhone 4S devices.

**MEMORANDUM OF POINTS AND AUTHORITIES**

"We broke all iOS 6, and the only way to get FaceTime working again is to upgrade to iOS 7."
Gokul Thirumalai, Apple engineer, Cupertino, CA

"[O]ur users on [iOS 6] and before are basically screwed." ██████████████████████████

## I.  INTRODUCTION

This case arises from Apple's wrongful conduct in intentionally and surreptitiously causing the popular FaceTime feature to stop working on iPhone 4 and 4S devices running on pre-iOS 7 versions of iOS. After a jury found that Apple willfully infringed patents by utilizing its "peer-to-peer" method to connect FaceTime calls, only the non-infringing "relay method" remained. However, Apple began incurring substantial monthly charges related to the use of the relay method, so Apple developed a new FaceTime call connection protocol that would save Apple millions of dollars every month. Unbeknownst to Plaintiffs and the Class members, Apple had coded a certificate necessary for FaceTime to work on their devices to expire on April 16, 2014. As that date approached, Apple offered a fix that would protect millions of its customers from that certificate expiration. In order to force iPhone 4 and 4S users on pre-iOS 7 versions of iOS to use the new cost-eliminating protocol, however, Apple affirmatively elected to withhold from those individuals the same fix it extended to other customers. When the certificate expired as planned and expected (the "FaceTime Break"), FaceTime stopped working on every Class member's device. Despite knowing that the certificate was coded to expire on a date certain, and despite the ability to quickly and easily prevent it from doing so, Apple allowed the expiration to occur and then joked about the ██████████████. Class members then faced a Hobson's Choice: (1) forever lose the ability to use FaceTime on their device; (2) restore FaceTime to their device by irreversibly migrating to iOS 7, which would impair the functionality of their device; or (3) purchase a new device. The inability to use the FaceTime feature impacted the function and value of all Class members' devices. All Class members' devices lost value as a result of Apple's conduct.

1    Plaintiffs move to certify a nationwide class of all consumers who owned iPhone 4 or

2  4S devices that were running on iOS 6 or an earlier version on April 16, 2014. Each of the class

3  certification requirements of Rule 23 is satisfied. California law can be applied to the claims of

4  the nationwide class because the conduct forming the basis of the allegations in this case

5  occurred entirely within California – every single Apple employee and executive involved in

6  executing, implementing, approving, facilitating, and responding to the FaceTime Break –

7  worked in Cupertino, California, just a few miles from this Courthouse.

8    *Numerosity*: Apple's data identify the serial numbers of millions of devices owned by

9  Class members in each of the 50 states that Apple admits fall within the class definition.

10    *Commonality*:  Plaintiffs' evidence is capable of answering questions common to all

11  Class members, including whether (i) Apple coded the FaceTime certificate to expire on April

12  16, 2014, (ii) Apple affirmatively elected not to prevent the certificate from expiring and not to

13  extend to the Class the same fix extended to millions of its other customers, (iii) Apple

14  intentionally interfered with Plaintiffs' devices, (iv) Apple concealed the certificate expiration

15  from consumers, (v) iOS 7 impaired the functionality of iPhone 4 and 4S devices, and (vi)

16  damages from the FaceTime Break may be estimated using evidence common to the Class.

17    *Typicality*: Plaintiffs and Class members have suffered the same harm.

18    *Adequacy*: Plaintiffs and Proposed Class counsel have and will continue to vigorously

19  prosecute this litigation on behalf of the Class.

20    The evidence demonstrates that common questions predominate over any individual

21  ones. Apple engaged in a uniform course of conduct applicable to all Class members that

22  Plaintiffs will establish through common proof. This case turns on what Apple did and chose

23  not to do— conduct common to all Class members.

24    Restitution and damages can be calculated for each Class member based on well-

25  accepted economic methodologies using evidence common to the Class, consistent with

26  Plaintiffs' theory of liability. The Expert Report of Professor Justine S. Hastings, Ph.D. (the

27  "Hastings Report") uses a multivariate regression analysis and used smartphone prices to

28

demonstrate impact and damages caused by the FaceTime Break. The Hastings Report estimates the percentage diminution in value attributable to the FaceTime Break, and applies that amount to the total number of iPhone 4 and 4S devices owned by Class members which is determinable from Apple's data. Dr. Hastings has estimated the diminution in value as 12.72%, and class-wide damages of at least $455,684,338.

Although damages are substantial in the aggregate, the amount of per-device damage caused by Apple is too small to justify bringing individual lawsuits. Class litigation is the only mechanism available to provide relief to the millions of Class members nationwide who were damaged by Apple's intentional conduct. Absent a certified class, Apple effectively will be immunized from liability for its wrongful conduct and left to enjoy the profits from its scheme.

## II.     STATEMENT OF FACTS

### A.     Background of the iPhone 4, the iPhone 4S and FaceTime

On June 24, 2010 and October 14, 2011, Apple released the iPhone 4 and iPhone 4S, respectively.[1] Like all Apple iPhones, the iPhone 4 and iPhone 4S operate through Apple's proprietary iPhone operating system or iOS.[2] Released in 2010 in conjunction with the iPhone 4, FaceTime allows its users to engage in real-time audio/video calls.[3] Apple heavily touted FaceTime in marketing the iPhone 4, heralding the device as "the new iPhone 4 featuring FaceTime."[4] Apple's iPhone 4 advertisements focused on FaceTime's life-changing ability to bring together friends and loved ones[5] regardless of geographic distance and other challenges, particularly at life's most meaningful milestones. For example, Apple's iPhone 4 advertisements depicted a deployed soldier using FaceTime to "attend" his pregnant wife's

---

[1] *See Apple Presents iPhone* 4, apple.com (June 7, 2010), https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/; Defendant Apple's Inc.'s Answer to Plaintiffs' First Amended Complaint ("Answer") (Dkt. 66), ¶32.

