IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:13-CV-211 |
| | § | |
| **APPLE INC.** | § | REDACTED |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER

Before the Court is VirnetX Inc.'s ("VirnetX") Motion for an Ongoing Royalty (Docket No. 10). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** VirnetX's Motion. Apple Inc. ("Apple") is **ORDERED** to pay VirnetX an ongoing royalty rate of 0.98% on adjudicated products and products not colorably different from those adjudicated at trial that incorporate any of the FaceTime or VPN On Demand features found to infringe at trial.

## BACKGROUND

On August 11, 2010, VirnetX filed suit alleging that Apple and several other defendants infringed U.S. Patent Nos. 6,502,135 ("the '135 Patent"), 7,418,504 ("the '504 Patent), 7,490,151 ("the '151 Patent), and 7,921,211 ("the '211 Patent) (collectively, "the patents-in-suit"). *See VirnetX, Inc. v. Cisco Systems, Inc. et al.*, No. 6:10–cv–417, Docket No. 1 ("*Apple I*"). The '135 and '151 Patents generally describe a method for transparently creating a virtual private network ("VPN") between a client computer and a target computer, while the '504 and '211 Patents disclose a secure domain name service.

Specifically, VirnetX accused Apple's VPN On Demand and FaceTime of infringement. Both features establish secure communications, with Apple's FaceTime providing a secure communication link for users when video-chatting. Apple's VPN On Demand seamlessly creates a VPN when a user requests access to a secure website or server.

A jury trial regarding the instant suit commenced on October 31, 2012. At trial, VirnetX contended that Apple infringed claims 1, 3, 7, 8 of the '135 Patent; claims 1 and 13 of the '151 Patent; claims 1, 2, 5, 16, 21, and 27 of the '504 Patent; and claims 36, 37, 47 and 51 of the '211 Patent. Apple responded that its FaceTime and VPN On Demand features did not infringe the patents-in-suit, and that the asserted claims were invalid. Following a five-day trial, the jury returned a verdict that the '135, '151, '211, and '504 Patents were not invalid, and that Apple infringed the asserted claims. To compensate VirnetX for Apple's infringement, the jury awarded VirnetX $368,160,000 in damages.

To prevent Apple's continuing infringement of the patents-in-suit, VirnetX then requested a permanent injunction, or in the alternative, that the Court set an ongoing royalty rate. *Apple I*, Docket No. 621. The Court denied VirnetX's request for a permanent injunction; however, the Court gave the parties an opportunity to negotiate a license before setting an ongoing royalty rate. *See Apple I*, Docket No. 732 at 42. Unable to reach an agreement with Apple, VirnetX again requested the Court set an ongoing royalty rate enhancing the implied royalty rate of .52% found by the jury to 1.52%. Docket No. 10 at 1.[1]

## APPLICABLE LAW

"Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314

---

[1] The Court severed the ongoing royalty rate issue into Cause No. 6:13-cv-211 to bring finality to the original case, *VirnetX Inc. v. Cisco Sys., Inc. et al.*, Cause No. 6:10-cv-417.

2

(Fed. Cir. 2007). When determining the amount of an ongoing royalty, the Court must consider the change in the legal relationship between the parties to avoid incentivizing defendants "to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." *Id.* at 628. Accordingly, "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361–62 (Fed. Cir. 2008). Therefore, an ongoing post-verdict royalty may appropriately be higher than the jury's pre-verdict reasonable royalty.

## ANALYSIS

*Ongoing Royalty Rate*

VirnetX argues the implied royalty rate should be trebled because of changed circumstances in light of the *Georgia-Pacific* factors and Apple's now willful infringement. Docket No. 10 at 2, 9.[2] VirnetX contends that because Apple is now an adjudged infringer, the

---

[2] The most common approach to determine a reasonable royalty is using the *Georgia-Pacific* factors to consider what the accused infringer and patent owner would have contemplated if the parties had negotiated a license to the asserted patent(s) before the infringement took place. The factors include: (1) "[t]he royalties received by the patentee for licensing of the patent-in-suit"; (2) royalties paid for other patents comparable to the asserted patents; (3) "[t]he nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; (4) [t]he licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly; (5) [t]he commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter; (6) [t]he effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales; (7) [t]he duration of the patent and the term of the license; (8) [t]he established profitability of the product made under the patent; its commercial success; and its current popularity; (9) [t]he utility and advantages of the [patented invention] over the old modes or devices, if many, that had been used for working out similar results; (10) [t]he nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention"; (11) the extent of the licensee's use of the patented invention "and any evidence probative of the value of that use; (12) [t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; (13) [t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer; (14) [t]he opinion testimony of qualified experts; and (15) [t]he amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a

3

bargaining positions of the parties would have dramatically shifted in favor of VirnetX. Docket No. 10 at 5. Apple's continuing infringement post-trial, and its inability to easily implement the non-infringing alternatives discussed at trial, also favor increasing the implied royalty rate. *Id.* at 6–8. Additionally, VirnetX argues its licenses to the patents-in-suit support enhancing the royalty rate. *Id.* at 4. VirnetX's licenses were negotiated when the validity and infringement of the patents were disputed, therefore the royalty rates were slightly discounted to account for the uncertainty. Since validity and infringement are no longer an issue following the Court's judgment in this case, VirnetX contends that a higher royalty rate than VirnetX's prior licenses would have been negotiated between the parties. *Id.* at 4-5. VirnetX concedes that the patents-in-suit have a shorter term now, but argues this only slightly favors decreasing the royalty rate. *Id.* at 5.

