1    R.  Alexander Pilmer (SBN 166196)
     Tanya L. Greene (SBN 267975)
2    KIRKLAND & ELLIS LLP
     333 South Hope Street
3    Los Angeles, California 90071
     Telephone: (213) 680-8400
4    Facsimile (213) 680-8500
     Email: alexander.pilmer@kirkland.com
5            tanya.greene@kirkland.com

6    Joseph A. Loy (admitted *pro hac vice*)
     KIRKLAND & ELLIS LLP
7    601 Lexington Avenue
     New York, New York 10022
8    Telephone: (212) 446-4800
     Facsimile: (212) 446-4900
9    Email: joseph.loy@kirkland.com

     Joshua H. Lerner (SBN 220755)
     Sonal N. Mehta (SBN 222086)
     Eugene Novikov (SBN 257849)
     Stephen Elkind (admitted *pro hac vice*)
     DURIE TANGRI LLP
     217 Leidesdorff Street
     San Francisco, California 94111
     Telephone: (415) 362-6666
     Facsimile: (415) 236-6300
     Email: jlerner@durietangri.com
            smehta@durietangri.com
            enovikov@durietangri.com
            selkind@durietangri.com

10   Attorneys for Defendant
     *Apple Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 5:17-CV-00551-LHK (NC)<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY A NATIONWIDE CLASS**<br><br>Judge:  Hon. Lucy H. Koh<br>Dept.:  Courtroom 8—4th Floor<br>Date:  August 2, 2018<br>Time:  1:30 p.m. |

REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ......................................................................................2

    A.      Apple Coded the Digital Certificate in 2007 and Did Not Discover That it Might Impact FaceTime Until October 2013...........................................................2

    B.      Apple Released iOS 7.0.4 to Solve the Digital Certificate Expiration; Tens of Millions of Consumers Updated at No Cost. ..............................................3

    C.      Apple's Fixed-Fee Agreements For Relay Usage Were Not Impacted By The Certificate Expiration...........................................................................3

    D.      The Certificate's Expiration And Its Effect on the iPhone Trade-in Market.............5

    E.      Plaintiffs' Lawsuit. ........................................................................................5

III. ARGUMENT ..........................................................................................................6

    A.      Legal Standard ..............................................................................................6

    B.      Plaintiffs Do Not Satisfy Rule 23(a)'s Typicality Requirement. ................................7

        1.      Plaintiff Grace Is Atypical. ............................................................................7

        2.      Plaintiff Potter Is Atypical. ...........................................................................7

    C.      The Proposed Class Does Not Meet the Requirements For Certification Under Rule 23(b)(3).....................................................................................10

        1.      Individual Issues Predominate Over Issues Common To The Proposed Class.......................................................................................10

        2.      Plaintiffs Have Not Demonstrated That A Class Action Is Superior To Other Methods of Adjudicating This Controversy. ........................................24

    D.      The Proposed Class Does Not Meet the Requirements For Certification Under Rule 23(b)(2).....................................................................................24

IV. CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014) ...................................................................................24

*Brazil v. Dole Packaged Foods*,
   12-cv-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ...............................18

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ...................18, 19, 22, 24

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)......................................................................................2, 7, 13, 14

*Davidson v. Apple, Inc.*,
   No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018) ........................14

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...........................................................................23

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012)....................................................................................25

*Ferrington v. McAfee, Inc.*,
   10-cv-01455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .....................................17, 18

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) .............................................................................1, 14, 18

*Forcellati v. Hyland's, Inc.*,
   No. CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)............................24

*Grace v. Apple Inc.*,
   No. 17-CV-00551, 2017 WL 3232464 (N.D. Cal. July 28, 2017)..........................10, 23

*Grodzitsky v. Am. Honda Motor Co. Inc.*,
   No. 2:12-CV-01142-SVW, 2014 WL 718431 (C.D. Cal. Feb. 19, 2014) .........................21, 22, 23

*Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.*,
   21 Cal. App. 4th 862 (1994) ...........................................................................................15

*Hanni v. Am. Airlines, Inc.*,
   No. C 08-00732 CW, 2010 WL 1576435 (N.D. Cal. Apr. 19, 2010).............................24

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................................7, 9

*Hernandez v. Burger*,
    102 Cal. App. 3d 795 (1980) ......................................................................................22

*Herskowitz v. Apple, Inc.*,
    301 F.R.D. 460 (N.D. Cal. 2014)......................................................................12, 13, 25

*In re High-Tech Employee Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ......................................................................21

*Intel v. Hamidi*,
    30 Cal. 4th 1342 (2003) ..........................................................................................10, 11

*In re iPhone 4S Consumer Litig.*,
    No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ...........................23

*Jamgotchian v. Slender*,
    170 Cal. App. 4th 1384 (2009) ...................................................................................23

*Kaczmarek v. Int'l Bus. Machines Corp.*
    186 F.R.D. 307 (S.D.N.Y. 1999) ..................................................................................8

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
    634 F.3d 883 (7th Cir. 2011) ......................................................................................25

*Kimes v. Grosser*,
    195 Cal. App. 4th 1556 (2011) ...................................................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..............................................................................................17

*Mateo v. V.F. Corp.*,
    No. C 08-05313 CW, 2009 WL 3561539 (N.D. Cal. Oct. 27, 2009) ...........................8

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................19, 21, 22, 23

*Mazza, Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011)................................................................................23

*Opperman v. Path, Inc.*,
    No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. Jul. 15, 2016)...........................24

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017)......................................................................22

*Philips v. Ford Motor Co.*,
    No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) .....................18

*In re Qualcomm Antitrust Litig.*,
    292 F. Supp. 3d 948 (N.D. Cal. 2017) ........................................................................22

*Rutledge v. Hewlett-Packard Co.*,
    238 Cal. App. 4th 1164 (2015) ................................................................................23

*Till v. Saks Inc.*,
    C 11–00504 SBA, 2013 WL 575561 (N.D. Cal. Sept. 30, 2013) ...............................10

*Villa v. United Site Servs. of California, Inc.*,
    No. 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) ..................24

*VirnetX, Inc. et al. v. Apple Inc.*,
    12-cv-855-RWS (E.D. Tex) ..........................................................................................4

*VirnetX, Inc. v. Cisco Sys, Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)....................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................6, 25

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .....................10

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ......................................................................................23

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015)....................................................................21, 22, 23

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir.), *amended by*, 273 F.3d 1266 (9th Cir. 2001) ....................6, 24

**Rules**

Rule 23 .........................................................................................................................1, 6

Rule 23(a) ..................................................................................................................1, 6, 7

Rule 23(a)(3) ...................................................................................................................7

Rule 23(b) ...................................................................................................................6, 7

Rule 23(b)(2) ........................................................................................................2, 13, 25

Rule 23(b)(3)................................................................................................... *passim*

## I.      INTRODUCTION

This case is not a good fit for a class action.  Plaintiffs ask the Court to certify a nationwide class on the theory that some owners of iPhone 4 or 4S devices were permanently deprived of using FaceTime on iOS 6 thereby suffering harm.  In fact, the certificate expiration caused no such harm. Before and after the expiration, millions of people upgraded their phones to iOS 7.  Those who upgraded before never lost FaceTime; those who did so shortly after, quickly regained FaceTime at zero cost. Even class members who might have cared about the temporary loss of FaceTime have very different claims—some immediately restored FaceTime, some did so after a delay, and others jailbroke their phones and compromised performance.  Plaintiffs' choice of law is also flawed—there is no reason a nationwide class should sue under California's trespass to chattels or unfair competition law.  The class suffers from another equally important and fatal flaw:  Plaintiffs' damages theory is untethered to their liability theory.  The class fails under Rule 23 for several reasons.

