Exhibit 2

Page 1

1            UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5   CHRISTINA GRACE and KEN POTTER,

6   Individually and on Behalf of

7   All Others Similarly Situated,

8          Plaintiffs,

9   vs.                      No. 5:17-cv-00551-LHK-NC

10  APPLE INC.,

11         Defendant.

12  ------------------------------/

13

14

15              HIGHLY CONFIDENTIAL

16

17        DEPOSITION OF GOKUL THIRUMALAI

18            PALO ALTO, CALIFORNIA

19            FRIDAY, APRIL 20, 2018

20

21

22                              **CERTIFIED
                                 TRANSCRIPT**

23  Reported by:

24  JANIS JENNINGS, CSR, CCRR

25  Job No. 305491

GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 2

1

2

3

4

5

6

7

8

9           VIDEOTAPED DEPOSITION OF GOKUL THIRUMALAI,

10   taken on behalf of the Plaintiffs, at 755 Page Mill

11   Road, Palo Alto, California, beginning at 9:01 a.m.

12   on Friday, April 20, 2018, before Janis Jennings,

13   Certified Shorthand Reporter No. 3942, CLR, CCRR.

14

15

16

17

18

19

20

21

22

23

24

25

hg

GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 3

```
 1   APPEARANCES:

 2

 3      FOR PLAINTIFFS:

 4           CALDWELL CASSADY CURRY

 5           BY:  WARREN J. McCARTY, ESQ.

 6                BRADLEY W. CALDWELL, ESQ.

 7           2101 Cedar Springs Road, Suite 1000

 8           Dallas, Texas  75201

 9           214.888.4840

10           wmccarty@caldwellcc.com

11           bcaldwell@caldwellcc.com

12

13      FOR DEFENDANT:

14           KIRKLAND & ELLIS LLP

15           BY:  R. ALEXANDER PILMER, ESQ.

16           333 South Hope Street

17           Los Angeles, California  90071

18           213.680.8405

19           alexander.pilmer@kirkland.com

20

21      ALSO PRESENT:

22           GABE ZELDIN, ESQ., Apple Inc.

23           MARIAH NIEVES, Videographer

24

25
```

1       A.   None that I can remember.

2       Q.   **So you've talked to four attorneys and**

3    **Mr. Dallas De Atley about the subject matter of this**

4    **deposition, and that's it?**

5            MR. PILMER:   Objection.   Misstates the

6    testimony entirely.

7    BY MR. McCARTY:

8       Q.   **You can answer my question.**

9       A.   I've talked to four lawyers over a period of

10   time about several different cases.

11      Q.   **Well, I'm asking about this case.**

12      A.   This case, I've talked to the two lawyers

13   that are seated right next to me.

14      Q.   **Not Mr. Loy?**

15      A.   No.

16      Q.   **Not Miss Yokoyama?**

17      A.   Not Miss Yokoyama.

18      Q.   **On April 16th, 2014, a certificate expired**

19   **inside Apple's iOS infrastructure that caused**

20   **FaceTime for certain customers to not work; fair?**

21           MR. PILMER:   Object to the form.

22           THE WITNESS:   The device had a certificate

23   that expired that caused FaceTime on those devices

24   with that expired certificate to not work.

25   / / /



Page 54

1  BY MR. McCARTY:

2      Q.   And that day was April 16, 2014?

3      A.   Yes.

4      Q.   What do you remember about that day?

5      A.   I remember that -- I remember I was

6  surprised that we had an increase in calls from

7  devices that are retrying, and I remember talking

8  with -- talking with the Client team about that.

9      Q.   Why was it a surprise to you that there was

10 an increase in calls from devices that are retrying

11 on April 16th, 2014?

12     A.   It's not something that normally happens, so

13 it's a surprise.

14     Q.   Did you not expect that to happen?

15     A.   I did not.

16     Q.   Are you aware of others at Apple that did

17 expect that to happen?

18     A.   Well, when I talked with the Client team,

19 they told me that a certificate had expired on this

20 day.

21         MR. McCARTY:  Objection.  Nonresponsive.

22 BY MR. McCARTY:

23     Q.   My question is:  Are you aware of others at

24 Apple that did expect the certificate to expire and

25 that to have an effect on FaceTime?



GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 60

1      Q.   Do you recall perceiving or hearing other

2  discussions or reactions by your colleagues at Apple

3  suggesting that it was a surprise to them as well?

4           MR. PILMER:  Object to the form.

5           THE WITNESS:  I don't recall -- yeah, I

6  don't recall.  Again, our focus was on the number of

7  retries happening in the service and what would

8  explain it, and I don't remember if there was a

9  surprise from other folks.  I certainly was

10 surprised.

11 BY MR. McCARTY:

12     Q.   And was the surprise -- was your surprise

13 that the certificate expired or that FaceTime failed

14 because of the certificate expiration?

15          MR. PILMER:  Object to the form.

16          THE WITNESS:  The latter, that a certificate

17 was used in the FaceTime call and it's expiry had an

18 impact on FaceTime call volume.

19 BY MR. McCARTY:

20     Q.   So before April 16th, 2014, you were unaware

21 that FaceTime relied upon or checked the certificate

22 that expired on April 16th, 2014?

23     A.   That's right.

24     Q.   And the impact of the April 16th, 2014

25 certificate expiration was that any iOS device on



GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 61

1  iOS 6 or earlier could no longer make FaceTime

2  calls?

3      A.   Yes.

4      Q.   Do you have any sense of the scope of number

5  of devices or number of FaceTime calls that as of

6  the time that the certificate expired on April 16th

7  would no longer be able to make FaceTime calls?

8      A.   At the time, I'm sure.  But as I'm sitting

9  here right now, I don't remember what that was.

10     Q.   But you would agree it wasn't a minuscule or

11  insubstantial amount.

12          MR. PILMER:  Object to the form.

13          THE WITNESS:  Again, I know that there's --

14  there were -- there was -- a number of devices were

15  impacted.  I don't remember how many or, you know,

16  how to quantify that.

17  BY MR. McCARTY:

18     Q.   Uh-huh.  Was it on the order of millions of

19  devices --

20          MR. PILMER:  Object to the form.

21  BY MR. McCARTY:

22     Q.   -- to the best of your recollection?

23          MR. PILMER:  Object to the form.

24          THE WITNESS:  I really don't know.

25  / / /

Page 63

1   something happen," you know, "What's going on,"
2   situation?
3           MR. PILMER:  Object to the form.
4           THE WITNESS:  It was very much the latter,
5   is call and figure out what was going on.
6   BY MR. McCARTY:
7      Q.   So there wasn't a pre-scheduled meeting time
8   to discuss this issue?
9      A.   No.
10     Q.   What do you recall being Apple's response
11  internally to how to deal with or remedy or fix
12  FaceTime once you guys found out that it was no
13  longer working?
14          MR. PILMER:  Object to the form.
15  Foundation.
16          THE WITNESS:  Again, I don't remember what
17  the -- what the Client team was planning to do at
18  the time, but I understood that iOS 7 had already
19  fixed it and that was available for people to
20  install.
21  BY MR. McCARTY:
22     Q.   So Apple -- to your recollection, Apple
23  didn't do anything to fix it for iOS 6 users so
24  that they could stay on iOS 6.  The only option
25  was to upgrade to iOS 7 if they wanted to make

GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 64

1    FaceTime calls?

2           MR. PILMER:  Object to the form.  Lacks

3    foundation.

4           THE WITNESS:  Again, to my recollection, I

5    was told that the fix was already in iOS 7, and

6    that's how you can get FaceTime working.

7    BY MR. McCARTY:

8       Q.   Would you characterize the events that

9    transpired at Apple internally upon the expiration

10   of the certificate that caused FaceTime to break on

11   April 16, 2014, to be a fire drill?

12          MR. PILMER:  Object to the form.

13          THE WITNESS:  Again, I think for -- from

14   a -- from a server perspective, I was surprised

15   because I was trying to figure out what was going

16   on.  Once I understood that this was outside of my

17   hands, I -- you know, I let the Client teams figure

18   out what to do next.

19   BY MR. McCARTY:

20      Q.   Well -- okay.  So what did the Client teams

21   do next?

22      A.   I don't know.

23      Q.   They didn't do anything?

24      A.   I don't know what they did.

25      Q.   Who would -- who would I ask to know what

GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 71

1          MR. PILMER:  I will object on foundation

2     grounds.

3          THE WITNESS:  I mean, whatever the device

4     was using in order to use the certificate for

5     FaceTime and the fact that it expired, causing it to

6     stop working, that's the bug that I'm referring to.

