**EISNERAMPER**

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

|  |  |
|---|---|
| CHRISTINA GRACE AND KEN POTTER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARY SITUATED, Plaintiffs, v. APPLE INC., Defendant. | NO. 5:17-cv-00551-LHK |

EXPERT REPORT OF DANA M. TREXLER, CPA

June 15, 2018

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

## I.     INTRODUCTION

On behalf of Apple Inc. ("Apple" or "Defendant"), I have been asked to address the opinions set forth in the May 4, 2018 Expert Report of Dr. Justine S. Hastings ("Dr. Hastings") (the "Hastings Report").  The Hastings Report was prepared on behalf of Christina Grace and Ken Potter, individually and on behalf of all others similarly situated (the "Proposed Class" or "Plaintiffs") in connection with their case against Apple, in which Plaintiffs allege trespass to chattels and violations of the Unfair Competition Law, California Business and Professions Code §17200, et seq. (the "UCL").  The Hastings Report includes an analysis of and opinions on:

1) "whether there exist economic methodologies which can be used to reliably demonstrate that members of the Proposed Class have incurred a common impact…"[1] and

2) "whether there exist generally-accepted economic methodologies and evidence common to the Proposed Class which can be used to reliably quantify class-wide diminution in value damages…".[2]

This report contains my opinions to be expressed at trial, along with the basis for my opinions.

## II.     BASIS FOR ANALYSIS

I am a Partner at EisnerAmper LLP, a full-service advisory and accounting firm that, among other services, provides business, economic, financial, and damages consulting to clients in a variety of industries.  I am a Certified Public Accountant and Certified in Financial Forensics.  My education includes a Master in Business Administration from The Wharton School of the University of Pennsylvania and a Bachelor of Science degree in Accounting from Bucknell University.  My curriculum vitae is attached as Exhibit A.

The analysis and opinions expressed in this report are based upon information and documentation identified to date, my education, my experience in performing similar financial analyses,

---

[1] ECF 174-85 Hastings Report, para. 7.
[2] ECF 174-85 Hastings Report, para. 7.

documents and testimony in the record, and accepted methodologies and approaches.  I considered various financial documents and data, deposition testimony, and other relevant documents.  In forming my opinion, I relied upon the documents specifically identified throughout this report and the accompanying exhibits.  A list of the documents I consider in forming my opinions is provided in Exhibit B.  The documents and information utilized in my analysis and report are the types of documents and information upon which experts in my field typically rely when performing such an analysis.  In addition to the documents produced by the parties, I considered relevant publicly available information, which is also typical of the type of information upon which experts in this field rely.  I also spoke to Dr. Avi Rubin, Professor of Computer Science John Hopkins University and Technical Director of Johns Hopkins Security Institute, ("Dr. Rubin").

This report was prepared in accordance with the Association of International Certified Professional Accountants ("AICPA") Consulting Services Standards.  The work performed does not include the performance of an audit, review, or compilation of financial statements in accordance with Generally Accepted Auditing Standards ("GAAS") or with standards established by the AICPA.

Should additional information, testimony, or documents that affect my analysis or opinions become available after the issuance of my report, I reserve the right to supplement or update my analysis and/or opinions.  Furthermore, I reserve the right to prepare supplemental materials such as summaries, graphical exhibits or charts for trial, as well as to provide opinions and other materials in response to any additional expert opinions.

My firm is being compensated at a rate of $525 per hour for my time in this matter.  My firm's compensation is not contingent upon the outcome of this litigation.

## III.   BACKGROUND

A.   PARTIES

   *1.   Apple*

Headquartered in Cupertino, California, Apple "designs, manufactures and markets mobile communication and media devices and personal computers, and sells a variety of related software, services, accessories, networking solutions and third-party digital content and applications."[3] Apple sells its products and services throughout the world to consumers, businesses, educational, enterprise and government customers.[4]

   *a)   iPhone*

iPhone is Apple's line of smartphones which utilizes the iOS operating system.[5]  After introducing the first iPhone model in June 2007, Apple has released one or more new iPhone models each year. In total, Apple has released 18 iPhone models. See Table 1.

---

[3] Apple Form 10-K for the Fiscal Year Ended September 30, 2017 ("Apple 2017 10-K"), pgs. 1, 17.
[4] Apple Form 10-K for the Fiscal Year Ended September 30, 2017 ("Apple 2017 10-K"), pg. 1.
[5] Apple Form 10-K for the Fiscal Year Ended September 30, 2017 ("Apple 2017 10-K"), pg. 1.

TABLE 1: SUMMARY OF iPHONE MODEL RELEASE DATES

| Model | Release Date |
|---|---|
| iPhone[6] | 6/29/2007 |
| iPhone 3G[7] | 7/11/2008 |
| iPhone 3GS[8] | 6/19/2009 |
| iPhone 4[9] | 6/24/2010 |
| iPhone 4S[10] | 10/14/2011 |
| iPhone 5[11] | 9/21/2012 |
| iPhone 5s[12] and 5c[13] | 9/20/2013 |
| iPhone 6 and 6 Plus[14] | 9/19/2014 |
| iPhone 6s and 6s Plus[15] | 9/25/2015 |
| iPhone SE[16] | 3/31/2016 |
| iPhone 7 and 7 Plus[17] | 9/16/2016 |
| iPhone 8 and 8 Plus[18] | 9/22/2017 |
| iPhone X[19] | 11/3/2017 |

    *b)  iOS*

iOS is Apple's mobile operating system.[20]  Apple hardware products utilizing iOS, including the iPhone, are referred to as iOS devices.[21]  Apple states that its "financial condition and operating results depend substantially on the Company's ability to continually improve iOS and iOS devices in order to maintain their functional and design advantages."[22] The first version of iOS was introduced and included with the first iPhone and, like the iPhone, Apple has continually released new versions of iOS each year, as summarized in Table 2.  In addition, Apple regularly releases

---

[6] https://www.apple.com/newsroom/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores/.

[7] https://www.apple.com/newsroom/2008/06/09Apple-Introduces-the-New-iPhone-3G/.

[8] https://www.apple.com/newsroom/2009/06/08Apple-Announces-the-New-iPhone-3GS-The-Fastest-Most-Powerful-iPhone-Yet/.

[9] https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.

[10] https://www.apple.com/newsroom/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud/.

[11] https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.

[12] https://www.apple.com/newsroom/2013/09/10Apple-Announces-iPhone-5s-The-Most-Forward-Thinking-Smartphone-in-the-World/.

[13] https://www.apple.com/newsroom/2013/09/10Apple-Introduces-iPhone-5c-The-Most-Colorful-iPhone-Yet/.

[14] https://www.apple.com/newsroom/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History/.

[15] https://www.apple.com/newsroom/2015/09/21iPhone-6s-iPhone-6s-Plus-Arrive-on-Friday-September-25/.

[16] https://www.apple.com/newsroom/2016/03/21Apple-Introduces-iPhone-SE-The-Most-Powerful-Phone-with-a-Four-inch-Display/.

[17] https://www.apple.com/newsroom/2016/09/apple-introduces-iphone-7-iphone-7-plus/.

[18] https://www.apple.com/newsroom/2017/09/iphone-8-and-iphone-8-plus-a-new-generation-of-iphone/.

[19] https://www.apple.com/newsroom/2017/09/the-future-is-here-iphone-x/.

[20] Apple Form 10-K for the Fiscal Year Ended September 30, 2017 ("Apple 2017 10-K"), pg. 2.

[21] Apple Form 10-K for the Fiscal Year Ended September 30, 2017 ("Apple 2017 10-K"), pgs. 1-2.

[22] Apple Form 10-K for the Fiscal Year Ended September 30, 2017 ("Apple 2017 10-K"), pg. 9.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

iOS updates in between iOS version releases (e.g., Apple released iOS 7.1 on March 10, 2014)[23] which typically contain improvements, security updates, and bug fixes.[24]

TABLE 2: SUMMARY OF iOS RELEASE DATES[25]

| Version | Release Date |
|---------|--------------|
| 1 | 06/29/2007 |
| 2 | 07/11/2008 |
| 3 | 06/17/2009 |
| 4 | 06/22/2010 |
| 5 | 10/12/2011 |
| 6 | 09/19/2012 |
| 7 | 09/18/2013 |
| 8 | 09/17/2014 |
| 9 | 09/16/2015 |
| 10 | 09/13/2016 |

I understand that, after Apple releases each new iOS version, iPhone owners whose iPhones are eligible to be updated to the new version may choose whether to update their iOS.[26]

### 2.     The Proposed Class

I understand that the Proposed Class is comprised of individuals who owned an iPhone 4 or 4S that, as of April 16, 2014, had been operating on iOS 6 or earlier.[27]

## B.     iPHONE 4 AND 4S DEVICES

### 1.     iPhone 4

Apple began selling the iPhone 4 on June 24, 2010.[28]  The iPhone 4 was the successor to the iPhone 3GS, and it featured a new design, a higher resolution display, faster processor, more RAM, and a

---

[23] https://support.apple.com/kb/dl1732?locale=en_US.
[24] Discussion with Dr. Rubin.
[25] https://www.lifewire.com/ios-versions-4147730.
[26] Discussion with Dr. Rubin.
[27] First Amended Class Action Complaint, filed April 5, 2017, para. 1 (the "Amended Complaint").
[28] https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.

front-facing camera, among other upgrades.[29]  The iPhone 4 was offered in either black or white, and with storage of 16GB or 32GB for a stated retail price of $199 and $299, respectively.[30]  On October 4, 2011, Apple introduced an iPhone 4 model with 8GB of storage.

I understand that Apple discontinued sales of the iPhone 4 in September 2013.[31]

### 2.      iPhone 4S

Apple began selling the iPhone 4S on October 14, 2011.[32]  The iPhone 4s was the successor to the iPhone 4, featuring a faster processor, improved camera, and improved connectivity, among other upgrades.[33]  The iPhone 4S was offered in either black or white, and with storage of 16GB, 32GB, or 64GB for $199, $299, and $399, respectively.[34] On September 10, 2013, Apple introduced an iPhone 4S model with 8GB of storage.[35]

### 3.      Next Generation iPhones

#### a.   iPhone 5

Apple began selling the iPhone 5 on September 21, 2012.[36]  The iPhone 5 was the successor to the iPhone 4S, and was touted as the thinnest, lightest iPhone ever released.[37]  It featured a new display, faster processor, better wireless technology, and improved battery life.[38]  The iPhone 5 was also the first iPhone to include the new Lightning connector, which replaced the 30-pin adapter

---

[29] https://www.apple.com/newsroom/2009/06/08Apple-Announces-the-New-iPhone-3GS-The-Fastest-Most-Powerful-iPhone-Yet/ and https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.
[30] https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.
[31] https://www.cnn.com/2013/08/12/tech/mobile/new-iphone-september/index.html.
[32] https://www.apple.com/newsroom/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud/.
[33] https://www.apple.com/newsroom/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud/ and https://www.apple.com/newsroom/2009/06/08Apple-Announces-the-New-iPhone-3GS-The-Fastest-Most-Powerful-iPhone-Yet/ and https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.
[34] https://www.apple.com/newsroom/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud/.
[35] https://www.apple.com/newsroom/2013/09/10Apple-Introduces-iPhone-5c-The-Most-Colorful-iPhone-Yet/
[36] https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.
[37] https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.
[38] https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.

that had been used with previous iPhones.[39] The iPhone 5 was offered in either white or black, and with storage of 16GB, 32GB, or 64GB for suggested retail prices of $199, $299, and $399, respectively.[40]

### b.  iPhone 5s

Apple began selling the iPhone 5s on September 20, 2013.[41]  The iPhone 5s was the successor to the iPhone 5, featuring a faster processor, improved camera, and fingerprint unlocking capability.[42] The iPhone 5s was offered in gold, silver, or space gray, and with storage of 16GB, 32GB, or 64GB for suggested retail prices of $199, $299, and $399, respectively.[43]

### c.  iPhone 5c

Apple introduced the iPhone 5c on September 20, 2013, at the same time as the iPhone 5s.[44]  The iPhone 5c was technologically similar to the iPhone 5, but was offered in colorful, interchangeable cases.[45]

The iPhone 5c was offered in blue, green, pink, yellow or white, and with storage of 16GB or 32GB for suggested retail prices of $99 and $199, respectively.

### d.  iPhone 6 and iPhone 6 Plus

In what it described as "the biggest advancements in iPhone history," Apple formally announced the iPhone 6 and iPhone 6 Plus on September 9, 2014.[46]  Both phones featured all-new, high resolution displays, brand new unibody designs, shaped glass, faster processors, larger storage

---

[39] https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.

[40] https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.

[41] https://www.apple.com/newsroom/2013/09/16iPhone-5s-iPhone-5c-Arrive-on-Friday-September-20/.

[42] https://www.apple.com/newsroom/2013/09/16iPhone-5s-iPhone-5c-Arrive-on-Friday-September-20/.

[43] https://www.apple.com/newsroom/2013/09/16iPhone-5s-iPhone-5c-Arrive-on-Friday-September-20/.

[44] https://www.apple.com/newsroom/2013/09/16iPhone-5s-iPhone-5c-Arrive-on-Friday-September-20/.

[45] https://www.apple.com/newsroom/2013/09/10Apple-Introduces-iPhone-5c-The-Most-Colorful-iPhone-Yet/ and https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.