[2] First Amended Class Action Complaint ("FAC") (Dkt. 36), at ¶3.

[3] Answer, ¶34; FAC, ¶35.

[4] *See Apple Presents iPhone 4*, *supra* note 1.

[5] *See* FAC, ¶4; Declaration of Jill M. Manning ("Manning Decl."), Ex. 1 (APL-GRACE_000000939); Ex. 2 (APL-GRACE_000000940); Ex. 3 (APL-GRACE_000000941); Ex. 4 (APL-GRACE_000000942); Ex. 5 (APL-GRACE_000000943).

sonogram appointment, and a hearing-impaired couple communicating over FaceTime in sign language.[6] FaceTime quickly became immensely popular, with Apple CEO Tim Cook reporting at a 2013 stockholders' meeting that 15-20 million FaceTime calls were made **daily**.[7]

Apple connected FaceTime calls in one of two ways: (1) the so-called peer-to-peer ("P2P") method, where a direct connection is formed between the caller and the callee; and (2) the so-called "relay method," where the caller and callee connect to a server that relays the data on behalf of the devices.[8]

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**B.   The *VirnetX* Verdict Dramatically Increases Apple's Relay Usage and Costs**

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ On November 7, 2012, however, a jury found that Apple's use of the P2P method willfully infringed on patents owned by VirnetX, Inc. ("VirnetX"), obligating Apple to pay VirnetX an ongoing royalty that exceeded the effective royalty for use of VirnetX's patents.[13]■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[6] *See* Carlos Merigo, *Apple iPhone 4 FaceTime:* Commercial, YouTube (June 7, 2010), https://www.youtube.com/watch?v=cKoLp_lGo14; *see also* Manning Decl., Ex. 6 (APL-GRACE-CCLOG00543300).

[7] *See* Juli Clover, *Apple Handles 'Several Billion' iMessages and 15 to 20 Million Facetime Calls* Daily, MacRumors (Feb. 28, 2014, 9:49 AM), http://www.macrumors.com/2014/02/28/apple-40-billion-imessages/.

[8] FAC, ¶5; Manning Decl., Ex. 7 (APL-GRACE_00102595, at 600) ■■■■■■■■■■■■■■■■■■■■■■■■■

[9] Manning Decl., Ex. 7 (APL-GRACE_00102595, at 600).

[10] Manning Decl., Ex. 8 (APL-GRACE_00050788).

[11] *See, e.g.*, Manning Decl., Ex. 9 (APL-GRACE_00000022); Ex. 10 (APL-GRACE_00099793) ("■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

[12] Manning Decl., Ex. 8 (APL-GRACE_00050788).

[13] *See* Manning Decl., Ex. 11.

[14] Manning Decl., Ex. 12 (APL-GRACE_00148220) ■■■■■■■■■■■■■■■■■■■■■■■■

-4-

1   Doing so dramatically increased both (i) Apple's relay usage, and (ii) Apple's relay usage-based

2   payments to Akamai. ████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████

6

7        **C.**    **Apple Seeks to Reduce Relay Usage Through iOS 7, Which Significantly Impairs The Functionality of iPhone 4 and 4S Devices**

8   ████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15       That expectation, however, assumed that substantially all Apple users would

16  voluntarily migrate to iOS 7, and thus ignored a critical fact: whereas iOS 7 presented a

17  potential panacea for Apple's relay usage issues, it significantly impaired the functionality of

18  iPhone 4 and iPhone 4S devices. Relative to all prior iOS versions, iOS 7— "the biggest change

19  to Apple's iOS since the arrival of apps in 2008"[21]—imposed a far greater processing burden on

---

[15] Manning Decl., Ex. 13 (APL-GRACE_00013055).

[16] Manning Decl., Ex. 9 (APL-GRACE_00000022); Ex. 14 (APL-GRACE_00000009); Ex. 15 (APL-GRACE_00010198) (████████████████████); Ex. 16 (APL-GRACE_00051571); Ex. 17 (APL-GRACE_00042431) (████████████████████

[17] Manning Decl., Ex. 18 (APL-GRACE_00001004); Ex. 19 (APL-GRACE_00017136) ████████████████████████████████████

[18] Manning Decl., Ex. 18 (APL-GRACE_00001004).

[19] Manning Decl., Ex. 21 (APL-GRACE_00099786).

[20] Manning Decl., Ex. 18 (APL-GRACE_00001004); Ex. 21 (APL-GRACE_00099786) ████████████████████████████████████

[21] *See* Gary Marshall, *iOS 7 vs iOS 6: how different are they?*, techrader (Sept. 19, 2013),

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES       Case No. 5:17-cv-00551-LHK-NC

the iPhone running it.[22] Whereas Apple designed iOS 7 specifically for iPhone 5 series devices with newer and more powerful hardware, the iPhone 4 and iPhone 4S contained older and weaker processing chips with roughly half of the onboard random access memory of the iPhone 5.[23] ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████ [24] iOS 7's substantial detrimental impact on iPhone 4 and iPhone 4S devices was compounded by the fact that, as Apple admits, "users who transitioned to iOS 7 were unable to revert back to earlier versions of iOS."[25]

Thus, large numbers of iPhone 4 and 4S owners resisted migrating to iOS 7.  Weeks after iOS 7's September 2013 release,[26] ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████ [27] Thus, Apple exploited its digital certificates to *force* customers to "upgrade."