VirnetX also contends the implied royalty rate should be enhanced in light of the *Read* factors because Apple's post-judgment infringement is willful. Docket No. 10 at 9. VirnetX argues that six of the nine *Read* factors support increasing the implied royalty rate. Specifically, VirnetX argues the rate should be enhanced because Apple is an adjudged infringer and the patents are valid; Apple cannot maintain a good faith belief that the patents are not invalid or not infringed; Apple engaged in litigation misconduct; Apple is a large and profitable company; and Apple has failed to implement a non-infringing alternative. *Id.* at 9–11.

Apple counters that neither the *Read* nor *Georgia Pacific* factors support increasing the implied royalty rate. Apple argues the only change in circumstances is the jury's verdict, which

---

business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). To determine an ongoing royalty, a modified *Georgia-Pacific* analysis can be conducted, which focuses on the changed circumstances from the original hypothetical negotiation and the negotiation that would occur post-judgment. *See Mondis Tech. Ltd. v. Chimei Innolux Corp.*, 822 F. Supp. 2d 639, 647 (E.D. Tex. 2011).

4

is insufficient itself to modify the implied royalty rate. Docket No. 18 at 7. Apple notes the jury already considered related licenses, and VirnetX's latest license with Siemens is no different from those presented at trial. *Id.* at 8–9. Apple also argues the verdict does not significantly change the parties' respective bargaining positions because the prior hypothetical negotiation already assumed the patents were valid, infringed, and enforceable. *Id.* at 9. Apple further asserts it is not a willful infringer because it continues to have a reasonable and good faith belief that the patents-in-suit are invalid, as evidenced by its efforts to invalidate the patents-in-suit at the United States Patent and Trademark Office ("PTO"). *Id.* at 11-12. Apple argues its efforts at the PTO also demonstrate that the case in this Court was close. *Id.* at 12. Accordingly, Apple urges the Court to reduce the implied royalty rate, because it has successfully implemented a non-infringing FaceTime feature and it is currently working on a design-around for the VPN On Demand feature. *Id.* at 3–5, 13.

Both parties agree the Court should first consider the jury's implied royalty rate. 08/15/13 Hr'g Tr. at 7:11–17. VirnetX requests the Court to treble the jury's implied royalty rate based on changed circumstances between the original hypothetical negotiation in 2009 and the hypothetical negotiation that would occur post-judgment in 2013. Because the Court is using the implied royalty rate as a starting point for determining the ongoing royalty rate, "the Court focuses on any new evidence that was not before the jury." *Mondis Tech., Ltd. v. Chimei Innolux Corp.*, 822 F. Supp. 2d 639, 647 (E.D. Tex. 2011).

VirnetX's primary argument for increasing the rate involves its licenses for the patents-in-suit with other companies. While VirnetX concedes its license with Siemens was the only license not considered by the jury, VirnetX argues that all of its licenses would have been weighed differently at a negotiation post-judgment. Docket No. 10 at 4–6. Additionally,

5

VirnetX alleges these licenses, including its new license with Siemens, demonstrates its continued success in licensing its patents and companies' willingness to license its patented technology. *Id.* While the jury has considered most of these licenses, VirnetX's licensing efforts up to 2009 were not nearly as successful as its efforts up to 2013. *See Mondis*, 822 F. Supp. 2d at 648 (finding an improvement in licensing success warranted "an increase [in the royalty rate] from the jury's determination"). Accordingly, VirnetX's increased commercial success supports increasing the implied royalty rate.

The only other major circumstance that has changed—aside from willfulness which the Court will address next—is Apple's non-infringing alternatives. Apple argues the royalty rate should be decreased to account for Apple's FaceTime design around. Docket No. 18 at 3. However, the cost of implementing a non-infringing alternative instead of licensing the patents-in-suit was presented to the jury. At trial, Apple's corporate representative, Mr. Gates, stated that it would cost Apple only $3.6 million to route all its FaceTime calls via relay servers, which VirnetX admits is non-infringing. *Apple I*, 11/2/12 a.m. Tr. 68:3–17. Mr. Gates further stated that it would be "a very simple change to make to route all the traffic through the relay," noting it would only take about two weeks to implement the changes. *Id.* at 71:20–21; *Id.* at 109:19–110:16. Thus, while the jury already considered some of this evidence, it did not hear the whole story.