*First*, Plaintiffs fail to establish Rule 23(a)'s typicality prerequisite.  For example, Christina Grace ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████

Mr. Potter ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

*Second*, Plaintiffs have not met their burden of establishing Rule 23(b)(3) predominance.  The factual and legal analysis regarding Plaintiffs' claims will differ among those consumers 1) who never used FaceTime, 2) who restored FaceTime immediately, 3) who waited for months to restore FaceTime, 4) who jailbroke their phones, or 5) who were unaware of the certificate's expiration.  Likewise, whether any individual class member suffered any damage at all depends on myriad variables relating to their use of the phone, and the device itself, such as age, storage capacity, condition, and model. Moreover, Plaintiffs' own "Hobson's choice" theory demonstrates that consumers make individualized

1    decisions about whether and when they restore FaceTime.

2           In addition, nationwide class certification is not appropriate because significant differences exist

3    amongst the states regarding Plaintiffs' unfair competition and trespass to chattels claims.

4           *Third*, Plaintiffs' classwide damages theory is not tied to their liability theory.  Plaintiffs now

5    present a diminution in value theory that they claim relates to their allegations regarding the loss of

6    FaceTime.  Yet Plaintiffs' damages model calculates the same diminution in value for iPhones that lost

7    FaceTime capability as those that did not.  Plaintiffs' damages model therefore does not "measure only

8    those damages attributable" to Plaintiffs' liability theory.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35

9    (2013).  In addition, Plaintiffs present no benchmark measure for the value of these phones with

10   FaceTime running iOS 6 because no such data exists.

11          *Fourth*, Plaintiffs do not meet Rule 23(b)(3)'s superiority requirement because the class

12   contains unidentifiable class members, many of whom upgraded their devices shortly after April 16,

13   2014, and thus never lost the ability to use FaceTime.

14          *Finally*, Plaintiffs' proposed class may not be certified under Rule 23(b)(2) because the

15   substantial damages Plaintiffs seek are not "incidental" to their claim and no single injunction or

16   declaratory judgment would apply to each member of the proposed class.

17   **II.    STATEMENT OF FACTS**

18          **A.    Apple** ███████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████████████████

20   ███████████████████████████████████████.  *See* ECF No. 174 at Ex. 27 (APL-

21   GRACE_00056875 at 881). ███████████████████████████████████████

22   *Id*. ████████████████████████████████████████████████████████████.

23   Rubin Decl. ¶¶ 33, 39. █████████████████████████████████████████████

24   ████████████████████████████████████████████████," Pilmer[1] Ex. 18 at 27:7-

25   11.  In June 2010, Apple debuted FaceTime with its release of the iPhone 4.  In October 2011, Apple

26

27   ───────────────
     [1] "Pilmer Ex." refers to the exhibits to the Declaration of R. Alexander Pilmer in Support of Defendant

28   Apple Inc.'s Opposition to Plaintiffs' Motion to Certify a Nationwide Class, filed concurrently
     herewith.

1  released the iPhone 4S.  ECF No. 36 (FAC), ¶¶ 31-32, 35; Rubin Decl. ¶¶ 20-24.

2       On September 18, 2013, Apple released iOS 7.  ECF No. 36, ¶ 9; Rubin Decl. ¶ 26. ▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Pilmer Ex. 18 at 97:4-9

5  ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *also*

6  ECF No. 174, Ex. 33 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮); Ex. 39 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮  Far from devising a scheme to "break" FaceTime, Apple worked

9  diligently to rectify the problem as soon as it was discovered.  *See id.*

**B.**  **Apple Released iOS 7.0.4 to Solve the Digital Certificate Expiration; Tens of Millions of Consumers Updated at No Cost.**

     Apple considered several potential solutions for resolving the issues presented by the digital certificate expiration.  *See* Pilmer Ex. 1 at 6.  Ultimately, Apple decided that the best solution was to encourage iPhone 4 and 4S users to upgrade to iOS 7, as Apple provided a resolution to the expiration in iOS 7.0.4.  *See id.*; Rubin Decl. ¶ 29.

     Between September 2013 (when iOS 7 was first released) and April 2014, ▮▮▮▮ of iPhone 4 and 4S users upgraded to iOS 7.  Pilmer Ex. 4 (APL-GRACE_0000001956), at 7-8; Ex. 21.  Because Apple had resolved the certificate expiration issue in iOS 7, these users never experienced any interruption in FaceTime.  *See* Rubin Decl. ¶ 29.  After Apple released iOS 7 in September 2013, it continued to issue upgrades to iOS 7 through 2013 and early 2014.  The release note for iOS 7.0.4 in November 2013 indicates that it specifically addressed the ability to make FaceTime calls.  Rubin Decl. ¶ 29, Ex. 4, 7.  Apple released iOS 7.1 on March 10, 2014.  Rubin Decl. ¶ 31.  This upgrade was specifically designed to improve performance for the iPhone 4.  *Id.*  Apple released iOS 7.1.1 on April 22, 2014, *id.* ¶ 95, and then iOS 7.1.2 on June 30, 2014, *id.* ¶ 26.  Between the end of April 2014 and April 2015, more than ▮▮▮▮ iPhone 4 and 4S users updated their devices to a version of iOS 7. Pilmer Ex. 21.

**C.**  **Apple's** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

     Plaintiffs' theory that Apple "broke" FaceTime in order to reduce payments to Akamai to 2012

3



levels is not borne out by the facts.[2] ████████████████████████████

████████████████████████████████. *See* Pilmer Ex. 2 (Thirumalai Dep. Tr.) at

110:15-18 ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████. Pilmer Ex. 24 (Akamai Dep. Tr.) at 34:1-35:19.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████). Pilmer Exs. 5, 25, 26, 27 &

28. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Pilmer Ex. 24 at 61:7-62:3;

212:13-213:17.

████████████████████████████████████████████████████████████████████

████████████████████████████████. *Id.* at 70:2-71:13.

████████████████████████████████. *Id.*, at 73. ████████████████████

████████████████████████████████████████████████████████████████████.

*Id.* at 77:1-22; 210:11-211:9. ████████████████████████

████████████████████████ Pilmer Exs. 45 & 46.

---

[2] Plaintiffs rely heavily on allegations and inferences from *VirnetX* as Apple's alleged motivation for "breaking" FaceTime, but that case has nothing to do with the putative class issues here. VirnetX asserted infringement by FaceTime of two patents (both have been declared unpatentable by the PTO). *See VirnetX, Inc. v. Cisco Sys, Inc.*, 767 F.3d 1308 (Fed. Cir. 2014); *see also* Federal Circuit Dkt. Nos. 17-1591, -1592, -2593, -2594 (ongoing appeals of invalidity proceedings). On November 6, 2012, an Eastern District of Texas jury (10-cv-417) found that FaceTime in iOS 4-6 infringed the patents-in-suit. *Id.* The Federal Circuit later reversed the infringement finding and vacated the damages on September 16, 2014. *Id.* at 1334. In the meantime, the parties returned to the trial court to assess infringement and damages; but the trial court found that consolidation with a later-filed action (12-cv-855), and Texas class counsel's statements and questioning of witnesses, caused sufficient prejudice to Apple that the Court deconsolidated the cases and ordered retrials in both. Pilmer Ex. 19. The retrial in the -417 Action concluded in September 2016, and that case is currently on appeal at the Federal Circuit (and has been designated a "companion" case to the PTO appeals and will be argued before the same merits panel). The retrial in the second action recently concluded and is in the midst of post-trial briefing. *VirnetX, Inc. et al. v. Apple Inc.*, 12-cv-855-RWS (E.D. Tex) (ECF No. 773) (setting briefing schedule). Meanwhile, the invalidity of every asserted patent claim is pending appeal at the Federal Circuit. Dkt. Nos. 17-1591, -1592, -2593, -2594. While Apple contests the allegations in Plaintiffs' class certification motion related to *VirnetX*, other than the illogical alleged motivation, which is irrefutably false, the references to the *VirnetX* matter are irrelevant to the instant opposition and thus Apple will reserve its responses for that case rather than waste this Court's time here.