7     BY MR. McCARTY:

8     **Q.   So I'm trying to nail this down to figure**

9     **out exactly what the bug is.  And I'm not trying to**

10    **mischaracterize, but the bug, as you referred to it,**

11    **is the code on an iPhone that as part of running**

12    **FaceTime checks the iPhone Device CA that happened**

13    **to expire on a particular day.  If that**

14    **characterization is wrong, that's fine.  Tell me,**

15    **and, you know, fix it, please.**

16         MR. PILMER:  I'll object to form and on

17    foundation grounds.

18         THE WITNESS:  Yeah.  Again, that's my

19    understanding of what the bug is.

20    BY MR. McCARTY:

21    **Q.   Apple programmed FaceTime and the code in**

22    **the iPhone that runs FaceTime to check that**

23    **certificate; correct?**

24         MR. PILMER:  Objection.  Lacks foundation.

25    Object to the form.

GRACE: GOKUL THIRUMALAI - HIGHLY CONFIDENTIAL

Page 110

1  levels, at least as of the time that Miss Pollack

2  was writing this; is that fair?

3          MR. PILMER:  Object to the form.  Lacks

4  foundation.

5          THE WITNESS:  I mean, Miss Pollack writes

6  here that this gets us back to 2012 levels.

7  BY MR. McCARTY:

8      Q.   And Apple was doing that -- sorry.  Strike

9  that.

10          You testified that Apple was doing that

11  because of the relay costs associated with using

12  Akamai servers in relayed FaceTime calls; right?

13          MR. PILMER:  Object to the form.  Lacks

14  foundation.

15          THE WITNESS:  No.  I mean, to be clear, the

16  cost isn't necessarily directly correlated with

17  bandwidth, because those are contract details, so

18  decreasing relay usage doesn't mean lower costs.

19  So, again, these aren't details that I was privy to

20  at the time.

21  BY MR. McCARTY:

22      Q.   Agree or disagree:  Apple was trying to find

23  ways to reduce relay usage in FaceTime in 2012

24  because of the relay cost associated with relay

25  usage in FaceTime.



Page 157

1          MR. PILMER:  Object to the form.  Lacks

2   foundation.  He's told you many times this is before

3   he worked at the company.  He wasn't part of this

4   process at all.

5          THE WITNESS:  There's no term I've really

6   used for it.  Like I said, this was before my time.

7   BY MR. McCARTY:

8      Q.   **Was it unexpected to you that the Device**

9   **Certificate expired after three years?**

10     A.   I don't remember.  I don't remember if I had

11  to deal with that.  I think that was the Push team,

12  so I don't know.

13     **Q.   Do you know when you first learned of the**

14  **Device Certificate expiring after three years?**

15  **After activation, of course.**

16     A.   I don't remember.

17     **Q.   Was it unexpected to you that the seven-year**

18  **Device CA expired?**

19          MR. PILMER:  Objection.  Vague as to time.

20          THE WITNESS:  I mean, as I've mentioned

21  before, on April 16th of 2014 when we saw this

22  massive increase in FaceTime retries, that wasn't

23  expected.  And understanding that that's because of

24  the certificate being -- expiring, you know, that

25  was a surprise.

265

1         I, JANIS JENNINGS, CSR No. 3942, Certified

2 Shorthand Reporter, certify:

3         That the foregoing proceedings were taken

4 before me at the time and place therein set forth, at

5 which time the witness was duly sworn by me;

6         That the testimony of the witness, the

7 questions propounded, and all objections and statements

8 made at the time of the examination were recorded

9 stenographically by me and were thereafter transcribed;

10         That the foregoing pages contain a full, true

11 and accurate record of all proceedings and testimony.

12         Pursuant to F.R.C.P. 30(e)(2) before

13 completion of the proceedings, review of the transcript

14 [X] was [ ] was not requested.

15         I further certify that I am not a relative or

16 employee of any attorney of the parties, nor financially

17 interested in the action.

18         I declare under penalty of perjury under the

19 laws of California that the foregoing is true and

20 correct.

21         Dated this 1st day of May 2018.

22

23         _____

24         JANIS JENNINGS, CSR NO. 3942

25         CLR, CCRR

# Exhibit 3

# [Filed Under Seal]

# Exhibit 4

# [Filed Under Seal]

Exhibit 5

[Filed Under Seal]

Exhibit 6

[Filed Under Seal]

# Exhibit 7

# [Filed Under Seal]

Exhibit 8

[Filed Under Seal]

# Exhibit 9

# [Filed Under Seal]

Exhibit 11

[Filed Under Seal]

Exhibit 14

| | |
|---|---|
| **From:** | Jim Sevel |
| **To:** | Chang, Kevin |
| **Cc:** | Suneel Jain; Don Evans; Jill Manning; Pilmer, R. Alexander; Loy, Joseph A.; Greene, Tanya; dtejtel@fotpllc.com; |
| | Warshaw, Daniel L.; acurry@caldwellcc.com; Bruce Barnes; Amy Voight |
| **Subject:** | RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement |
| **Date:** | Wednesday, April 25, 2018 5:39:22 PM |

Kevin,

We are having issues exporting the file listing for the "jailbroken" phone.  We can provide the file listing for the other two phones tomorrow.  Should we wait to provide those until we have all three or can we provide just the two tomorrow?

Jim

James (Jim) Sevel, CFCE

**C.E.O., San Diego Digital Forensics Inc.**

409 Camino del Rio South, Suite 102

San Diego, CA  92108

(619) 550 1010  Office

(619) 384-6633  Cell

jsevel@SD-DF.com  Email

www.SD-DF.com  Web Site

---

**From:** Chang, Kevin [mailto:kevin.chang@kirkland.com]
**Sent:** Wednesday, April 25, 2018 5:19 PM
**To:** Jim Sevel
**Cc:** Suneel Jain; Don Evans; Jill Manning; Pilmer, R. Alexander; Loy, Joseph A.; Greene, Tanya; dtejtel@fotpllc.com; Warshaw, Daniel L.; acurry@caldwellcc.com; Bruce Barnes; Amy Voight
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Can you please provide us with an update?

**Kevin K. Chang**

**KIRKLAND & ELLIS LLP**

555 California Street, San Francisco, CA 94104

**T** +1 415 439 1671  **M** +1 630 947 6867

**F** +1 415 439 1500

---

kevin.chang@kirkland.com

**From:** Chang, Kevin
**Sent:** Tuesday, April 24, 2018 4:37 PM
**To:** 'Jim Sevel' <jsevel@sd-df.com>
**Cc:** Suneel Jain <sjain@steyerlaw.com>; Don Evans <devans@sd-df.com>; Jill Manning <jmanning@steyerlaw.com>; Pilmer, R. Alexander <apilmer@kirkland.com>; Loy, Joseph A. <jloy@kirkland.com>; Greene, Tanya <tanya.greene@kirkland.com>; dtejtel@fotpllc.com; Warshaw, Daniel L. <dwarshaw@pswlaw.com>; acurry@caldwellcc.com; Bruce Barnes <rbbarnes@sd-df.com>;

Amy Voight <avoight@sd-df.com>
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

We would appreciate it if you could produce the directory file in both formats.  Thanks.

**Kevin K. Chang**
_____

**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1671  **M** +1 630 947 6867
**F** +1 415 439 1500
_____

kevin.chang@kirkland.com

---

**From:** Jim Sevel <jsevel@sd-df.com>
**Sent:** Tuesday, April 24, 2018 3:10 PM
**To:** Chang, Kevin <kevin.chang@kirkland.com>
**Cc:** Suneel Jain <sjain@steyerlaw.com>; Don Evans <devans@sd-df.com>; Jill Manning <jmanning@steyerlaw.com>; Pilmer, R. Alexander <apilmer@kirkland.com>; Loy, Joseph A. <jloy@kirkland.com>; Greene, Tanya <tanya.greene@kirkland.com>; dtejtel@fotpllc.com; Warshaw, Daniel L. <dwarshaw@pswlaw.com>; acurry@caldwellcc.com; Bruce Barnes <rbbarnes@sd-df.com>; Amy Voight <avoight@sd-df.com>
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Kevin,

The imaging is complete.

We are working on providing the directory trees in an appropriate format.  We have a question as to what is appropriate for "everyone".  Is there a specific expectation on how or what the format should be?  A directory tree is often considered a graphical depiction.  However, it can also be produced as a file listing in an Excel spreadsheet.

Please let us know, or should we have a conference call tomorrow to discuss the issue?