[46] https://www.apple.com/newsroom/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History/.

options, Apple Pay capability, and improved cameras, among other improvements.[47]  Both phones were larger than any ever offered by Apple, with the iPhone 6 Plus being the single largest, offering 88 percent more viewing area than the iPhone 5s.[48]  Both phones were offered in gold, silver, or space gray, and with storage of 16GB, 64GB, or 128GB.  The iPhone 6 was offered for suggested retail prices of $199, $299, and $399, while the iPhone 6 Plus was offered for $299, $399, and $499.[49]

## C.     FACETIME

Apple introduced a proprietary video chat service it called "FaceTime" in June 2010, and bundled it as a free feature available to users of the iPhone 4.[50] At that time, FaceTime was only available through use of a Wi-Fi connection.[51]  Apple made FaceTime available to Mac OS X Snow Leopard users in October 2010[52] and iPad 2 users in March 2011.[53]  With the introduction of iOS 6 in September 2012, certain users were provided with the ability to make and receive FaceTime calls over cellular networks, without the need for a Wi-Fi connection.[54]

## D.     iOS 7

Apple released iOS 7 on September 18, 2013 as an upgrade for owners of iPhone devices generation 4 and later.[55]  I understand that iOS 7 was not compatible with the iPhone 3GS or earlier iPhone devices.[56]   I understand that, with iOS 7, Apple introduced a largely revamped user

---

[47] https://www.apple.com/newsroom/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History/.
[48] https://www.apple.com/newsroom/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History/.
[49] https://www.apple.com/newsroom/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History/.
[50] https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.
[51] https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.
[52] https://www.apple.com/newsroom/2010/10/20Apple-Brings-FaceTime-to-the-Mac/.
[53] https://www.apple.com/newsroom/2011/03/02Apple-Launches-iPad-2/.
[54] https://www.apple.com/newsroom/2012/06/11Apple-Previews-iOS-6-With-All-New-Maps-Siri-Features-Facebook-Integration-Shared-Photo-Streams-New-Passbook-App/.
[55] https://www.apple.com/newsroom/2013/09/10iOS-7-With-Completely-Redesigned-User-Interface-Great-New-Features-Available-September-18/.
[56] https://www.apple.com/newsroom/2013/09/10iOS-7-With-Completely-Redesigned-User-Interface-Great-New-Features-Available-September-18/.

interface, including new sounds, animation, controls, notifications, and other changes, as well as other improvements and enhancements to functionality and the user experience.[57]   One such enhancement available to iOS 7 users was the ability to use FaceTime to make audio-only calls, which required less data than video calls and which served as an alternative to carrier voice plans.[58]



TABLE 3: NUMBER OF iPHONE 4 AND iPHONE 4S DEVICES UPGRADED TO iOS 7
FROM SEPTEMBER 2013 THROUGH APRIL 2015[59]

| Month | | iPhone 4 | iPhone 4S | Total |
|---|---|---|---|---|
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |
| ▉ | | ▉ | ▉ | ▉ |

---

[57] https://support.apple.com/kb/dl1682?locale=en_US.
[58] Discussion with Dr. Rubin.
[59] Exhibit 1.0.

I understand that Apple also released the following updates to iOS 7 in order to fix bugs, add functionality, maximize security and improve performance. For example:

- On March 10, 2014, Apple released iOS 7.1.  This update included improvements to CarPlay, Siri, iTunes Radio, Calendar, fingerprint recognition, and notifications, among others. It also improved performance for iPhone 4 devices.[60]
- On April 22, 2014, Apple released iOS 7.1.1.  This update included various improvements and bug fixes.[61]
- On June 30, 2014, Apple released iOS 7.1.2. This update included various improvements and bug fixes.[62]

E.    EXPIRATION OF THE DIGITAL CERTIFICATE

I understand that, on April 16, 2014, a certificate within certain Apple devices[63] expired, causing FaceTime to no longer function on iPhone 4 and iPhone 4S devices operating on iOS 6 or earlier.[64] Following the expiration of the digital certificate, individuals with affected iOS devices could recover the ability to use FaceTime by performing a free update to iOS 7.1.[65]

F.    MARKET FOR USED iPHONES

An owner of an iPhone who desires to obtain some form of monetary value for their used device has two primary options: they can trade in their used iPhone towards the purchase of a new device or some other form of consideration (a "trade-in"), or they can sell their used iPhone to a company or prospective user.

---

[60] https://support.apple.com/kb/dl1732?locale=en_US.
[61] https://support.apple.com/kb/dl1736?locale=en_US.
[62] https://support.apple.com/kb/dl1750?locale=en_US.
[63] Pilmer Ex 2 Thirumalai Deposition, dated April 20, 2018, pg. 71.
[64] Pilmer Ex 2 Thirumalai Deposition, dated April 20, 2018, pgs. 53-54, 60-61.
[65] Pilmer Ex 2 Thirumalai Deposition, dated April 20, 2018, pgs. 63-64. Apple released iOS 7.1 on March 10, 2014 (https://support.apple.com/kb/dl1732?locale=en_US).

### 1.      iPhone Trade-in Market

I understand that an individual who wishes to trade-in their used iPhone may have certain options available to them, which may depend, in part, on the model, condition, carrier, and other criteria specific to their device.  One such option is for that individual to trade in their used iPhone with a carrier in exchange for a credit towards a new device.  For instance, in September 2013, Verizon and AT&T offered customers a minimum of $200 trade-in credit for an iPhone 4 or iPhone 4S in "good and working condition."[66] In addition to carriers, retailers such as Apple, Best Buy, Target, and Staples offered trade-in programs whereby iPhone owners can trade their used phones for credit towards a new device and/or other store credits.[67]

### 2.      iPhone Resale Market

I understand that an individual who wishes to sell their used iPhone may have certain options available to them other than trade-ins, depending on the model, condition, carrier, and other criteria specific to their device.  For instance, websites such as Craigslist, Gazelle, Amazon, and eBay allow an individual to advertise and/or negotiate the sale of their used iPhone for cash and/or some other form of consideration.

## IV.    SUMMARY OF OPINIONS

It is my opinion that the conclusions reached in the Hastings Report are speculative, unreliable, and subject to fundamental flaws in the analysis and underlying methodologies employed. Specifically,

- The Hastings Report failed to establish the existence of an economic methodology which can be used to reliably demonstrate that members of the Proposed Class have incurred a common impact as a result of the expiration of the digital certificate as a result of the following, among other reasons:

---

[66] https://www.usatoday.com/story/tech/2014/09/13/where-to-sell-your-old-iphone/15603369/.
[67] https://www.usatoday.com/story/tech/2014/09/13/where-to-sell-your-old-iphone/15603369/.

- o Failure to establish that the "utility losses" allegedly experienced by members of the Proposed Class are common among all members of the Proposed Class. The Hastings Report fails to analyze how the "utility" would vary among members of the Proposed Class resulting from differences such as the model of the device (iPhone 4 versus iPhone 4S), the version of iOS running on the device, the users' propensity to utilize the FaceTime feature, and the condition of the device (e.g., whether it was broken, cracked screen, good condition, etc.).

- o Failure to measure the lost utility due to an inability to use FaceTime, let alone demonstrate that a methodology capable of quantifying damages on a class-wide basis exists.

- o Failure to establish that there is a loss in resale value of the iPhone 4 and iPhone 4S resulting from the expiration of the digital certificate. The Hastings Report ignores data demonstrating increases in the resale value of the devices subsequent to the expiration of the digital certificate, and relies upon data which is not representative of resale amounts available to members of the Proposed Class. Further, the Hastings Report failed to establish that the loss is common among members of the Proposed Class, as differences in the device model (iPhone 4 or iPhone 4S, the version of iOS running on the device, the condition of the phone, among others) affect resale price.

- The Hastings Report failed to establish that a generally-accepted economic methodology exists to reliably quantify class-wide diminution in value damages as a result of the expiration of the digital certificate for the following reasons:

  - o Failure to measure restitution for Plaintiffs' UCL claim as the difference between the price Plaintiffs paid to Apple for their devices and the value of the product they received. The Hastings Report performed no such analysis.

  - o Failure to measure damages for Plaintiffs' trespass to chattels claims as the lesser of the diminution in the value of Plaintiffs' devices and the cost of repair. The Hastings Report performed no such analysis.

  - o Failure to establish causation between the expiration of the digital certificate and the alleged decline in resale value of the iPhone 4 and iPhone 4S devices.

    o  Performance of a regression analysis which suffers from the following fatal flaws which invalidate the results of the regression analysis:

- Reliance on and usage of data which is not representative of resale values and characteristics of Proposed Class members.
- Failure to consider many of the relevant factors impacting the resale value of the relevant iPhones.
- Failure to account for the disparity among the Proposed Class members' various iPhone devices, such that it is impossible to quantify a single "benchmark" resale value that could reasonably apply to every member in the Proposed Class. Differences in the devices result from characteristics including, but not limited to, model, color, condition, memory size, version of iOS running on the device, among others.

My analysis of the Hastings Report and the support for my opinions are discussed in the remainder of this report.

## V. ANALYSIS OF THE HASTINGS REPORT

I discuss my analysis of the Hastings Report in the following sections:

    A.  Fundamental Flaws in the Hastings Report's Assessment of Common Impact; and

    B.  Fundamental Flaws in the Hastings Report's Methodology to Quantify Class-wide Damages.

### A. FUNDAMENTAL FLAWS IN THE HASTINGS REPORT'S ASSESSMENT OF COMMON IMPACT

In a five-paragraph section titled, "Assessing Common Impact," the Hastings Report explains how it reached the determination that "all or almost all members of the Class were adversely affected by" the expiration of the digital certificate. Specifically, the Hastings Report proffers that members of the Proposed Class:

- "[L]ost the value of using Face Time on any iPhone 4 or 4S running on iOS 6 and earlier operating systems…" [68]  The Hastings Report claims the common loss allegedly suffered by the Proposed Class was "lost utility" and lost "option value".  The Hastings Report does not make any attempt to quantify "lost utility" or "lost option value" ("Alleged Common Harm 1");[69]

- "[E]xperienced loss due to reduced performance" if the Proposed Class upgraded their phone's operating system to iOS 7.[70]  The Hastings Report claims the common loss allegedly suffered by the Proposed Class is based on lower "utility."  The Hastings Report does not make any attempt to quantify "lost utility" due to reduced performance ("Alleged Common Harm 2");[71] and

- Lost value due to a drop in the resale price of the iPhone 4 or 4S under the premise that "these models' resale prices would have dropped due to a loss in value in the market for a valued feature" ("Alleged Common Harm 3").[72]

Based on the analysis of these three alleged "commonalities", the Hastings Report sets forth the following conclusion regarding the existence of common impact:

> Therefore, all or almost all members of the Class were adversely affected by the Break. This is demonstrated using economic reasoning, economic principles, and facts related to the Break which are common to the class. The existence of each Class Member's injury is an issue common to the Class and subject to generalized proof based on basic economic theory. The existence of each Class Member's injury is not an issue unique to each Class Member.[73]

The Hastings Report's assessment of the common impact to the Proposed Class, and the conclusions reached therefrom suffers from the following fundamental flaws:

1. Flaws in relying on the "Utility Theory" for Alleged Common Harms 1 and 2; and

2. Unsupported presumption of a loss in resale value of the iPhone 4 or 4S; and

---

[68] ECF 174-85 Hastings Report, para. 32.
[69] ECF 174-85 Hastings Report, para. 32; Pilmer Ex. 15 Hastings Deposition, pgs. 49-50.
[70] ECF 174-85 Hastings Report, para. 33; Pilmer Ex. 15 Hastings Deposition, pgs. 49-50.
[71] ECF 174-85 Hastings Report, para. 33.
[72] ECF 174-85 Hastings Report, para. 34.
[73] ECF 174-85 Hastings Report, para. 36.

3.   Conclusion on the alleged common impact.

Each of these fundamental flaws is discussed in the following sections.

1.        Flaws in Relying on the "Utility Theory" for Alleged Common Harms 1 and 2

Underpinning the analysis of whether a common impact can be identified among the Proposed Class, is the Hastings Report's assumption that "people act to maximize their expected utility."[74] The Hastings Report performs no analysis of the "utility" as perceived by individual members of the Proposed Class.  In economics, utility measures preference for different sets of goods and/or services. The concept of satisfaction is abstract, and varies from individual to individual. Economists attempt to measure this "satisfaction" by performing studies with a number of goods as variables and fixed parameters to observe consumer choices over a variety of selections to measure consumer behavior.[75]

The Hastings Report fails to perform any analysis to support its assertions that members of the Proposed Class have lost "utility" resulting from the expiration of the digital certificate, as asserted in the discussion of Alleged Common Harms 1 and 2, or any analysis to quantify that loss.  Indeed, Dr. Hastings testified she did not attempt to quantify the lost utility associated with the Alleged Common Harms 1 and 2:



---

[74] ECF 174-85 Hastings Report, para. 31.
[75] Baumol, William J. and Blinder, Alan S., 2007 Microeconomics Principles and Policy, Tenth Edition.



In her deposition, Dr. Hastings explicitly excludes the analysis of Alleged Common Harms 1 and 2 when she discusses her assignment in this matter:



The Hastings Report merely assumes that the members of the Proposed Class suffered a loss in "utility". Given that "utility" or "satisfaction" is an abstract concept and may vary from individual to individual,[78] analysis is necessary to establish that there is a common loss in utility among the Proposed Class members. The Hastings Report neither performs such an analysis, nor does it consider the deposition testimony of the named plaintiffs, which illustrates the range of utility

---

[76] Pilmer Ex. 15 Hastings Deposition, pgs. 49-50.
[77] Pilmer Ex. 15 Hastings Deposition, pgs. 176-177.
[78] Baumol, William J. and Blinder, Alan S., 2007 Microeconomics Principles and Policy, Tenth Edition.

members of the Proposed Class might have assigned to FaceTime, and that this range of utility was common to members of the Proposed Class.  For example,



Further the Hastings Report does not purport to quantify the lost utility due to an inability to use FaceTime, let alone assert that a methodology capable of quantifying damages on a class-wide basis exists.

The following examples cited in the Hastings Report illustrate the disparity of "utility" among the Proposed Class members including, but not limited to, the following:

- The Hastings Report identifies two separate types of losses allegedly incurred by two separate types of individuals, respectively: 1) those who used FaceTime, and 2) those who did not use FaceTime.[81]  The Hastings Report's description of this category of alleged loss indicates that members of the Proposed Class suffered utility losses that were asymmetric and dependent upon facts and preferences specific to the individual.  The Hastings Report failed to perform any analysis to identify or quantify difference in utility losses between these disparate sets of Proposed Class members.  Given the Hastings Report's separation of the Proposed Class into two groups of individuals, those who used FaceTime and those who did not use FaceTime, it is unclear how it can then classify the utility associated with the FaceTime feature as "common" among the Proposed Class, especially without any analysis.  I understand that some members of the Proposed Class could use FaceTime on their devices; therefore, any loss of utility for these members would not only be quantitatively different, but would also have a different cause, rendering it difficult to assess common impact on a class-wide basis.

---

[79] Pilmer Ex. 11 Potter Deposition, pgs. 162-163.
[80] Pilmer Ex. 9 Grace Deposition, pgs. 9-12.
[81] See, e.g., ECF 174-85 Hastings Report, para. 32, which states, "Class Members lost utility due to their inability to use the popular FaceTime feature, or they lost the option value to use the feature should they have desired."

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

- The Hastings Report states that Proposed Class members "experienced a loss due to reduced performance" if they upgraded to iOS 7,[82] presumably at a date after the expiration of the digital certificate.  The Hastings Report's assertion implies that all Class Members suffered the same utility loss resulting from the alleged performance issues associated with upgrading their iPhones to iOS 7.  This would then require that:

  o All members of the Proposed Class upgraded to iOS 7; and they did so at or around the same date, thereby experiencing the same alleged performance issues for the same amount of time. To illustrate the point, members of the Proposed Class who upgraded to iOS 7 the day of the expiration of the digital certificate likely have a different alleged "utility harm" than users who upgraded to iOS 7 a year later.

  o All members of the Proposed Class suffered the same alleged performance issues to the same extent, regardless of the model (e.g., iPhone 4 or iPhone 4S), configuration, or condition of their iPhone.  I understand, based on discussions with Dr. Rubin, that any alleged performance issues would have varied depending on the iPhone model.  For instance, the iPhone 4's processor was less powerful than that of the iPhone 4S, meaning any alleged "lagged application functionality"[83] would likely be more prominent with an iPhone 4 than an iPhone 4S.[84]  As a result, the performance issues experienced by an individual with an iPhone 4 would be different from that experienced by an individual with an iPhone 4S, suggesting that the utility loss would be different based on the device.