**D.    Apple Exploits Its Digital Certificates to Force Customers to "Upgrade"**

Apple programs into its iPhones and other devices digital certificates that serve various functions,[28] ███████████████████████████████████████████████████████████████

---

[22] *See, e.g.*, Catherine Rampell, *Cracking the Apple Trap*, N.Y. Times (Oct. 29, 2013), https://www.nytimes.com/2013/11/03/magazine/why-apple-wants-to-bust-your-iphone.html ("When I called tech analysts, they said that the new operating system (iOS 7) being pushed out to existing users was making older models unbearably slow."); Sam Costello, *Should You Upgrade Your iPhone 4 to iOS 7?*, Lifewire (Feb. 28, 2018), https://www.lifewire.com/upgrade-iphone-4-ios-7-1999204 ("I'd be cautious . . . The combination will work, but it may be slower or more problematic than you'd like"). *See also* Manning Decl., Ex. 22 (APL-GRACE_00005636).

[23] Answer, ¶¶71-72.

[24] *See, e.g.*, Manning Decl., Ex.  23 (APL-GRACE_00002142) (████████████████████████████

████████████████████████████"; Ex. 24 (APL-GRACE_00002160) (same); Ex. 25 (APL-GRACE_00005860) ████████████████████████

[25] Answer, ¶79.

[26] *Id.*, ¶67.

[27] Manning Decl., Ex. 18 (APL-GRACE_00001004); Ex. 21 (APL-GRACE_00099786).

[28] *Cryptography Concepts In Depth*, developer.apple.com, https://developer.apple.com/library/content/documentation/Security/Conceptual/cryptoservices/ CryptographyConcepts/CryptographyConcepts.html#//apple_ref/doc/uid/TP40011172-CH8-CHDBIGCE.

-6-



[redacted]

[29] Manning Decl., Ex. 26 (APL-GRACE_00056772); Ex. 27 (APL-GRACE_00056875); Ex. 28 (APL-GRACE_00056973).
[30] *Id.*; *see also* Manning Decl., Ex. 29, at 197:12-203:23.
[31] Manning Decl., Ex. 30 (APL-GRACE_00005807); Ex. 31 (APL-GRACE_00005801); Ex. 32 (APL-GRACE_00005804); Ex. 33 (APL-GRACE_00044231).
[32] Manning Decl., Ex. 34 (APL-GRACE_00007274).
[33] Manning Decl., Ex. 35 (APL-GRACE_00025224) (emphasis added).
[34] Manning Decl., Ex. 36 (APL-GRACE_00025227); Ex. 37 (APL-GRACE_00017420) [redacted]).
[35] *See, e.g.*, Manning Decl., Ex. 38 (APL-GRACE_00013938); Ex. 39 (APL-GRACE_00013995); Ex. 40 (APL-GRACE_00034276); Ex. 41 (APL-GRACE_00002786); Ex.



42 (APL-GRACE_00008039); Ex. 43 (APL-GRACE_00049097); Ex. 44 (APL-GRACE_00035672); Ex. 45 (APL-GRACE_00022187); Manning Decl., Ex. 20 (APL-GRACE_00044254), at 44261; Manning Decl., Ex. 29, at 210:6-211:12.

[36] *See, e.g.*, Manning Decl., Ex. 42 (APL-GRACE_00008039)

[37] *See, e.g.*, Manning Decl., Ex. 46 (APL-GRACE_00054991); Ex. 47 (APL-GRACE_00010314, at 316)                                            ).

[38] *See* Manning Decl., Ex. 77 (APL-GRACE_00002959), at 2962.

[39] Manning Decl., Ex. 40 (APL-GRACE_00034276) (emphasis added) (

[40] Manning Decl., Ex. 48 (APL-GRACE_00099488, at 92) (emphasis in original).

[41] *Compare* Manning Decl., Ex. 26 (APL-GRACE_00056772) (
    ), to Ex. 27 (APL-GRACE_00056875) (

                                                 . Manning Decl., Ex. 49 (APL-GRACE_00004973), at 5006.

[42] Manning Decl., Ex. 50 (APL-GRACE_00012205); Ex. 40 (APL-GRACE_00034276)

1

2

3

4

5                                              FaceTime Break victims could not successfully place

6   FaceTime calls **to anybody** unless they irreversibly migrated to iOS7.

7       **E.      Apple Intended to and Did Break FaceTime on All Class Members' Devices**

8           At least one Apple employee recognized the gravity of the impending FaceTime Break,

9   stating via email on April 2, 2014: "[L]et me just voice my concern here.  Maybe someone can

10  talk me off the ledge by convincing me this is not as big a deal as I think."[45]

11

12

13

14

15                                                                          Apple

16  customers were "basically screwed

17

18

19

20

21

22

---

23

24  [43] Manning Decl., Ex. 50 (APL-GRACE_00012205).
    [44] Manning Decl., Ex. 29, at 124:23-125:16.
25  [45] FAC, ¶ 96; Manning Decl., Ex. 48 (APL-GRACE_00099491).
    [46] Manning Decl., Ex. 51 (APL-GRACE_00164166).
26  [47] Manning Decl., Ex. 52 (APL-GRACE_00002942).
    [48] FAC, ¶18; Manning Decl., Ex. 53 (APL-GRACE_00000988).
    [49] Manning Decl., Ex. 54 (APL-GRACE_00000994) (capitalization in original); *see also*
27  Manning Decl., Ex. 53 (APL-GRACE_00000988) (
    [50] Manning Decl., Ex. 20 (APL-GRACE_00044254), at 44267.

28

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████, those customers—and all Class members—knew only that suddenly, they could no longer connect to their loved ones. Concealing its engineering of the FaceTime Break, Apple feigned innocence and surprise, in the following statement:

> If you started to have issues making or receiving FaceTime calls after April 16, 2014, your device or your friend's device may have encountered a bug resulting from a device certificate that expired on that date. Updating both devices to the latest software will resolve the issue.[53]

From Apple's perspective, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[51] *See, e.g.*, Manning Decl., Ex. 55 (APL-GRACE_00003737) (█████████████████████████████ ████████████████).

[52] Manning Decl., Ex. 56 (APL-GRACE-CCLOG00531466); Ex. 57 (APL-GRACE-CCLOG00341391).