When VirnetX sought a permanent injunction post-trial, Apple dramatically reversed course, estimating it would cost at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Apple I*, Docket No. 653, Ex. 2 at 2; *id.* Ex. 3 at 3; *see Apple I*, Docket No. 732 at 41. Apple also argued it required ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

███████████████████████████████████████████████████████

████████████████████████████████ *Apple I*, Docket No. 653 at 3, 5. Apple's miscalculations were even more apparent at the August 2013 ongoing royalty hearing, when Apple stated it paid ████████ to route FaceTime calls though relay servers for just ████████ and it had yet to implement a non-infringing VPN On Demand feature. 08/15/13 Hr'g Tr. at 48:25–49:4; *id.* at 49:12–22 ("And again, Apple is working toward its VPN On Demand design-around this fall."). While Apple has taken steps to mitigate its infringement, Apple grossly misrepresented its ability to implement a non-infringing alternative to the jury. The huge disparity between Apple's position at trial and Apple's position post-judgment also warrants increasing the implied royalty rate.

In light of the changed circumstances, the reasonable royalty rate should be increased by 25% to 0.65%. However, Apple's ongoing willful infringement must also be considered. *See Internet Machines LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 U.S. Dist. LEXIS 115723, at *64–67 (E.D. Tex. June 19, 2013); *Soverain v. J.C. Penney*, 899 F. Supp. 2d 574, 589 (E.D. Tex. 2012). As an initial matter, Apple argues VirnetX impermissibly presumed Apple was a willful infringer. Docket No. 18 at 5. However, "[f]ollowing a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances." *Affinity Labs. Of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899 (E.D. Tex. 2011). As there are no such circumstances present, the Court must determine how much the implied royalty rate should be enhanced to account for Apple's ongoing willful infringement.

The *Read* factors provide guidance in determining whether and how much damages should be enhanced in light of Apple's ongoing willful infringement. These factors include: (1) """

7

whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).

Both parties agree factor one, eight, and nine are neutral. Docket No. 10 at 9, 11; Docket No. 18 at 11. Factors three and six are also neutral as there was no evidence Apple engaged in any litigation misconduct and it is unclear how long Apple will continue to willfully infringe. *See Apple I*, Docket No. 732 at 44 (declining to award attorney's fees because Apple did not appear to act in bad faith). The remaining four factors support enhancing the implied royalty rate.

Apple concedes factor four supports slightly enhancing the implied royalty rate in light of Apple's size and finances. Docket No. 18 at 12. Additionally, factors two and five strongly favor enhancement. While Apple contends it is not a willful infringer because it has a good faith belief that the patents-in-suit are invalid and that it does not infringe, the jury's verdict and this Court's judgment do not support Apple's belief. *See Soverain*, 899 F. Supp. 2d at 589 (finding a Defendant could no longer assert a good faith belief of non-infringement or invalidity after the jury's verdict); *see also Affinity Labs.*, 783 F. Supp. 2d at 902 (rejecting Defendants' argument that its continued infringement post-judgment was not willful because the asserted claims of the patents-in-suit were rejected in a pending reexamination). Finally, factor seven also slightly

8

favors enhancement. While Apple has taken steps to implement non-infringing alternatives, Apple has not ceased all infringement. Considering four factors favor enhancing the implied royalty rate, the ongoing royalty rate is increased 50% to 0.98%.

*Products*

VirnetX also asks the Court to apply the ongoing royalty to all Apple devices running iOS 3.0 or later and Apple Mac computers running Apple's Mountain Lion OS or later, including unadjudicated products, that incorporate FaceTime and VPN On Demand. *Id*. at 14. VirnetX argues that the accused FaceTime and VPN ON Demand features remain unchanged in all Apple products, therefore the Court should apply the ongoing royalty to all of Apple's products that incorporate the infringing functionalities. Apple did not contest VirnetX's characterization of the features. *See* Docket Nos. 18, 23. Accordingly, the Court sees no reason not to include unadjudicated products that incorporate any of the FaceTime or VPN On Demand features found to infringe at trial in the ongoing royalty base. *Cf. Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:09-cv-203, 2013 U.S. Dist. LEXIS 37275, at *15–16 (E.D. Tex. Mar. 15, 2013) (not including unadjudicated models in the ongoing royalty base where it was unclear whether the models were colorably different from the adjudicated models, and the potential number of products was unknown and could have increased after more discovery). However, to ensure the ongoing royalty is not overly broad, the royalty shall only apply to adjudicated products and products not colorably different from those adjudicated at trial, including but not limited to the iPhone 5, iPod Touch 5th Generation, iPad 4th Generation, and the iPad Mini.

## CONCLUSION

Accordingly, for the foregoing reasons, VirnetX's Motion to Set an Ongoing Royalty Rate is **GRANTED IN PART** and **DENIED IN PART**. Apple shall pay VirnetX an ongoing

royalty of 0.98% on adjudicated products and products not colorably different from those adjudicated at trial that incorporate any of the FaceTime or VPN On Demand features found to infringe at trial. The Clerk is directed to close Cause No. 6:13-cv-211.

**So ORDERED and SIGNED this 25th day of February, 2014.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**