**D.      The Certificate's Expiration And Its Effect on the iPhone Trade-in Market.**

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████ Pilmer Ex. 8 at 1. ███████████████

████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

*See* Pilmer Ex. 3 at 46:10-12, 48:15-19 (██████████████████████████

█████████████; Pilmer Ex. 7 at 27:22-28:25 (██████████████████████

███████████████; Pilmer Ex. 17 at 25:9-22 (██████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

*Id.* ████████████████████████████████████████████████████████████

████████████████████████████

**E.      Plaintiffs' Lawsuit.**

Plaintiff Christina Grace filed this action on February 2, 2017.  ECF No. 1.  On April 5, 2017, Plaintiffs filed a First Amended Complaint (FAC), adding Ken Potter as a plaintiff.  ECF No. 36. ███████████████████████████████████. Pilmer Ex. 9 (Grace Dep. Tr.) at 83:15-84:3. In her complaint, Ms. Grace alleged that "Apple's disabling of FaceTime has 'interfered with Plaintiff Grace's use of her iPhone 4 because' Grace has been 'unable to use the FaceTime feature.' which has 'significantly reduced the value of Plaintiff Grace's iPhone 4.'"  ECF No. 65 (Order Denying Motion to Dismiss), at 5-6 (quoting FAC at ¶ 24).  ██████████████████████████████████████████ Pilmer Ex. 9 at 103:15-104:3. ███████████████████████████████████████████████████████████████ ██████ *Id. at* 83:15-84:3, 164:2-22. ████████████████████████████████ ████████████████████████████████ Rubin Decl. ¶¶ 61-64. ██████████████████████████████████████████████████████████

1    █████ Pilmer Ex. 11 (Potter Dep. Tr.) at 50:14-51:23. ████████████████████

2    ████. *Id.* at 222:5-22. ████████████████████████████████████. *Id.* at

3    223:24-224:5.

4           In the FAC, Mr. Potter alleged that after April 16, 2014, he "eventually purchased an iPad for

5    his family and a new iPhone 5S . . . 'in order to have both a functional smartphone and mobile access

6    to FaceTime.'"  ECF No. 65 (Order Denying Motion to Dismiss), at 6 (quoting FAC, ¶ 28). ████████

7    ████████████████████████████████████████████████████████████████████████

8    ████████████████. Pilmer Ex. 11 at 133:25-134:13 ████████████████████████

9    ████; 145:16-147:16 (████████████████████████████████████████████████████

10   ████████████████████████████████████████████████. *Id. at*

11   19:10-14; 27:4-18; 145:2-146:20.

12       ████████████████████████████████████████████████████████

13   ████████████████████████████. *Id. at* 152:17-22. ██████████████████████

14   ██████████████████████████████████████." *Id. at* 227:9-24; 228:3-19.

15   **III.    ARGUMENT**

16       **A.    Legal Standard**

17          Plaintiffs "bear the burden of demonstrating" that they have "met each of the four requirements

18   of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Zinser v. Accufix Research Inst.,*

19   *Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by*, 273 F.3d 1266 (9th Cir. 2001).  "Before certifying a

20   class, the trial court must conduct a rigorous analysis to determine whether the party seeking

21   certification has met the prerequisites of Rule 23."  *Id.*  (internal quotation marks omitted).  "Frequently

22   that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."

23   *Wal-Mart Stores, Inc. v. Duke*s, 564 U.S. 338, 351 (2011).  Rule 23 "does not set forth a mere pleading

24   standard.  Rather, a party must not only be prepared to prove that there are *in fact* sufficiently numerous

25   parties, common questions of law or fact, typicality of claims or defenses, and adequacy of

26   representation, as required by Rule 23(a).  The party must also satisfy through evidentiary proof at least

27   one of the provisions of Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal

28   quotation marks and citations omitted).

**B.      Plaintiffs Do Not Satisfy Rule 23(a)'s Typicality Requirement.**

The purpose of Rule 23(a)(3)'s typicality requirement is to assure that "the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).   The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*.   Ms. Grace and Mr. Potter's unique experiences with FaceTime and their devices render their claims atypical.

**1.      Plaintiff Grace Is Atypical.**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Pilmer Ex. 9 at 83:15-84:3, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pilmer Ex. 9 at

85:1-86:4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pilmer Ex. 9 at 41:22-43:9; 96:7-21; 106:1-

23 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); 20:6-8 (▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮s).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Rubin Decl. ¶¶ 61-64. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pilmer Ex. 9 at 10:5-12.[3]; 103:15-104:3.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮  Pilmer Ex. 9 at 168:1-13 ("▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮); 181:25-183:5; 70:12-71:5.

Pilmer Ex. 9 at 106:24-107-4.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**2.      Plaintiff Potter Is Atypical.**

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Pilmer Ex. 9 at 47:11-25; 92:2-12.

Concerns that a plaintiff tampered with the product at issue or used it improperly give rise to unique defenses that threaten to overtake the merits of a litigation, rendering them either atypical or inadequate. *Kaczmarek v. Int'l Bus. Machines Corp.* 186 F.R.D. 307, 313 (S.D.N.Y. 1999); *see also Mateo v. V.F. Corp.*, No. C 08-05313 CW, 2009 WL 3561539, at *4 (N.D. Cal. Oct. 27, 2009) (violations of policy render class representative atypical).

████████████████████████████████████████████████████████████████

██   Pilmer Ex. 11 at 50:14-51:23.█████████████████████████████████

██████████████████████████████   *Id.* at 19:10-14; 27:4-18; 145:2-146:20.[4]

Mr. Potter's claims based on his █████ 32GB iPhone 4 are atypical.   ███████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████   Rubin Decl. ¶ 46.   ████

███████████████████████████████████████████████████████e, Pilmer Ex. 11

at 214:20-215:9, ████████████████████████████████.   Rubin Decl. ¶¶ 70-105

(███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.   Trexler Rpt. at

55; Pilmer Ex. 7 at 34:24-37:19 (█████████████████████).

Like Ms. Grace, ████████████████████████████████████████

████████████████████████████████████████████.   Pilmer Ex. 11 at 230:5-234:1

(███████████████████████████████████); Rubin Decl. ¶ 93 (████████████

███████████████████████████████).

Mr. Potter's █████████ also subjects him to unique defenses.   *See Hanon,* 976 F.2d at 508.

(typicality not met where plaintiff's "unique background and factual situation require him to prepare to

---

[4] Mr. Potter alleged that he was "forced" to purchase new devices in order to regain the ability to use FaceTime.  ECF No. 36, ¶ 28.  In fact, he had purchased those devices before April 16, 2014.  Pilmer Ex. 11 at 133:19-134:13 (███████████████████████████████); *also* 145:2-146:15 (████████ ████████ (the iPad referenced in ¶ 28 of the FAC)████████████████, contrary to allegation that he purchased this iPad "in order to resume FaceTime communication" with his family).  While there could conceivably be class members who purchased new devices in order to regain FaceTime, Mr. Potter isn't one of them.

1   meet" atypical defenses). ██████████████████████████ iOS Software License

2   Agreement, which forbids "modify[ing] . . . the iOS Software, or any part thereof." *See* ECF No. 35-

3   1 (Apple iOS Software License Agreement at Section 2(c)). ████████████████████

4   ██████████████████████████████ Pilmer Ex. 14, █████████████

5   ████████████████████████████████████████████████████.