Jim

James (Jim) Sevel, CFCE
**C.E.O., San Diego Digital Forensics Inc.**
409 Camino del Rio South, Suite 102
San Diego, CA  92108
(619) 550 1010  Office
(619) 384-6633  Cell
jsevel@SD-DF.com  Email
www.SD-DF.com  Web Site

---

**From:** Chang, Kevin [mailto:kevin.chang@kirkland.com]

**Sent:** Tuesday, April 24, 2018 2:45 PM
**To:** Jim Sevel
**Cc:** Suneel Jain; Don Evans; Jill Manning; Pilmer, R. Alexander; Loy, Joseph A.; Greene, Tanya; dtejtel@fotpllc.com; Warshaw, Daniel L.; acurry@caldwellcc.com; Bruce Barnes; Amy Voight
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Jim, can you please provide us with an update on the status of the imaging?  Thanks very much.

**Kevin K. Chang**

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1671  **M** +1 630 947 6867
**F** +1 415 439 1500

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

kevin.chang@kirkland.com

**From:** Jim Sevel <jsevel@sd-df.com>
**Sent:** Thursday, April 19, 2018 5:03 PM
**To:** Chang, Kevin <kevin.chang@kirkland.com>
**Cc:** Suneel Jain <sjain@steyerlaw.com>; Don Evans <devans@sd-df.com>; Jill Manning <jmanning@steyerlaw.com>; Pilmer, R. Alexander <apilmer@kirkland.com>; Loy, Joseph A. <jloy@kirkland.com>; Greene, Tanya <tanya.greene@kirkland.com>; dtejtel@fotpllc.com; Warshaw, Daniel L. <dwarshaw@pswlaw.com>; acurry@caldwellcc.com; Bruce Barnes <rbbarnes@sd-df.com>; Amy Voight <avoight@sd-df.com>
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Greetings,

We have successfully imaged all three phones, are verifying the images and starting to process them.  Do the phones need to be returned immediately or may we keep them for a short period longer?  We are ordering an additional forensic product that may not be here until next week.

Best regards,
Jim

James (Jim) Sevel, CFCE
**C.E.O., San Diego Digital Forensics Inc.**
409 Camino del Rio South, Suite 102
San Diego, CA  92108
(619) 550 1010  Office
(619) 384-6633  Cell
jsevel@SD-DF.com  Email
www.SD-DF.com  Web Site

**From:** Chang, Kevin [mailto:kevin.chang@kirkland.com]
**Sent:** Wednesday, April 18, 2018 5:01 PM
**To:** Jim Sevel
**Cc:** Suneel Jain; Don Evans; Jill Manning; Pilmer, R. Alexander; Loy, Joseph A.; Greene, Tanya;

dtejtel@fotpllc.com; Warshaw, Daniel L.; acurry@caldwellcc.com; Bruce Barnes; Amy Voight
**Subject:** Re: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Appreciate the update.

**Kevin Chang**

Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104
+1 (415) 439-1671 direct
+1 (415) 439-1500 fax

Kevin.Chang@kirkland.com
www.kirkland.com

On Apr 18, 2018, at 4:59 PM, Jim Sevel <jsevel@sd-df.com> wrote:

> Kevin,
>
> Yes, we received the third phone this afternoon via FedEx.  We are in the process of
> verifying the forensic images.
>
> Jim
>
> James (Jim) Sevel, CFCE
> **C.E.O., San Diego Digital Forensics Inc.**
> 409 Camino del Rio South, Suite 102
> San Diego, CA  92108
> (619) 550 1010  Office
> (619) 384-6633  Cell
> jsevel@SD-DF.com  Email
> www.SD-DF.com  Web Site

---

**From:** Chang, Kevin [mailto:kevin.chang@kirkland.com]
**Sent:** Wednesday, April 18, 2018 4:57 PM
**To:** Jim Sevel
**Cc:** Suneel Jain; Don Evans; Jill Manning; Pilmer, R. Alexander; Loy, Joseph A.; Greene,
Tanya; dtejtel@fotpllc.com; Warshaw, Daniel L.; acurry@caldwellcc.com; Bruce Barnes;
Amy Voight
**Subject:** Re: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Jim, can you please confirm that you've received all three of Plaintiffs' devices?

**Kevin Chang**

Kirkland & Ellis LLP

555 California Street
San Francisco, CA 94104
+1 (415) 439-1671 direct
+1 (415) 439-1500 fax

Kevin.Chang@kirkland.com
www.kirkland.com

On Apr 16, 2018, at 4:43 PM, Jim Sevel <jsevel@sd-df.com> wrote:

> Very good.  We will advise everyone as this progresses.
>
> Regards,
> Jim
>
> James (Jim) Sevel, CFCE
> **C.E.O., San Diego Digital Forensics Inc.**
> 409 Camino del Rio South, Suite 102
> San Diego, CA  92108
> (619) 550 1010  Office
> (619) 384-6633  Cell
> jsevel@SD-DF.com  Email
> www.SD-DF.com  Web Site
>
> ---
>
> **From:** Suneel Jain [mailto:sjain@steyerlaw.com]
> **Sent:** Monday, April 16, 2018 4:42 PM
> **To:** Jim Sevel; Don Evans; Chang, Kevin; Jill Manning; Pilmer, R. Alexander; Loy, Joseph A.; Greene, Tanya; dtejtel@fotpllc.com; Warshaw, Daniel L.; acurry@caldwellcc.com
> **Cc:** Bruce Barnes; Amy Voight
> **Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement
>
> That's fine. Please let us know when the two devices have been imaged and we'll pick them up. For the third device, FedEx for delivery back to us at our office (1 California Street, Suite 300, San Francisco, CA 94111) would be good.
>
> Thanks,
> Suneel Jain
> **Steyer Lowenthal Boodrookas**
> **Alvarez & Smith LLP**
> One California Street
> Suite 300
> San Francisco, CA  94111
> Phone: 415.421.3400
> Fax: 415.421.2234

sjain@steyerlaw.com
NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**From:** Jim Sevel <jsevel@sd-df.com>
**Sent:** Monday, April 16, 2018 4:34 PM
**To:** Suneel Jain <sjain@steyerlaw.com>; Don Evans <devans@sd-df.com>; Chang, Kevin <kevin.chang@kirkland.com>; Jill Manning <jmanning@steyerlaw.com>; Pilmer, R. Alexander <apilmer@kirkland.com>; Loy, Joseph A. <jloy@kirkland.com>; Greene, Tanya <tanya.greene@kirkland.com>; dtejtel@fotpllc.com; Warshaw, Daniel L. <dwarshaw@pswlaw.com>; acurry@caldwellcc.com
**Cc:** Bruce Barnes <rbbarnes@sd-df.com>; Amy Voight <avoight@sd-df.com>
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Suneel,

We prefer to have them for 24 hours so that we can assure complete and verified images.  Though logical images normally take two hours or less, we are talking about physical images and USB 2 speeds.  As we may only have one opportunity to image these, we will probably want to take images with multiple tools.

I assume that they are not still using them?

Sincerely,
Jim

James (Jim) Sevel, CFCE
**C.E.O., San Diego Digital Forensics Inc.**
409 Camino del Rio South, Suite 102
San Diego, CA  92108
(619) 550 1010  Office
(619) 384-6633  Cell
jsevel@SD-DF.com  Email
www.SD-DF.com  Web Site

**From:** Suneel Jain [mailto:sjain@steyerlaw.com]

**Sent:** Monday, April 16, 2018 4:23 PM
**To:** Don Evans; Chang, Kevin; Jill Manning; Pilmer, R. Alexander; Loy, Joseph
A.; Greene, Tanya; dtejtel@fotpllc.com; Warshaw, Daniel L.;
acurry@caldwellcc.com
**Cc:** Bruce Barnes; Jim Sevel; Amy Voight
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality
Agreement

Hi Don,

For the iPhone 4 devices that are being hand-delivered to your office, is
anytime during normal business hours okay? We can have them dropped
off tomorrow or Wednesday late afternoon.
As far as the return of the hand-delivered devices, is the imaging expected
to be completed shortly after receipt? It would be easier if we could plan
to take them back with us on that same trip if possible, and I'm hoping
that imaging would not take very long since the storage capacity of the
devices is small (16GB and 32GB).

Thank you,
Suneel Jain
**Steyer Lowenthal Boodrookas**
**Alvarez & Smith LLP**
One California Street
Suite 300
San Francisco, CA  94111
Phone: 415.421.3400
Fax: 415.421.2234
sjain@steyerlaw.com
NOTICE: This email message is for the sole use of the intended
recipient(s) and may contain information that is confidential and
protected from disclosure by the attorney-client privilege, as attorney
work product, or by other applicable privileges. Any unauthorized
review, use, disclosure or distribution is prohibited. If you are not the
intended recipient, please contact the sender by reply email and
destroy all copies of the original message.