- The Hastings Report ignores that consumers on April 17, 2014 were not, I understand, faced with the choice of losing FaceTime or upgrading to iOS 7.  I understand that consumers could upgrade to iOS 7.1 for free.  Shortly thereafter, the consumer was also able to upgrade their iPhones to iOS 7.1.1 and then to iOS 7.1.2.[85,86]   During her deposition, Dr. Hastings was unable to recall whether any such iOS updates were released between September 18, 2013 and the date of the expiration of the digital certificate:

---

[82] ECF 174-85 Hastings Report, para. 33.
[83] ECF 174-85 Hastings Report, para. 33.
[84] Discussion with Dr. Rubin.
[85] iOS 7.1.1: https://support.apple.com/kb/dl1736?locale=en_US; iOS 7.1.2: https://support.apple.com/kb/dl1750?locale=en_US.
[86] Discussion with Dr. Rubin.

*Christina Grace and Ken Potter, et al. v. Apple Inc.*



The Hastings Report fails to analyze, or discuss, the impact of these different iOS versions on the alleged "common utility losses" suffered by members of the Proposed Class, or how these utility losses, if any, would vary based on the version of the operating system to which the member of the Proposed Class upgraded.

As a result of failing to perform any analysis with respect to the asserted "common impact" of the Alleged Common Harms 1 and 2, and any of the aforementioned disparities between Potential Class Members, the opinions proffered in the Hastings Report are untested, speculative, and unreliable, and fail to assert opinions that are supportable within a reasonable degree of professional certainty.

---

[87] Pilmer Ex. 15 Hastings Deposition, pgs. 28.
[88] Pilmer Ex. 15 Hastings Deposition, pgs. 38-40.

2.        Unsupported Presumption of a Loss in Resale Value of the iPhone 4 and 4S

The Hastings Report states that members of the Proposed Class suffered "lost value due to a drop in the resale value of" their iPhones due to a loss in desirable features.[89]  The Hastings Report bases this assertion on the "economic theory of consumer choice [which] states that individuals prefer products that work fully to those that do not, all else equal. Similarly, consumers prefer products with higher residual value or resale value, all else equal."[90]  The Hastings Report's analysis of Alleged Common Harm 3 suffers from the following fundamental flaws:

- The Hastings Report fails to identify any actual, relevant decrease in resale value common to the Proposed Class linked to the expiration of the digital certificate to support these assertions; rather, it simply assumes that the expiration of the digital certificate caused a diminution of value in resale prices of all iPhone 4 and iPhone 4S models without sufficient and reliable analysis.

- In her deposition, Dr. Hastings testified that ███████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████  This position demonstrates that the theoretical methodologies employed in the Hastings Report are detached from reality and, therefore, are speculative and unreliable.

- The Hastings Report ignores that, as of April 17, 2014, members of the Proposed Class had an option to upgrade their phones, for free, to iOS 7.1,[92] and shortly after that, iOS 7.1.1[93] and then iOS 7.1.2.[94] I understand that users who upgraded their phones to iOS 7.1 regained the FaceTime feature and did not suffer the decreased functionality assumed in the Hastings Report.[95]

- The Hastings Report fails to properly consider the fact that in many instances, when individuals trade in their used iPhones, ████████████████████████████████████

---

[89] ECF 174-85 Hastings Report, para. 34.
[90] ECF 174-85 Hastings Report, para. 35.
[91] Pilmer Ex. 15 Hastings Deposition, pg. 55.
[92] https://support.apple.com/kb/dl1732?locale=en_US.
[93] https://support.apple.com/kb/dl1736?locale=en_US.
[94]  https://support.apple.com/kb/dl1750?locale=en_US.
[95] Discussion with Dr. Rubin.



---

[96] Pilmer Ex. 7 Zeinfeld Deposition, pg. 9.
[97] Pilmer Ex. 3 Plott Deposition, pgs. 51-52.
[98] Pilmer Ex. 7 Zeinfeld Deposition, pg. 7.
[99] Pilmer Ex. 7 Zeinfeld Deposition, pgs. 28-29.
[100] Pilmer Ex. 17 Hall Deposition, pg. 10.



iPhones that were flashed after the expiration of the digital certificate (i.e., upgraded to iOS 7.1 or later) and prior to resale would not have suffered from "a drop in the market price of the phone due to a loss in desirable features", as those features (i.e., FaceTime) would have been restored.

- The Hastings Report fails to properly consider amounts certain Proposed Class members actually received when they sold or traded in their iPhone devices, and the differences in these amounts based on a number of variables, certain of which the Hastings Report failed to consider in its regression analysis.

- The Hastings Report methodology presumes that any member of the Proposed Class who suffered the "potentially [lower] utility" associated with upgrading their device to iOS 7 also suffered lost value due to "a drop in the market price of the phone due to a loss in desirable features."  This presumption is false, as the data upon which the Hastings Report relies to reach this conclusion is based on amounts Best Buy receives through its resale channels on the resale of the used iPhone 4 and iPhone 4S models ████████████ ████████████████████████████████████  I understand the version of iOS 7 available after the expiration of the digital certificate, ████████ ████████████████████████████ restored the use of FaceTime.

Based on the above, the Hastings Report failed to establish that there is, in fact, a loss in resale value of the iPhone 4 and iPhone 4S as a result of the expiration of the digital certificate.  Further, the Hastings Report failed to establish that the loss is common among members of the Proposed Class.  As a result, the opinions proffered in the Hastings Report with respect to Alleged Common

---

[101] Pilmer Ex. 17 Hall Deposition, pgs. 29-31.
[102] Pilmer Ex. 7 Zeinfeld Deposition, pg. 28.
[103] Pilmer Ex. 7 Zeinfeld Deposition, pg. 28.

Harm 3 are contrary to evidence in the record, untested, speculative, and unreliable; and not supportable within a reasonable degree of professional certainty.

> 3.      Conclusion on the Alleged Common Impact

The Hastings Report concludes that, "all **or almost all** members of the Class were adversely affected by the Break [*emphasis added*]."  Within the Hastings Report, Dr. Hastings acknowledges there are certain differences among the Proposed Class members.  In her deposition, Dr. Hastings repeatedly testified that ████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████



This, coupled with the Hastings Report's failure to perform any analysis with respect to the asserted "common impact" of the Alleged Common Harms 1, 2 and 3, renders the opinions proffered in the Hastings Report untested, speculative, and unreliable.  The Hastings Report does not express opinions that are supportable within a reasonable degree of professional certainty.

B.      FUNDAMENTAL FLAWS IN THE HASTINGS REPORT'S METHODOLOGY TO QUANTIFY CLASS-WIDE DAMAGES

Of the three Alleged Common Harms proffered in the Hastings Report, the only asserted form of loss that the Hastings Report attempts to quantify and apply across all members of the Proposed Class relates to Alleged Common Harm 3, the loss in resale value of the iPhone 4 and iPhone 4S for Proposed Class members.  In order to perform this calculation, the Hastings Report relies upon a flawed multivariate regression in which it purports to "calculate the resale price of affected phone models but-for the Break."[105]   The Hastings Report characterizes the results of its multivariate

---

[104] Pilmer Ex. 15 Hastings Deposition, pgs. 191-192.
[105] ECF 174-85 Hastings Report, para. 38.  I address the Hastings Report's regression model and accompanying flaws in a later section of this Report.

regression as indicating that, "the Break caused prices of used iPhone 4 and 4S devices to fall by an estimated 12.72%."

The Hastings Report's assessment of the common impact to the Proposed Class, and the conclusions reached therefrom, suffers from the following fundamental flaws:

1. Failure to Establish Reduced Resale Value as a Relevant Measure of Harm;
2. Failure to Establish Causation;
3. Failure to Consider Heterogeneity of Proposed Class Losses;
4. Failure to Consider Available Data;
5. Reliance on and Usage of Speculative and Incorrect Data;
6. Failure to Consider Trade-in Data;
7. Failure to Consider Other Factors;
8. Additional Errors and Omissions in the Regression Analysis; and
9. Flaws in the Amazon Regression Analysis.

These fundamental flaws are discussed in the following sections.

1. Failure to Establish Reduced Resale Value as a Relevant Measure of Harm

The Hastings Report, without analysis or support, asserts that members of the Proposed Class suffered "lost value due to a drop in the resale value of" their iPhones due to a loss in desirable features.[106]  The Hastings Report bases this assertion on the "economic theory of consumer choice [which] states that individuals prefer products that work fully to those that do not, all else equal. Similarly, consumers prefer products with higher residual value or resale value, all else equal."[107] As a result, the entirety of the approach the Hastings Report employed to estimate the damages to members of the Proposed Class is based on the premise that these individuals suffered a drop in the resale value of their iPhones due to a loss in desirable features.

---

[106] ECF 174-85 Hastings Report, para. 34.
[107] ECF 174-85 Hastings Report, para. 35.

I understand that the measure of restitution for Plaintiffs' UCL claim is the difference between the price Plaintiffs paid to Apple for their devices and the value of the product they received, and that the measure of damages for Plaintiffs' trespass to chattels claims is the lesser of the diminution in the value of Plaintiffs' devices and the cost of repair.  The Hastings Report failed to perform an analysis of the value of the FaceTime feature as it relates to the initial purchase price of the iPhone for members of the Proposed Class or the cost to Plaintiffs of repairing their devices; instead, the Hastings Report calculated damages based on a purported "but for" scenario.  In fact, Dr. Hastings testified in her deposition that ███████████████████████████████████████████████
███████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████

With respect to the "cost of repair" associated with restoring the FaceTime feature, I understand that FaceTime could be restored by upgrading the affected device to the latest iOS version, and that the cost to upgrade was zero. ███████████████████████████████████████████████



------------------------------------------------------------

108 Pilmer Ex. 15 Hastings Deposition, pg. 209.

███████████████████████████████████████

As a result, the Hastings Report failed to establish the relevant measure of harm; rather, it merely states the assumed measure of harm and then begins performing calculations on data available.

2.   Failure to Establish Causation

The Hastings Report, without basis, assumes that the expiration of the digital certificate caused a diminution of value in resale prices of iPhone 4 and iPhone 4S models, as illustrated from statements made in the Hastings Report:

- "The Break caused features of the phone to stop working. This would have led to a drop in the market price of the phone due to a loss in desirable features."[110]
- "[E]very Class Member lost value due to a drop in the resale value of the iPhone 4 or 4S that they owned . . . Because the Break stopped FaceTime from working on the iPhone 4 and 4S absent a migration to iOS 7 (and resulting decrease in functionality with migration), **these models' resale prices would have dropped due to a loss in value in the market for a valued feature** [**emphasis added**]."[111]
- "Standard economic theory of consumer choice states that individuals prefer products that work fully to those that do not, all else equal. Similarly, **consumers prefer products with higher residual value or resale value**, all else equal. Therefore, all or almost all members of the Class were adversely affected by the Break [**emphasis added**]."[112]
- "**The harm is the diminished value of the phone as measured by resale market prices**. This is the resale value of the phone compared to what the resale value would have been but-for the Break [**emphasis added**]."[113]

I am unable to identify evidence proffered in the Hastings Report which establishes the causation between the expiration of the digital certificate and the alleged diminution in resale value of the

---

[109] Pilmer Ex. 15 Hastings Deposition, pgs. 211-212.
[110] ECF 174-85 Hastings Report, para. 21.
[111] ECF 174-85 Hastings Report, para 34.
[112] ECF 174-85 Hastings Report, paras. 35-36.
[113] ECF 174-85 Hastings Report, para. 37.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY                                                                 Page 28

used iPhone 4 and iPhone 4S, if any.  Instead, the Hastings Report, without analysis or support, simply:

- Associates the expiration of the digital certificate with a lost "valued feature";
- States that the lost "valued feature" would cause a diminution of resale value;
- Refers to "standard economic theory" to assess that consumers prefer products with higher resale value; and
- Opines that harm is measured by comparing a benchmark resale value to "what the resale value would have been" had the expiration of the digital certificate not occurred.

In fact, the Hastings Report ignores that the very data on which it relies demonstrates that the resale values (i.e., Best Buy's "revenue") associated with certain iPhone 4 and iPhone 4S devices *increased* immediately following expiration of the digital certificate; a fact contrary to the Hastings Report's untested assumptions upon which its entire analysis and conclusions are based. Additionally, the Hastings Report ignores the fact that within the Best Buy data alone, there were hundreds of thousands of willing purchasers of iPhone 4 and iPhone 4S models subsequent to the expiration of the digital certificate, which would indicate that these models did function to a desired level while operating on the then current version of iOS.

Further, even if there were a drop in the resale value of iPhone 4 and iPhone 4S models subsequent to the expiration of the digital certificate, an analysis of the causes for the decline in value is necessary.  The Hastings Report fails to consider many of the relevant factors, which could impact the resale value of the relevant iPhones.[114]

As an example, I understand that carrier and retailer subsidies for new devices can impact the values of used devices. 

---

[114] The Hastings Report considers certain variables which could impact the resale price of the iPhone 4 and iPhone 4S devices; however, fails to consider other relevant variables, such as the model of the iPhone (4 or 4S).  I discuss the variables the Hastings Report regression fails to consider in the regression analysis section of this report.
[115] Pilmer Ex. 15 Hastings Deposition, pg. 70.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY                                                                Page 29



In fact, retailers and carriers began offering enhanced subsidies for newer iPhone models in the days and months immediately following the expiration of the digital certificate. For example,

- On April 18, 2014, just days after the expiration of the digital certificate, RadioShack began offering customers a free 16GB iPhone 5s with the trade-in of an iPhone 4S, or simply $100 off without trade-in.[118]

- In May 2014, Best Buy began offering enhanced trade-in values and credits to consumers in order to push sales of iPhone 5s and iPhone 5c models.[119]

- In May 2014, Apple launched an upgrade program whereby iPhone 4 and iPhone 4S users could trade in their devices for new iPhone 5c and iPhone 5s devices, respectively.[120]

Conversely, in her deposition, Dr. Hastings testified that ████████████████████████████
████████████████████████████████████████████

---

[116] Pilmer Ex. 7 Zeinfeld Deposition, pg. 51.
[117] Pilmer Ex. 7 Zeinfeld Deposition, pg. 72.
[118] http://time.com/68108/radioshack-selling-the-iphone-5s-for-100-or-free-with-iphone-4s-trade/.
[119] https://www.cnet.com/news/best-buy-offers-up-to-200-iphone-trade-in-credit/.
[120] https://www.imore.com/apple-wants-take-your-old-iphone-and-give-you-new-iphone.