[53] *See* Dom Esposito, *Apple's fix for FaceTime woes in iOS 6? Upgrade to iOS 7*, 9to5mac.com (Apr. 24, 2014, 1:29 PM), https://9to5mac.com/2014/04/24/apples-fix-for-facetime-woes-in-ios-6-upgrade-to-ios-7/; *see also*, Manning Decl., Ex. 58 (APL-GRACE_00002982) (████████████████████████████████).

[54] *See, e.g.* Manning Decl., Ex. 59 (APL-GRACE_00052811).

[55] Manning Decl., Ex. 10 (APL-GRACE_00099793).

[56] Manning Decl., Ex. 10 (APL-GRACE_00099793); Ex. 60 (APL-GRACE_00099304) (████████████████████████████████); Ex. 61 (APL-GRACE_00015517) (████████████); Ex. 62 (APL-GRACE_00052567)████████.

[57] Manning Decl., Ex. 63 (APL-GRACE_00000018) (████████████████████████); Ex. 64 (APL-GRACE_00000015) (████████).

an Apple engineer candidly responded:

**We broke all iOS6, and the only way to get FaceTime working again is to upgrade to iOS7**."[60] Accordingly, all Class Members were affected by the FaceTime Break.

## III. ARGUMENT

The nationwide class (First Amended Class Action Complaint, ¶112), meets all requirements for certification under Rule 23.[61]

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a) - numerosity, commonality, typicality, and adequacy - and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124 (9th Cir. 2017) ("*Briseno*"). "The party seeking class certification bears the burden of demonstrating that by a preponderance of the evidence" these requirements are met. *Lilly v. Jamba Juice Co*., 308 F.R.D. 231, 236 (N.D. Cal. 2014) ("*Lilly*"). Any "doubts regarding the propriety of class

[58] Manning Decl., Ex. 52 (APL-GRACE_00002942). Manning Decl., Ex. 29 at 230:17-231:12.

[59] Manning Decl., Ex. 65 (APL-GRACE_00003930) (emphasis added); *see also id.* at 3940 Ex. 66 (APL-GRACE_00003872) ); Ex. 67 (APL-GRACE_00014721) ).

[60] FAC, ¶100; Manning Decl., Ex. 68 (APL-GRACE_00001002) (emphasis added); Ex. 69 (APL-GRACE_00052534)

[61] In the alternative, Plaintiffs seek certification of a California class which similarly meets all requirements of Rule 23.

-11-

certification generally should be resolved in favor of certification." *In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-02143-RS, 2017 WL 6448192, at *1 (N.D. Cal. Dec. 18, 2017) (quoting *Gonzalez v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)); *see also Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) ("*Wolph*"). The proposed Class satisfies the requirements of Rule 23(a).

### 1.    The Class Is Sufficiently Numerous

Plaintiffs meet the first requirement of Rule 23(a) because the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Where the precise class size is unknown, but "'general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *In re Static Random Access (SRAM) Antitrust Litig.*, No. C0701819CW, 2008 WL 4447592, at *3 (N.D. Cal. Sept. 29, 2008) (quoting 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:3 (4th ed. 2002)). "[A]s a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *2 (N.D. Cal. Apr. 15, 2016) ("*Mullins*").

The evidence demonstrates that ▮▮▮▮▮▮ iPhone 4 and 4S devices were running on pre-iOS 7 versions on April 16, 2014.[62] Additionally, Apple produced spreadsheets from its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[63] Apple itself admits that there are millions of Class members and that they are located in all 50 states, including California.[64]

The Class is objectively defined and ascertainable.[65] In addition to the data available in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[62] *See* Manning Decl., Ex.70 (APL-GRACE_00001993 - 2055).
[63] Manning Decl., Ex. 71 (APL-GRACE_00165349); Ex. 72 (APL-GRACE_00165350).
[64] Manning Decl., Ex.74 at 7:18-8:4.
[65] There is no "administrative feasibility" requirement in Rule 23. *Briseno*, 844 F.3d at 1126.
[66] Manning Decl., Ex. 73, at 23:19-48:7.

1

2

3  ███████████████████████████████████████████████████. In the unlikely event of any

4  uncertainties concerning class membership, they could easily be resolved at the claims

5  administration stage through submission of affidavits by Class members not identified in

6  Apple's data. *Briseno*, 844 F.3d at 1132. Thus, the proposed Class meets Rule 23(a)(1).

7  **2.    Questions of Law or Fact Are Common to the Proposed Class**

8  Rule 23(a)(2) requires "questions of law or fact common to the class." Plaintiffs must

9  therefore "show that this case involves common contentions and that a class wide proceeding

10  has the capacity 'to generate common answers apt to drive the resolution of the litigation.'"

11  *Mullins*, 2016 WL 1535057, at *3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

12  (2011) ("*Dukes*")); *see also Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2016 WL 3844326,

13  at *4 (N.D. Cal. July 15, 2016) ("*Opperman*"). "[F]or purposes of Rule 23(a)(2), even a single

14  common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283

15  (N.D. Cal. 2016) ("*Nitsch*") (quoting *Dukes*, 564 U.S. at 359).

16  Here, the Class members' claims rely on a common contention: that Apple perpetrated

17  the FaceTime Break. That allegation is capable of class-wide resolution, *i.e.*, "determination of

18  its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

19  one stroke." *Dukes,* 564 U.S. at 350. Other common questions include whether (i) █████████

20  ███████████████████████████████, (ii) Apple affirmatively elected not to prevent

21  the certificate from expiring and not to extend to the Class the same fix extended to millions of

22  others, (iii) Apple intentionally interfered with Plaintiffs' devices, (iv) Apple concealed the

23  certificate expiration, (v) iOS 7 impaired the functionality of iPhone 4 and 4S devices; and (vi)

24  damages caused by the FaceTime Break may be determined using common evidence.