6   *See generally* Rubin Decl. ¶¶ 70-105; *also Kaczmarek*, *supra*.

7   ██████████████████████████████████████████████

8   ██████████████████████████." Rubin Decl. ¶ 75. ████████████

9   ██████████████████████████████████████████████."

10  *Id.* ████████████████████████████████████

11  ████████████████████████████████████████." *Id.* ¶¶ 76-86.

12  ████████████████████████████████████████████s." *Id.*

13  ¶ 91. ██████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ██████   *Id.* ¶ 93.

16  ████████████████████████████████████. *Id.* at 152:17-22.[5] ███

17  ██████████████████████████████████████. *Id.* As such, he was only

18  temporarily deprived of using FaceTime on this device and cannot assert a trespass to chattels claim.

19  *See Intel v. Hamidi*, 30 Cal. 4th 1342, 1357 (2003) (trespass to chattels claim requires deprivation for

20  a substantial time; "A mere momentary or threatened deprivation of use is not sufficient unless there

21  was a dispossession."). Accordingly, his alleged injury differs from someone who may have actually

22  lost the ability to make FaceTime calls. *See Till v. Saks Inc.*, C 11–00504 SBA, 2013 WL 5755671, at

23  *6 (N.D. Cal. Sept. 30, 2013).

24  ───────────────────

25  [5] ████████████████████████████████████████████████████

26  ██████████████████████████Pilmer Ex. 11 at 168:3- 169:16 ████

27  ████████████████████████████████████████████████████

28  ██████████████*See* Rubin Decl. ¶¶ 70-93 ████████████████████████████ Trexler Rpt. at 18-20.

C.    **The Proposed Class Does Not Meet the Requirements For Certification Under Rule 23(b)(3)**

   1.    **Individual Issues Predominate Over Issues Common To The Proposed Class.**

"For a class action to be certified under Rule 23(b)(3), the class representative must show that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014) (Koh, J.) (quoting FED. R. CIV. P. 23(b)(3)).

   a.    **Plaintiffs' Two Claims Require Analysis Of Issues Affecting Individual Members of the Proposed Class.**

Individual questions predominate for each of Plaintiffs' claims.  Whether a class member sustained any legally-cognizable harm from a performance-related issue from restoring FaceTime will also require an individualized inquiry.  Plaintiffs have presented no real evidence of performance issues regarding iOS 7.1—the applicable operating system on April 16, 2014—on the iPhone 4 or 4S.[6]  For class members who restored FaceTime, a fact-specific inquiry is required to determine the reason for any performance issues.  This inquiry includes, at a minimum, the device's use pattern, storage data, configuration, model, jailbreaking, tampering, damage, or unauthorized repair. Rubin Decl. ¶¶ 48-59. Each of these issues will be unique to each device.

   i.    **Trespass to chattels**.

In order to establish liability on their trespass claim, Plaintiffs must show "that the purported trespass: (1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time." ECF 65 at 19.  "In particular, an actionable deprivation of use 'must be for a time so substantial that it is possible to estimate the loss caused thereby.  A mere momentary or theoretical deprivation of use is not sufficient unless there is a dispossession.'" *Intel*, at 1357.

---

[6] At the motion to dismiss stage, the Court was required to accept as true Plaintiffs' allegation that iOS 7 subjected the "iPhone 4 and iPhone 4S to substantially reduced functionality," *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *9 (N.D. Cal. July 28, 2017).  But with the benefit of discovery, it is now evident that the two devices would respond differently to iOS 7 (and that neither was incompatible with it). Rubin Decl. ¶¶ 106-109. Here, Plaintiffs continue to rely on popular press articles (which are inadmissible hearsay) and internal testing data for iOS 7 before iOS 7 was released. The time for Plaintiffs to have presented admissible evidence to support their performance allegations was with their moving papers here.

1    Plaintiffs do not allege any physical damage.  Nor can they support a claim for impairment of

2    their device's "condition, quality or value" without an individualized analysis.  As described above,

3    Plaintiffs have failed to establish a negative impact on the performance of an iPhone 4 and 4S by

4    updating to iOS 7.1, and their proposed damages model cannot calculate any such loss caused by the

5    alleged deprivation of FaceTime because it applies equally to devices that never suffered an interruption

6    of FaceTime.

7        To determine whether the deprivation of FaceTime was for a "substantial time," and not merely

8    "momentary or theoretical" requires millions of individualized inquiries.  Before April 16, 2014, all

9    potentially affected consumers could have updated to an iOS 7 version that would ensure the continued

10   availability of FaceTime.  *See* Pilmer Ex. 1, at 6; Pilmer Ex. 18 at 124:9-14; 131:23-132:7; 135:3-16.

11   In fact, more than ▮▮▮▮▮▮ iPhone 4 and 4S owners updated their devices before April 16, 2014, and

12   ▮▮▮▮▮ more updated their devices to iOS 7.1 (or a later version) after April 16, 2014.  Pilmer Ex. 4

13   (APL-GRACE_000001956) at 7-8.

14       For those who updated after April 16, 2014, whether they could state a claim would depend on

15   each individual experience.  Consumers who updated on April 17, 2014 were not permanently deprived

16   of using FaceTime.  Likewise, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮ have sustained no more than an inactionable, "theoretical" deprivation of use.

18   Those consumers who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would have much different arguments about

19   potential liability than those like Ms. Grace.

20       This claim also requires an individualized inquiry into whether class members sold or traded in

21   their devices after April 16, 2014.  More than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮.  Trexler Rpt. at 44.  Setting aside the practical impossibility of identifying those

23   individuals, determining whether their ability to use FaceTime was impacted at all, and whether they

24   suffered any injury would require an individual analysis of each transaction.  Trexler Rpt. at 30

25   (describing "characteristics specific to each individual member" of the class' device, including model,

26   color, physical condition, memory, and carrier).  This is particularly important because the trade-in

27   prices of many class members' devices *increased* in the two and a half months after the certificate

28   expiration.  Trexler Rpt. at 46-51.

1    Finally, Plaintiffs seek recovery for diminution in value on this claim.  But the value of any

2    given phone depends on at least the following factors: the model (iPhone 4 or 4S); storage capacity

3    (8GB, 16GB, 32GB, or 64 GB); cellular carrier (AT&T, Sprint, T-Mobile U.S. Cellular, or Verizon);

4    condition (potentially five grades, ranging from poor to excellent, with some phones' condition

5    precluding any value); jailbroken or not; and age (iPhone 4 devices were sold new between June 2010

6    and Sept. 2013).  Trexler Rpt. at 30.  In order to determine whether any class member suffered any

7    injury immediately upon the certificate's expiration requires an examination of each of these

8    individualized factors.

9                          ii.        **Violation of the UCL**.

10          As for Plaintiffs' UCL claim, in addition to the individualized issues addressed above,

11   determining whether conduct violates that statute's "unfair" prong requires courts to "weigh the utility

12   of the defendant's conduct against the gravity of the harm to the alleged victim."  ECF No. 65 at 25

13   (internal quotation marks omitted).  This Court's decision in *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460

14   (N.D. Cal. 2014) is instructive.  There, the Court denied class certification to a class of consumers who

15   alleged Apple charged them multiple times for the same products, finding that class members likely

16   suffered different harms.  *Id.* at 476.  Though it might "be possible to determine harm uniformly for

17   each of these (and other) possible scenarios, determining which scenario applies to any given class

18   member will require individualized inquiries," and therefore found the "harm" element of plaintiffs'

19   UCL claim "unlikely to be susceptible to common resolution."  *Id.*

20          The UCL gravity of harm analysis here is more individualized than in *Herskowitz* because

21   measuring that harm depends on 1) whether or not the consumer restored FaceTime, and if so, 2) when

22   they did and then 3) whether they suffered any performance-related issues as a result.  As to the first

23   inquiry, a different gravity of harm would apply to a consumer who never restored FaceTime on her

24   device, compared to the consumer who updated her device on April 17, 2014, the day after the

25   certificate expiration.  In the month of May 2014, more than ████████ putative class members restored

26   FaceTime to their phones.  Trexler Rpt. at 9-10.  In June 2014, more than ██████ additional putative

27

28

1  class members did so.[7]  *Id*. at 10.  Plaintiffs offer no reasonable suggestion for how to weigh the relative

2  gravity of harm for those class members who restored FaceTime and when they did so.