---

**From:** Don Evans <devans@sd-df.com>
**Sent:** Monday, April 16, 2018 4:07 PM
**To:** Chang, Kevin <kevin.chang@kirkland.com>; Jill Manning
<jmanning@steyerlaw.com>; Pilmer, R. Alexander
<apilmer@kirkland.com>; Loy, Joseph A. <jloy@kirkland.com>; Greene,
Tanya <tanya.greene@kirkland.com>; dtejtel@fotpllc.com; Warshaw,
Daniel L. <dwarshaw@pswlaw.com>; acurry@caldwellcc.com; Suneel Jain
<sjain@steyerlaw.com>
**Cc:** Bruce Barnes <rbbarnes@sd-df.com>; Jim Sevel <jsevel@sd-df.com>;
Amy Voight <avoight@sd-df.com>
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality
Agreement

Federal Express will be fine.

Don Evans - CFCE, EnCE, ACE
San Diego Digital Forensics
409 Camino Del Rio South, Suite #102
San Diego, CA 92108
619-301-9514 (Cell)
619-550-1010 (Office)
619-291-0130 (Fax)
devans@sd-df.com

<image001.jpg>

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic mail message and any attachments hereto is intended only for the personal and
confidential use of the designated recipients. This message and any attachments hereto may be privileged and/or
confidential and protected from disclosure under applicable law. If you are not the intended recipient or an agent
responsible for delivering it to the intended recipient, you are hereby notified that you have received this message in error,
and that any review, dissemination, distribution, copying or the taking of any action in reliance of this message and any
attachments hereto is strictly prohibited.

If you have received this message in error, please notify me immediately by telephone or electronic mail as listed in the
signature block above and fully delete and remove the message from your computer system.

**From:** Chang, Kevin [mailto:kevin.chang@kirkland.com]
**Sent:** Monday, April 16, 2018 4:05 PM
**To:** Don Evans; Jill Manning (jmanning@steyerlaw.com); Pilmer, R.
Alexander; Loy, Joseph A.; Greene, Tanya; dtejtel@fotpllc.com; Warshaw,
Daniel L.; acurry@caldwellcc.com; Suneel Jain
**Cc:** Bruce Barnes; Jim Sevel; Amy Voight
**Subject:** RE: [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality
Agreement

Thanks very much.  As Jill mentioned earlier, two of Plaintiffs' devices will
be hand-delivered to your offices, and the third will be sent by Federal
Express, unless you prefer another method.

Kevin K. Chang

KIRKLAND & ELLIS LLP
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1671  **M** +1 630 947 6867
**F** +1 415 439 1500

kevin.chang@kirkland.com

**From:** Don Evans <devans@sd-df.com>
**Sent:** Monday, April 16, 2018 3:59 PM
**To:** Chang, Kevin <kevin.chang@kirkland.com>; Jill Manning
(jmanning@steyerlaw.com) <jmanning@steyerlaw.com>; Pilmer, R.
Alexander <apilmer@kirkland.com>; Loy, Joseph A. <jloy@kirkland.com>;
Greene, Tanya <tanya.greene@kirkland.com>; dtejtel@fotpllc.com;
Warshaw, Daniel L. <dwarshaw@pswlaw.com>; acurry@caldwellcc.com;
Suneel Jain <sjain@steyerlaw.com>
**Cc:** Bruce Barnes <rbbarnes@sd-df.com>; Jim Sevel <jsevel@sd-df.com>;
Amy Voight <avoight@sd-df.com>

**Subject:** [Grace v. Apple, Case No. 17-cv-00551] Signed Confidentiality Agreement

Attached are the signed Confidentiality Agreements.

Don Evans - CFCE, EnCE, ACE
San Diego Digital Forensics
409 Camino Del Rio South, Suite #102
San Diego, CA 92108
619-301-9514 (Cell)
619-550-1010 (Office)
619-291-0130 (Fax)
devans@sd-df.com

<image001.jpg>

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic mail message and any attachments hereto is intended only for the personal and confidential use of the designated recipients. This message and any attachments hereto may be privileged and/or confidential and protected from disclosure under applicable law. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this message in error, and that any review, dissemination, distribution, copying or the taking of any action in reliance of this message and any attachments hereto is strictly prohibited.

If you received this message in error, please notify me immediately by telephone or electronic mail as listed in the signature block above and fully delete and remove the message from your computer system.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# Exhibit 15

# [Filed Under Seal]

# Exhibit 16

# [Filed Under Seal]

Exhibit 17

[Filed Under Seal]

Exhibit 18

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4                     --o0o--

 5   CHRISTINA GRACE AND KEN POTTER,
     Individually and on Behalf of All   Case No.
 6   Others Similarly Situated,
                                     5:17-cv-00551-LHK-NC
 7                 Plaintiffs,
     vs.
 8
     APPLE, INC.
 9
                   Defendant.
10   _____/

11

12

13      HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

14           VIDEOTAPED DEPOSITION OF

15           DALLAS BLAKE DE ATLEY

16          WEDNESDAY, APRIL 18, 2018

17

18

19   Reported by:  LUCY CARRILLO-GRUBBS, CSR #6766
                    RPR-RMR-CRR-RPR-CCRR
20

21

22

23

24

25
```

CERTIFIED
TRANSCRIPT



GRACE: DALLAS BLAKE DE ATLEY - HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY

Page 2

1                          APPEARANCES

2

3    For the Plaintiffs:

4            BY:  JASON D. CASSADY, ATTORNEY AT LAW

5                 WARREN J. McCARTY, ATTORNEY AT LAW

6            CALDWELL, CASSADY & CURRY

7            2101 Cedar Springs Road, Suite 1000

8            Dallas, Texas  75201

9            Tel:  214.888.4848

10           Email:  jcassady@caldwellcc.com

11                   wmccarty@caldwellcc.com

12

13   Co-Counsel For the Plaintiffs:

14           BY: JILL MANNING, ATTORNEY AT LAW

15           STEYER, LOWENTHAL, BOODROOKAS, ALVAREZ &

16           SMITH

17           One California Street, Third Floor

18           San Francisco, CA  94111

19           Tel:  415.421.3400

20           Fax:  415.421.2234

21           Email:  jmanning@steyerlaw.com

22

23

24

25

GRACE: DALLAS BLAKE DE ATLEY - HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY

Page 3

1   For the Defendant:

2       R. ALEXANDER PILMER, ATTORNEY AT LAW

3       KIRKLAND & ELLIS, LLP

4       333 South Hope Street

5       Los Angeles, CA  90071

6       Tel:  213.680.8405

7       Fax:  213.680.8500

8       Email:  Alexander.pilmer@kirkland.com

9

10  In-House Counsel for the Defendant:

11      GABE ZELDIN, ATTORNEY AT LAW

12      APPLE

13      1 Infinite Loop, MS 169-2NYJ

14      Cupertino, CA  95014

15      Tel:  408.974.4756

16      Email:  gzeldin@apple.com

17

18  Also Present:  Mariah Nieves, videographer

19

20

21

22

23

24

25



1    A.   In what context?

2    **Q.   Authentication, cryptographic**

3    **authentication.**

4    A.   In the context of cryptographic

5    authentication, I believe there are other types of

6    certificates that are not X509.

7    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12   **Q.   Now, I want to just have some working**

13   **terminology that we can use for this deposition.**

14   **For the device certificate, is that what**

15   **you referred to earlier as the activation identity?**

16   A.   I would consider the device certificate to

17   be one component of the activation identity.

18   **Q.   Let me -- let me tell you what I'm aiming**

19   **for here.  The device certificate is a signed**

20   **certificate signed by the iPhone device CA,**

21   **correct?**

22   A.   In the context of activating an iPhone,

23   the device certificate is issued by the iPhone

24   device CA.

25   **Q.   And it's signed by the iPhone device CA,**

hg

Page 97

1    mobile device management.  I don't remember the

2    complete list of services that we investigated, if

3    they'd be affected.

4        **Q.  When did you first realize that the**

5    **expiration of the device certificates was going to**

6    **pose an issue for any Apple feature?**

7        A.  I believe we realized the device

8    certificates were going to affect Apple products

9    after iOS 7 shipped.

10       **Q.  So that would have been late 2013 time**

11   **frame?**

12       A.  I remember correctly, iOS 7 shipped in --

13       **Q.  September 2013?**

14       A.  September of 2013, near the end of the

15   month.

16       **Q.  September 19th, 2013?  18th?**

17       A.  I'd have to look it up.

18       **Q.  Why, we have Warren right here.**

19           **So sometime after September 2013 or maybe**

20   **even in late September 2013 was when Apple first**

21   **realized that the expiration of the device**

22   **certificates might pose a problem for certain Apple**

23   **features?**

24       A.  I believe my team was made aware of the

25   issue after iOS 7 shipped.

**hg**

```
1              REPORTER'S CERTIFICATE

2       I certify that the foregoing proceedings in the

3    within-entitled cause were reported at the time and

4    place therein named; that said proceedings were

5    reported by me, a duly Certified Shorthand Reporter

6    of the State of California, and were thereafter

7    transcribed into typewriting

8            I further certify that I am not of counsel

9    or attorney for either or any of the parties to

10   said cause of action, nor in any way interested in

11   the outcome of the cause named in said cause of

12   action.