As a result, the Hastings Report's analysis fails to establish that the expiration of the digital certificate was the cause of any perceived decline in value of iPhone 4 and iPhone 4S models after April 17, 2014.

   3.   Failure to Consider Heterogeneity of Proposed Class Losses

As discussed throughout this report, the Hastings Report fails to establish common impact among the members of the Proposed Class.  One reason that common impact cannot be established is the heterogeneity of the Proposed Class.  There exists substantial disparity among the Proposed Class Members' various iPhone devices, such that it is impossible to quantify a single "benchmark" resale value that could reasonably apply to every member in the Proposed Class, even if the Hastings Report had established a reduction in the resale value of the devices attributed to the expiration of the digital certificate.

This disparity, or lack of commonality, is evident in the Best Buy data on which the Hastings Report relies.  Characteristics specific to each individual member of the Proposed Class, which affect resale value include, but are not limited to, the following:

---

[121] Pilmer Ex. 15 Hastings Deposition, pgs. 110-111.

- iPhone model[122] (i.e., iPhone 4 or iPhone 4S);[123]

- iPhone color (i.e., black or white);[124]

- iPhone physical condition (i.e., scratches, scuffs, chips, discoloration, light bleed, light spots, gaps, liquid damage, etc.);[125]

- iPhone working condition (i.e., whether it powers up,[126] battery condition,[127] etc.)

- iPhone memory (i.e., 8GB, 16Gb, 32GB, or 64GB);[128]

- iPhone carrier (e.g., AT&T, Verizon, Sprint, "unlocked", etc.);[129] and

- Whether the iPhone has been "jailbroken".[130]

The Hastings Report acknowledges this heterogeneity with what it refers to as "demand factors" that influence customers' buying decisions in the secondary market:

> Demand factors which affect the price of a used phone include the age of the model, the brand of the model, and other features of the model, such as color, storage size, and condition. These are the primary factors that customers choose when deciding how much they are willing to pay for a used phone as evidenced by collection of this data by platforms when determining how much a used phone is worth.[131]

This is also clear from readily available articles published by the same websites cited throughout the Hastings Report.  For instance, a CNBC article published in August 2013 states:

> Phone damage can, of course, make the price take a nosedive, but some trade-in services also cut their price if the phone was engraved, or if you're missing the manual or charger.
>
> Many trade-in programs also value phones differently by carrier and even color. Amazon.com's program, for example, offers as much as $200 for a black 16GB

---

[122] Pilmer Ex. 7 Zeinfeld Deposition, pgs. 44-45.
[123] Discussion with Dr. Rubin.
[124] Pilmer Ex. 7 Zeinfeld Deposition, pgs. 44-45.
[125] See, e.g., Brightstar000001-30 and Brightstar000031-44.
[126] See, e.g., Brightstar000031-44.
[127] See, e.g., Brightstar000031-44.
[128] Pilmer Ex. 7 Zeinfeld Deposition, pgs. 44-45.
[129] Pilmer Ex. 3 Plott Deposition, pgs. 65-66.
[130] Pilmer Ex. 7 Zeinfeld Deposition, pg. 37.
[131] ECF 174-85 Hastings Report, para. 42.

iPhone 4 from AT&T, versus $120 for the same model from Verizon. And if it's
white? That'll be up to $145 for the Verizon version and $180 from AT&T.[132]

The Hastings Report again references these "demand factors" in its purported attempt to account
for the heterogeneity of the Proposed Class with its multivariate regression model:

> To estimate what the price of the iPhone 4 and 4S models would have been but-for
> the harmful act, I must first estimate a model of used phone prices as a function of
> factors which affect the demand for and supply of used phone models. Demand
> variables include the age of the model of the phone that is for sale, a time trend to
> capture overall demand trends in the market, dummy variables which capture the
> relative value of different manufacturers, colors, storage sizes, conditions, and
> carriers of phones. All of these factors may influence consumer demand for a
> particular phone.[133]

Regardless of whether the Hastings Report purportedly considered the heterogeneity of the
Proposed Class (to the limited extent possible when only relying on the Best Buy data) in its
regression, the result is a flawed hypothetical percentage diminution of value associated with
devices sold after April 16, 2014.  Indeed, in her deposition, Dr. Hastings admitted her calculation
of 12.72 percent – the final result of her multivariate regression analysis – does not apply to any
specific iPhone model, size, or carrier option.[134]

Similarly, the Hastings Report asserts, with no analysis or support, that the distribution of iPhone
models in the Best Buy data is representative of the Proposed Class.

> My understanding is that there exists a list of Potential Class Members along with
> a serial number for each iPhone 4 or 4S device owned by the Class Member at the
> time of the Break. My understanding is that the Proposed Class is currently
> estimated to include at least 26,694,665 members. My understanding is that these
> serial numbers can be used to identify the model of the phone. Using data on prices
> received by sellers of used phones, along with the estimated diminution in value,
> we can calculate aggregate damages using a common methodology and common
> evidence.

---

[132] https://www.cnbc.com/id/100995034.
[133] ECF 174-85 Hastings Report, para. 51.
[134] Pilmer Ex. 15 Hastings Deposition, pgs. 113-115.

For example, the mean price of iPhone 4 and iPhone 4S models sold to the used market by Best Buy from April 1, 2014 to April 15, 2014 was ▮▮▮▮ If we apply this average sale price to the number of Class Members listed above, and if the distribution of iPhone and iPhone 4S models sold in those weeks through Best Buy is similar to the distribution of these models in the Potential Class, then a reliable estimate of aggregate damages using methodology and data common to the class is 12.72% *▮▮▮▮▮▮▮▮▮ This is equal to ▮▮▮▮▮▮▮[135]

While the Hastings Report posits that, with additional data, it could utilize the serial numbers of the Proposed Class to identify each member's respective model[136] (i.e., iPhone 4 or 4S), it makes no attempt to, nor does it provide an explanation for how it could, identify an accepted economic methodology to properly account for the heterogeneity of the Proposed Class in order to calculate a damages amount that is reasonable and supported.  Additionally, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The fact that these devices are excluded from the Best Buy data set underscores the inherent biases within the Best Buy data, as these members of the Proposed Class are not represented within the Best Buy data. Therefore, the results of the Hastings Reports' regression analysis are not generalizable to the Proposed Class, and are only specific to Best Buy resale transactions.

4.   Failure to Consider Available Data

The Hastings Report solely relies upon certain portions of the Best Buy data to perform its calculations of the alleged harm suffered by members of the Proposed Class, while ignoring other aspects.  The Hastings Report acknowledges that other data sets were provided prior to the issuance of the report; however, this information was not considered in the analysis.[138]  The Hastings Report dismisses certain of these data sets as either being unsuitable for the regression analysis (Verizon and Sprint data)[139] or arriving too close to the date of the report filing date (AT&T and EcoATM).[140]

---

[135] ECF 174-85 Hastings Report, paras. 59-60.
[136] ECF 174-85 Hastings Report, para. 59.
[137] Pilmer Ex. 3 Plott Deposition, pg. 32.
[138] ECF 174-85 Hastings Report, para. 46.
[139] ECF 174-85 Hastings Report, paras. 46 and 47.
[140] ECF 174-85 Hastings Report, para. 47.

Further, the Hastings Report also chooses to ignore in its analysis the trade-in data provided by Best Buy, *i.e.*, the value actually received by members of the Proposed Class, stating,

> Best Buy's data also includes trade-in values for phones, but because these are part of buy-back programs tied to the purchase of new goods and services from Best Buy, they do not reflect the market value of the phone, but may include a combination of market value of the phone, discounts, and incentives towards purchases of additional Best Buy products. This combination cannot be separated by the economist.[141]

I disagree with the conclusion in the Hastings Report that trade-in information can be ignored, as it is relevant to determining the alleged common harm to the Proposed Class members. I address my analysis of trade-in information in a later section of my report.

The Hastings Report explicitly ignores available and relevant data from other third parties, such as AT&T and Verizon, and instead bases its analysis entirely on data produced by Best Buy,[142] which is unrelated to sales channels available to members of the Proposed Class and, thus, irrelevant to the question the Hastings Report is attempting to answer.  Further, the Hastings Report ignores data within Best Buy's data set, and the other data sets, related to trade-in values, which is also relevant to attempting to measure the alleged harm suffered by members of the Proposed Class. This has the effect of skewing the data.   The result of the Hastings Report ignoring certain relevant data, such as amounts iPhone *owners received* either through a sale or trade-in on a used device, in favor of data relating to amounts *Best Buy received* as a result of its resale channels selling used iPhones on behalf of Best Buy, has the impact of performing a regression analysis on data that is irrelevant to the Proposed Class members.

5.   Reliance on and Usage of Speculative and Incorrect Data

To perform its analysis of the alleged diminution in value of the Proposed Class members' iPhone 4 and iPhone 4S devices allegedly resulting from the expiration of the digital certificate, the

---

[141] ECF 174-85 Hastings Report, para. 53.
[142] The Hastings Report also performs a regression utilizing data from Amazon, which is discussed in a separate section of this report.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Hastings Report relies upon information provided by Best Buy, which suffers from the following inherent flaws:

      a.   The Best Buy pricing data utilized in the Hastings Report is irrelevant to the alleged harm suffered by Proposed Class members;

      b.   Failure to consider actual resale price data; and

      c.   FaceTime was restored on the iPhones included in the Best Buy data.

I discuss each of these in the following sections.

      a.   The Best Buy Pricing Data Utilized in the Hastings Report is Irrelevant to the Alleged Harm Suffered by the Proposed Class

The Hastings Report performs a regression analysis using Best Buy data to establish an alleged reduction in the resale value of devices owned by Proposed Class members allegedly resulting from the expiration of the digital certificate. The Hastings Report states,

> I use the price of the phone Best Buy received when it sold the phone to a third party vendor for eventual resale on the used market to estimate damages. This variable is called "Revenue" as it represents the price Best Buy received for the phone.[143]

The Hastings Report states the opinion that the average price Best Buy obtained when selling these devices can be applied to calculate the damages of the Proposed Class:

> For example, **the mean price of iPhone 4 and iPhone 4S models sold to the used market by Best Buy from April 1, 2014 to April 15, 2014 was** ███████ **If we apply this average sale price** to the number of Class Members listed above, and **if the distribution of iPhone and iPhone 4S models sold in those weeks through Best Buy is similar to the distribution of these models in the Potential Class**, then a reliable estimate of aggregate damages using methodology and data common to the class is 12.72% \* ████████████████,"[144] [**emphasis added**]

---

[143] ECF 174-85 Hastings Report, para. 53.
[144] ECF 174-85 Hastings Report, para. 60.

The Hastings Report's reliance on the Best Buy data to calculate the harm to members of the Proposed Class is fundamentally flawed for the following reasons:

- The Best Buy data reflects the revenue Best Buy received through its channels for the resale of used iPhones to a third party, rather than the amount that Best Buy paid for the used devices to the owners of the device. Indeed, in its response to questions posed by Dr. Hastings, Best Buy  The amount that Best Buy received when it resold the used iPhones is irrelevant to the economics of the transaction between members of the Proposed Class and Best Buy.

- The amount that Best Buy received for resale of used iPhone 4 and iPhone 4S devices reflects the following, which is relevant to Best Buy, not members of the Proposed Class. Best Buy's sales channels for the refurbished used iPhone 4 and iPhone 4S models is likely unavailable to members of the Proposed Class, as, I understand, To the extent that international data is included in the Best Buy resale data, the Hastings Report fails to perform any analysis of any price differentials and market differences between International and domestic markets; these factors would need to be controlled for in the regression analysis.

- This further illustrates that the Best Buy data is

---

145 Pilmer Ex. 15 Hastings Deposition, Exhibit 90.
146 Pilmer Ex. 7 Zeinfeld Deposition, pgs. 15-16, 42.
147 Pilmer Ex. 3 Plott Deposition, pg. 50.
148 Pilmer Ex. 3 Plott Deposition, pg. 32.

non-representative of the Proposed Class, as it inherently assumes that all members of the Proposed Class have devices which are in a condition acceptable for trade-in or resale.



---

[149] Pilmer Ex. 7 Zeinfeld Deposition, pg. 7; Pilmer Ex. 15 Hastings Deposition, pgs. 70-71.
[150] Pilmer Ex. 7 Zeinfeld Deposition pgs. 15-16.
[151] Pilmer Ex. 7 Zeinfeld Deposition, pgs. 15-16.



- In addition to the fact that the Best Buy "revenue" data is not applicable to the analysis of resale values available to actual iPhone owners, I note that, ███████████████████

---

*Christina Grace and Ken Potter, et al. v. Apple Inc.*



These are factors that affect the resale value of the phone and would need to be controlled for in the regression. The Hastings Report's failure to consider these variable renders Best Buy's "revenue data" unusable for the purposes of analyzing resale value, and invalidates the results of the regression analysis.

- The Hastings Report applies Best Buy's "average sales price" to approximate damages to members of the Proposed Class noting "**if** the distribution of iPhone and iPhone 4S models sold in those weeks through Best Buy **is similar** to the distribution of these models in the Potential Class… [**emphasis added**]."[154]  The Hastings Report fails to perform any analysis of whether there are, in fact, similarities between the Best Buy data and the distribution of the members of the Potential Class. The Hastings Report simply makes this assertion and bases the underlying damages calculations on this assumption. In fact, the evidence provided below demonstrates the differences between the alleged harm suffered by the Proposed Class members, and the Best Buy data relied upon in the Hastings Report.

The Hastings Report's reliance on Best Buy data that is "totally different" than what a consumer (i.e., member of the Proposed Class) would experience when selling their phone, a set of facts

---

[153] Pilmer Ex. 3 Plott Deposition, pgs. 58-59.
[154] ECF 174-85 Hastings Report, para. 60.

which cannot be controlled for in the regression, renders the "revenue" data unusable for the purposes of analyzing resale values, or changes thereto, relevant to the Proposed Class.  Further, reliance on unusable data yields unusable results.

Further, I understand that Dr. Hastings communicated with Best Buy to obtain information regarding the data provided by Best Buy.  I understand Best Buy provided the following information, which further demonstrates that Best Buy's "revenue" data is unusable for the purpose of calculating harm allegedly suffered by members of the Proposed Class resulting from a reduction in resale values:



---

[155] *For example*, TechLiquidators: Best Buy B2B eCommerce site (Pilmer Ex. 15 Hastings Deposition, Exhibit 90).
[156] Pilmer Ex. 15 Hastings Deposition, pg. 230.
[157] Pilmer Ex. 15 Hastings Deposition, pgs. 230-231.
[158] Pilmer Ex. 15 Hastings Deposition, pg. 235, Exhibit 90.