25

26

27  [67] Manning Decl., Ex. 73, at 34:11-24; 38:1-39:19.

28  [68] Manning Decl., Ex. 73, at 31:3-32:1; 39:13-19.

-13-

3.      **Plaintiffs' Claims are Typical of the Proposed Class**

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016).  "[T]ypicality under Rule 23(a) is a permissive requirement and requires only that Plaintiffs' claims be 'reasonably co-extensive,' not 'substantially identical' with the proposed class members' claims." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 593 (N.D. Cal. 2015) ("*Yahoo*") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Such is the case here. On April 16, 2014, Apple broke FaceTime on all iPhone 4 and iPhone 4S devices running on iOS 6 or an earlier operating system. This is true irrespective of how individuals used their iPhones, including their FaceTime usage and the number and type of applications installed. *See Wolph*, 272 F.R.D. at 486. An April 17, 2014 internal Apple email states, █████████████████████████████████████████████████████████████████. So our users on Sundance and before are basically screwed?"[69] Thus, Plaintiffs assert the same claims predicated upon Apple's conduct. *See In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *4 (N.D. Cal. Dec. 23, 2010) ("*Online DVD Rental*"), *aff'd sub nom. In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) (inquiry focuses on the defendants' conduct).

Here, the two proposed Class Representatives owned iPhone 4 devices that were running iOS 6 or an earlier version on April 16, 2014. *See* Declaration of Ken Potter in Support of Plaintiffs' Motion to Certify a Nationwide Class ("Potter Decl."), ¶5; Declaration of Christina Grace in Support of Plaintiffs' Motion to Certify a Nationwide Class ("Grace Decl."), ¶4. As a result of the FaceTime Break, both lost the ability to use the FaceTime feature on their devices, and the devices lost value as a result. Potter Decl., ¶¶7-8; Grace Decl., ¶¶3-5. The claims of the

---

[69] FAC, ¶102; Manning Decl., Ex. 53 (APL-GRACE_00000988).

proposed Class Representatives match – and are thus typical of – the claims of the Class members. Accordingly, the requirement of Rule 23(a)(3) is met here.

### 4. Plaintiffs Will Adequately Represent the Interests of the Class

A named plaintiff satisfies the adequacy test if she has no conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985. "[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n. 2 (9th Cir. 2001)). Moreover, "the mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 359 (N.D. Cal. 2011) ("*Berrien*"); *see Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts."). Here, Plaintiffs' interests do not conflict with those of absent Class members. Plaintiffs allege that all Class members were injured by the same conduct in the same way. Plaintiffs and all Class members seek the same relief, and share an identical interest in proving Apple's liability and the resulting damages. Potter Decl., ¶¶8-9, Grace Decl., ¶5. Plaintiffs have actively participated in the litigation and will continue to do so. Potter Decl., ¶12; Grace Decl., ¶9.

Plaintiffs have retained skilled counsel, with extensive experience prosecuting unfair business practices, class actions and other complex disputes, to represent the interests of the Class members. Plaintiffs' Counsel have vigorously pursued this litigation on behalf Plaintiffs and the Class. They have devoted the substantial time and resources necessary to prosecute this action, and will continue to do so. Plaintiffs and their chosen counsel will adequately represent the proposed Class through trial and appeal to successfully resolve this litigation on behalf of the Class.[70] Thus, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4), and Proposed Class Counsel meet the requirements of Rule 23(g).

---

[70] *See* Manning Decl., ¶¶3-9; Ex. 76; Declaration of J. Austin Curry, Ex. 1; Declaration of

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES                                    Case No. 5:17-cv-00551-LHK-NC

**B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs meet both the predominance and superiority prongs of Rule 23(b)(3) which "encompasses 'those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Wahl v. Am. Sec. Ins. Co.*, No. C 08-00555 RS, 2010 WL 1881126, at *8 (N.D. Cal. May 10, 2010) (quoting Fed. R. Civ. P. 23 1966 Advisory Committee's note).

**1.    Common Issues Predominate**

Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to class-wide proof.' What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 469 (2013) (citation omitted, brackets and emphasis in original). The focus of the predominance inquiry is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)); *see also In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *17 (N.D. Cal. Oct. 27, 2016) ("*Lenovo*"). This "inquiry involves weighing and evaluating the common and individual issues in the case." *Brown v. The Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *15 (N.D. Cal. Nov. 18, 2014). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)); *see also Lenovo*, 2016 WL

---

Daniel L. Warshaw, Ex. 1; Declaration of David F.E. Tejtel, Ex. 1.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES                                                                 Case No. 5:17-cv-00551-LHK-NC

6277245 at *17. As set forth herein, the overarching common questions predominate over any individualized issues. "The predominance inquiry begins with the elements of the underlying causes of action." *Lenovo*, 2016 WL 6277245 at *17. The elements of Plaintiffs' trespass to chattels and UCL claims are susceptible to proof on a class-wide basis.

### a.  Unfair Competition Law Claim

"Claims under the UCL… do not require[] individualized proof of reliance, deception, or causation." *Kumar v. Salov N. Am. Corp*., No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 n.9 (N.D. Cal. July 15, 2016) ("*Kumar*"); *see also Zeisel v. Diamond Foods, Inc*., No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011); *Wolph*, 272 F.R.D. at 488. Because the focus here is on Apple's conduct (not anything the Plaintiffs or Class did or did not do), common questions predominate over any issues affecting individual Class members.