3         The abundance of significant individualized issues on both of Plaintiffs' claims demonstrates

4  that Plaintiffs cannot meet Rule 23(b)(2)'s predominance requirement.

**b.      Plaintiffs Do Not Present a Classwide Damages Model Consistent With Their Theory of Liability**.

6         Plaintiffs must present a damages model establishing "that damages are susceptible of

7  measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast*, at 35.  The model "must

8  measure only those damages attributable" to Plaintiffs' theory of liability.  *Id*.  If it does not, the model

9  "cannot possibly establish that damages are susceptible of measurement across the entire class for

10 purposes of Rule 23(b)(3) . . . at the class-certification stage (as at trial), any model supporting a

11 plaintiff's damages case must be consistent with its liability case."  *Id.*  (internal quotation marks and

12 citations omitted).

13        Plaintiffs rely on a single damages model, as described in a report submitted by Professor

14 Justine Hastings.  ECF No. 174 at 21-24.  Dr. Hastings created a multivariate regression model

15 analyzing data regarding the prices Best Buy received when it sold used mobile devices between 2013

16 and 2016.  ECF No. 173-4, ¶¶ 53-54.  Dr. Hastings' damages model purports to calculate ████████

17 ████████████████████████████████████████████████████████████████████████████████

18 ████████"  Pilmer Ex. 15 at 220:4-9.  This methodology is insufficient to demonstrate that classwide

19 damages (for Plaintiffs' trespass claim) or restitution (for Plaintiffs' UCL claim) can be calculated.

**i.      Dr. Hastings' Regression Model Is Unmoored From Plaintiffs' Trespass to Chattels Theory**.

22 <u>Dr. Hastings' Methodology Does Not Tie Damage To Loss Of The Use Of FaceTime.</u>

23        A damages model "must measure only those damages attributable" to Plaintiffs' theory of

24 liability.  *Comcast*, 569 U.S. at 35; *see also Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL

25 2325426 (N.D. Cal. May 8, 2018) (denying class certification for failure to tie damages methodology

26 to liability theory).

27 ───────────────

[7] In just May and June 2014, on an average day more than ████████████ restored FaceTime

28 on their device.  Pilmer Ex. 21.

1    Here, Dr. Hastings does not provide a model to calculate damages class members incurred as a

2    result of the certificate expiration.  At best, her model calculates only ███████████████████

3    ██████████████████.  Pilmer Ex. 15 at 215:18-216:3.  ██████████████████████████████

4    ████████████████████████████████████████████████████████████████, *id.* at 218:9-

5    17, ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████.  *Id.* at 211:17-21.

7    ████████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████████

10   ███.  *Id.* at 218:9-220:9.[8]

11        This fundamental failure, by itself, mandates the denial of this motion.

12        <u>Dr. Hastings Fails To Account For The Free Restore Offered To Consumers.</u>

13        In California, a plaintiff seeking to recover damage to personal property is entitled to recover

14   only the lesser of the diminution in value to the property, or the reasonable cost of repairing the

15   property.  Cal. Civ. Jury Instructions 3903J; *see also Kimes v. Grosser*, 195 Cal. App. 4th 1556, 1559

16   (2011) (owner of damaged personal property "entitled to recover the lesser of (1) the diminution of the

17   property's market value caused by the injury, or (2) the reasonable cost of repairing the property");

18   *Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.*, 21 Cal. App. 4th 862, 870 (1994) ("if

19   depreciation [of property due to tort] is greater than the cost of repairs, the plaintiff may only recover

20   the reasonable cost of repairs.").

21        Here, the cost of restoring FaceTime was zero.[9]  Pilmer Ex. 15 at 212:5-8; Ex. 9 at 181:23-25;

22   Ex. 11 at 203:4-9.  And Dr. Hastings failed to identify any other ████████████████████████████

23   ████████████████████████.  Pilmer Ex. 15 at 49:15-50:14.  Accordingly, Dr. Hastings' damages

24   ─────────────────

25   [8] Dr. Hastings does not distinguish between allegedly impacted and non-impacted phones because it is
     not possible to do so.  The data she analyzed did not identify the iOS version of the phones, and thus

26   does not distinguish between phones with and without FaceTime.  Pilmer Ex. 15 at 220:4-9.

27   [9] Plaintiffs and the Court have been clear that the damages Plaintiffs seek are "as a result of the loss of
     FaceTime."  ECF No.  65 at 24 (citing FAC ¶¶ 27, 134) (internal quotation omitted); *see also* at 18
     ("Plaintiffs' allegations that the iPhone 4 and iPhone 4S lose functionality when transitioning to iOS7

28   are ***not*** allegations of injury for purposes of Plaintiffs' causes of action . . .") (emphasis added).

1  model is fundamentally flawed.

2          <u>Dr. Hastings' Methodology Ignores the Factual Reality That Prices For Used iPhones Increased</u>

3          <u>Immediately After The Certificate Expiration.</u>

4          For consumers seeking to monetize their used iPhones in April 2014, they could either sell their

5  devices to another individual, or they could trade in their devices to one of several companies, such as

6  Apple, AT&T or Best Buy.  But Dr. Hastings relies solely on the revenue Best Buy would receive when

7  it sold used iPhones; she ignores the more relevant data to class members—trade-in prices—likely

8  because this data does not support Plaintiffs' case.[10]  ECF No. 173-4, ¶¶ 46-48 (Dr. Hastings had access

9  to, but disregarded, data produced by Apple, AT&T, EcoATM, Sprint, and Verizon).[11]  Much of this

10  data is robust and relevant to Plaintiffs' analysis, yet Plaintiffs chose not to use it.  Trexler Rep. at 33-

11  34; *see also id. at* 42-44.  This evidence indisputably demonstrates that the prices many class members

12  could obtain by trading in their devices increased from April 2014 through June 2014.  Trexler Rep. at

13  46-51.

14          Dr. Hastings nevertheless persists in her common-sense-defying opinion that class members

15  suffered a 12.72% diminution in value upon the certificate's expiration.  She does so only by using

16  inapposite data, ignoring data inconvenient to her conclusions and making other methodological errors.

17   For example, ████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████. *See* Pilmer Ex. 3 at 46:10-12, 48:15-19

21  ███████████████████████████████████████); Pilmer Ex. 7 at 27:22-

22  28:25 (████████████████████████████████████); Pilmer Ex. 17 at 25:9-

23  21 (███████████████████████████████████████

24  ████████████████████████████████████████████

25

26  ────────────────

27  [10] ████████████████████████████ *See* Trexler Rep. at 57-58

28  ██████████████████████████ ECF 173-4, at 15-16.

1 ███████████████████████████     ███████████████████████

2 ██████████████████████████████████████████████.[13]  Thus,

3 Dr. Hastings can create no benchmark for the value of an iPhone 4 or 4S running FaceTime on iOS 6

4 before April 16, 2014.