13      IN WITNESS WHEREOF, I have hereunto set my hand

14   this 23rd day of April, 2018.

15      Witness did not request to read and sign.

16

17

18

19   _____

20   LUCY CARRILLO-GRUBBS, CRP, CSR
     Certified Shorthand Reporter
21   Certificate No. 6766

22

23

24

25
```

**233**

Exhibit 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC. and SCIENCE APPLICATIONS INTERNATIONAL CORPORATION,** | § § § § | |
| **Plaintiffs,** | § § | **CAUSE NO. 6:12-CV-855** |
| | § | **[LEAD CASE]** |
| **vs.** | § § | |
| **APPLE INC.,** | § § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Apple Inc.'s ("Apple") Motion for a New Trial Based Upon the Consolidation of Cause Nos. 6:10-cv-417 and 6:12-cv-855. Docket No. 463 at 41–45.[1] The combination of the consolidation and numerous statements about the prior jury verdict in Cause No. 6:10-cv-417 ("*Apple I*") (Docket No. 598) introduced, through argument by counsel and witness questioning, the potential for juror confusion and unfairly prejudiced Apple's right to a fair trial. Accordingly, the Motion (Docket No. 463 at 41–45) is **GRANTED**.

## BACKGROUND

In *Apple I*, the jury found that Virtual Private Network On Demand ("VOD") in iOS 3–6 ("original VOD") and FaceTime in iOS 4–6 and OS X 10.7 and 10.8 ("original FaceTime") infringed VirnetX Inc.'s ("VirnetX") asserted patents. Cause No. 6:10-cv-417, Docket No. 598. The Court entered final judgment and Apple appealed. Cause No. 6:10-cv-417, Docket No. 844. On appeal, the Federal Circuit upheld the jury's finding of infringement of original VOD, but reversed and remanded the finding that original FaceTime infringed based upon a new claim

---

[1] Unless otherwise indicated, all docket numbers refer to Cause No. 6:12-cv-855.

construction.  *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1319 (Fed. Cir. 2014) ("However, the jury was not presented with the question of whether FaceTime infringes the asserted claims under a construction requiring anonymity.  Thus, we remand for further proceedings to determine whether Apple's FaceTime servers provide anonymity.").  The Federal Circuit also remanded the case for a new damages calculation.  *Id.* at 1314.  While Cause No. 6:10-cv-417 was pending at the Federal Circuit, VirnetX filed Cause No. 6:12-cv-855, which accuses the redesigned VOD in iOS 7 and 8 ("new VOD"), the redesigned FaceTime in iOS 7 and 8 and OS X 10.9 and 10.10 ("new FaceTime") and iMessage of infringing its patents.

After the Federal Circuit remanded Cause No. 6:10-cv-417, VirnetX filed a motion to consolidate it with Cause No. 6:12-cv-855.  Cause No. 6:10-cv-417, Docket No. 864.  Although Apple initially opposed the motion, when given the choice between trying Cause No. 6:12-cv-855 before Cause No. 6:10-cv-417 or consolidating the cases, Apple preferred consolidation.  Cause No. 6:10-cv-417, Docket No. 870 at 4.  After reviewing the briefing and holding a hearing, the Court consolidated the cases.  Cause No. 6:10-cv-417, Docket No. 878; Cause No. 6:12-cv-855, Docket No. 220.  In both cases, VirnetX was the plaintiff, Apple was the defendant, different versions of VOD and FaceTime were accused features and the same patents were asserted.  This consolidation combined the new issues in Cause No. 6:12-cv-855 with the unresolved remanded issues in Cause No. 6:10-cv-417, which included (1) damages owed to VirnetX because of the infringement of original VOD and (2) the alleged infringement, damages and willfulness of original FaceTime.  In summary, the effect of *Apple I* on the issues in the consolidated case was as follows:

| Accused Feature | Affirmed Portions of *Apple I* | Issues for the Jury in the Consolidated Case |
|---|---|---|
| Original VOD | Infringement | Damages |
| New VOD | | Infringement, Damages & Willfulness |
| Original FaceTime | Infringement Only If Anonymity Is Proven | Infringement Only If Anonymity Is Proven, Damages & Willfulness |
| New FaceTime | | Infringement, Damages & Willfulness |
| iMessage | | Infringement & Damages |

Before the trial of the consolidated case, in a motion *in limine*, Apple raised concerns regarding *Apple I* and what aspects of the prior trial would be raised before the jury. Docket No. 308 at 1–3. Apple stressed that the prior verdict "should be precluded as irrelevant and unfairly prejudicial." *Id.* at 1. Again, after reviewing the briefing and conducting a hearing, the Court denied the motion with respect to VOD and FaceTime and granted the motion with respect to iMessage, invalidity and damages. Docket No. 389 at 86:22–87:13. Before announcing its ruling, the Court recognized that *Apple I* might complicate the trial:

> But the way I have sort of broken this out, I think based on some of the issues that were raised in the argument leads me to believe that ***a lot of this we're just going to have to flesh out at trial***. And I'm going to have to understand what the context is. And ***it may be that we have a number of sidebars throughout***. And it—you know, if we have to do that, we have to do that.

*Id.* at 86:8–14 (emphasis added).

Apple also filed a motion to exclude the expert opinion of Dr. Mark Jones, VirnetX's infringement expert. Docket No. 317. The motion was based on Dr. Jones's infringement analysis for the redesigned features that only addressed differences between new and original VOD and differences between new and original FaceTime, relying on *Apple I* and the subsequent procedural history. *Id.* Consistent with the order consolidating the actions, the Court denied the

motion, specifically stating, "Although Apple presents valid criticism of Dr. Jones's opinions, they go to the weight of the evidence rather than admissibility."  Docket No. 362 at 3.

In light of the partial denial of Apple's motion *in limine* and denial of the motion to exclude, *Apple I* was discussed more than 50 times by counsel and witnesses during the eight-day consolidated trial.   *E.g.,* Docket No. 433 (1/25/2016 Trial Tr.) at 69:18–70:3, 72:19–73:9, 133:22–134:4, 175:7–176:23, 186:13–19, 187:3–6, 188:7, 191:6–9, 192:23–193:6, 206:5–8, 206:14–20, 213:4–6; Docket No. 434 (1/26/2016 Trial Tr.) at 47:9–19, 108:4–11, 148:13–149:7, 149:14–19, 151:24–152:9, 160:12–161:4, 162:4–9, 165:7–16, 183:11–185:13, 192:5–193:18, 197:7–199:14, 203:25–206:19; Docket No. 436 (1/27/2016 Trial Tr.) at 22:9–11, 122:22–123:20; Docket No. 438 (1/28/2016 Trial Tr.) at 4:18–24, 184:17–185:10, 247:25–248:9; Docket No. 442 (2/1/2016 Trial Tr.) at 95:21–96:19, 106:3–9, 265:5–13; Docket No. 444 (2/2/2016 Trial Tr.) at 174:13–18, 176:12–14, 176:20–23, 177:14–20, 177:21–23, 180:20–25, 181:16–19, 192:6–10, 194:2–6, 194:15–19, 197:7–8, 198:21–23, 199:6–14, 200:13–15, 223:3–5, 227:14–17, 239:16–17, 240:8–11, 241:20–22, 242:7–8; Docket No. 445 (2/2/2016 Trial Tr. (SEALED)) at 8:10–13.

In its post-trial briefing, Apple identifies 17 occasions where VirnetX's counsel mentioned or alluded to *Apple I*.  *See* Docket No. 463 at 43–45; *see also* Docket No. 433 (1/25/2016 Trial Tr.) at 186:13–19, 187:3–6, 191:6–9, 206:14–20; Docket No. 438 (1/28/2016 Trial Tr.) at 4:18–24, 184:17–185:10; Docket No. 442 (2/1/2016 Trial Tr.) at 95:21–96:19, 265:5–13.  Comparably, VirnetX identifies 25 times where Apple mentioned or alluded to *Apple I*.  *See* Docket No. 470 at 46–49 n.39; *see also* Docket No. 433 (1/25/2016 Trial Tr.) at 175:7–176:23; Docket No. 436 (1/27/2016 Trial Tr.) at 122:22–123:20.  The parties discussed the *Apple I* jury finding that original FaceTime infringes—a finding that was ultimately

reversed—at least five times.  Docket No. 433 (1/25/2016 Trial Tr.) at 175:7–176:23, 186:13–19, 191:6–9; Docket No. 436 (1/27/2016 Trial Tr.) at 122:22–123:20; Docket No. 442 (2/1/2016 Trial Tr.) at 95:21–96:19.  Of the times that VirnetX mentioned *Apple I*, Apple objected once after opening arguments.  Docket No. 434 (1/26/2016 Trial Tr.) at 11:11–16:3 ("We said it was a 7th Amendment concern that we were being denied a fair right to a jury trial to have that prior verdict that was reversed and did not exist anymore brought up in front of this jury . . . .").

Aware that the parties planned to rely on *Apple I* throughout the trial (but unaware of the extent of that reliance), the Court discussed *Apple I* in the preliminary and final jury instructions. Docket No. 433 (1/25/2016 Trial Tr.) at 133:22–134:4, 146:23–148:11; Docket No. 444 (2/2/2016 Trial Tr.) at 145:5–19, 157:1–10, 161:1–7.  Specifically, from the final jury instructions:

> The parties have stipulated, or agreed, to some facts in this case.  When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proved.  Additionally**, *a prior jury determined that Apple infringed certain claims of two patents via its [VOD] feature in iOS 3 through iOS 6, which was from 2009 to 2013*.**  Throughout these instructions, I will refer to this feature as Apple's "Original [VOD]."  Just like stipulated facts, that determination is binding, and you must regard it as proved.  However, all other infringement allegations are contested and you must determine whether those claims are infringed.  You may not assume or infer that the other patents and claims are infringed simply because of this prior finding of infringement.

Docket No. 444 (2/2/2016 Trial Tr.) at 145:5–19 (emphasis added).

The jury found for VirnetX on all of the disputed issues.  Docket No. 425.  The jury selected a royalty rate of $1.41, which was in the upper half of the royalty rate range proposed by VirnetX's damages expert, Mr. Roy Weinstein.  *See id.* at 1, 4.  Following the verdict, Apple filed a motion for a new trial based upon the consolidation of Cause Nos. 6:10-cv-417 and 6:12-cv-855.  *See* Docket No. 463 at 41–45.