The methodology employed in the Hastings Report is fundamentally flawed, as it relies on data from Best Buy that is incomparable to the facts and circumstances of the members of the Proposed Class, without any analysis to account for the economic impact of these differences. A calculation based on these incomparable inputs results in an equally incomparable and speculative conclusion. This falls under the tenet of "garbage in / garbage out."  Based on the reliance on the Best Buy data and the fundamental flaw resulting therefrom, the Hastings Report's opinions and conclusions regarding the alleged harm to members of the Proposed Class render the opinion speculative, unsupported and unreliable.

b.  Failure to Consider Actual Resale Price Data

While it is my opinion that third party iPhone resale prices are not representative of the resale value members of the Proposed Class would have received for their used iPhone devices, I note that the Hastings Report's assertion that resale prices for the iPhone 4 and iPhone 4S "would have dropped due to a loss in value in the market for a valued feature [as a result of the expiration of the digital certificate]" fails to consider the fact that the third party resale value of certain used iPhone 4 and 4S models generally *increased* in the months following the expiration of the digital certificate.  Moreover, this fact is readily apparent upon analysis of the data available to Dr. Hastings prior to the issuance of her report.

See Table 4.  For illustration purposes, highlighted amounts indicate periods after the expiration of the digital certificate in which the average resale value for a given iPhone model/size

---

[159] Pilmer Ex. 15 Hastings Deposition, pg. 235.

combination was greater than or equal to the that of the two weeks immediately preceding the expiration of the digital certificate.

**TABLE 4: SUMMARY OF BEST BUY AVERAGE RESALE PRICES BEFORE AND AFTER THE EXPIRATION OF THE DIGITAL CERTIFICATE FOR USED iPHONES IN "PERFECT" CONDITION[160]**



In the above illustration, it is evident that the resale value of certain iPhone 4 and iPhone 4S devices either stayed the same or increased in the months following the expiration of the digital certificate, which directly contradicts the Hastings Report's key assumption that the expiration of the digital certificate caused a diminution of value in resale prices of all iPhone 4 and iPhone 4S models. For the periods where the resale value was lower, an analysis would need to be performed to identify the cause for this decrease, as there may be various reasons for the decline in resale prices. The Hastings Report considers none of this in its analysis.

---

[160] For illustration purposes, this table only displays the average resale values for iPhones listed as in "Perfect" condition within the Best Buy data. These amounts also exclude data with revenue of zero. See Exhibit 2.0.

c.   FaceTime was Restored on the iPhones Included in the Best Buy Data

The Hastings Report fails to acknowledge or consider the fact that 

Table 5 summarizes various updates Apple released to iOS 7 since its introduction in September 2013 through the date of the expiration of the digital certificate:

TABLE 5: APPLE UPDATES TO iOS 7 PRIOR TO THE
DATE OF THE EXPIRATION OF THE DIGITAL CERTIFICATE

| Month Released | iOS Update |
|---|---|
| September 2013[166] | 7.0.1 |
| September 2013[167] | 7.0.2 |
| October 2013[168] | 7.0.3 |
| November 2013[169] | 7.0.4 |
| January 2014[170] | 7.0.5 |
| February 2014[171] | 7.0.6 |
| March 2014[172] | 7.1 |

I understand that beginning with iOS 7.0.3, iOS 7 allowed for the use of FaceTime.[173]   Further, I understand that many of the issues surrounding impaired functioning assumed in the Hastings Report had been resolved in these later versions of iOS.[174]   Based on these facts, it is unclear how

---

[161] The date Apple introduced iOS 7.0.3.
[162] The date Apple introduced iOS 8, which was compatible with the iPhone 4S but not the iPhone 4.
[163] https://support.apple.com/kb/dl1732?locale=en_US.
[164] https://support.apple.com/kb/dl1736?locale=en_US.
[165] https://support.apple.com/kb/dl1750?locale=en_US.
[166] https://support.apple.com/kb/dl1683?locale=en_US.
[167] https://support.apple.com/kb/dl1685?locale=en_US.
[168] https://support.apple.com/kb/dl1691?locale=en_US.
[169] https://support.apple.com/kb/dl1701?locale=en_US.
[170] https://support.apple.com/kb/dl1718?locale=en_US.
[171] https://support.apple.com/kb/dl1723?locale=en_US.
[172] https://support.apple.com/kb/dl1732?locale=en_US.
[173] Pilmer Ex. 18 De Atley Deposition, pg. 124.
[174] Discussion with Dr. Rubin.

the Hastings Report could identify within the Best Buy data any lost resale value attributable to the loss of FaceTime.

I note that if it is the Hastings Report's position that the purported lost resale value is attributable to performance issues associated with iOS 7 – coupled with the presumption that the expiration of the digital certificate forced members of the Proposed Class to upgrade to iOS 7, thereby indirectly resulting in this lost resale value – this position is flawed. ███████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████ ██████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████ █ ██████████████
████████████████████████████████████████████████████████
███████████████████████████████████████

### 6.   Failure to Consider Trade-in Data

As previously discussed, the Hastings Report assumes members of the Proposed Class suffered an alleged loss in the form of diminution of resale value of their iPhone 4 and iPhone 4S devices resulting from the expiration of the digital certificate.  It then purports to calculate this diminution of resale value by analyzing the amounts Best Buy received when it sold used iPhones in the periods before and after the expiration of the digital certificate.  In selecting Best Buy's resale prices as its basis to perform a "reliable estimate",[178] the Hastings Report chooses to ignore the trade-in values – the amounts actually received by individuals who sold their phones to Best Buy (e.g., members of the Proposed Class) – because it asserts these values "do not reflect the market value of the [phones]":

---

[175] Pilmer Ex. 3 Plott Deposition, pgs. 51-52.
[176] Pilmer Ex. 7 Zeinfeld Deposition, pg. 7.
[177] Pilmer Ex. 7 Zeinfeld Deposition, pgs. 28-29.
[178] ECF 174-85 Hastings Report, para. 60.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY



As stated in paragraph 53 to the Hastings Report, it is Dr. Hastings' opinion that trade-in values are not representative of "market value" because they may include other consideration paid to the seller (e.g., member of the Proposed Class) in exchange for their used iPhone 4 or iPhone 4S. It is unclear whether this opinion extends to include the trade-in programs offered by other companies and carriers, or if it only applies to Best Buy's trade-in program.

I note that the Hastings Report references the prevalence of the trade-in option throughout:

- "Owners of smartphones can resell or trade in their phones in an active and competitive secondary sale market."[180]
- "Owners have many options for selling their used phones. Table 1 lists major platforms and the mechanism for purchasing used phones from individuals, and selling used phones (where applicable). Individuals can trade in their used phone to a carrier or cellular phone retailer. Major carriers and retailers who sell phones and phone plans offer buy-back programs tied to purchases of new goods and services, such as credit for a used phone towards the purchase of a new phone or new phone plan."[181]
- "Consumer Intelligence Research Partners (CIRP) surveyed 1,000 subjects in the U.S. in 2017 and found that '[a]lmost one-third of Apple iPhones get sold or traded-in.' Additionally, in the same survey pool, CIRP found that 39% of those surveyed sold or traded-in their old phones at their current mobile carrier, with the majority using non-

---

[179] ECF 174-85 Hastings Report, para. 53.
[180] ECF 174-85 Hastings Report, para. 21.
[181] ECF 174-85 Hastings Report, para. 25.

carrier trade-in platforms for used products such as Best Buy, Amazon.com, Gazelle.com, Craigslist and eBay."[182]

- Additionally, the Hastings Report's Table 1, titled "Platforms for Resale of iPhones", lists three "direct resale" websites, three "indirect resale" websites, and 11 companies and websites offering trade-in services.

Despite acknowledging that individuals trade in their devices, the Hastings Report ignores this data, which is indicative of the market. I identified the following number of devices were traded in as a means by which to obtain "resale value" for the period from April 17 , 2014 through June 30, 2014:

TABLE 6: NUMBER OF AT&T AND BEST BUY iPHONE 4 AND iPHONE 4S DEVICE TRADE-INS DURING
THE PERIOD APRIL 16, 2014 THROUGH JUNE 2014



| Period | AT&T[183] | Best Buy[184] | Total |
|---|---|---|---|
| | | | |
| | | | |

In addition to failing to consider or analyze trade-in value in its analysis of the Best Buy data for the purpose of its multivariate regression, the Hastings Report also fails to acknowledge or consider several data sources identifying *actual* trade-in values and options available to members of the Proposed Class both before and after the expiration of the digital certificate. Examples of relevant trade-in value information include the Best Buy data upon which the Hastings Report relied, pricing and trade-in information produced by AT&T and Verizon, and other publicly available information. In many instances, this data suggests that in the period immediately following the expiration of the digital certificate – contrary to the Hastings' Report assumptions – the resale value of many iPhone 4 and iPhone 4S either stayed flat or *increased*.

---

[182] ECF 174-85 Hastings Report, para. 26.
[183] A.3.
[184] 8_2014_Mar-May.xlsx, 9_2014_Jun-Aug.xlsx.

   a.   Best Buy Trade-in Data

Certain Best Buy trade-in data ignored by the Hastings Report suggests members of the Proposed Class could have obtained a higher trade-in value for their iPhones after the expiration of the digital certificate than they could before.  The Best Buy trade-in data shows that for certain devices, the average trade-in amount paid by Best Buy was higher *after the expiration of the digital certificate* than it was during the "benchmark period" utilized by the Hastings Report.  The Hastings Report defines the "benchmark period" as "the period before the Break became publicly known and could be incorporated into customers' willingness to pay in the resale market."[185]

See Table 7.  For illustration purposes, highlighted amounts indicate periods after the expiration of the digital certificate in which the average trade-in value for a given iPhone model/size combination for many devices was greater than or equal to the that of the two weeks immediately preceding the expiration of the digital certificate.

TABLE 7: SUMMARY OF BEST BUY TRADE-IN PAYMENT AVERAGE AMOUNTS BEFORE AND AFTER THE EXPIRATION OF THE DIGITAL CERTIFICATE FOR USED IPHONES IN "PERFECT" CONDITION[186]

| Model | Size | Color | Condition | 4/1 - 4/15 | 4/16 - 4/30 | May 2014 | June 2014 | July 2014 |
|-------|------|-------|-----------|-----------|-------------|----------|-----------|-----------|
| | | | | | | | | |

---

[185] ECF 174-85 Hastings Report, para. 39.
[186] For illustration purposes, this table only displays the average trade-in values for iPhones listed as in "Perfect" condition within the Best Buy data.  See Exhibit 3.0.

*Christina Grace and Ken Potter, et al. v. Apple Inc.*

In the above illustration, it is clear that the trade-in value of certain iPhone 4 and iPhone 4S devices either stayed the same or increased in the months following the expiration of the digital certificate, which directly contradicts the Hastings Report's key assumption that the expiration of the digital certificate caused a diminution of value in resale prices of all iPhone 4 and iPhone 4S models.  For the periods where the trade-in value was lower, an analysis would need to be performed to identify the cause for this decrease, as there may be many reasons for the decline in trade-in amounts, including nearing the September 2014 release date of the iPhone 6 and iPhone 6 Plus, among other potential reasons.  The Hastings Report considers none of this in its analysis.

b.  AT&T Trade-in Data

The Hastings Report states that the AT&T data "arrived too close to the report filing date to be properly cleaned, understood, and analyzed, and/or we are awaiting responses to queries about data field and variable definitions needed to properly clean, understand, and analyze the data."[187] In Table A3 to the Hastings Report, it again notes, "AT&T data were received recently and require substantial cleaning to extract needed information to assess usability for damages estimation."[188]

Similar to the Best Buy trade-in and resale data, analysis of the trade-in data produced by AT&T indicates that many of the relevant iPhone devices retained their trade-in value following the expiration of the digital certificate.

See Tables 8 and 9, which illustrate average Trade-in Value and Trade-in Payments, respectively, for each iPhone 4 and iPhone 4S device contained in the AT&T data.[189]  For illustration purposes, highlighted amounts indicate periods after the expiration of the digital certificate in which the average trade-in value for a given iPhone model/size combination was greater than or equal to the that of the two weeks immediately preceding the expiration of the digital certificate for many devices.

---

[187] ECF 174-85 Hastings Report, para 48.
[188] In this same table, it states that the AT&T data was provided March 2, 2018, prior to the Best Buy data and more than two months prior to the date of the Hastings Report.
[189] A.3.

**TABLE 8: SUMMARY OF AT&T AVERAGE TRADE-IN VALUE BEFORE AND AFTER THE EXPIRATION OF THE DIGITAL CERTIFICATE[190]**



**TABLE 9: SUMMARY OF AT&T AVERAGE TRADE-IN PAYMENTS BEFORE AND AFTER THE EXPIRATION OF THE DIGITAL CERTIFICATE[191]**

Again, the Hastings Report fails to consider this information, despite its relevance to the analysis, and contrary to the underlying assumptions in the Hastings Report, namely, that there was a reduction in the resale value of the iPhone 4 and iPhone 4S subsequent to the expiration of the digital certificate.

    c.   Verizon Trade-in Pricing

Certain Verizon trade-in data ignored by the Hastings Report also suggests members of the Proposed Class could have obtained a higher trade-in value for their iPhones after the expiration of the digital certificate than they could before it.  I understand Verizon has produced certain data evidencing monthly trade-in value for each respective iPhone model/size combination over the

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

period January 2013 through December 2015.  The Hastings Report states that this data is "insufficient" and "not suitable for estimating damages," and ultimately chooses to ignore the Verizon data altogether:

> Among these data sets, Verizon and Sprint data are not suitable for estimating damages because the data sets represent aggregate information on prices insufficient to measure changes in price and control sufficiently for demand and supply variables, and/or the data providers have not given adequate explanation of the variables in the data and how they are designed.[192]
>
> . . .
>
> The Verizon data give only 373 data points representing an aggregated price for a limited set of phone models. It is unclear how the prices were aggregated, and how much information is lost in the unknown aggregation process.[193]

The Hastings Report's decision to ignore the trade-in data produced by Verizon is inappropriate, in part, because this data clearly contradicts the Hastings Report's unfounded assumption that the expiration of the digital certificate caused a diminution of value in resale prices of all iPhone 4 and iPhone 4S models.  Table 10 is a subset of the Verizon data.  For illustration purposes, highlighted amounts indicate periods after the expiration of the digital certificate in which the trade-in value for a given iPhone model/size combination was greater than or equal to the March 2014 value for many devices.