To prevail, Plaintiffs must satisfy the applicable "'balancing test,' which examines whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010)). Plaintiffs' claims arise from Apple's uniform scheme to cause FaceTime to stop working on certain iPhone devices in order to, *inter alia*, reduce Apple's mounting relay usage costs. ██████████████████████████ ████████████████████████████████████████████████████████—and subsequent election to, *inter alia*, withhold from the Class the fix that Apple extended to other users—is uniform to all Class members and provable with common evidence. Where, as here, "a plaintiff's claim under the 'unfair' prong 'hinges on the existence of a uniform business practice or series of practices amenable to some degree of precise definition,' certification of a Rule 23(b)(3) class may be warranted." *Newton v. Am. Debt Serv., Inc*., No. C-11-3228 EMC, 2015 WL 3614197, at *10 (N.D. Cal. June 9, 2015) (quoting *Herskowitz v. Apple, Inc*., 301 F.R.D. 460, 476 (N.D. Cal. 2014)); *see also Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d

718, 737 (9th Cir. 2007) (affirming certification of class action under UCL's unfairness prong where district court "found that Lozano's claim was based on uniform disclosures made by [Defendant] to all its consumers"); *Berrien*, 276 F.R.D. at 362-63 (certifying UCL claim because whether harm of business practice was outweighed by benefits was a class-wide issue).

### b.  Trespass to Chattels Claim

"Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.'" *Grace v. Apple Inc*., No. 17-CV-00551, 2017 WL 3232464, at *11 (N.D. Cal. July 28, 2017) (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003)). Common issues predominate in Plaintiffs' trespass to chattels claim because Apple's intentional interference was identical for each Class Member. The evidence adduced to date shows that Apple intentionally interfered with the Class members' devices by causing the FaceTime feature to stop working and thereby devaluing the devices. This claim rests entirely on what Apple did to interfere with the devices and whether that conduct constitutes a cognizable interference under trespass law. Where, as here, the elements of Plaintiffs' claims focus on a defendant's conduct, common issues predominate. *Lenovo*, 2016 WL 6277245, at *17 (finding Lenovo's decision to install VirtualDiscovery on class members' laptops was subject to common proof).

### 2.    The Court May Apply California Law to the Claims of Non-Resident Class Members

A nationwide class should be certified because Apple's challenged conduct occurred entirely within California, where Apple maintains its headquarters. California's fundamental interest in preventing unfair business practices within its borders would be far more impaired than the interest any other state might have in applying its own consumer protection laws.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Estakhrian v. Obenstine*, 320 F.R.D. 63, 86 (C.D. Cal. 2017) (quoting *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012) ("*Mazza*") (internal quotation marks omitted)). "Under California's choice of law rules, the

-18-

class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK, 2017 WL 5235649, at *20 (N.D. Cal. Nov. 10, 2017) ("*Qualcomm*") (quoting *Mazza*, 666 F.3d at 589 (citation and internal quotation marks omitted)); *see also Opperman*, 2016 WL 3844326, at *10; *Wolph*, 272 F.R.D. at 485–86. The first step of the California choice-of-law analysis ensures that application of California law to the claims of nonresident class members comports with constitutional due process. *Qualcomm*, 2017 WL 5235649, at *20 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) ("*Phillips*")). Plaintiffs easily meet this test because Apple's conduct which injured each class member was committed entirely in California.

### a.   Applying California Law is Neither Arbitrary nor Unfair

Applying California law to the claims of non-residents is not arbitrary or unfair because California has "a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interest[].'" *Phillips*, 472 U.S. at 821 (citation omitted). Apple is a California corporation with its principal place of business in Cupertino, California.[71]

[BLACK REDACTED BLOCK]

[72] Moreover, Apple's iOS "Terms of Service" Agreements – upon which Apple relies in defending this action – include a California choice-of-law provision mandating that the agreements "be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law

---

[71] Answer, ¶29; Manning Decl., Ex. 75, at 1:7-14.
[72] Manning Decl., Ex. 29, at 78:19-83:1; 97:4-106:13; 123:20-124:8; 168:13-169:24; Ex. 75.

1   principles."[73] *See Pecover v. Electronic Arts Inc*., No. C 08-2820 VRW, 2010 WL 8742757, at

2   *19 (N.D. Cal. Dec. 21, 2010) ("*Pecover*") (California choice-of-law provision in EA contracts

3   "indicate that EA was prepared to litigate in California").

4        California and federal courts have certified nationwide class actions against Apple

5   finding the "sufficient aggregation of contacts" test met by Apple's California headquarters, and

6   Apple's decision making in California that affects consumers throughout the country.

7   *Opperman*, 2016 WL 3844326 at *10; *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224,

8   242 (2001). The same reasoning has been applied to nationwide class claims against other

9   companies headquartered in California where decisions made in California injured consumers

10   both within and outside California. *Forcellati v. Hyland's, Inc*., No. CV 12-1983-GHK MRWX,

11   2014 WL 1410264, at *1-2 (C.D. Cal. Apr. 9, 2014); *Ehret v. Uber Techs., Inc*., 68 F. Supp. 3d

12   1121, 1130–32 (N.D. Cal. 2014); *Allen v. Hyland's, Inc.*, 300 F.R.D. 643, 656-58 (C.D. Cal.

13   2014); *Wolph,* 272 F.R.D. at 485–86; *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164,

14   1186–89 (2015).

15        **b.  No State Has a Greater Interest in Having its Law Applied**

16        Upon showing California's state interest, "the burden shifts to the other side to

17   demonstrate that foreign law, rather than California law, should apply to class claims."

18   *Qualcomm*, 2017 WL 5235649 at *20 (quoting *Mazza*, 666 F.3d at 590 (citation and internal

19   quotation marks omitted)). Apple will be unable to meet its burden because California's

20   fundamental interest in preventing unfair business practices within its borders is superior to the

21   interest of any other state in applying its law.

22        Applying California's three-part test, this Court found that California law applied to the

23   nationwide class in *Qualcomm* despite a true conflict among the state antitrust laws at issue in

24   that case. 2017 WL 5235649, at *21. Here, as in *Qualcomm*, California has the same compelling

25

─────────────────────────────

26   [73] Apple represented in support of its motion to dismiss that "[t]he Agreements are therefore integral to the claims alleged in the First Amended Complaint, and the Court may consider them

27   here." Defendant Apple Inc.'s Request for Judicial Notice (Dkt. 39), at 2:5-6.