5          Dr. Hastings also relies on a misleading data set, while ignoring more relevant data regarding

6 the value of class members' phones.  ECF No. 173-4, ¶ 53 ("I use the price of the phone Best Buy

7 received when it sold the phone to a third-party vendor for eventual resale on the used market to

8 estimate damages.").  She does not evaluate the amount *class members* could have received for their

9 devices either before or after April 16, 2014.  Pilmer Ex. 3 at 64:5-7 ████████████████

10 ████████████████████████████████████████████.").

11 Moreover, Dr. Hastings' regression model assumes an adverse impact on prices for the devices through

12 December 2016, more than two and a half years after the allegedly harmful event.  But Dr. Hastings

13 selected the "damages period" arbitrarily, and there is no sound basis to assume that any such negative

14 price impact would be felt two and a half years later.  Trexler Rep. at 52-54.

15          In addition, Dr. Hastings calculates a single average price impact, whether the device is an

16 iPhone 4 or 4S.  These are two different devices, Rubin Decl. ¶¶ 106-109, with different prices and

17 values, Trexler Rpt. at 30.  ██████████████████████████████

18 ████████████████████████████████████████████

19 ██████     Pilmer Ex. 8 (Ex. 88 to Hastings Dep).  Apple released a 64GB iPhone 4S, but the largest

20 capacity iPhone 4 was 32GB.  Trexler Rpt. at 6-7.  If comparatively more of one model was traded in

21 to Best Buy either before the digital certificate expired than afterwards (or vice versa), that would

22 further skew Plaintiffs' analysis.  *Id.* at 55.

23          Dr. Hastings' methodology also fails to control for whether a phone was jailbroken, damaged,

24 or had undergone unauthorized repair.  Pilmer Ex. 15 at 180:22-181:1; Trexler Rep. at 55 (discussing

---

25 [12]  Individuals could also sell their used phones to other individuals, but Dr. Hastings makes no effort
26 to estimate whether the certificate expiration had an impact on these types of transactions.
27 [13]  The existence of this robust secondary market where hundreds of thousands of iPhone 4 and 4S
devices run FaceTime on iOS 7 ought to put to rest Plaintiffs' canard that consumers "cannot practically
transition to iOS 7 because transitioning to iOS7 causes the iPhone 4 and 4S to 'buckle under the weight
28 of the new software.'"  ECF No. 65, at 12 (citing FAC ¶¶ 12, 70-87).

negative impact of jailbreaking).  Her methodology also does not control for those devices in such a dilapidated condition as to have no value (such as damaged casing, broken screens, water damage, etc.). Pilmer Ex. 15 at 187:23-188:8.  Yet many of the devices owned by class members would be nearly four years old in April 2014, and a significant number of those devices could be in very poor condition. Rubin Decl. ¶¶ 48-59.

In addition, reliable regression analysis requires controlling for supply, demand, and macroeconomic factors to isolate the variable to be measured, Trexler Rpt. at 27-29, but Dr. Hastings' analysis controls only for "age [of the device], brand, color, storage size and condition," which Plaintiffs assert, without citation, are the "primary factors considered by customers in deciding how much to pay for used phones," and for "the release of new phone models, macroeconomic factors and seasonal effects."  ECF No. at 22.  Among other factors, Dr. Hastings does not control for promotions and news related to the iPhone 4 and 4S.  For example: (1) in May 2014, Apple offered enhanced trade-in value for the iPhone 4 and 4S of up to $99 and $199, respectively, Trexler Rpt. at 51; (2) also in May 2014, Best Buy announced it would guarantee $150 for iPhone 4S trade-ins, *id.*; and (3) on June 2, 2014, it was announced that the iPhone 4 would not be eligible to upgrade to iOS 8, *id.* at 52.  News of this kind likely would affect the resale price of the iPhone 4 and 4S, *id.* at 51-52, and Plaintiffs' failure to control for it makes it impossible to estimate the digital certificate expiration's impact on price, if any.

### ii.   Plaintiffs Make No Effort To Present A Classwide Restitution Model For Its UCL Claim.

"Plaintiffs prevailing on a UCL claim are generally limited to injunctive relief and restitution." *Ferrington v. McAfee, Inc.,* 10-cv-01455, 2010 WL 3910169, *7 (N.D. Cal. Oct. 5, 2010) *citing Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  "Damages and non-restitutionary disgorgement are not available."  *Id.*  The measure of restitution under the UCL is "profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."  *Id.* at 1148; *see also In re First All. Mortg. Co.*, 471 F.3d 977, 997 (9th Cir. 2006) ("[R]estitution means the return of money to those persons from whom it was taken or who had an ownership interest in it.").  In the class certification context, Plaintiffs must present a

model calculating the difference between the price plaintiffs paid and the value of the product they received. *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014) (Koh, J.); *class decertified by Brazil v. Dole Packaged Foods,* 12-cv-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014). ("Restitution can . . . be determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices."); *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *21 (N.D. Cal. Dec. 22, 2016) (Koh, J.) (Damages model did not conform to theory of liability when "neither Plaintiffs nor their expert ma[d]e any attempt to demonstrate" the "premium" paid by class members "or how the 'premium' could be determined on a class-wide basis.").

Dr. Hastings' damages model ███████████████████████████████████ ████████████████████████████. Pilmer Ex. 15 at 207:6-208:5. ██████████████████████ ████████████████████████████████████████████████████████████████ ██████████ Pilmer Ex. 11 at 62:24-63:5; *id.* at 241:21-242:7; Pilmer Ex. 9 at 104:13-16. ████████ ████████████████████████████████████████████████████████████████ ███████████.[14] Pilmer Ex. 11 at 123:10-18; 127:10-128:24 (████████████████ ████████ 66:9-10; 241:21-242:7 █████████████████████████████████████ ███████████████████████).

Consumers could have purchased new iPhones directly from Apple, a cellular service provider (like AT&T), or an electronics retailer (like Best Buy). But, given that nearly four years elapsed between the release of the iPhone 4 and April 16, 2014, a significant number of class members likely purchased used devices (like Mr. Potter did). Moreover, the price a class member paid for a new iPhone 4 in June 2010 would be substantially different than the price paid by a class member who bought a used iPhone 4 in March 2014.

---

[14] Mr. Potter initially testified that ████████████████████████████████████ ██████████████ Pilmer Ex. Ex. 11 at 59:24-61:12. When confronted with contrary evidence he later admitted that ██████████ *Id.* at 120:15-20. ██████████████████████ *Id.* at 122:20-24.

1    On the other side of the equation, Dr. Hastings has made no effort to ████████████

2    ████████████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████. Pilmer Ex. 15 at 49:4-50:14; *id.* at 176:5-179:12.

4    Accordingly, Plaintiffs have failed to provide a methodology sufficient to satisfy their burden on their

5    UCL claim.

6                    **c.      Choice of Law Rules Do Not Permit a Nationwide Class Here**.

7    Because adjudication of "nationwide claims will require application of the laws of 50 states,

8    common questions of law would not predominate for the proposed nationwide class, as is required by

9    Rule 23(b)(3)." *Brazil*, 2014 WL 2466559, at *14. California law may be applied on a classwide basis

10   only if "the interest of other states are not found to outweigh California's interest in having its law

11   applied." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Courts use the three-

12   step governmental interest test to determine whether others states' interests outweigh California's. *Id.*

13   Applying the governmental interest test requires courts to: (1) determine whether the law of other states

14   is materially different from California's; (2) if differences exists, determine whether other states have

15   an interest in having their law applied; and (3) if other states do have an interest, determine which

16   state's interest would be most impaired if its law were not applied. *Id.* 591-93. Here, the relevant laws

17   of other states are materially different from California's; those states have an interest in the application

18   of their law; and the interests of those states would be more impaired than California's if their law were

19   not applied.