## **LEGAL STANDARD**

A new trial may be granted when the trial is not fair to the moving party, such as through prejudice to that party or potential jury confusion. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Regional circuit law applies to motions for new trial. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). The Fifth Circuit states:

> Rule 59 of the Federal Rules of Civil Procedure confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. . . . A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.

*Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985) (footnotes omitted).

## **PARTIES' ARGUMENTS**

In its motion for a new trial, Apple argues that mentioning *Apple I* to the jury during the consolidated trial prejudiced Apple. Docket No. 463 at 42. In other words, according to Apple, *Apple I* should have never been raised in a trial involving Cause No. 6:12-cv-855. *Id.* at 43–44. To avoid the prejudice, Apple states that the two cases should not have been tried simultaneously. *Id.* at 45. Apple asks for a new trial for Cause No. 6:10-cv-417 and then a new trial for Cause No. 6:12-cv-855. *Id.*

Apple asserts that the jurors did not decide the consolidated case on the evidence presented at trial after VirnetX repeatedly told them that the first jury, in *Apple I*, found that original VOD and original FaceTime infringed VirnetX's patents. *Id.* at 43, 45. Apple states that the jury in this case improperly deferred to the already determined infringement of original VOD when determining the infringement of new VOD. *Id.* Regarding FaceTime, Apple asserts that referring to *Apple I* created even more confusion and prejudice because the Federal Circuit's remand changed the claim construction, requiring a completely new infringement analysis of

original FaceTime. *Id.* at 44; Docket No. 475 at 25 (citing *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1363 (Fed. Cir. 1998) ("[W]e agree with Hopkins that consideration of the 1995 jury verdict, which was ultimately determined to be premised upon an erroneous claim construction, had significant potential to confuse the jury.")). Moreover, according to Apple, when the jury in this case was deciding whether new FaceTime infringed, it had no way to disregard VirnetX's repeated statements that the jury in *Apple I* had found that original FaceTime infringed. Docket No. 463 at 43.

Regarding willfulness and damages, Apple argues that consolidation "confused and prejudiced the jury's ability to fairly award damages and decide willfulness—confusion that VirnetX exacerbated by tying damages and willfulness together." *Id.* at 44. Immediately after relying on the *Apple I* jury verdict for evidence of willfulness, VirnetX allegedly implied that Apple should be monetarily punished for its actions, a measure of damages not permitted by law. *Id.* at 44. When *Apple I* was repeatedly mentioned by VirnetX during the trial, Apple states that it had no choice but to attempt to give the verdict context by also discussing it. Docket No. 475 at 25.

In response, VirnetX argues that the cases should not be unconsolidated and retried. Docket No. 470 at 48. VirnetX asserts that the Court properly consolidated Cause Nos. 6:10-cv-417 and 6:12-cv-855 based upon common questions of law or fact, the same plaintiff, the same defendant and the same accused products and features. *Id.* According to VirnetX, when given the choice between consolidating the cases or having a trial for Cause No. 6:12-cv-855 in October of 2015 and then a trial for Cause No. 6:10-cv-417 at some later date, Apple chose to consolidate the cases. *Id.* at 46. Further, VirnetX states that because Apple never

requested a mistrial based upon VirnetX's comments about *Apple I*, it did not properly preserve its basis for a new trial. *Id.* at 46–47.

VirnetX further argues that references to *Apple I* did not prejudice Apple because the jury needed to hear about the previous findings of infringement as evidence that Apple committed willful infringement, an issue before the jury. Docket No. 480 at 24. VirnetX asserts that the facts here directly mirror those in *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006). *Id.* From VirnetX's perspective, because Apple redesigned original VOD following *Apple I,* the *Apple I* verdict is "clearly relevant to [Apple's] state of mind" for willfulness. Docket No. 480 at 24 (citing *U.S. Surgical*, 435 F.3d at 1366). Because of VirnetX's willfulness claims, VirnetX asserts that the jury in Cause No. 6:12-cv-855 would have needed to hear about *Apple I* even if the cases had not been consolidated. Docket No. 480 at 25–26.

## ANALYSIS

The Court is faced with the difficult question of whether consolidating the cases, coupled with the repeated witness testimony and argument of counsel regarding the prior jury verdict in *Apple I*, was unfairly prejudicial to Apple and potentially confusing to the jury. *See Montgomery Ward*, 311 U.S. at 251. The role of the jury in our system of justice is, of course, fundamental. We leave it to the jury to sort through the facts, even in the most complex of cases. The Court must "respect the jury's collective wisdom," and it may not "simply substitute its opinion for the jury's." *Smith*, 773 F.2d at 613. However, a new trial should be granted when "prejudicial error was committed in its course." *Id.* Prejudicial error cannot be remedied even through the best efforts of the jury to sort through the issues, because the jury is not given an opportunity to fairly evaluate the evidence.

A party may be prejudiced if the issues in a consolidated case are too similar for a jury to distinguish. *See United States v. Homeward Residential, Inc.*, Cause Nos. 4:12-cv-461, 4:12-cv-543, 2016 WL 777000, at *3 (E.D. Tex. Feb. 29, 2016) ("However, while OFC is a defendant in both of the *Ocwen* and *Homeward* cases, its roles and reasons for liability are distinct, and the Court finds that consolidation would blur the legal distinctions and could confuse the jury."). Whether to consolidate cases is within the discretion of the Court. *See Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985).

In addition, describing a prior verdict before a jury often prejudices a party. D.C. Barrett, *Propriety & Prejudicial Effect of Reference by Counsel in Civil Case to Result of Former Trial of Same Case, or Amount of Verdict Therein*, 15 A.L.R.3d 1101 (1967) (collecting cases). "The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it." *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975).

The Court's decision to consolidate Cause Nos. 6:10-cv-417 and 6:12-cv-855 merged two cases with incredibly similar issues. Counsel's and witnesses' repeated statements about the *Apple I* verdict during the trial created the potential for the jury to defer to the previous jury's infringement findings, even though those findings were partially reversed on appeal. *See Coleman*, 525 F.2d at 1351 ("A jury is likely to give a prior verdict against the same defendant more weight than it warrants."). Moreover, the complexity of the issues and extensive procedural history of the consolidated case magnified the risk of deference to *Apple I* because of jury confusion. Trying the cases at the same time required the jury to evaluate different versions of two accused features, a total of three separate accused features and persistent statements about a robust procedural history that only applied to certain versions of some of the features. In other

words, the jury was tasked with using *Apple I* for the purposes affirmed in Cause No. 6:10-cv-417, while at the same time ignoring *Apple I* when determining the reversed findings in Cause No. 6:10-cv-417 and the new infringement and damages issues in Cause No. 6:12-cv-855. In some instances, *Apple I* and the complicated procedural history made it potentially difficult for the jury to distinguish between the disputed issues because it was repeatedly used as a shortcut for the infringement analysis. *See, e.g.*, Docket No. 434 (1/26/2016 Trial Tr.) at 108:4–11, 148:13–149:7, 149:14–19, 151:24–152:9, 160:12–161:4, 162:4–9, 165:7–16, 183:11–185:13, 192:5–193:18, 197:7–199:14, 203:25–206:19. In other instances, the statements were gratuitous and likely exacerbated any reliance on *Apple I*. *See, e.g.*, Docket No. 433 (1/25/2016 Trial Tr.) at 175:20–22; Docket No. 444 (2/2/2016 Trial Tr.) at 177:21–23, 192:6–10, 242:7–8.

As discussed during the pretrial conference, Docket No. 389 at 86:8–14, the effect of *Apple I* on the jury in the consolidated case could not be fully appreciated until it was given context within the trial. While the Court allowed *Apple I* to be discussed through its rulings, including orders on a motion *in limine* and a motion to exclude, the parties went well beyond what was appropriate and should not have referred to *Apple I* with such frequency. Indeed, many statements regarding *Apple I* were unnecessary. *See, e.g.*, Docket No. 433 (1/25/2016 Trial Tr.) at 175:20–22; Docket No. 444 (2/2/2016 Trial Tr.) at 177:21–23, 192:6–10, 242:7–8. Although the Court was able to observe the jurors throughout trial and is convinced that they made their best effort, Docket No. 446 (2/3/2016 Trial Tr.) at 9:13–19, the repeated references to *Apple I*, particularly those that were unnecessary, may well have prevented them from evaluating the evidence without improperly relying on the *Apple I* verdict. *See Conway v. Chem. Leaman Tank Lines, Inc.*, 525 F.2d 927, 930 (5th Cir. 1976) ("But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the

judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.").