---

[192] ECF 174-85 Hastings Report, para. 46.
[193] ECF 174-85 Hastings Report, para. 47.

TABLE 10: VERIZON DATA ILLUSTRATION – MARCH 2014-SEPTEMBER 2014 PRICES FOR iPHONE MODEL/SIZE COMBINATIONS GREATER THAN OR EQUAL TO THE MARCH 2014 PRICE[194]

| Model | Size | Mar-14 | Apr-14[195] | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 |
|-------|------|--------|-------------|--------|--------|--------|--------|--------|

Table 11 is the same subset of Verizon data shown in Table 10.  For illustration purposes, highlighted amounts in Table 11 indicate periods in which the trade-in value for a given iPhone model/size combination was greater than or equal to the April 2014 value.

TABLE 11: VERIZON DATA ILLUSTRATION – MARCH 2014-SEPTEMBER 2014 PRICES FOR iPHONE MODEL/SIZE COMBINATIONS GREATER THAN OR EQUAL TO THE APRIL 2014 PRICE[196]

| Model | Size | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 |
|-------|------|--------|--------|--------|--------|--------|--------|--------|

In both illustrations above, it is clear that the trade-in value of certain iPhone 4 and iPhone 4S devices either remained the same, or increased in the months following the expiration of the digital certificate, which directly contradicts the Hastings Report's key assumption that the expiration of the digital certificate caused a diminution of value in resale prices of all iPhone 4 and iPhone 4S models.  At minimum, even if the Hastings Report considered this data to be insufficient for statistical analysis, it should have been used as a reasonableness check on the results of the

---

[194] VERIZON000002.

[195] I note that because the expiration of the digital certificate occurred on April 16, 2014, it is not possible to tell from the Verizon data exactly how trade-in value changed, if at all, in the last two weeks of April following the expiration of the digital certificate.

[196] VERIZON000002.

regression.  It would have identified the flaws in the Hastings Report's underlying presumption that the Proposed Class members suffered from an alleged decline in resale value for the iPhone 4 and iPhone 4S, as this evidence is clearly contradictory to that assumption.

### d.  Publicly Available Trade-in Data

Various publicly available information also ignored by the Hastings Report suggests members of the Proposed Class could have obtained equal or higher trade-in value for their iPhones after the expiration of the digital certificate than they could have before it.  For example:

- As of March 1, 2014, Best Buy offered customers the ability to trade their iPhone 4S for "a minimum $150 Best Buy gift card," allowing them to then purchase the 16GB iPhone 5s from Best Buy for $1.  Approximately two months later, and one month *after* the expiration of the digital certificate, Best Buy announced it would guarantee iPhone 4S owners $150 to trade-in.[197]

- In early May 2014, approximately one month *after* the expiration of the digital certificate, Apple heavily promoted a new trade-in event in which it increased the trade-in value for iPhone 4 and 4S models to up to $99 and $199, respectively. The Company instructed Apple Store staff to use increased trade-in values to encourage iPhone 4 and iPhone 4S owners to upgrade their phones.[198]

### e.  Conclusions on Trade-in Data

The trade-in information ignored by the Hastings Report demonstrates a fundamental flaw in the Hastings Report's underlying assumption that members of the Proposed Class suffered from a decline in the resale value of the iPhone 4 and iPhone 4S devices subsequent to the expiration of the digital certificate.  In fact, this data clearly demonstrates that the Hastings Report assumption is wrong.

---

[197] http://isource.com/2014/05/11/best-buy-upgrading-your-old-iphone-4-to-a-5s-for-free/.
[198] https://9to5mac.com/2014/05/09/apple-kicks-off-its-big-in-store-iphone-upgrade-event/.

### 7. Failure to Consider Other Factors

The Hastings Report's analysis of iPhone resale value is entirely reliant upon its flawed regression analysis, and fails to properly consider the facts and circumstances surrounding Apple's product mix.  In doing so, the Hastings Report improperly ignores publicly available information, which has clear implications for the value and desirability of the iPhone 4 and 4S models, respectively, in and around relevant period.  Examples of these facts and circumstances include, but are not limited to, the following:

- I understand that in September 2013, Apple discontinued sales of the iPhone 4.[199]
- At about the same time as the expiration of the digital certificate, Apple and other retailers dramatically reduced the price of the new iPhone 5s.[200]
- On June 2, 2014, Apple announced the iPhone 4 would not be eligible to upgrade to the upcoming iOS 8.[201]
- In early July 2014, in what was widely reported, Apple reduced the maximum trade-in value for last-gen iPhones.[202]

The Hastings Report fails to consider any of this information, or the impact thereof, on its conclusions, in its analysis. In order to be reliable, regression analysis such as the one attempted by Dr. Hastings must control for supply, demand, and macroeconomic factors to isolate the variable to be measured.

### 8. Additional Errors and Omissions in the Regression Analysis

The Hastings Report estimates "damages due to diminished resale value of Class Members' iPhone 4 and 4S devices"[203] using a multivariate regression model which analyzed "used smartphone prices to calculate the resale price of affected phone models…[and] compare[d] the estimated but-

---

[199] https://www.cnn.com/2013/08/12/tech/mobile/new-iphone-september/index.html.
[200] https://www.wired.com/2014/04/free-iphone-5s-deal-proves-apple-isnt-so-special/.
[201] https://www.apple.com/newsroom/2014/06/02Apple-Unveils-iOS-8-the-Biggest-Release-Since-the-Launch-of-the-App-Store/.
[202] https://appleinsider.com/articles/14/07/02/apple-cuts-45-off-iphone-reuse-and-recycling-trade-in-value-new-max-set-at-225.
[203] ECF 174-85 Hastings Report, para. 38.

for price to actual resale prices to calculate damages attributable" to the expiration of the certificate.[204]

I have analyzed the Hastings Report's regression model utilizing the information provided, and identified the following fundamental flaws, in addition to those previously discussed:

- The Hastings Report fails to define the damages period.  The Hastings Report states,

> Determining the impact of the Break on prices involves comparing prices during the period affected by the Break to prices during a time when the market was unaffected by the Break. Here, the "benchmark" period is the period before the Break became publicly known and could be incorporated into customers' willingness to pay in the resale market. The "damages period" can be compared to the "benchmark" period to estimate how prices changed as a result of the harmful act, holding other demand and supply factors constant.[205]

Dr. Hastings' testimony regarding the "damages period" indicates that her selection of the data to be used in her analysis was arbitrary and failed to consider the facts and circumstances of Plaintiffs' claimed harm.[206] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████

---

[204] ECF 174-85 Hastings Report, para. 38.
[205] ECF 174-85 Hastings Report, para. 39.
[206] See, e.g., Pilmer Ex. 15 Hastings Deposition, pgs. 60, 64-66, 152.
[207] Pilmer Ex. 15 Hastings Deposition, pg. 60.
[208] Pilmer Ex. 15 Hastings Deposition, pg. 60.
[209] Pilmer Ex. 15 Hastings Deposition, pg. 152.
[210] Pilmer Ex. 15 Hastings Deposition, pg. 152.



Typically, the statistical analysis would be performed over a very short time period to avoid the impact of compounding events on the analysis.   The Hastings Report fails to limit the time period in the analysis, which has the impact of allowing for economic events unrelated to the expiration of the digital certificate to potentially influence the resale value of the iPhone 4 and iPhone 4S devices. ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████

- A Proposed Class member who upgraded to the latest version of iOS the day after the expiration of the digital certificate likely has different alleged losses than a Proposed Class member who did not upgrade to the latest version of iOS.



These sales channels are unavailable to members of the Proposed Class, could affect resale price, and were not considered or controlled for in the Hastings Report's regression analysis.

- ████████████████████████████████████████████

████████████████████████████████████████████

---

[211] Pilmer Ex. 15 Hastings Deposition, pg. 157.
[212] Pilmer Ex. 15 Hastings Deposition, pg. 230.
[213] Pilmer Ex. 7 Zeinfeld Deposition, pg. 15.
[214] Pilmer Ex. 3 Plott Deposition, pg. 44.

 The Hastings Report failed to account for any differences in resale amounts or the market between Canada and the United States.

- The Hastings Report's regression analysis fails to account for the following variables, which represent differences, between members of the Proposed Class:

  o The differences in the distribution between iPhone 4 and iPhone 4S in the data sets before and after expiration of the digital certificate.

  o The version of iOS running on the affected iPhone 4 and iPhone 4S devices.

  o The impact on resale value for "jailbroken"[218] phones.[219]  I understand that jailbroken phones tend to have a significant decline in value.[220]

  o The impact on resale value for iPhones which have no value as a result of being in extremely poor condition.



In addition to the aforementioned flaws in the Hasting Report's regression analysis, it is my opinion that the conclusion reached in the Hastings Report is incorrect and inappropriate on its face.  As the Hastings Report discusses throughout, the value of a device on the resale market is dependent on a number of variables, including the "model, type of carrier, storage capacity,

---

[215] Pilmer Ex. 15 Hastings Deposition, pgs. 230-231.
[216] Pilmer Ex. 15 Hastings Deposition, pg. 235, Exhibit 90.
[217] Pilmer Ex. 15 Hastings Deposition, pg. 235.
[218] ██████████████████████████████████████████████ (Pilmer Ex. 7 Zeinfeld Deposition, pgs. 34-35).
[219] Pilmer Ex. 15 Hastings Deposition, pgs. 180-181.
[220] See, e.g., Pilmer Ex. 7 Zeinfeld Deposition, pgs. 34-39.
[221] Pilmer Ex. 15 Hastings Deposition, pgs. 22-31.

physical condition, and other basic functionality."[222]  Applying a fixed percentage across a wide range of device values results in a correspondingly wide range of losses, thus implying that:

- There is no fixed, independent value associated with the FaceTime feature; and
- Each member of the Proposed Class incurred an alleged loss in value directly related to and dependent upon the model, carrier, storage capacity, physical condition, and other characteristics of their iPhone, and thus unique to that member; therefore, this alleged form of loss cannot be calculated as a "common impact."

To illustrate this point, only considering resale data produced by Best Buy – which is the basis for the Hastings Report's calculation and which represents considerably fewer devices than that of the Proposed Class – there exist two distinct iPhone models with three and four different storage sizes, respectively; two colors; four carriers; and five distinct specifications for "physical condition." ██ ████████████████████████████████████████████████████████████████████████ ████████████████████ likely owing, in some part, to the wide range of combinations of the aforementioned variables.  S███████████████████████████████████████████████ ██████

Applying the results of the Hastings' Report's multivariate regression to the Best Buy data,[224] one would calculate the original iPhone owner to receive between ████████████ less in value subsequent to and as an alleged direct result of the expiration of the digital certificate.  This would hardly represent common impact, and it is nonsensical that the value of FaceTime would fluctuate from device to device, and to that degree.

9.  Flaws in the Amazon Regression Analysis

The Hastings Report performs a regression analysis on "archived Amazon.com web pages" to perform a "robustness" check on the regression analysis performed utilizing Best Buy data.[225]  The

---

[222] ECF 174-85 Hastings Report, para. 28.
[223] For the purpose of this example, I have not included the ████ product sales that have show "Revenue" of zero.
[224] i.e., multiplying the low and high ends of the illustrated range by 12.72%.  This example is for illustration purposes.
[225] ECF 174-85 Hastings Report, para. 56.

Amazon data collected is characterized in the Hastings Report as prices for "major smartphone models manufactured by Apple, HTC, LG, Motorola, Samsung or ZTE, and listed for resale on Amazon's website in the used smartphone category from May 8, 2010 through July 22, 2016."[226] The Hastings Report concludes that the results of the regression are similar to the "estimates of the impact of the Break on the resale price of iPhone 4 and 4S models" as calculated using the Best Buy data.[227]

The Amazon regression analysis suffers from many of the same flaws as that of the Best Buy data, in addition to the following:

- The Amazon data lacks information with respect to the condition of the used device other than "new", "used" or "refurbished", despite some of this information being available on linked webpages to those considered in the Hastings Report.  As a result, the Hastings Report excludes the device's condition from the Amazon regression analysis.  As previously discussed, the condition of the device is an important factor influencing the resale value of the device.  In fact, ██████████████████████████████ ████████████████████████████████████████████  The Hastings Report failed to control for the condition of the devices in the Amazon regression.

- The sellers of the used devices on the Amazon webpages are undefined and not considered.  The data lacks specificity to identify whether the sellers of the used devices are individuals, resellers, businesses, etc.  The advertised resale price of the device is impacted by the type of seller, which is consistent with one of the flaws identified in the Best Buy regression wherein the Hastings Report fails to control for the reseller channel.  Utilizing the linked webpages provides certain limited additional information on the sellers of the devices; information which was ignored by the Hastings Report.

- The Hastings Report relies on the advertised price for the used devices without regard to the actual sales price resulting from a transaction.  The actual economics of the transaction between the ultimate buyer of the used device and the seller could differ, which would also

---

*Christina Grace and Ken Potter, et al. v. Apple Inc.*

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

impact the results of the regression analysis.  The Hastings Report fails to control for this variable.

- The Amazon prices upon which the Hastings Regression relies are the advertised prices "from", which is the lowest advertised price out of all of the used devices for sale at that link.  If the link is selected to view the total number of used devices offered for resale, a list of all used devices for resale becomes viewable, including those offered at higher prices.  The Hastings Report fails to utilize the next level of available information in the Amazon regression analysis, which would have included the pricing for all used devices advertised, including those at higher prices.  Selecting the low end of the advertised prices results in lowering the resale value considered in the regression analysis, thus affecting the results.

As a result of the Hastings Report's failure to control for the aforementioned key variables which impact the resale price of used devices, the regression analysis and results are flawed and speculative.

# VI.   CONCLUSION

It is my opinion that the conclusions reached in the Hastings Report are speculative, unreliable, and subject to fundamental flaws in the analysis and underlying methodologies employed. Specifically,

- The Hastings Report failed to establish the existence of an economic methodology which can be used to reliably demonstrate that members of the Proposed Class have incurred a common impact as a result of the expiration of the digital certificate; and
- The Hastings Report failed to establish that a generally-accepted economic methodology exists to reliably quantify class-wide diminution in value damages as a result of the expiration of the digital certificate.

*     *     *     *     *     *

*Christina Grace and Ken Potter, et al. v. Apple Inc.*

The procedures performed were limited to those described herein based on the documents provided to date and other information obtained.  Information obtained subsequent to the date of this report may affect this analysis and this effect may be material.  If requested, I will update my analysis.

My procedures were performed solely with respect to the above referenced litigation.  This report is not to be reproduced, distributed, disclosed or used for any other purpose.