28

interest in addressing unfair and unlawful business practices committed in California, and no

other state has any interest in policing unfair business practices committed in California. "[I]n

cases involving [California] resident defendants, foreign states do not have a legitimate interest

in limiting the amount of recovery for nonresident plaintiffs under California law.'" *Id.* (quoting

*Pecover*, 2010 WL 8742757, at *20). Conversely, California has a strong interest in enforcing

its laws enacted to protect "the Public … from fraud and deceit," and preserve "fair business

competition." *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d. 94, 110 (1972). Accordingly,

because "California's consumer protection laws are among the strongest in the country….,

California's more favorable laws may properly apply to benefit nonresident plaintiffs when their

home states have no identifiable interest in denying such persons full recovery.'" *Wershba*, 91

Cal. App. 4th at 242-43 (quoting *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal. App. 3d 605, 616,

(1987)).[74] Thus, this Court may constitutionally apply California law to the claims of all Class

members.

### 3. Damages and Restitution Can be Calculated on a Class-wide Basis

Under Rule 23(b)(3), Plaintiff must show that "damages are capable of measurement on

a classwide basis." *Mullins*, 2016 WL 1535057, at *6 (quoting *Comcast Corp. v. Behrend*, 569

U.S. 27, 34 (2013) ("*Comcast*"). That means proposed damages model "measures only those

damages attributable to that theory of liability." *Id.* "Often, this will impose only a very limited

burden." *Lilly*, 308 F.R.D. at 244. "The 'potential existence of individualized damage

assessments ... does not detract from the action's suitability for class certification.'" *McMillion

v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6,

2017) (quoting *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1089 (9th Cir. 2010)). *See

also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("We have

repeatedly confirmed ... that the need for individualized findings as to the amount of damages

---

[74] Even if Apple were able to show material differences between California's unfair competition or trespass to chattels laws and the laws of any other state, Apple would be unable to meet its burden of showing that foreign law should apply to the claims of any Class member because, on the facts presented here, California's interest in applying its favorable consumer protection laws outweighs any interest any other state might have in applying its own law.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES                                      Case No. 5:17-cv-00551-LHK-NC

does not defeat class certification."); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *11 (N.D. Cal. Feb. 21, 2017) ("As a general matter, differences in damages will rarely suffice to defeat class certification.").

Dr. Hastings has presented a workable and widely accepted methodology for demonstrating class-wide harm and measuring class-wide damages. Dr. Hastings has constructed an econometric damages model which shows that the FaceTime Break caused all Class members' iPhone 4 and 4S devices to lose value. As Dr. Hastings explains, "a damages 'analysis considers the difference between the plaintiff's economic position if the harmful event had not occurred and the plaintiff's actual economic position.'" Hastings Report, ¶37. The harmful event is the FaceTime Break and the harm is the diminution in value. *Id*. Dr. Hastings uses a multivariate regression analysis to calculate the resale price of Class members' devices "but-for" the FaceTime Break, and "compare the estimated but-for price to the actual resale prices to calculate damages" caused by the FaceTime Break. *Id*., ¶38. Regression analyses such as those performed by Dr. Hastings have been widely accepted in granting motions for class certification in UCL and antitrust cases. *See, e.g.*, *Pettit v. Procter & Gamble Co*., No. 15-CV-02150-RS, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017); *Kumar*, 2016 WL 3844334, at *10; *In re High-Tech Employee Antitrust Litig*., 289 F.R.D. 555, 579-82 (N.D. Cal. 2013).

Dr. Hastings's model uses transactional data produced by third-party resellers of smart phone devices (including iPhones).[75] Dr. Hastings then uses multivariate regression analysis to essentially compare the prices during the time period affected by the FaceTime Break to the prices during the time when the market was unaffected. Hastings Report, ¶39. Dr. Hastings' model in this case controls for a variety of factors, including supply and demand factors that affect the price of a used phone such as age, brand, color, storage size and condition, the "primary factors" considered by customers in deciding how much to pay for used phones, and the release of new phone models, macroeconomic factors and seasonal effects. Hastings Report, ¶¶41-44. Dr. Hastings uses the "Dummy Variable Approach" for estimating damages. This

---

[75] Declaration of Alexander L. Simon, ¶¶5-8; Hastings Report, ¶¶38, 46; Table A3.

1   Approach incorporates a "dummy variable" which captures the impact of the harmful act

2   relative to the "but-for" price." *Id.*, ¶41. The model produces an estimate of the impact of the

3   FaceTime Break on prices of used iPhone 4 and 4S models and concludes that, in fact, the

4   prices were impacted by an estimated 12.72% reduction in value. *Id.*, ¶54; Table 2. By applying

5   the estimated diminution in value to the mean sale price of iPhone 4 and 4S devices directly

6   before the FaceTime Break, and using the presently known number of Class members, Dr.

7   Hastings can reliably estimate damages of at least $455,684,338. *Id.*, ¶¶58-60.

8          Those damages stemmed from Apple's unlawful conduct: the diminution in value is

9   attributable to the FaceTime Break, and thus is directly tied to Plaintiffs' theory of liability,

10  which Plaintiffs have shown above is subject to proof through evidence common to the

11  proposed class. *See Leyva v. Medline Indus*. Inc., 716 F.3d 510, 514 (9th Cir. 2013) (citing

12  *Comcast*, 569 U.S. at 35). That Apple's conduct could also have caused other types of damages

13  is not an impediment to class certification. As this Court has instructed, "Plaintiffs are not

14  required to pursue claims or remedies that would preclude class certification." *Yahoo*, 308

15  F.R.D. at 595 (citing *Kennedy v. Jackson Nat'l Life Ins. Co*, No. 10-07-0371 CW, 2010 WL

16  2524360, at *5 (N.D. Cal. June 23, 2010) ("Defendant cannot claim that Plaintiff is inadequate

17  because she declines to assert a theory that could unravel the putative class.")).