20   First, there are material differences among states' consumer protection and trespass to chattels

21   laws. With respect to consumer protection, material differences in state law include[15]:

22   - Individualized proof of injury:  While some states, like Alaska, Arkansas, and Florida
23     require proof of actual damages in order to recover on claims, other states such as Illinois
       only require a likelihood of future injury to recover, while yet other states such as New
24     Mexico must show a likelihood of future injury where injunctive relief is requested.

25   - Pre-filing notice:  Pre-filing notice, which Plaintiffs did not provide, is required in Alabama,
26     Georgia, Indiana, Maine, Massachusetts, Mississippi, Texas, West Virginia, and Wyoming.

27   _____
     [15] Citations to the governing law in each state are arranged alphabetically in the Defendant Apple Inc.'s
     State Law Variations Appendix In Support Of Its Opposition To Plaintiffs' Motion For Class
28   Certification, concurrently filed herewith.

In Alaska, plaintiffs must provide notice if seeking injunctive relief.

- Statute of Limitations:  Statutes of limitations vary and would likely bar Plaintiffs' actions in 15 states.  The statute of limitations in Alabama, Arizona, and Louisiana is one year; the statute of limitations in Alaska, Georgia, Idaho, Indiana, Iowa, Texas, Virginia, and Washington is two years; the statute of limitations in Kentucky, Ohio, and Utah is two years or one year after termination of any action by the Attorney General (or, in Utah, other enforcing authorities); and the statute of limitations in Wyoming is two years from the date that statutory notice of the violation is provided to the defendant.

- Restrictions on consumer protection class actions:  Alabama, Georgia, Louisiana, Mississippi, Montana, South Carolina, and Tennessee prohibit consumer protection class actions; Iowa permits consumer protection class actions only if first approved by the Attorney General; and Ohio permits them only if a prior decision or rule put defendant on notice that the specific conduct at issue was deceptive or unconscionable prior to the subject transaction.

- Remedies:  The remedies available under states' consumer protection law vary widely.  As set out in Attachment A, states differ in whether they permit a prevailing plaintiff to recover restitution, actual damages, treble damages, punitive damages, a sum certain per violation, or some combination.  States also differ as to whether attorney's fees and equitable relief are available.

- Scienter:  Several states do not require a showing of scienter for recovery on consumer protection claims.  These states include, for example, Kansas, Minnesota, Missouri, Nevada and New Hampshire.  Louisiana requires something more than mere negligence, while states such as Alabama allow for a defense upon a showing that the defendant did not knowingly engage in activity in violation of the consumer protection law.

- Reliance:  Consumer protection statues in states such as Arizona, Arkansas, Colorado, Georgia, Indiana, Kansas, and Pennsylvania require a showing of reliance to recover for claims under their regimes.[16] However, states such as Kentucky, Louisiana, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico and New York have no reliance requirement.

Many of these differences in state consumer protection law—including whether proof of injury or pre-filing notice is required, the length of the statute of limitations, and restrictions on consumer class actions—are by definition material "as their application would 'spell the difference between the success and failure of a claim.'"  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (Koh, J.) (quoting *Mazza*, 666 F.3d at 591); *see also id.* at 602-03 (finding material difference in state law where "some states provide for injunctive relief while others do not, and the states vary as to whether

---

[16] Most consumer protection cases analyzing the reliance requirement are in the context of consumer protection claims related to false or misleading statements allegedly made by defendants.

damages may be recovered"); *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 n.13 (N.D. Cal. 2012) (Koh, J.) ("The Court notes that even if Plaintiffs' UCL claim were to survive a motion to dismiss, the UCL claim would likely face an insurmountable hurdle at the class certification stage given that the Ninth Circuit has foreclosed the certification of nationwide classes under the UCL."); *Grodzitsky v. Am. Honda Motor Co. Inc.*, No. 2:12-CV-01142-SVW, 2014 WL 718431, at *9 (C.D. Cal. Feb. 19, 2014) (finding material differences in state law because "in at least five jurisdictions, private claims under state consumer protection laws must be asserted *personally,* and the statutes specifically foreclose the use of class actions by private litigants.").

Material differences in states' trespass to chattels laws include:

- Scienter:  The requisite scienter for trespass to chattels varies among states.  For example, Kentucky requires intent to intermeddle with particular property; in Arizona, an intermeddling is not dispossession unless the defendant intended to exercise domination over property inconsistent with a possession in any other person than himself; and in Colorado and New Mexico, the defendant must have acted with the purpose of interfering with the chattel or with the knowledge that such would be the result of his conduct.

- Statutes of limitation:  Statutes of limitations vary and would likely bar Plaintiffs' actions in 12 states.  The statute of limitations in Louisiana is one year; the statute of limitations in Alaska, Arizona, Hawaii, Indiana, Kansas, Kentucky, Montana, Oklahoma, Pennsylvania, Texas, and West Virginia is two years.

- Interference required:  A key element of trespass to chattels is that it requires intentional interference with the plaintiff's property.  State law varies widely as to the level of interference required to prove a claim.  *E.g.*, in Florida and Alabama, any interference at all is a trespass; in Washington, a trespass exists only if the defendant damages the possessor's materially valuable property interest; in Texas, actual damage to property or deprivation of the owner's use for a substantial period of time; and in Massachusetts (and several other states), interference rises to the level of a trespass if it dispossesses the possessor of a chattel, impairs the condition, quality, or value of the chattel, deprives the possessor of the use of the chattel for a substantial period of time, or does bodily harm to the possessor or harm to a person or thing in which the possessor has a legally-protected interest.

Each of these variations in state trespass to chattels law is outcome determinative and therefore material.  *In re Yahoo Mail Litig.*, 308 F.R.D. at 602.

Second, each state has a strong interest in applying its consumer protection laws within its borders which means that "if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce."  *Mazza*, 666 F.3d at 593. Moreover, "[e]ach state has an interest in being able to delineate the appropriate standard of liability

and the scope of recovery based on its understanding of the balance between the interests of individuals and corporate entities operating within its territory." *In re Yahoo Mail Litig.*, 308 F.R.D. at 603 (internal quotation marks omitted); *Grodzitsky*, No. 2:12-CV-01142-SVW, 2014 WL 718431, at *10 (same).[17] Similarly, each state has an interest in protecting its citizens from trespasses to their personal property. But States' tort laws are intended to protect their residents and their residents' property, and where, as here, residents allegedly suffered damage to property within a state, that state has a strong interest in applying its own tort laws.

Third, other states' interests would be more impaired than California's if their law was not applied. "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Mazza,* 666 F.3d at 593 (quoting *Hernandez v. Burger,* 102 Cal. App. 3d 795, 802 (1980)). The place of the wrong is the place where "the last events necessary for liability" took place, *i.e.*, where liability accrued. *Mazza,* 666 F.3d at 593-94; *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1067 (S.D. Cal. 2017) ("The 'place of the wrong' is the state where the last event necessary to make the actor liable occurred."). Plaintiffs' UCL claims accrued where they purchased their devices, *Brazil*, 2014 WL 2466559, at *13–14 (Potential UCL liability accrued at purchase), and their trespass to chattels claims accrued where the alleged injury—in this case, the loss of FaceTime—occurred. *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1401 (2009) ("Under California law, trespass to chattels lies where an intentional interference with the possession of personal property *has proximately* caused injury.") (emphasis in original). Plaintiffs cite no law in support of its argument that California law should apply over foreign states' laws simply because Apple and the relevant employees are based in California.