VirnetX's reliance on *U.S. Surgical* to support its use of *Apple I* throughout the consolidated trial is unpersuasive because the circumstances here differ from those in *U.S. Surgical*. In *U.S. Surgical*, the district court made an evidentiary ruling that allowed the plaintiff Applied Medical Resources to introduce evidence regarding a prior verdict in the same case ("*Applied I*"). 435 F.3d at 1365–66. On appeal, the district court's ruling was affirmed, because *Applied I* was relevant to (1) a hypothetical negotiation (i.e., damages) and (2) the defendant U.S. Surgical's state of mind when it decided to make the infringing products (i.e., willfulness). *Id.* at 1366. With respect to willfulness, U.S. Surgical redesigned its infringing product because of *Applied I*, making the prior litigation and verdict "clearly relevant to U.S. Surgical's state of mind" for willfulness. *Id.* According to the Federal Circuit, U.S. Surgical did not show that its probative value was outweighed by the danger of unfair prejudice. *Id.*

In contrast to *U.S. Surgical* where the only disputed issues at the trial were damages owed for the defendant's infringing sales and whether the infringement was willful, infringement, damages and willfulness were disputed in this consolidated case. *See id.* at 1359. *U.S. Surgical* did not present the same potential for jury confusion and unfair prejudice as the consolidated case because liability was undisputed. Although a prior verdict may be relevant in determining whether a defendant's infringement is willful, the prior verdict may have an unfair prejudicial effect when it is discussed in depth with multiple witnesses. *See id.* at 1366 ("U.S. Surgical has not shown that its probative value was outweighed by the danger of unfair prejudice."). The sheer number of times *Apple I* was raised in the consolidated trial further distinguishes the situation here from that in *U.S. Surgical*. *Compare* Docket No. 444 (2/2/2016

Trial Tr.) at 174:13–18, 176:12–14, 176:20–23, 177:14–20, 177:21–23, 180:20–25, 181:16–19, 192:6–10, *with U.S. Surgical*, 435 F.3d at 1366 (identifying an in-house patent lawyer's testimony and an admission that a product redesign was an effort to avoid willful infringement).

By way of example, the following argument by counsel and witness testimony was proffered during the trial:

> But you'll hear that Apple—I'm sorry—that *VirnetX filed a lawsuit against Apple—that was way back in 2010, almost five and a half years ago—seeking fair compensation.*
> *And you'll hear that Apple said no, said [VOD] is not infringing, said FaceTime is not infringing.* And they said a lot of things that I believe we'll be able to prove to you were wrong.
> *There was a trial in November of 2012 right here in this courthouse and right here in this courtroom. And at trial Apple said those same remarks about not using the patent.*
> *As you know, the jury didn't believe them and agreed with us. And there was a verdict in late 2012, November, that [VOD] and FaceTime infringes* [sic].

Docket No. 433 (1/25/2016 Trial Tr.) at 175:8–22 (VirnetX's opening argument) (emphasis added);

> Q: Okay. What was the result of the litigation against Apple, Mr. Larsen?
> A: *Apple was found to infringe our patents on two different product lines, [VOD] as well as FaceTime.*
> Q: Okay. And after *they were determined to have infringed those patents by the jury*, what happened?
> A: Apple appealed that decision to the Federal Circuit Court of Appeals in Washington D.C.

Docket No. 436 (1/27/2016 Trial Tr.) at 122:22–123:5 (Mr. Kendall Larsen's, VirnetX's corporate representative, direct examination) (emphasis added);

> Q: And then there was a *verdict in 2012*. Apple didn't step up and take responsibility for [VOD] then, did it?
> A: No. We didn't feel we needed to.
> Q: And then *an appellate court said, no, Apple you're wrong, in 2014, you do infringe*. You didn't say, we're responsible, there's no dispute, did you?
> A: *At the appellate court they ruled that [VOD] "always" mode did infringe, and we owned that.*

Docket No. 438 (1/28/2016 Trial Tr.) at 247:25–248:9 (Mr. Frank Casanova's, Apple's corporate

representative, cross examination) (emphasis added);

> Q: Is this your first trial against Apple?
> A: No, sir, it's not.
> Q: When was the last one?
> A: 2012, I believe.
> Q: ***And what did the jury in that trial conclude about [VOD] and FaceTime?***
> A: ***Their conclusion was that it did indeed infringe on our—our patents.***
> Q: And am I correct that the finding on [VOD] was affirmed?
> A: That's my understanding yes, sir.

Docket No. 434 (1/26/2016 Trial Tr.) at 47:9–19 (Dr. Robert Short's, co-inventor, direct

examination) (emphasis added);

> We heard from Mr. Patience, who at the time was right at the top. He had a boss, and that boss's boss was Tim Cook. And ***he admits that they decided to keep on infringing***.

Docket No. 444 (2/2/2016 Trial Tr.) at 177:21–23 (VirnetX's closing argument) (emphasis

added);

> But I think this testimony from Mr. Patience is telling of Apple's attitude towards VirnetX's intellectual property. He didn't think they had any obligation to make a change even after they'd been found liable for infringement. ***Keep on infringing***. No change to [VOD].

*Id.* at 192:6–10 (VirnetX's closing argument) (emphasis added); and

> ***VirnetX fought to keep the verdict it had*** because VirnetX wants justice on the patents.

*Id.* at 242:7–8 (VirnetX's closing argument) (emphasis added). The Court is left with the

conclusion that repeated statements such as these—more than 50 in all, many of which were

either redundant or gratuitous—tipped the balance towards unfairly prejudicing Apple.

Moreover, although iMessage was not part of *Apple I*, the confusion and unfair prejudice

associated with new VOD, original FaceTime and new FaceTime potentially spilled over into the

jury's finding of infringement of iMessage. Further, in this consolidated case, there is no way to

untangle liability from damages. The repeated references to *Apple I* may have influenced the royalty rate selected by the jurors. *See* Docket No. 444 (2/2/2016 Trial Tr.) at 195:20–25, 250:12–25 ("I'm also a little bit bothered by this notion that Apple is saying, basically you should punish VirnetX and keep the damages down . . . .") (VirnetX's closing argument). Because only certain findings from the previous jury verdict were relevant to the consolidated case and in light of the repeated references to that prior verdict, there was a substantial risk that the jury would defer to the prior jury's findings altogether. To be clear, the consolidated case could very likely have been tried successfully—and fairly—had the *Apple I* verdict not been repeatedly mentioned, often unnecessarily, throughout the trial. Indeed, were the Court examining a motion for a new trial based upon the consolidation alone, this scenario would in all likelihood not dictate the same result. However, under the circumstances here, the repeated references to the prior jury verdict in the consolidated case resulted in an unfair trial.

## <u>CONCLUSION</u>

Apple's Motion for a New Trial Based Upon the Consolidation of Cause Nos. 6:10-cv-417 and 6:12-cv-855 (Docket No. 463 at 41–45) is **GRANTED**. The Court is acutely aware of the significant time, effort and considerable resources expended by the parties, counsel and the Court itself in preparing for and trying this case. The substantial inconvenience to the jury resulting from eight days of trial and the time jurors were forced to spend away from family, work and other responsibilities must also be recognized. The Court does not reach this decision lightly or without considering fully the briefing, argument of counsel and the interests of the parties in bringing this matter to a final conclusion. Despite these important considerations, the Court's paramount obligation—to ensure that both sides receive a fair and impartial trial —compels this result.

Accordingly, the orders consolidating the cases (Cause No. 6:10-cv-417, Docket No. 878; Cause No. 6:12-cv-855, Docket No. 220) are hereby **VACATED**. The issue of willfulness in both cases is **BIFURCATED**. Cause No. 6:10-cv-417 will be retried with jury selection to begin on **September 26, 2016**, unless the parties agree otherwise on an alternative date, and immediately followed by a second trial on the issue of willfulness. Cause No. 6:12-cv-855 will be retried after Cause No. 6:10-cv-417.

The parties are **ORDERED** to meet and confer and file a joint pretrial plan for Cause No. 6:10-cv-417 within **ten (10) days** of this order. The pretrial plan should include agreed upon language for the Court to read to the jury that addresses *Apple I* and the subsequent procedural history. During the trials, the parties are required to provide fair notice to each other and the Court before raising *Apple I*.

**So ORDERED and SIGNED this 29th day of July, 2016.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

# Exhibit 20

# [Filed Under Seal]

Exhibit 21

[Filed Under Seal]

Exhibit 22

1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5   CHRISTINA GRACE and KEN    )
    POTTER, Individually and on)
6   Behalf of All Others       )
    Similarly Situated         )
7                              )
          Plaintiffs,          )
8                              )
              vs.              )   No. 5:17-cv-00551-LHK-NC
9                              )
    APPLE, INC.,               )
10                             )
          Defendant.           )
11  ___                        )

12

13

14       HIGHLY CONFIDENTIAL UNDER PROTECTIVE ORDER

15            DEPOSITION OF BETH KELLERMANN

16                 San Francisco, CA

17            Wednesday, February 14, 2018

18

19

20

21

22

23  REPORTED BY:

24  SUSAN F. MAGEE, RPR, CCRR, CLR, CSR No. 11661

25

2