**EISNERAMPER LLP**

_____
Dana M. Trexler, CPA                                                           June 15, 2018

EXHIBIT A

**EisnerAmper LLP**
One Logan Square
130 North 18th Street, Suite 3000
Philadelphia, PA 19103
**T** 215.881.8800
**F** 215.881.8801
www.eisneramper.com

# Dana M. Trexler, CPA, CFF

Partner

dana.trexler@eisneramper.com

**D:** 215.881.8147

**C:** 215.205.0098

### EDUCATION AND CERTIFICATIONS:

- Master's in Business Administration, University of Pennsylvania, The Wharton School (2001)
- Bachelors of Science, Accounting, and completed the requirements for a French major, Bucknell University (1994)
- Certified Public Accountant, Licensed in the Commonwealth of Pennsylvania (Certificate #CA-034551-L)
- Certified in Financial Forensics

### RANGE OF EXPERIENCE:

Dana Trexler is EisnerAmper's Philadelphia Financial Advisory Services practice leader where she specializes in providing expert testimony on damages in complex commercial and intellectual property disputes, performing forensic investigations, and conducting contract compliance engagements.

Ms. Trexler's dispute experience includes assessing damages in litigation and arbitration matters for both plaintiffs and defendants in disputes involving alleged patent infringement, theft of trade secrets, breach of contract, post-acquisition earn-out and payment calculations, breach of employment agreements, business interruption losses, and insurance claim negotiations. Ms. Trexler has evaluated and prepared economic damages in the form of lost profits, price erosion, unjust enrichment, reasonable royalties, diminution in value, and cost recovery in a variety of industries including: technology, pharmaceutical, biotechnology, medical devices, professional services, financial services, and manufacturing. Ms. Trexler has also provided economic analysis utilized in injunction hearings.

Ms. Trexler's forensic investigation experience includes leading and participating in both investigative and forensic accounting projects related to allegations of financial reporting fraud; management and/or employee embezzlement schemes; health care fraud and abuse; and violations of anti-corruption regulations, including the Foreign Corrupt Practices Act (FCPA) and UK Bribery Act. Ms. Trexler is also experienced in performing integrity due diligence in connection with various acquisitions, investigations, and vetting potential business partners to identify risk relevant information related to the activities, background, reputation, relationships, and incidences of corruption.

Ms. Trexler's contract compliance experience includes examining the underlying records supporting payments made under licensing agreements, supply agreements, manufacturing agreements, tolling agreements, and profit-sharing arrangements, where the payment terms are based on a metric under the control of one party in the agreement (e.g. net sales, net units shipped, actual manufacturing costs, etc.), to assess compliance with the payment terms under the agreement. Representative industries in which Ms. Trexler has performed contract compliance examinations include: technology, pharmaceutical, biotechnology, medical device, security services, and manufacturing.



**EISNERAMPER**

### EMPLOYMENT HISTORY

**EisnerAmper LLP** – Financial Advisory Services, Partner (August 2012 - Present)

**ParenteBeard LLC** – Forensics, Litigation and Valuation Services, Principal (February 2012- August 2012)

**PricewaterhouseCoopers, LLP –** Forensic Services, Director (2004 to February 2012)

**PricewaterhouseCoopers, LLP –** Forensic Services, Manager (1999 to 2004)

**Coopers & Lybrand / PricewaterhouseCoopers LLP –** Forensic Services Senior Associate, (1997 to 1999)

**Coopers & Lybrand** – Assurance, Senior Associate (1996 to 1997)

**Coopers & Lybrand –** Assurance, Associate, (1994 to 1996)

### PROFESSIONAL AND BUSINESS AFFILIATIONS:

- American Institute of Certified Public Accountants – Member (1996 to the present)
- Pennsylvania Institute of Certified Public Accountants – Member (1995 to the present)
- American Bar Association – Associate Member (2010 to the present)
- Philadelphia Bar Association – Associate Member (2010 to the present)
- Intellectual Property Owners Association – Member (2016)
- Licensing Executive Society – Member (2013 to the present)
- DRI – The Voice of the Defense Bar – (Member 2016-present)
- Women of EisnerAmper Committee – Philadelphia Chairperson (2014 to present)
- Bucknell University Alumni Association of Philadelphia – Member (1994 to the present); Co-President (2005 to 2007)
- Philabundance – Finance Committee Member (2005 to 2009)
- Philabundance – Board of Directors (2006 to 2009)
- PricewaterhouseCoopers' Great Place to Work Leadership Committee - Chair of People Development & Coaching Committee (2002 to 2011)

### FOREIGN LANGUAGE CAPABILITIES:

- French – Proficiently read, speak, and write

### PRESENTATIONS:

- "Damages in Intellectual Property Litigation" – In-House CLE, May 10, 2018
- "Hot Topics in Patent Damages – A Damages Expert's Perspective" – In-House CLE, March 5, 2018
- "Seeking Expert Advice – How to Deal with Survey, Industry and Damage Experts in Trademark and Copyright Cases" – West Legal Edcenter Webinar, January 22, 2018
- "Creating Value When "There's No There There": Intellectual Property/Alternative Assets" – TMA Mid-Atlantic Regional Symposium, June 8, 2017
- "Fraud Awareness for Nonprofit Organizations" – EisnerAmper LLP, Philadelphia, PA, February 2, 2017
- "Apple Vs. Samsung: Takeaways From the Smartphone Wars"- Philadelphia Bar Assoc., January 25, 2017



**EISNERAMPER**

- "Use and Abuse of Expert Witnesses in Trademark and Copyright Litigation"- Clear Law Institute, Webinar, January 9, 2017
- "Forensic Accounting Webinar" – McDevitt & Kline LLC, Philadelphia, Pennsylvania, December 9, 2016
- "Show Me the Money – A Primer on Lanham Act Damages" – New York Intellectual Property Lawyers, Association, Uniondale, New York, November 10, 2016
- "Hot Topics in IP Damages: Evolving Case Law" – CenterForce IP Strategy Summit, New York, New York, October 27, 2016
- "How to Effectively Explain Damages to a Jury" – DRI Business Litigation Seminar,  Nashville, Tennessee, May 5, 2016
- "The Yates Memo – What You and Your Audit Committee Need to Know" – The Institute of Internal Auditors Philadelphia Chapter, Philadelphia, Pennsylvania, April 29, 2016
- "Effective Uses of Financial Experts" - Legal Intelligencer Litigation Summit, Philadelphia, April 6, 2016
- "Forensic Accounting & Litigation: Hot Buttons in 2016 LIVE Webcast" – The Knowledge Group, March 17, 2016
- "Threat and Fraud Analytics" – The Institute of Internal Auditors Philadelphia Chapter, Philadelphia, PA, November 23, 2015
- "Accountant's Role in Forensic Investigations and Disputes" – Brindisi Tax Academy, Radnor, PA, November 19, 2015
- "Effective Uses of Financial Experts" – Pennsylvania Bar Institute 9th Annual Intellectual Property Law Institute, Philadelphia, PA, April 29, 2015
- "Hot Topics in Corporate Internal Investigations" – Legal Intelligencer Litigation Summit, Philadelphia, April 10, 2015
- "Trends in IP Damages" – CenterForce IP Strategy Summit: Enforcement – NYC, March 26, 2015
- "Foreign Corrupt Practices Act: The Law, Current Trends, and Compliance" –  New Jersey Legal Journal – In House Counsel Seminar, September 16, 2014
- "Management 101 Concepts and Applications: Building a Successful Company in Today's World" – Bucknell Professional Network, September 9, 2014
- "Deal Valuation & Maximizing Potential" – Boston Patent Law Association - License Committee Seminar, May 1, 2014
- "Deposing Financial Experts" – Pennsylvania Bar Association, April 23, 2014
- "Trends and Considerations in Intellectual Property Damage Calculations", Philadelphia Bar Association, Intellectual Property Committee, October 9, 2013
- "Vetting and Screening Third Parties: How to Uncover Corrupt Behavior and Prevent Vicarious Liability" – American Conference Institute Foreign Corrupt Practices Association Boot Camp, San Francisco, CA, September 27, 2011
- "Dana Trexler Smith on Third-Party Risks in an Era of Increased Anti-corruption Enforcement", Bulletproof Blog™, February 3, 2011
- "Raising Awareness of Fraud & Integrity Issues", PricewaterhouseCoopers' Year-end Alumni Event, December 3, 2010
- "Hot Topics in Bribery and Foreign Corruption Panel Session" – PricewaterhouseCoopers' Year-end Alumni Event, December 7, 2009



**EisnerAmper**

<u>**PUBLICATIONS:**</u>

- "How to Attract and Retain Young Women in Accounting", *Philadelphia Business Journal*, May 25, 2017
- "The Benefits of Game Theory in Negotiations and Mediations", co-authored with Gary H. Levin of BakerHostetler, *The Legal Intelligencer*, October 6, 2015
- "Compliance Monitoring Just Makes Good Business Sense", *Pennsylvania Institute of Certified Public Accountants Journal*, Spring 2013
- "Expert Discusses Contract Audit and IP Damages Calculation", *Metropolitan Corporate Counsel*, Volume 21, No. 2, February 2013
- "Franchisors: Exercise Your Contractual Rights", *E-Commerce Law & Strategy*, Volume 24, Number 11, March 2008



# EISNERAMPER

## Dana Trexler Smith, CPA, CFF

**Federal Rule 26 Disclosures - Testimony**

| *Date* | *Jurisdiction* | *Type* | *Matter* |
|---|---|---|---|
| 2018 | United States District Court for the Northern District of Georgia Atlanta Division | Deposition | Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Company |
| 2017 | United States District Court for the Eastern District of Virginia | Deposition | SwimWays Corporation and Kelsyus LLC v. Aqua-Leisure Industries, Inc. |
| 2017 | American Arbitration Association, Louisville, Kentucky | Deposition | The Ashcroft Group, LLC v. Rubicon Waste, LLC |
| 2017 | United States District Court for the Middle District of Pennsylvania | Deposition | AVCO Corporation v. Turn and Bank Holdings, Inc. and Precision Airmotive  v. AvStar Fuel Systems, Inc. |
| 2017 | United States Court of Chancery of the State of Delaware | Trial | Eagle Force Holdings, LLC and EF Investments, LLC v. Stanley V. Campbell (C.A. NO. 10803-VCMR) |
| 2016 | United States District Court for the District of Delaware | Deposition | Centrak, Inc. v. Sonitor Technologies, Inc. (C.A. No. 14-183-RGA) |
| 2016 | United States District Court for the Middle District of Florida, Tampa Division | Deposition | Connectus LLC d/b/a eDegree Advisor v. Ampush Media, Inc., and DGS EDU, LLC (8:15-cv-02778-VMC-JSS) |
| 2016 | United States District Court Easter District of Virginia, Norfolk Division | Deposition | SwimWays Corporation and Kelsyus LLC v. Bestway (USA), Inc. (1:16-cv-608-LMB-IDD) |
| 2016 | United States District Court District of Delaware | Deposition | TL of Florida, Inc. v. Terex Corporation, d/b/a Terex Construction Americas (1:13-cv-020009-LPS) |



**EISNERAMPER**

# Dana Trexler Smith, CPA, CFF

**Federal Rule 26 Disclosures - Testimony**

| _Date_ | _Jurisdiction_ | _Type_ | _Matter_ |
|---|---|---|---|
| 2016 | United States Court of Chancery of the State of Delaware | Trial | inTEAM Associates, LLC, as successor-in-interest to School-Link Technologies, Inc. v. Heartland Payment Systems, Inc.  (11523-VCN) |
| 2016 | United States Court of Chancery of the State of Delaware | Deposition | inTEAM Associates, LLC, as successor-in-interest to School-Link Technologies, Inc. v. Heartland Payment Systems, Inc.  (11523-VCN) |
| 2015 | American Arbitration Association, Porter County, Indiana | Arbitration | Metal Services LLC, d/b/a Phoenix Services LLC v. ArcelorMittal Burns Harbor LLC |
| 2015 | American Arbitration Association Porter County, Indiana | Deposition | Metal Services LLC, d/b/a Phoenix Services LLC v. ArcelorMittal Burns Harbor LLC |
| 2015 | Court of Common Pleas Lebanon County, Pennsylvania | Trial | City of Lebanon, Jonestown Borough, North Cornwall Township, North Lebanon Township, North Londonderry Township, Northern Lebanon School District, Palmyra Area School District, South Lebanon Township, South Londonderry Township, Swatara Township, Union Township, and West Lebanon Township vs. Cornwall Borough, Heidelberg Township, North Annville Township, West Cornwall Township, and Bethel Township (2012-01222) |
| 2015 | United States Court of Chancery of the State of Delaware | Trial | Revolution Retail Systems, LLC v. Sentinel Technologies, Inc., Tidel, Inc., Tidel Engineering, LP (10605-VCP) |
| 2015 | United States Court of Chancery of the State of Delaware | Deposition | Revolution Retail Systems, LLC v. Sentinel Technologies, Inc., Tidel, Inc., Tidel Engineering, LP (10605-VCP) |



**EISNERAMPER**

# Dana Trexler Smith, CPA, CFF

**Federal Rule 26 Disclosures - Testimony**

| _Date_ | _Jurisdiction_ | _Type_ | _Matter_ |
|---|---|---|---|
| 2014 | United States District Court Eastern District of Pennsylvania | Deposition | Branch Banking and Trust Company v. Maxim Integrated Products, Inc. (2:12-cv-00945-JFC) |
| 2014 | Court of Common Pleas Lebanon County, Pennsylvania | Deposition | City of Lebanon, Jonestown Borough, North Cornwall Township, North Lebanon Township, North Londonderry Township, Northern Lebanon School District, Palmyra Area School District, South Lebanon Township, South Londonderry Township, Swatara Township, Union Township, and West Lebanon Township vs. Cornwall Borough, Heidelberg Township, North Annville Township, West Cornwall Township, and Bethel Township (2012-01222) |
| 2014 | American Arbitration Association | Arbitration | Allscripts Healthcare, LLC v. Etransmedia Technology, Inc. (31 117 00223 13) |
| 2013 | United States District Court Eastern District of Pennsylvania | Deposition | Synthes, Inc., Synthes USA HQ, Inc., Synthes USA, LLC, Synthes USA Sales, LLC, and Synthes USA Products, LLC v. Emerge Medical, Inc., f/k/a Emerge Surgical, Inc., John P. Marotta, Zachary W. Stassen, Eric W. Brown, Charles Q. Powell, and John Does 1-10 (2:11-cv-01566-RB) |



EXHIBIT B

**Documents Considered**

| Bates Range | Document Description |
|---|---|

**Documents Filed With The Court**

Plaintiffs' Notice of Subpoena to Akamai Technologies, Inc., dated December 13, 2017.

Letter from Law Office of David H. Judson Re: Christina Grace et al v. Apple, Inc., No. 5-17-cv-00551-LHK, dated January 3, 2018.

Plaintiffs' Subpoena to Verizon Wireless Device Trade-In and Recycling Program, dated January 10, 2018.