18         Dr. Hastings' model likewise uses common evidence and establishes a measure of

19  class-wide damages. As the Ninth Circuit recently held, "the fact that the amount of damage

20  may not be susceptible of exact proof or may be uncertain, contingent or difficult of

21  ascertainment does not bar recovery." *Lambert v. Nutraceutical Corp*., 870 F.3d 1170, 1182

22  (9th Cir. 2017) ("*Lambert*") (quoting *Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979,

23  989 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016) ("*Pulaski*").

24         Here, Dr. Hastings has presented a workable and widely-accepted methodology for

25  measuring class-wide restitution and damages thus far exceeding Rule 23's requirement that

26  Plaintiffs merely identify a damage methodology that is not "so insubstantial as to amount to no

27  method at all." *In re Apple iPod iTunes Antitrust Litig.*, No. C 05-00037 JW, 2011 WL

28

5864036, at *3 (N.D. Cal. Nov. 22, 2011) (quoting *Online DVD Rental*, 2010 WL 5396064, at *11). The proposed method "need not be exact" but "must be consistent with [the plaintiffs'] liability case." *Comcast*, 569 U.S. at 35 (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Plaintiffs have presented "a likely method for determining class damages" and "it is not necessary to show that [plaintiffs'] method will work with certainty at this time." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks omitted) (quoting *In re Tableware Antitrust Litigation*, 241 F.R.D. 644, 652 (N.D. Cal. 2007)).[76]

### 4.    A Class Action Is a Superior Method by Which to Adjudicate Plaintiffs' Claims

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In *Wolin v. Jaguar Land Rover North America, LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010), the Ninth Circuit reversed the district court's order denying class certification, finding that "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification . . ." The same analysis applies here where individual recovery is not large such that litigation as a class action presents an efficient and superior method of adjudication of Plaintiffs' claims. "As Judge Posner has observed, '[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.'" *Opperman*, 2016 WL 3844326, at *17 (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). Indeed, "[c]ases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for class-wide prosecution."

---

[76] The same is true for Plaintiffs' restitution claim. *Pulaski*, 802 F.3d at 989. "In calculating damages, here restitution, California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Id.* (citation omitted). *See also Lambert*, 870 F.3d at 1183 ("Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving."). Similarly, "the availability of punitive damages is amenable to classwide resolution." *Opperman*, 2016 WL 3944326, at * 17.

1   *Mullins*, 2016 WL 1535057, at *8 (quoting *Hanlon*, 150 F.3d at 1023). Moreover, no other

2   related or individual actions have been filed elsewhere. *See Larson v. TransUnion, LLC*, No.

3   12-cv-05726-WHO, 2015 WL 3945052, at *14 (N.D. Cal. Jun. 26, 2015). Thus, a class action is

4   superior to the alternative of "zero individual suits."

5           **C.**    **The Proposed Class Meets the Requirements of Rule 23(b)(2)**

6         Plaintiffs seek injunctive relief to remedy Apple's continuing wrongful conduct.

7   "[I]n an appropriate case, a Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified

8   where there is a real basis for both damages and an equitable remedy." *Ellis*, 285 F.R.D. at

9   538, n. 37 (quoting *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 (7th

10   Cir. 2011), *cert. denied*, 565 U.S. 878 (2011)). "'Rule 23(b)(2) allows a class action to be

11   maintained where 'the party opposing the class has acted or refused to act on grounds that

12   apply generally to the class, so that final injunctive relief or corresponding declaratory

13   relief is appropriate respecting the class as a whole.' Fed. R. Civ. P. 23(b)(2)." *Wit v.*

14   *United Behavioral Health*, 317 F.R.D. 106, 118, 136 (N.D. Cal. 2016). Certification under

15   Rule 23(b)(2) is proper because Apple's wrongful conduct affected all Class members in

16   the same way.

17     **IV.**    **CONCLUSION**

18         For the foregoing reasons, Plaintiffs respectfully request the Court enter an order: (a)

19   granting certification of a nationwide or, in the alternative, a California class; (b) appointing

20   Plaintiffs Christina Grace and Ken Potter as Class Representatives; and (c) appointing Jill M.

21   Manning, Daniel L. Warshaw, John Austin Curry, and David F.E. Tejtel as Class Counsel.

22   Date:   May 4, 2018               Respectfully submitted,

23

24                        By:    */s/ Jill M. Manning*
                            Jill M. Manning

25                    STEYER LOWENTHAL BOODROOKAS

26                      ALVAREZ & SMITH LLP

27

28

-25-

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF
POINTS AND AUTHORITIES                           Case No. 5:17-cv-00551-LHK-NC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Allan Steyer (State Bar No. 100318)
D. Scott Macrae (State Bar No. 104663)
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (State Bar No. 96241)
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
bsimon@pswlaw.com
dwarshaw@pswlaw.com
asimon@pswlaw.com

FRIEDMAN OSTER & TEJTEL PLLC
David F.E. Tejtel (*admitted pro hac vice*)
240 East 79th Street, Suite A
New York, New York 10075
Telephone: (646) 661-5881
Email: dtejtel@fotpllc.com

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*admitted pro hac vice*)
Jason D. Cassady (*admitted pro hac vice*)
John Austin Curry (*admitted pro hac vice*)
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com

*Counsel for Plaintiffs and Proposed Counsel for
the Class*

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY A NATIONWIDE CLASS; MEMORANDUM OF
POINTS AND AUTHORITIES                                                    Case No. 5:17-cv-00551-LHK-NC