In addition to being the "place of the wrong," each foreign state has a "'valid interest in shielding

---

[17] Plaintiffs cite in *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948 (N.D. Cal. 2017) (Koh, J.), for the premise that "no other state has any interest in policing unfair business practices committed in California." Mot. at 21. But the Court distinguished the state antitrust laws at issue in *In re Qualcomm* from consumer protection laws such as those at issue here. *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d at 980 (in *Mazza*, "other states had an interest in applying their consumer protection laws to the transactions at hand . . . The same interests are not implicated by the state laws at issue in this case. No resident claims the benefit of non-California law here because those state laws do not seek to protect consumers by governing their interactions with businesses. Instead, the laws at issue limit which actors may bring antitrust damages actions to the benefit of the state's resident defendants."). The same logic applies to tort laws, such as trespass to chattels, which protect state residents and their property.

out-of-state businesses from what the state may consider to be excessive litigation,' because '[i]n our federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state.'" *In re Yahoo Mail Litig.*, 308 F.R.D. at 605 (quoting *Mazza,* 666 F. 3d at 592-93). These laws reflect each state's judgment as to the appropriate protections for residents and their property. And several states' laws provide *greater* protections to their residents than California does. For example, in Florida and Alabama, any interference with property is a trespass, *see supra* at 23, whereas in California, a plaintiff must show "that the purported trespass: (1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time." *Grace*, 2017 WL 3232464, at *11. The interest of foreign states in applying their consumer protection and trespass laws is thus stronger than California's. *See Grodzitsky*, 2014 WL 718431, at *10 ("the only connection to California for the claims of out-of-state plaintiffs is that . . . [Apple] is a California corporation. This interest is limited in comparison to the interests of the foreign jurisdictions in regulating injuries to their own citizens. Especially given that California recognizes the 'place of the wrong' to hold the predominant interest.").[18]

"Because adjudication of the nationwide claims will require application of the laws of 50 states, common questions of law would not predominate for the proposed nationwide class, as is required by

---

[18] Plaintiffs cite a series of class actions they contend "certified nationwide class actions" against Apple and other California companies, Mot. at 20, but none are analogous to this case. Two of the decisions Plaintiffs cite did not involve class certification at all, *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *8 (N.D. Cal. July 23, 2013) (declining to rule on whether certification on a nationwide basis was appropriate at the pleadings stage); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (holding that "for purposes of the motion to dismiss, application of the UCL and CLRA in these circumstances would not constitute extra-territorial application of these statutes"); two were decided before *Mazza*, *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 486 (N.D. Cal. 2011), and *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001); one concerned breach of an obligation to perform repairs that were to be conducted in California, *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1187–88 (2015); and in the remainder, the defendant made little or no effort to carry its burden, *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. 2014) ("Defendants 'fail to provide *any case-specific analysis* addressing the differences among the state laws at issue"); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *2 (C.D. Cal. Apr. 9, 2014) ("Defendants' fact-specific materiality analysis ranges from sparse to nonexistent."); *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2016 WL 3844326, at *10 (N.D. Cal. Jul. 15, 2016) (defendant made only general argument re interest in applying "intrusion upon seclusion" law).

1    Rule 23(b)(3)." *Brazil*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *14.

2           **2.     Plaintiffs Have Not Demonstrated That A Class Action Is Superior To**
             **Other Methods of Adjudicating This Controversy.**
3

4           In evaluating Rule 23(b)(3)'s superiority requirement, courts will consider "the difficulties

5    likely to be encountered in the management of a class action." *Villa v. United Site Servs. of California,*

6    *Inc.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *10 (N.D. Cal. Nov. 13, 2012) (Koh, J.).

7           Plaintiffs' proposed class is unmanageable. *Zinser*, 253 F.3d at 1192 ("When the complexities

8    of class action treatment outweigh the benefits of considering common issues in one trial, class action

9    treatment is not the 'superior' method of adjudication.").  The proposed class raises a significant

10   manageability concern, as it is impossible to determine who is a member of the class.  There is no

11   comprehensive list of users of iPhone 4 and 4S devices, nor is there any systematic way to identify

12   which current iPhone 4 and 4S users owned the same devices on April 16, 2014 and which operating

13   system they were running at the time.[19]  Moreover, as described above, ███████████ of class

14   members traded in their devices to AT&T and Best Buy after April 16, 2014.  There is no practical way

15   to identify who these class members are, or how much they received for those trades.  In addition, there

16   is no practical way to ascertain the date, time or motivation for restoring FaceTime (or choosing not to

17   restore FaceTime).  Nor is there any practical method to determine when, if ever, class members learned

18   FaceTime was not working on their phone.

19          **D.     The Proposed Class Does Not Meet the Requirements For Certification Under**
                     **Rule 23(b)(2).**
20
            Certifying a Rule 23(b)(2) injunctive class is improper because the damages Plaintiffs seek are
21
     not incidental to declaratory or injunctive relief and no single injunction or declaratory judgment would
22

23   _____
     [19] Plaintiffs argue that a class action is a superior means of adjudicating this dispute because putative
     class members' individual recoveries would be less than the cost of litigation, ECF No. 174 at 24-25,
24   but that is not sufficient to establish superiority.  *Villa*, 2012 WL 5503550, at *10 (class action not
     superior to individual actions even though "the class members are unlikely to have individual interest
25   in prosecuting separate actions, because the amounts of money involved are relatively small in
     comparison to the cost of litigation."); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL
26   1576435, at *6 (N.D. Cal. Apr. 19, 2010) ("The policy at the very core of the class action mechanism
     is to overcome the problem that small recoveries do not provide the incentive for any individual to
27   bring a solo action prosecuting his or her rights.  However, if each class member has to litigate
     numerous and substantial separate issues to establish his or her right to recover individually, a class
28   action is not superior.") (internal quotation marks and citations omitted).

apply to each putative class member. *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (Koh, J.) (Rule 23(b)(2) certification only appropriate when monetary relief sought is incidental to injunctive relief); *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("claims for monetary relief" may not be certified under Rule 23(b)(2) "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief."). Plaintiffs seek "at least" $455,684,338. Mot. at 23. This nearly half a billion dollars in damages is not incidental to as-yet unspecified injunctive or declaratory relief.[20] *See* Pilmer Ex. 16 at 1-2 (Plaintiffs' refusing to identify requested injunctive relief). Second, the putative class is not certifiable under Rule 23(b)(2) because that rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360; *Herskowitz*, 301 F.R.D. at 481 (Class certification denied "'when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.'"). Some putative class members have elected not to restore FaceTime but many have. Pilmer Ex. 4 (APL-GRACE_000001956). No single injunction could apply to these divergent interests.

## IV.   CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court deny the Motion.

---

[20] *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 537 (N.D. Cal. 2012) (cited in Mot. at 25) is not to the contrary. Relying on *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011), which was decided pre-*Dukes*, *Ellis* concurrently certified Rule 23(b)(2) and 23(b)(3) classes and ordered a three-part trial plan to permit plaintiffs alleging gender discrimination to seek individual and classwide equitable relief and money damages.

DATED:  June 15, 2018

Respectfully submitted,
KIRKLAND & ELLIS LLP


*/s/ R. Alexander Pilmer*

R. Alexander Pilmer (SBN 166196)
Tanya L. Greene (SBN 267975)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile (213) 680-8500
Email: alexander.pilmer@kirkland.com
         tanya.greene@kirkland.com

Joseph A. Loy (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joseph.loy@kirkland.com

and

Joshua H. Lerner (SBN 220755)
Sonal N.  Mehta (SBN 222086)
Eugene Novikov (SBN 257849)
Stephen Elkind (admitted *pro hac vice*)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300
Email: jlerner@durietangri.com
         smehta@durietangri.com
         enovikov@durietangri.com
         selkind@durietangri.com

Attorneys for Defendant
*Apple Inc.*

**CERTIFICATE OF SERVICE**

On June 15, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/    R. Alexander Pilmer*