```
1    APPEARANCES:

2            PEARSON SIMON WARSHAW LLP

3            Attorneys for Plaintiffs

4                15165 Ventura Boulevard

5                Suite 400

6                Sherman Oaks, CA 91403

7                (818) 788-8300

8                dwarshaw@pswlaw.com

9            BY: DANIEL L. WARSHAW, ESQ.

10

11           STEYER LOWENTHAL BOODROOKAS ALVAREZ & SMITH LLP

12               One California Street

13               Third Floor

14               San Francisco, CA 94111

15               (415) 421-3400

16               sjain@steyerlaw.com

17           BY: SUNEEL JAIN, ESQ.

18

19           KIRKLAND & ELLIS LLP

20           Attorney for Defendant

21               333 South Hope Street

22               Los Angeles, CA 90071

23               (213) 680-8405

24               alexander.pilmer@kirkland.com

25           BY: R. ALEXANDER PILMER, ESQ.
```

13

1    improved technologies and processes for responding to

2    electronic discovery.

3        Q.   Okay.  So how long did you hold that position

4    as e-discovery manager at Apple?

5        A.   I want to say in 2014 my position -- I ended up

6    taking on more responsibility besides just electronic

7    discovery for litigation.  I'm still -- I still oversee

8    electronic discovery as part of my role and

9    responsibility.  I also now and have since 2014 managed

10   the matter management/eBilling services for litigation.

11   Somewhere in 2012, although my title didn't change, I

12   took over responsibility for the legal specialist on the

13   team, so I went from e-discovery manager to e-discovery

14   and specialist manager to litigation operations manager.

15            So if that makes any sense, the timeline would

16   have been 2007 to 2012 as the e-discovery manager; 2012

17   to 2014 as e-discovery and specialist manager; 2014 to

18   today litigation support manager.

19       Q.   So it seems --

20       A.   I'm sorry.  Litigation operations manager.

21       Q.   So it seems like your duties just increased and

22   you kept a lot of the previous duties?

23       A.   Correct.

24       Q.   Is that a fair way to summarize it?

25       A.   Correct.

16

```
1         A.  Yes.

2         Q.  Who is that person in the department?

3         A.  I report to Noreen Krall, K-r-a-l-l.  She's the

4    VP of litigation.

5         Q.  Is Ms. Krall the highest person --

6    highest-ranking person at Apple in the litigation

7    department?

8         A.  In the litigation department, yes.

9         Q.  So you mentioned previously that you've been

10   deposed several times.

11            Were any of those depositions regarding

12   litigation concerning Apple?

13        A.  I'm -- I'm the designated 30(b)(6) witness for

14   topics related to records management, information

15   governance, e-discovery, how Apple produces its

16   documents in litigation.

17        Q.  Have you ever been designated as a corporate

18   witness in state or federal court for anything other

19   than records management, e-discovery, production of

20   documents?

21            MR. PILMER:  I'll object to the form.

22            THE WITNESS:  There was one case.  It was a

23   patent litigation matter where they took my 30(b)(6)

24   deposition and then -- and then reopened a new

25   deposition to ask me about how I used certain features
```

1    APL-GRACE_00001958.

2         (Exhibit 4, Excerpt of APL-GRACE_00001958 (2

3    pages), marked for identification.)

4         BY MR. WARSHAW:

5    Q.  So I spoke with your counsel about this prior

6    to the deposition.  We've created the cover page and

7    printed out the first page of a very voluminous

8    spreadsheet just so you can see the format of it.

9         Have you seen this spreadsheet before in either

10   paper or electronic form?

11   A.  I've seen it in electronic form.

12   Q.  Okay.  And I have an electronic copy of it on

13   my laptop.  If you'd like to look at that now while I

14   question you, that's fine if it will help you answer the

15   questions.

16        MR. PILMER:  I have it on mine too so she can

17   look at it on mine if she wants.

18        BY MR. WARSHAW:

19   Q.  And I'm not going to ask you about what the

20   serial numbers are on the spreadsheet.  I'm going to ask

21   you questions about how the spreadsheet was developed.

22   So you won't need to necessarily refer to anything on

23   the spreadsheet to answer the questions, but I want to

24   make sure you have it front of you in case you feel more

25   comfortable having a complete version of the document

128

1    because printing it out would take thousands and

2    thousands and thousands of pages.

3         A.   Understood.

4              MR. WARSHAW:  Great.  Thank you.

5              What exhibit number are we on?

6              THE REPORTER:  4.

7              MR. WARSHAW:  Thank you.

8              BY MR. WARSHAW:

9         Q.   So do you know what the spreadsheet contains?

10        A.   So this spreadsheet is a list of serial numbers

11   and the iOS device that -- I mean, the iOS version that

12   they were running on -- each of these serial numbers

13   were running on on it looks like April 15th, April 16th

14   and April 17th of -- I'm not sure what year.  I know it

15   was April.

16        Q.   So I can represent to you that our

17   understanding is that the year is 2014 of what we call

18   the FaceTime break, but you folks say FaceTime stopped

19   functioning due to certificate expiration.

20             Does that make sense -- does that refresh your

21   memory about the year?

22        A.   Yes.  I know those were the dates at issue.

23        Q.   Do you know whether or not, if a certain serial

24   number iPhone 4 or 4S would be listed on this report,

25   Exhibit 4, if the only transaction that occurred was the

```
1              I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3              That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were placed under oath; that a verbatim

7     record of the proceedings was made by me using machine

8     shorthand which was thereafter transcribed under my

9     direction; further, that the foregoing is an accurate

10    transcription thereof.

11             I further certify that I am neither financially

12    interested in the action nor a relative or employee or

13    any attorney of any of the parties.

14             IN WITNESS WHEREOF, I have this date subscribed

15    my name.

16

17    Dated: February 22, 2018

18

19

20

21

22             Susan F. Magee, RPR, CCRR, CLR
               CSR No. 11661
23

24

25
```

Exhibit 24

[Filed Under Seal]

Exhibit 25

[Filed Under Seal]

Exhibit 26

[Filed Under Seal]

# Exhibit 27

# [Filed Under Seal]

Exhibit 28

[Filed Under Seal]