Letter from Paula Phillips to Jill Manning Re: Christina Grace v. Apple, dated January 12, 2018.

Plaintiffs' Certificate of Service, dated January 16, 2018.

Plaintiffs' Subpoena to Amazon.com Inc., dated January 16, 2018.

Plaintiffs' Subpoena to AT&T Trade-In and Recycle Program, dated January 16, 2018.

Plaintiffs' Subpoena to BestBuy Trade-In Program, BestBuy.com, LLC, dated January 16, 2018.

Plaintiffs' Subpoena to Brightstar Corp, dated January 16, 2018.

Plaintiffs' Subpoena to Gazelle.com / ecoATM, LLC, dated January 16, 2018.

Plaintiffs' Subpoena to Nextworth.com, Nextworth Solutions, Inc., dated January 16, 2018.

Plaintiffs' Subpoena to Sprint BuyBack (The Prentice-Hall Corp), dated January 16, 2018.

Plaintiffs' Subpoena to Sprint BuyBack, SPRINTCOM Inc., dated January 16, 2018.

Plaintiffs' Subpoena to T-Mobile (The Prentice-Hall Corp), dated January 16, 2018.

Plaintiffs' Subpoena to T-Mobile, Corporation Service Company (California), dated January 16, 2018.

Plaintiffs' Subpoena to Verizon Wireless Device Trade-In and Recycling Program, dated January 16, 2018.

Defendant Apple Inc.'s Notice of Service of Subpoena to Verizon Wireless, dated January 17, 2018.

Letter from Elizabeth Fohrman Zorowitz to Jill Manning Re: Third Party Subpoena to Testify at a Deposition in a Civil Action Issued to "Sprint BuyBack" in Christina Grace, et al. v. Apple, Inc., U.S. District Court for the Northern District of California, Civil Action No. 5:17-cv-00551-LHK, dated January 17, 2018.

Amazon's Objections to Subpoena, dated January 18, 2018.

Letter from Amanda Beane to Jill Manning Re: Subpoena served on Non-party ecoATM, Grace and Potter v. Apple Inc., dated January 18, 2018.

Letter from Best Buy to Jill Manning Re: Subpoena in a Civil Case served on BestBuy.com, LLC, Christina Grace and Kev Potter, et a. v. Apple, Inc., Case No. 5:17-cv-00551-LHK, Best Buy File No.: 18-70967, dated January 19, 2018.

Fax from Jana I. to Kristin Sheffield-Whitehead Re: Christina Grace / Ken Potter, dated January 23, 2018.

Letter from Harley L. Raff to Alexander Simon Re: Christina Grace and Ken Potter v. Apple, Inc., Civil Action No. 5:17-cv-00551-LHK, dated February 1, 2018.

Letter from Irell & Manella LLP to Jill Manning and Alexander Simon Re: Christina Grace and Ken Potter v. Apple Inc., Case No. 5:17-cv-00551-LHK, dated February 5, 2018.

Defendant Apple Inc.'s Notice of Service of Subpoena to Akamai Technologies, Inc., dated February 13, 2018.

Plaintiffs' Subpoena to Amazon Trade-In Store, Amazon.com Inc., dated February 20, 2018.

Plaintiffs' Subpoena to Amazon.com, Amazon.com Inc., dated February 20, 2018.

Letter from Elizabeth Fohrman Zorowitz to Alex L. Simon Re: Third Party Subpoena issued to Sprint Buyback, SprintCom, Inc., in the Matter of Christina Grace and Ken Potter, et al. v. Apple, Inc., Civil Action Case No. 5:17-cv-00551-LHK, dated February 22, 2018.

Letter from Law Office of David H. Judson to Tanya L. Green Re: Christina Grace et al v. Apple, Inc., No. 5-17-cv-00551-LHK, dated February 26, 2018.

Amazon's Objections to Plaintiffs' Subpoena, dated February 2, 2018.

Plaintiffs' Subpoena to Assurant, Inc., dated March 12, 2018.

Amazon's Objections to Subpoena, dated March 13, 2018.

**Documents Considered**

| Bates Range | Document Description |
|---|---|
| | First Amended Class Action Complaint 1. Trespass to Chattels, 2. Violations of the Unfair Competitions Law, California Business and Professions Code 17200 et seq., dated April 5, 2017. |
| | Plaintiffs' Notice of Motion and Motion to Certify a Nationwide Class; Memorandum of Points and Authorities, dated May 4, 2018. |

**Expert Reports**

Expert Report of Justine Hastings, dated May 4, 2018, with Documents Relied Upon and Stata Data.

**Depositions**

Deposition of Gokul Thirumalai, dated April 20, 2018, with Exhibits.
Deposition of Dallas Blake De Atley, dated April 18, 2018, with Exhibits.
Deposition of Justine Hastings, dated June 8, 2018, with Exhibits 87, 90, and 91.
Deposition of Andy Zeinfeld, dated May 31, 2018, with Exhibits 79 and 80.
Deposition of Kenneth Potter, Jr., dated May 30, 2018.
Deposition of Christina Grace, dated May 18, 2018.
Deposition of Brian Plott, dated June 12, 2018.
Deposition of Christopher Hall, dated June 12, 2018.

**Apple Documents**

| | |
|---|---|
| APL-GRACE_00000009 | APL-GRACE_00000010 |
| APL-GRACE_00000022 | APL-GRACE_00000030 |
| APL-GRACE_00000988 | APL-GRACE_00000993 |
| APL-GRACE_00001004 | APL-GRACE_00001011 |
| APL-GRACE_00001956 | APL-GRACE_00001956 |
| APL-GRACE_00002142 | APL-GRACE_00002145 |
| APL-GRACE_00002160 | APL-GRACE_00002160 |
| APL-GRACE_00002942 | APL-GRACE_00002958 |
| APL-GRACE_00003737 | APL-GRACE_00003739 |
| APL-GRACE_00005636 | APL-GRACE_00005637 |
| APL-GRACE_00005801 | APL-GRACE_00005801 |
| APL-GRACE_00005804 | APL-GRACE_00005806 |
| APL-GRACE_00005860 | APL-GRACE_00005865 |
| APL-GRACE_00008039 | APL-GRACE_00008042 |
| APL-GRACE_00010198 | APL-GRACE_00010199 |
| APL-GRACE_00012205 | APL-GRACE_00012209 |

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

Documents Considered

| Bates Range | | Document Description |
|---|---|---|
| APL-GRACE_00025224 | APL-GRACE_00025224 | |
| APL-GRACE_00034276 | APL-GRACE_00034279 | |
| APL-GRACE_00042431 | APL-GRACE_00042432 | |
| APL-GRACE_00043021 | APL-GRACE_00043159 | |
| APL-GRACE_00044231 | APL-GRACE_00044233 | |
| APL-GRACE_00050788 | APL-GRACE_00050791 | |
| APL-GRACE_00051571 | APL-GRACE_00051573 | |
| APL-GRACE_00056772 | APL-GRACE_00056786 | |
| APL-GRACE_00056875 | APL-GRACE_00056889 | |
| APL-GRACE_00056973 | APL-GRACE_00056989 | |
| APL-GRACE_00099793 | APL-GRACE_00099795 | |
| APL-GRACE_00102595 | APL-GRACE_00102602 | |
| APL-GRACE_00148220 | APL-GRACE_00148222 | |

**Akamai Documents**

| AKAM-0001 | AKAM-0024 | |
|---|---|---|

**Sprint Documents**

| SPRINT000001 | SPRINT000001 | |
|---|---|---|

**Verizon Documents**

| VERIZON000001 | VERIZON000001 | |
|---|---|---|
| VERIZON000002 | VERIZON000002 | |

**AT&T Documents**

A.1.
A.2.
A.3.

**Best Buy Documents**

1_2013_Jan-Mar.xlsx.
2_2013_Apr-May.xlsx.
3_2013_June.xlsx.
4_2013_July-Aug.xlsx.
5_2013_Sep-Oct.xlsx.

**Documents Considered**

| Bates Range | Document Description |
|---|---|

6_2013_Nov-Dec.xlsx.
7_2014_Jan-Feb.xlsx.
8_2014_Mar-May.xlsx.
9_2014_Jun-Aug.xlsx.
10_2014_Sep.xlsx.
11_2014_Oct.xlsx.
12_2014_Nov.xlsx.
13_2014_Dec.xlsx.
14_2015_Jan-Jun.xlsx.
15_2015_Jul-Dec.xlsx.
16_2016_Jan-Dec.xlsx.

**Research**

Apple, Inc. Form 10-K for the Fiscal Year Ended September 30, 2017.
Baumol, William J. and Blinder, Alan S., 2007 Microeconomics Principles and Policy, Tenth Edition.
http://isource.com/2014/05/11/best-buy-upgrading-your-old-iphone-4-to-a-5s-for-free/.
https://9to5mac.com/2014/05/09/apple-kicks-off-its-big-in-store-iphone-upgrade-event/.
https://appleinsider.com/articles/14/07/02/apple-cuts-45-off-iphone-reuse-and-recycling-trade-in-value-new-max-set-at-225.
https://support.apple.com/en-us/ht201222.
https://support.apple.com/kb/dl1682?locale=en_US.
https://support.apple.com/kb/dl1683?locale=en_US.
https://support.apple.com/kb/dl1685?locale=en_US.
https://support.apple.com/kb/dl1691?locale=en_US.
https://support.apple.com/kb/dl1701?locale=en_US.
https://support.apple.com/kb/dl1718?locale=en_US.
https://support.apple.com/kb/dl1723?locale=en_US.
https://support.apple.com/kb/dl1732?locale=en_US.
https://support.apple.com/kb/dl1736?locale=en_US.
https://support.apple.com/kb/dl1750?locale=en_US.
https://www.apple.com/newsroom/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores/.
https://www.apple.com/newsroom/2008/06/09Apple-Introduces-the-New-iPhone-3G/.
https://www.apple.com/newsroom/2009/06/08Apple-Announces-the-New-iPhone-3GS-The-Fastest-Most-Powerful-iPhone-Yet/.
https://www.apple.com/newsroom/2010/06/07Apple-Presents-iPhone-4/.
https://www.apple.com/newsroom/2010/10/20Apple-Brings-FaceTime-to-the-Mac/.
https://www.apple.com/newsroom/2011/03/02Apple-Launches-iPad-2/.
https://www.apple.com/newsroom/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud/.
https://www.apple.com/newsroom/2012/06/11Apple-Previews-iOS-6-With-All-New-Maps-Siri-Features-Facebook-Integration-Shared-Photo-Streams-New-Passbook-App/.
https://www.apple.com/newsroom/2012/09/12Apple-Introduces-iPhone-5/.

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

## Documents Considered

| Bates Range | Document Description |
|---|---|
| | https://www.apple.com/newsroom/2013/09/10Apple-Announces-iPhone-5s-The-Most-Forward-Thinking-Smartphone-in-the-World/. |
| | https://www.apple.com/newsroom/2013/09/10Apple-Introduces-iPhone-5c-The-Most-Colorful-iPhone-Yet/. |
| | https://www.apple.com/newsroom/2013/09/10iOS-7-With-Completely-Redesigned-User-Interface-Great-New-Features-Available-September-18/. |
| | https://www.apple.com/newsroom/2013/09/16iPhone-5s-iPhone-5c-Arrive-on-Friday-September-20/. |
| | https://www.apple.com/newsroom/2014/06/02Apple-Unveils-iOS-8-the-Biggest-Release-Since-the-Launch-of-the-App-Store/. |
| | https://www.apple.com/newsroom/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History/. |
| | https://www.apple.com/newsroom/2015/09/21iPhone-6s-iPhone-6s-Plus-Arrive-on-Friday-September-25/. |
| | https://www.apple.com/newsroom/2016/03/21Apple-Introduces-iPhone-SE-The-Most-Powerful-Phone-with-a-Four-inch-Display/. |
| | https://www.apple.com/newsroom/2016/09/apple-introduces-iphone-7-iphone-7-plus/. |
| | https://www.apple.com/newsroom/2017/09/iphone-8-and-iphone-8-plus-a-new-generation-of-iphone/. |
| | https://www.apple.com/newsroom/2017/09/the-future-is-here-iphone-x/. |
| | https://www.cnbc.com/id/100995034. |
| | https://www.cnn.com/2013/08/12/tech/mobile/new-iphone-september/index.html. |
| | https://www.lifewire.com/ios-versions-4147730. |
| | https://www.usatoday.com/story/tech/2014/09/13/where-to-sell-your-old-iphone/15603369/. |
| | https://www.wired.com/2014/04/free-iphone-5s-deal-proves-apple-isnt-so-special/. |
| | www.cnet.com/news/best-buy-offers-up-to-200-iphone-trade-in-credit. |
| | www.imore.com/apple-wants-take-your-old-iphone-and-give-you-new-iphone. |
| | www.time.com/68108/radioshack-selling-the-iphone-5s-for-100-or-free-with-iphone-4s-trade. |

# EXHIBIT 1

**Christina Grace and Ken Potter, et al. v. Apple Inc.**

**Number of Upgrades of iPhone 4 and iPhone 4S Devices to iOS 7 by Month** [1]



| Month | iPhone 4 | iPhone 4S | Total | Cumulative Total |
|---|---|---|---|---|

**Source:**

**Notes:**

1 - The data relied upon lacks specificity as to the version of iOS 7 to which the device was upgraded (e.g., iOS 7, iOS 7.1, etc.).

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

EXHIBIT 2

Christina Grace and Ken Potter, et al. v. Apple Inc.
Average Best Buy Resale Price [1]



| | | | | Average Revenue per Device [2] | | | | |
| Model | Size | Color | Condition | April 1, 2014 - April 15, 2014 | April 16, 2014 - April 30, 2014 | May 2014 | June 2014 | July 2014 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

*Amounts subject to rounding.*

**Notes:**

1 - For illustration, this Exhibit includes only those combinations of device criteria (i.e., model, storage, color, and condition) which also appeared in the data for period April 1, 2014 to April 15, 2014.

2 - ████████████████████████████████████████ For the purpose of this analysis, I have excluded combinations of device criteria for which "Revenue" is zero or missing.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

# EXHIBIT 3

**Christina Grace and Ken Potter, et al. v. Apple Inc.**
**Average Best Buy Trade-in Paid Amount [1]**



*Amounts subject to rounding.*

**Sources:** ████████████████████

**Notes:**

1 - For illustration, this Exhibit includes only those combinations of device criteria (i.e., model, storage, color, and condition) which also appeared in the data for period April 1, 2014 to April 15, 2014. ████████████████████████████████

2 - Amounts shown represent average "ActualPaidAmount" obtained from the Best Buy data for each combination of device criteria in the relevant period. ████████████████████████████████████████

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**