STEYER LOWENTHAL BOODROOKAS
    ALVAREZ & SMITH LLP
Allan Steyer (State Bar No. 100318)
Jill M. Manning (State Bar No. 178849)
D. Scott Macrae (State Bar No. 104663)
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (State Bar No. 96241)
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com
dwarshaw@pswlaw.com
asimon@pswlaw.com

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiffs and*
*Proposed Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>APPLE, INC.,<br><br>                Defendant. | Case No. 5:17-cv-00551-LHK-NC<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY A NATIONWIDE CLASS**<br><br>Date:  August 2, 2018<br>Time:  1:30pm<br>Court:  8, 4th Floor<br>Judge:  The Honorable Lucy H. Koh |

**REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

1

**TABLE OF CONTENTS**

2

**Page**

3

I.      INTRODUCTION ............................................................................. 1

4

II.     ARGUMENT ................................................................................... 1

5

        A.      Apple's Statement of Facts Contains Myriad Inaccuracies ............... 1

6

        B.      Certification Under Rule 23(a) is Appropriate ................................. 2

7

                1.      Plaintiffs Grace and Potter Are Typical of the Proposed Class .............. 2

8

                2.      Common Legal and Factual Issues Predominate ..................................... 4

9

                        (a)     Individual Issues Do Not Predominate Over the Common
                                Issues ................................................................................................. 4

10

11

                        (b)     Damages and Restitution Can be Calculated on a Class-Wide
                                Basis ................................................................................................. 5

12

                                (i)     Apple's *Comcast* Argument Fails ............................................. 6

13

                                (ii)    Ms. Trexler's Attacks on Dr. Hastings' Regression
                                        Model Fail ............................................................................ 8

14

15

                                (iii)   Apple's Restitution-Based Arguments Fails ........................ 11

16

                3.      Apple's Attempts to Defeat a Nationwide Class Fail ............................. 12

17

                        (a)     There Are No Material Differences Among State Trespass
                                to Chattels Laws................................................................................ 12

18

                        (b)     California Has the Predominate Interest in Applying Its Law ....... 14

19

                4.      Class Members Are Identifiable and Ascertainable ................................ 14

20

        C.      Certification Under Rule 23(b)(2) Is Appropriate ............................ 15

21

III.    CONCLUSION ............................................................................... 16

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**                                                     **Page**

*Bazemore v. Friday*
    478 U.S. 385 (1986) ........................................................................................ 9

*Bernstein v. Virgin Am., Inc.*
    No. 15-CV-02277-JST, 2016 WL 6576621 (N.D. Cal. Nov. 7, 2016) ...................... 8

*Body by Cook v. Ingersoll-Rand Co.*
    39 F. Supp. 3d 827 (E.D. La. 2014) .......................................................... 13

*Brazil v. Dole Packaged Foods, LLC*
    No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ................... 11

*Brazil v. Dole Packaged Foods, LLC*
    No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ................... 11

*Briseno v. ConAgra Foods, Inc.*
    844 F.3d 1121 (9th Cir. 2017)........................................................................ 9

*Castro v. ABM Indus., Inc.*
    No. 17-CV-3026-YGR, 2018 WL 2197527 (N.D. Cal. May 14, 2018) ...................... 6

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) ……………………………………………………….. 6, 7, 9, 11

*Davidson v. Apple, Inc.*
    No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018) ...................... 6

*Donohue v. Apple, Inc.*
    871 F. Supp. 2d 913 (N.D. Cal. May 10, 2012) .......................................... 11

*Ellis v. Costco Wholesale Corp.*
    285 F.R.D. 492 (N.D. Cal. 2012) .............................................................. 15

*Farar v. Bayer AG*
    No. 14-cv-04601, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) .............................. 15

*Ferrington v. McAfee, Inc.*
    No. 10-cv-01455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................................ 11

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) ................................................................... 4

*Herskowitz v. Apple, Inc.*
    301 F.R.D. 460 (N.D. Cal. 2014) ……………………………………………… 5, 15

*In re eBay Seller Antitrust Litig.*
    2009 WL 2779374 (N.D. Cal. 2009) .......................................................... 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    308 F.R.D. 606 (N.D. Cal. 2015) .............................................................. 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
No. 07–5944, 2013 WL 5391159 (N.D. Cal. Sept. 19, 2013) .................................... 9

*In re High-Tech Employee Antitrust Litig.*
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ……………………………………… 6, 7, 9, 10

*In re: Lenovo Adware Litig.*
No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ….. 5, 9, 11, 12

*In re Lidoderm Antitrust Litig.*
No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) …... 7, 9, 11, 12

*In re Mushroom Direct Purchaser Antitrust Litig.*
No. 06-0620, 2015 WL 5767415 (E.D. Pa. July 29, 2015) ........................................ 9

*In re MyFord Touch Consumer Litig.*
291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................................... 11

*In re Optical Disk Drive Antitrust Litig.*
No. 3:10-MD-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ........................  8

*In re Qualcomm Antitrust Litig.*
292 F. Supp. 3d 948 (N.D. Cal. 2017)...................................................................... 13

*In re TFT-LCD Antitrust Litig.*
267 F.R.D. 583 (N.D. Cal. 2010) ............................................................................ 15

*Intel Corp. v. Hamidi*
30 Cal. 4th 1342 (2003) ……………………………………………………….. 11, 12

*Jamgotchian v. Slender*
170 Cal. App. 4th 1384 (2009) ............................................................................... 14

*Just Film, Inc. v. Buono*
847 F.3d 1108 (9th Cir. 2017) ................................................................................. 6

*Kaczmarek v. Int'l Bus. Machines Corp.*
186 F.R.D. 307 (S.D.N.Y. 1999) ............................................................................. 4

*Kumar v. Salov N. Am. Corp.*
No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016) ……………. 7, 11

*Lambert v. Nutraceutical Corp.*
870 F.3d 1170 (9th Cir. 2017) ……………………………………………………. 5, 8

*Leyva v. Medline Industries*
716 F.3d 510 (9th Cir. 2013) ................................................................................... 6

*Luna v. Marvell Tech. Grp., Ltd.*
No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ...................... 6

*Mateo v. V.F. Corp.*
2009 U.S. Dist. LEXIS 105921 (N.D. Cal. Oct. 27, 2009) …………………………. 3, 4

*Mazza v. Am. Honda Corp.*
  666 F.3d 581 (9th Cir. 2012) ……………………………………………… 12, 13, 14

*McCann v. Foster Wheeler LLC*
  48 Cal. 4th 68 (2010) ................................................................ 14

*Nedlloyd Lines B.V. v. Superior Court*
  3 Cal. 4th 459 (1992) ................................................................ 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*
  238 F.R.D. 482 (C.D. Cal. 2006) ............................................... 8

*Nitsch v. Dreamworks Animation SKG Inc*.
  315 F.R.D. 270 (N.D. Cal. 2016) ............................................... 7

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ..................................................... 15

*Philips v. Ford Motor Co*.
  No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ................... 11

*Pulaski & Middleman, LLC v. Google, Inc.*
  802 F.3d 979 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016) ............ 11

*Torres v. Mercer Canyons, Inc.*
  835 F.3d 1125 (9th Cir. 2016) ................................................... 9

*Trosper v. Styker Corp*.
  No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) .................. 7

*VirnetX Inc. v. Apple Inc.*
  No. 6:12-cv-855, Dkt. 440 (E.D. Tex. Feb. 4, 2016) ............................. 13


**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  23(a)(3).................................................................................. 2
  23(b)(2)................................................................................. 15
  23(b)(3)................................................................................. 15


Judicial Council of Cal. Civil Jury Instruction
  § 2101 ................................................................................. 12

## I.      INTRODUCTION

Apple's surreptitious and intentional implementation and execution of the FaceTime Break caused all Class members' iPhone 4 and 4S devices to lose value. Apple, on the other hand, reaped significant financial benefits in the form of reduced relay fees, and joked about ███ ███████ its illegal conduct. The FaceTime Break affected every Class member in the same way. Plaintiffs' damages model measures the harm caused by the FaceTime Break and therefore is closely tied to Plaintiffs' single theory of liability. Accordingly, this case is ideally suited for class certification.

## II.      ARGUMENT

### A.  Apple's Statement of Facts Contains Myriad Inaccuracies.

Apple's statement of facts, though riddled with inaccuracies, fails to raise any issue sufficient to defeat class certification. *First*, Apple's assertion ████████████████████ ███████████████████████████████████████████████████is contradicted by documents evidencing that ███████████████████████████.' *Second*, Apple's internal documents contradict its assertion that ███████████████████████ ███████████████████ Opp. at 4:2-4. ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████² ██████████████████████████████████████████████████ ███████████████████.³ This disproves Apple's claim that it "worked diligently to rectify the problem as soon as it was discovered." Opp. at 3:8-9.⁴ *Third*, tacitly admitting that iOS 7 impaired the performance of iPhone 4 and 4S devices, Apple claims that iOS 7.1 was "designed to *improve performance* for the iPhone 4." Opp. at 3:21-22 (emphasis added). Yet Apple never

---

[1] Apple's Opposition (ECF 198-4) ("Opp."), at 2:21-23.
[2] Manning Opening Decl. (ECF 174-1), Ex. 32████████████████████████████ ████████████████████████████████
[3] Reply Declaration of Jill M. Manning in Support of Plaintiffs' Motion to Certify a Nationwide Class ("Manning Reply Decl."), Ex. 78 (APL-GRACE_0024933, at 935).
[4] Apple's assertion that it "considered several potential solutions for resolving" the impending digital certificate expiration" cites to "Pilmer Ex. 1." However, there is no Exhibit 1 referenced in or attached to the Pilmer Declaration (Dkt. 201-1, 201-2).

1   claims—let alone establishes—that iOS 7.1 *satisfactorily* resolved the performance impairment

2   inflicted on iPhone 4 and 4S devices by iOS 7. Potter's testimony establishes that it did not.[5]

3         *Finally*, unable to deny that FaceTime calls on iOS 6 and earlier significantly increased

4   its relay usage costs, Apple merely raises red herrings irrelevant to both the direct correlation

5   between relay usage and relay usage cost, and the drastic reduction in both achieved by the

6   FaceTime Break. Opp. at 3.

7

8

9

10

11

12 [8]

13       **B.   Certification Under Rule 23(a) is Appropriate.**

14           **1.   Plaintiffs Grace and Potter Are Typical of the Proposed Class.**

15         Apple's atypicality arguments fundamentally misconstrue Plaintiffs' claims. Under Rule

16   23(a)(3)'s "permissive requirement," Plaintiffs' claims must be "'reasonably co-extensive,' not

17   'substantially identical' with the proposed Class members' claims." Plaintiffs meet this

18   requirement, as the FaceTime Break diminished the value of *all* iPhone 4 and 4S devices

19   running on pre-iOS 7 operating systems by guaranteeing that *all* such devices either (i) lacked

20   FaceTime, or (ii) suffered impaired performance after migrating to iOS 7 to restore FaceTime.

21   Plaintiffs' Motion ("Mot.") (Dkt. 174), at 14:11-20.

22         Apple's conduct at issue in this case was identical as to the named Plaintiffs and the rest

23   of the Class. Apple attempts to inject extraneous issues into the typicality inquiry by focusing

24

25   ---
[5] Manning Reply Decl., Ex. 79 (Potter Tr.), at 165:21-166:20; 168:3-168:17.
26   [6] Manning Reply Decl., Ex. 80 (AKAM-0216); Ex. 81 (APL-GRACE_00012808); Ex. 82 (AKAM-0214); Manning Opening Decl., Ex. 59 (APL-GRACE_00052811).
27   [7] Manning Opening Decl., Ex. 10, at 794-95; Manning Reply Decl., Ex. 83 (APL-GRACE_00013049).
28   [8] Manning Reply Decl., Ex. 84 (AKAM-0020).

on whether Ms. Grace "used FaceTime"[9] and "considered whether to restore FaceTime to her

phone," and by emphasizing Mr. Potter's decision to "jail break" one of his two iPhone 4

devices and his decisions regarding whether to migrate those devices to iOS 7. *See* Opp. at 7-9.

None of those issues are relevant to the typicality inquiry because the execution and impact of

the FaceTime Break and the diminution in value are common to all Class members regardless of

their FaceTime usage, their device performance, or their decisions on whether to migrate to iOS

7 after the FaceTime Break.

Similarly, Plaintiff Potter's decision to "jail break" one of his two iPhone 4 devices—and

any purported "performance issues" resulting therefrom (Opp. at 9)—does not disqualify him as

a class representative. Apple's sole challenge to Potter's non-jailbroken device is the length of

time during which, as Apple admits, he was "deprived of using FaceTime on this device." Opp.

at 9:18. Apple's argument that Potter's deprivation was "momentary or threatened" and thus not

a trespass to chattels misconstrues the claim and the law. Apple's misconduct *permanently*

eliminated Class members' access to FaceTime unless they upgraded to iOS 7, and diminished

the *value* of all iPhone 4 and 4S devices affected by the FaceTime Break.

Further, Apple's argument as to Mr. Potter's jailbroken device also fails.[10] The inapposite

cases cited by Apple on this point involve, *e.g.*, a plaintiff who was *personally responsible* for

the precise violations of company policy upon which her claims were based, and was thus

subject to strong defenses that "threaten[ed] to overtake the merits of [the] litigation."[11] Here,

---

[9] Apple's argument that Ms. Grace never made FaceTime calls on her iPhone 4 is incorrect.
Opp. at 7:15. Ms. Grace testified that she made FaceTime calls, and the forensic analysis of her
iPhone 4 devices identifies 42 FaceTime calls. Manning Reply Decl., Ex. 85 (SDDF003_6b);
Ex. 86 (Grace Tr.), at 10:25-11:1; 77:20-22; 78:4-6; 78:24-79:2).

[10] Notably, Dr. Rubin merely speculates that jailbreaking a device *might* expose it to malware
which "would clearly have had a strong impact on systems performance across a wide spectrum
of areas." Rubin Decl. (ECF 200-2), ¶¶76-86. Dr. Rubin's assertion, in addition to being
irrelevant and unsupported, is suspect ████████████████████████████████████████
██████████████ Manning Reply Decl., Ex. 89 (Rubin Tr.), at 169:6-7, 169:14-17. █████████
████████████████████████████████████████████████ *Id.*, at 189:6-20.

[11] *Mateo v. V.F. Corp.*, 2009 U.S. Dist. LEXIS 105921, at *11-12 (N.D. Cal. Oct. 27, 2009)
(quotation omitted). Apple's two other cases on this issue are similarly inapposite. In
*Kaczmarek v. Int'l Bus. Machines Corp.*, the court denied certification of claims involving
thousands of possible permutations "primarily" due to non-typicality issues, and the court's

1 Apple cannot defend itself from the performance issues caused by iOS 7 by pointing out that a

2 device might additionally be impaired by jailbreaking or overheating.[12] Thus, far from

3 "threaten[ing] to overtake the merits of [the] litigation" as they must to disqualify Plaintiff

4 Potter from representing the Class (Opp. at 8:2), the possible performance issues for that device

5 are irrelevant to the merits.

6                    **2.    Common Legal and Factual Issues Predominate.**

7                    **(a)   Individual Issues Do Not Predominate Over the Common Issues.**

8        Apple's predominance arguments focus on "performance-related issue[s] from restoring

9 FaceTime" on the devices impacted by the FaceTime Break. Opp. at 10:10. Again, as set forth

10 above, individualized performance-related issues are irrelevant to Plaintiffs' claims and theory

11 of damages. Further, Apple's factual assertions regarding the impact of iOS 7.1 on device

12 functionality are inappropriate for resolution on this motion, where Plaintiffs' allegations

13 regarding the impact of iOS 7—which "the court must take ... as true," *Mateo*, 2009 U.S. Dist.

14 LEXIS 105921, at *7—are supported by the record. *See* Mot. at 5-6.

15        Next, as with its typicality argument, Apple concedes that the FaceTime Break inflicted

16 "a deprivation of FaceTime" on the Class members, but mistakenly deems the *duration* of that

17 deprivation the dispositive question on Plaintiffs' trespass to chattels claim. Opp. at 11. Again,

18 Plaintiffs' trespass to chattels claim is premised on the impairment to the *value* of all iPhone 4

19 and 4S devices affected by the FaceTime Break. And in any event, Apple's arguments regarding

20 Class members who might have sold or traded in their devices after the FaceTime Break falsely

21

22 ─────────────────────

23 typicality analysis focused on the individualized "reliance upon any representation by IBM and
the warranties received from IBM." 186 F.R.D. 307, 310-11, 313 (S.D.N.Y. 1999). Unlike in
this case, whether products were "altered or misused" mattered because the claims were

24 premised on the performance of those products. *Id. See also Hanon v. Dataproducts Corp.*, 976
F.2d 497, 506-08 (9th Cir. 1992) (lead plaintiff in securities case seemingly purchased ten

25 shares of company's stock solely to bring lawsuit, creating "serious dispute" as to his ability to
rely on key theory).

26 [12] Apple's attempt to connect Potter's allegations of decreased device performance to
jailbreaking is belied by the facts. Potter does not allege that his jailbroken device suffered from

27 decreased performance. Rather, he alleges decreased performance from updating his second
device, the device that was not jailbroken, to a version of iOS 7. Manning Reply Decl., Potter

28 Tr., at 227:9-228:24.

1  assumes the "practical impossibility of identifying those individuals," when in reality any

2  disposals of Class members' devices would be clearly reflected within Apple's records, which

3  include Class member-specific identification numbers that would indicate any transfer of a

4  relevant device after the FaceTime Break. *See*, *infra*, fn. 36.

5      Regarding Plaintiffs' UCL claim, Apple does not and cannot dispute that the claim arises

6  from a uniform scheme, which courts have deemed sufficient to warrant certification of a class.

7  *See* Mot. at 17-18; *see also, e.g.*, *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 476 (N.D. Cal.

8  2014) ("The focus of the UCL is on the defendant's conduct and not the plaintiff's damages").[13]

9  Thus, Apple instead focuses on the harm inflicted by that uniform scheme, arguing that the

10 proper inquiry must balance the "utility of the defendant's conduct against the gravity of the

11 harm to the alleged victim," which involves individualized issues. Opp. at 12:11-12. This

12 argument fails because it ignores that Apple's conduct affected all Class members in the same

13 way and harmed them in the same way—*i.e.*, the diminution in value to their devices.

14      **(b)  Damages and Restitution Can be Calculated on a Class-Wide Basis.**

15      Apple's challenges to Plaintiffs' damages model ignore the Ninth Circuit's most recent

16 decision governing such models. In *Lambert v. Nutraceutical Corp.*, the Ninth Circuit reversed

17 decertification holding that "[c]lass wide damages calculations under the UCL, FAL, and CLRA

18 are particularly forgiving" and "require[] only that some reasonable basis of computation of

19 damages be used … even if the result reached is an approximation." 870 F.3d 1170, 1183 (9th

20 Cir. 2017) (quotation omitted).[14] This Court applied those same principles in certifying the

21

22

23

24 [13] *Herskowitz*, in which the claims were fraught with predominant individualized inquiries, is
distinguishable. 301 F.R.D. at 471, 474, 476 (holding, *e.g.*, that plaintiffs "failed to provide any
evidence to support the existence of a uniform business practice," that "the critical question of
25 assent or non-assent turns on an individualized inquiry for each customer").

[14] In *Lambert*, the damages model was based on the average retail price of the product
26 purchased by the class members. *Id.* at 1183. The plaintiff failed to produce evidence of the
actual retail prices, instead presenting evidence of "the suggested retail price over the relevant
27 time period." *Id.* The Ninth Circuit held that "*such a precise average is unnecessary for class
certification. At this stage, the question is only whether Lambert has presented a workable
28 method.*" *Id.* at 1184. (Emphasis added.)

1   plaintiffs' UCL claims in *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL

2   6277245, at *21 (N.D. Cal. Oct. 27, 2016).

3   Tellingly, Apple neither challenges Dr. Hastings' qualifications as an economist or her

4   methodology, nor offers its own report from an expert economist. Instead, Apple offers only the

5   opinions of Dana Trexler—a CPA who is not an economist, ██████████████████

6   ████████████ and did not identify a superior damages methodology.[15]

7   **(i)   Apple's *Comcast* Argument Fails.**   Apple argues that Plaintiffs'

8   model fails to comply with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) because it

9   purportedly is not tied to Plaintiffs' theory of liability.[16] Unlike in *Comcast*, Plaintiffs have a

10   single theory of liability (the FaceTime Break) and a damages model that measures the harm

11   arising from that single theory. *Castro v. ABM Indus., Inc.*, No. 17-CV-3026-YGR, 2018 WL

12   2197527 (N.D. Cal. May 14, 2018) (rejecting *Comcast* challenge although damages model

13   "would result in uniform damages regardless of cell phone usage and plan cost."); *Luna v.*

14   *Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27,

15   2017) ("[u]nlike *Comcast*, in which a damage figure was calculated assuming theories of

16   liability that had since been eliminated from the case, lead plaintiff's proposed damages model

17   relies on but one theory of liability.")[17]

18   _____

19   [15] Manning Reply Decl., Ex 88 (Trexler Tr.), at 42:25-43:7, 45:9-11. 86:10-87:10. Even where a
defendant creates a legitimate "battle of the experts" by offering a conflicting damages

20   regression model from an economist, class certification is still appropriate. *In re eBay Seller Antitrust Litig.*, 2009 WL 2779374, at *1 (N.D. Cal. 2009) (the court must leave "disputes over
the results reached and assumptions made with respect to competing methodologies to the trier

21   of fact, and discern only whether the plaintiffs have advanced a plausible methodology").

22   [16] As an initial matter, "[t]he Ninth Circuit, in line with the Supreme Court's admonition that
*Comcast* created no new law, read *Comcast* narrowly *in Leyva v. Medline Industries*[.]"   *In re*

23   *High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1184 (N.D. Cal. 2013). *Leyva* held
that *Comcast* only requires plaintiffs to "show that their damages stemmed from the defendant's
actions that created the legal liability." 716 F.3d 510, 514 (9th Cir.2013); *Just Film, Inc. v.*

24   *Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) ("Plaintiffs need only show that damages can be
determined without excessive difficulty and attributed to their theory of liability ....").

25   [17] The only case Apple cites in support of its erroneous argument, *Davidson v. Apple, Inc.*, No.
16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018), is inapposite. In *Davidson*,

26   the plaintiffs alleged that Apple's failure to disclose an alleged touchscreen defect caused
consumers to overpay for iPhone devices, and sought certification based on a conjoint analysis

27   of a consumer survey. *Id.* at 21. The Court found the plaintiffs' damages model deficient

28   because the underlying survey falsely assumed that *all* class members' phones suffered the

1    Apple argues that Plaintiffs' model "calculates only the diminution in value for *all*

2  iPhone 4 and 4S devices," rather than just those running on pre-iOS 7 versions of iOS prior to

3  the FaceTime Break. Opp. 14 (emphasis in original). In doing so, Apple mischaracterizes

4  Plaintiffs' claims and the multivariate regression model. Dr. Hasting's model uses price data

5  before and after the FaceTime Break and applies a multivariate regression analysis to control for

6  other variables and isolate the diminution in value caused by the Break. *See* Hastings Reply

7  Report, ¶¶ 13-15, 19, 21-23, 47, 56. The model, therefore, complies with *Comcast* because it

8  isolates the diminution of value attributable to the Plaintiffs' theory of liability, *i.e.*, the

9  FaceTime Break. *See Nitsch v. Dreamworks Animation SKG Inc*., 315 F.R.D. 270, 304 (N.D.

10  Cal. 2016); *High-Tech*, 985 F.Supp.2d at 1207-08, 1224-26; *Kumar v. Salov N. Am. Corp*., No.

11  14-CV-2411-YGR, 2016 WL 3844334, at *10 (N.D. Cal. July 15, 2016); *Trosper v. Styker

12  Corp*., No. 13-CV-0607-LHK, 2014 WL 4145448, at *17 (N.D. Cal. Aug. 21, 2014).[18]

13    Apple's argument that Plaintiffs' model does not support predominance because Class

14  members could have restored FaceTime by migrating to iOS 7 similarly fails. As the evidence

15  demonstrates, installing iOS 7 *did not* alleviate the diminution in value caused by the FaceTime

16  Break because doing so significantly impaired device performance.[19] Thus, as discussed *supra*,

17  Class Members' post-FaceTime Break decisions regarding migration to iOS 7 are irrelevant.

18  Indeed, this Court rejected essentially the same argument in denying Apple's motion to dismiss.

19  Dkt. 65 at 22.

20

21

_____

22  touchscreen defect, whereas the evidence showed a mere "5.6 percent or less chance that
consumers would experience the touchscreen defect." *Id*. at *22-23. Here, the evidence

23  demonstrates that all Class members were affected by the FaceTime Break in the same way.

24  [18] That non-class members' iPhone 4 and 4S devices may have suffered a diminution in value is
not surprising, but rather consistent with market efficiencies and demand and supply factors.
Hastings Expert Report (ECF 174-85), at ¶ 30. While *Comcast* requires that a damages model

25  measure only the loss to class members caused by the misconduct giving rise to the claims in
the case, the loss need not be suffered exclusively by the class members. *See In re Lidoderm

26  Antitrust Litig*., No. 14-MD-02521-WHO, 2017 WL 679367, at *24 (N.D. Cal. Feb. 21, 2017)
(damage model satisfied *Comcast* although defendant's conduct injured both class members and

27  consumers in states not included in the class).
[19] *See, e.g*., Mot. at 5:7-6:11 (and exhibits cited therein); Manning Reply Decl., Ex. 79 (Potter

28  Tr.), at 165:21-166:20; 168:3-168:17); Hastings Reply Report, ¶¶ 17, 36-37.

(ii)  **Ms. Trexler's Attacks on Dr. Hastings' Regression Model Fail.**

Ms. Trexler's attacks on Plaintiffs' damages model collapse under scrutiny. Her complaints about the data used in Dr. Hastings' analysis assume a burden far exceeding that applicable at the class certification stage and cannot justify rejecting the model outright. That additional data may be added to the model as discovery continues is not a reason to reject the model outright.[20] In fact, Dr. Hastings' model is robust; it yields sensible results which are consistent when applied to data sets from a range of companies representing the three different categories of smart phone resellers (*carrier* – AT&T; *retailer* – Best Buy; and *on-line resellers* – Amazon and EcoATM) and collectively containing over 10 million observations.[21]

Ms. Trexler's related opinion that the regression model is deficient because Dr. Hastings analyzed iPhone 4 and 4S resale prices rather than trade-in prices similarly fails. Such criticism of the specific data used cannot invalidate an expert damages model or defeat class certification.[22] In any event, resale prices are the appropriate measure of the value of the devices. As Dr. Hastings opines (and testimony from smart phone resellers confirms), resale prices reflect the market value of the devices.[23]

████████████████████████████████████████████████████████████

████████████████████████████[24] Ms. Trexler nevertheless claims in her

---

[20] *Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST, 2016 WL 6576621, at *6 (N.D. Cal. Nov. 7, 2016); *Lidoderm*, 2017 WL 679369, at *12.

[21] Adding the data produced by AT&T and EcoATM into the regression *supports* the model and its conclusions. Hastings Reply Report, ¶¶ 35, 51, 61.

[22] *See e.g.*, *Lambert*, 870 F.3d at 1184 (reversing decertification although the plaintiffs' damages model relied on suggested retail prices instead of actual average retail prices); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494 (C.D. Cal. 2006); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 467444, at *7 (N.D. Cal. Feb. 8, 2016) (rejecting attack on regression model based on expert's "selection of particular data to utilize, the variables he has elected to include in his regressions.").

[23] Hastings Reply Report, ¶¶ 36-38. Trade-in data necessarily involves a second-step transaction that could affect the actual value of iPhone devices. Specifically, trading in an iPhone typically involves: a) only receiving in-store credit for the device, and b) the customer's receipt of a new device, usually in connection with the payment of additional money and/or the signing of a contract. Requiring any value given to remain in-store allows unidentifiable promotions to be included in the trade-in value. This, and the fact that redemption of the store credit usually requires additional payments, compromises the trade-in price as an indicator of device value.

[24] Manning Decl., Ex. 88 (Trexler Tr.), at 178:23 – 179:10, 181:23-24; Hastings Reply Report, ¶¶26-30; 48-50.

Report that Dr. Hastings' analysis (i) fails to consider promotions and news that "likely would affect the resale prices of the iPhone 4 and 4S" (Opp. at 17:6-18), and (ii) "fails to control for whether a phone was jailbroken, damaged, or had undergone unauthorized repair." Opp. at 16:23-24. As this Court held in *High-Tech*, however, a defendant's assertion that the damages model fails to include certain variables "is a prototypical concern that goes to weight, not admissibility" and does not demonstrate that the "model is inconsistent with Plaintiffs' theory of harm." 2014 WL 1351040, at *19 (citing *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).[25] Here, Dr. Hastings' regression controls for "751 factors, all of which are factors that market participants, like Best Buy, state are important demand and/or supply factors impacting the price of phones." Hastings Reply Report, ¶ 43. Moreover, Dr. Hastings expanded the model to include additional variables that control for new phone promotions and the results remain consistent. *Id.*, ¶ 28. Further, the evidence gleaned thus far in discovery demonstrates that only ██% of iPhone owners "jailbroke" their devices. *Id.*, ¶ 30. In any event, Apple's argument is irrelevant because it is directed at the *amount* of damages, not the methodology for estimating damages. And the inclusion in the class of devices that might have no value (jailbroken or not) would not defeat class certification.[26] Courts in this Circuit repeatedly have held that individual issues related to the amount of damages do not defeat class certification.[27] Thus, Dr. Hastings' model controls for the factors that affect phone prices and any individualized issues related to

---

[25] *See also, e.g.*, *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 5767415, at *10 (E.D. Pa. July 29, 2015) (defendants' argument that expert's damages regression model improperly omitted variables could not defeat class certification); *Lidoderm*, 2017 WL 679367, at *12 ("the experts dispute what the appropriate inputs should be does not undermine the approach or the reliability of Leitzinger's model.").

[26] *See, e.g.*, *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016) (uninjured class members in class did not preclude predominance finding); *Lenovo*, 2016 WL 6277245, at *15 (certifying a class of computer purchasers over defendants' objections that some class members were uninjured); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 615 (N.D. Cal. 2015) ("[e]ven if some individuals are thus able to join the class and then are later determined to not have valid claims …, this does not preclude class certification.").

[27] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07–5944, 2013 WL 5391159, at *6–7 (N.D. Cal. Sept. 19, 2013) ("[N]either *Comcast* nor any other precedent requires the [plaintiffs] to provide exact calculations of their damages at the class certification stage.").

1    damages can be addressed during claims administration. *See, e.g.*, *Briseno v. ConAgra Foods*,

2    844 F.3d 1121, 1131-32 (9th Cir. 2017).

3          Ms. Trexler's suggestion that the value of iPhone 4 and 4S devices *increased* following

4    the FaceTime Break is illogical, incorrect and further demonstrates her misunderstanding of Dr.

5    Hastings' analysis. Hastings Reply Report, ¶¶ 23, 32-34. Ms. Trexler's apparent reliance on an

6    "'eyeball" method in forming this opinion – "simply looking at aggregated measures of prices

7    with no statistical analysis and no attempt to control for potentially confounding factors" – is

8    not an economically sound measure of diminution in value. *Id.*, ¶¶ 14-16, 24-26. In fact, Ms.

9    Trexler's opinion is flawed because she has made unsupported assumptions about the data (*Id.*,

10   ¶¶ 25, 52), and the prices reflect discounts and tie-ins to in-store purchases, not the market value

11   of the devices. *Id.*, ¶¶ 36-38.

12         The remainder of Apple's arguments similarly (and improperly) address the quality of the

13   data, not the regression model itself. *See, e.g.*, Opp. at 15:15-16 (asserting that Dr. Hastings is

14   "using inapposite data", using the wrong benchmark price, and "ignoring data inconvenient to

15   her conclusions …"). If this were true (and it is not), one would expect Apple to perform its

16   own regression analysis using purportedly "appropriate" data and benchmarks to demonstrate

17   alleged flaws in Dr. Hastings' analysis. Hastings Reply Report, ¶¶ 53-54. Ms. Trexler's

18   unwillingness and/or inability to do so underscores that her opinions lack merit. Manning Reply

19   Decl., Ex. 88 (Trexler Tr.), at 119:1-10. As set forth above, additional data may be added to the

20   model as discovery continues.[28]

21         Ms. Trexler's criticism of Dr. Hasting's use of averages to calculate damages is

22   unconvincing. *See High-Tech*, 985 F.Supp.2d at 1217. In any event, during the claims

23   administration process, the percentage diminution in value may be applied to each class

24   member's device to determine each class member's damages, taking into account the same

25

26

_____

27   [28] Ms. Trexler's opinion that Dr. Hastings "arbitrarily" selected the damages period is belied by
     Dr. Hastings' testimony that she relied on data available to her, which had a December 31, 2016
28   end date. Hastings Reply Report, ¶¶ 7, 43.

1   handful of key characteristics *that Apple itself uses to determine the price of a phone* (model

2   and condition).[29] *Id*., ¶¶ 29, 31, 59-61.

3         Thus, Dr. Hastings has demonstrated "how [she] can (at summary judgment and trial)

4   calculate classwide aggregate damages [and] … has made a solid preliminary showing of

5   impact *and* demonstrated a reliable method that can accommodate future judicial rulings,

6   findings of fact, and changes to class membership or damages depending on opt-outs and

7   assignments to prove aggregate damages on a common and classwide basis." *Lidoderm,* 2017

8   WL 679367, at *13.

9         **(iii)  Apple's Restitution-Based Arguments Fails.**  Apple's argument

10   that Plaintiffs cannot use the same damages model for its UCL and trespass to chattels claims

11   fails under Ninth Circuit law. Diminution in value is the appropriate measure of damages in this

12   case for trespass to chattels *and* restitution under the UCL.[30] Apple's incorrect argument that

13   restitution is limited to "the difference between the price plaintiffs paid and the value of the

14   product they received"[31] is based on readily distinguishable case law.[32] Unlike *Brazil*, (i) this is

15

16   [29] *See, e.g.*, https://www.apple.com/shop/trade-in.

   [30] *See e.g.*, *Pulaski & Middleman, LLC v. Google, Inc*. 802 F.3d 979, 989 (9th Cir. 2015), *cert.*

17   *denied*, 136 S. Ct. 2410 (2016) (finding diminution in value model to calculate restitution under
   the UCL consistent with *Comcast*); Lenovo, 2016 WL 6277245, at *9 (conduct that

18   "significantly degraded the performance of the Lenovo computers" caused a measurable loss for
   a trespass to chattels damages claim); *Intel v. Hamidi*, 30 Cal. 4th 1342, 1389 (2003) (damages

19   for trespass to chattels when "there is impairment to the 'quality' or 'value' of the chattel."); *In
   re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 971–72 (N.D. Cal. 2018); *Kumar*,

20   2016 WL 3844334, at *10; *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 919–20 (N.D. Cal.
   May 10, 2012) ("the diminution in the value of plaintiff's phone resulting from the defect,"

21   although likely "minor," was "at least in theory—calculable.").
   [31] ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████
   Manning Reply Decl., Ex. 88 (Trexler Tr.) at 9:10-21, 85:17-86:9, 163:15-164:14, 182:15-20.

23   [32] *Brazil v. Dole Packaged Foods*, Case 12-cv-01831-LHK, 2014 WL 5794873, at *6 (N.D. Cal. Nov.
   6, 2014) is also distinguishable because, *e.g.*, the regression model did not consider any "other

24   variable affecting price." Here, as explained above, Dr. Hastings' model does control for other
   demand and supply factors. Equally inapposite is *Philips v. Ford Motor Co.*, No. 14-CV-02989-

25   LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016), where the Court rejected the expert's
   damages methodology because it erroneously assumed that "the true value of the EPAS systems

26   was $0" although he failed to even state, let alone justify, "the conclusion that this assumption is
   correct." Finally, in *Ferrington v. McAfee, Inc.*, the Court denied a motion to dismiss, holding

27   that plaintiffs had standing to assert a UCL claim although they paid no money directly to
   defendant. 10-CV-01455, 2010 WL 3910169, at *8 (N.D. Cal. Oct. 5, 2010). Here too, even if

28   certain Class member may not have purchased their iPhones directly from Apple, Apple receives

not a false advertising case brought under the "deceptive" prong of the UCL, and (ii) Plaintiffs are not attempting to isolate the price premium of an allegedly false label. Accordingly, as this Court noted in denying Apple's motion to dismiss, given Plaintiffs' claims here, diminution in value is a valid measure of restitution.

### 3.   Apple's Attempts to Defeat a Nationwide Class Fail.

Apple does not dispute that Plaintiffs met their burden to show that California has significant contact to the claims of each Class member, satisfying the due process requirements of applying California law nationwide. *Mazza v. Am. Honda Corp.*, 666 F.3d 581, 589 (9th Cir. 2012). The burden thus shifts to Apple to demonstrate the specific circumstances that mandate the application of foreign law. *Id*. at 590. Apple has failed to meet its burden.

### (a) There Are No Material Differences Among State Trespass to Chattels Laws.

Under the first prong of California's governmental interest test, "[a] problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *See Mazza,* 666 F.3d at 590.  Trespass to chattels is a common law claim, for which California has adopted the nationwide Restatement 2d of Torts' rules. *Hamidi*, 30 Cal. 4th at 1351-52; *Lenovo*, 2016 WL 6277245, at *8 (explaining that CA and NY elements for trespass to chattels are "very similar"). The variations in state law that Apple asserts do not constitute the outcome-determinative differences that are necessary to establish a material conflict.  *See* Dkt. 201-7 at 27-31. Apple claims there are different interpretations of the intent requirement, yet the authority it cites confirms that states consistently require intentional interference with property as an element of a trespass to chattels claim. *Compare* Judicial Council of Cal. Civil Jury Instructions § 2101 (requiring intentional interference with property as an element of trespass to chattels); *with* Dkt. 201-7 at 27-28 (consistently requiring intentional acts as an element of trespass to chattels).  Furthermore, under the facts of this case—where Apple intentionally damaged iPhone devices—it is irrelevant whether some states require "Actual Damages for

money from the purchase of each iPhone and thus can be liable for restitution and diminution in value.

1   Claim to be Actionable" but others merely require "Any Interference" to be actionable. Dkt.

2   201-7 at 29-30. The differences in the applicable state laws are not material. Even if they were,

3   they could be addressed on a special verdict form or "through other mechanisms routinely

4   employed in complex litigations like this one." *Lidoderm*, 2017 WL 679367, *27.[33]

5         The only other difference Apple identifies relating to trespass to chattels is that certain

6   states have different statutes of limitations, with the shortest being Louisiana's one-year bar.

7   Dkt. 201-7 at 30-31. However, this variation also makes no "difference in this litigation,"

8   *Mazza*, 666 F.3d at 590, because Plaintiffs meet even the shortest limitations period. Louisiana

9   applies the "discovery rule" to its statute of limitations, such that the prescriptive period does

10  not begin to run until "the date the injured party discovers or should have discovered the facts

11  upon which his cause of action is based." *Body by Cook v. Ingersoll-Rand Co.*, 39 F. Supp. 3d

12  827, 836 (E.D. La. 2014). The first opportunity for Class members to reasonably discover the

13  facts surrounding their injury would not have been until May 9, 2016, the date of release of the

14  transcripts reflecting in-trial public revelations about Apple breaking FaceTime. *VirnetX Inc. v.*

15  *Apple Inc.*, No. 6:12-cv-855, Dkt. 440 (E.D. Tex. Feb. 4, 2016). Because this action was filed

16  less than a year later, on February 2, 2017, Plaintiffs meet the shortest possible limitations

17  period, rendering irrelevant any difference among the state laws in this regard.

18        **(b) California Has the Predominate Interest in Applying its Law.**

19        Even if a true conflict exists, Apple has failed to meet its burden on the final prong of

20  the government interest test, *i.e.*, to prove that a foreign state has a greater interest in applying

21

22  _____

23  [33] Similarly, regarding the second prong, Apple's assertion that in some instances other states' protections for both types of Plaintiffs' claims exceed California's fails to establish any true conflict of state interests. Opp. at 23. Even if Apple could conceivably be liable in another state

24  for conduct less egregious than the misconduct at issue here, foreign residents are adequately protected because Apple is liable in this matter asserted under California law. This case is more

25  akin to *In re Qualcomm Antitrust Litig.* than to *Mazza*. In *Qualcomm*, as here, the "sole defendant [was] a California resident," which did not meet "its burden of showing that other

26  states have an interest in having their laws applied" because "applying other states' laws to bar recovery here would paradoxically disadvantage the other states' own citizens for injuries

27  caused by a California defendant's unlawful activities that took place primarily in California." 292 F. Supp. 3d 948 at 979-80 (N.D. Cal. 2017).  Because no true conflict exists between any

28  foreign state's interests and those of California, California law applies here.

1    its laws to this case than California. Under California' government interest test, "the place of the

2    wrong has the predominant interest" and "the 'place of the wrong' [is] the state where the last

3    event necessary to make the actor liable occurred." *See Mazza*, 666 F.3d at 593.

4        In this case, the "last event" is one of: ███████████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ███████████████████████ Dkt. 174 at 6-9. Regardless of which is deemed the "last

8    event," *all* occurred in California. Apple's claim that the UCL claims accrued where Apple's

9    customers purchased their devices because *potential* UCL liability first accrued at purchase

10   (Opp. at 22) fails because the test is where liability *finally, actually* accrues. *Mazza*, 666 F.3d at

11   593. Apple incorrectly argues that trespass to chattels claims accrue where the damages are

12   suffered.[34] In *McCann v. Foster Wheeler LLC*, a mesothelioma victim's claim accrued where he

13   was exposed to asbestos (*i.e.*, Oklahoma) rather than California, where many years later, he was

14   diagnosed with the disease. 48 Cal. 4th 68, 74 (2010). The *McCann* court made clear that the

15   interests of Oklahoma (where the last event necessary to accrue liability occurred) predominated

16   over the interests of California (where the harm resulting from the misconduct was suffered). *Id*.

17   at 96-102. Accordingly, California's interest predominates.[35]

18

19

20

---

[34] For this proposition, Apple quotes *Jamgotchian v. Slender*, 170 Cal. App. 4th, 1384, 1401 (2009), which states that trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." The court was merely describing the scenario in which conduct can give rise to a trespass to chattels claim, not assigning trespass claims to the location of the injury.

[35] Application of California law to Plaintiffs' claims pursuant to the governmental interest test is also consistent with the parties' agreement. California courts recognize that when parties to a contract include a choice of law clause, the chosen law should apply to all causes of action arising from or related to that agreement. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992). Here, Apple, clearly contemplated applying California law to any and all claims arising out of its iOS Software License Agreement (iOS Agreement") (*see* ECF 35-1), as Apple (unsuccessfully) argued that the iOS Agreement barred the specific claims asserted by Plaintiffs here. *See, e.g.*, ECF 65 at 10-14.  Under Section 12 titled "Controlling Law and Severability," the iOS Agreement states "[t]his License will be governed by and construed in accordance with the law of the State of California. ECF 35-1. Like in *Nedlloyd*, Apple's "governed by" language clearly shows its intent to have California law apply. *Nedlloyd*, 3 Cal. 4th at 465.

1

### 4.  Class Members Are Identifiable and Ascertainable.

2

Apple's claim that it is "impossible" to determine Class membership (Opp. at 24:8-9) is

3

plainly false, as Apple already produced a "comprehensive list" of Class members.[36] Further,

4

Apple's assertion that there is no method of identifying which Class members still own their

5

affected devices is irrelevant, as Class membership is dictated by ownership *as of April 16,*

6

*2014*. And Apple's claim that certain Class members traded in their affected devices after the

7

FaceTime Break is of no moment because they are ascertainable and still have a valid claim.

8

### C.  Certification Under Rule 23(b)(2) Is Appropriate.

9

Plaintiffs have identified two potential forms of injunctive relief: requiring Apple to (i)

10

disclosure when certificates are programmed to expire and what features will be affected; and

11

(ii) allow iPhone devices to install earlier iOS versions.[37] These remedies would mitigate both

12

of Apple's ongoing exploitation of device expiration dates, and the Hobson's Choice imposed

13

on all Class members by the FaceTime Break. Plaintiffs properly seek certification of their

14

claims for restitution and damages under Rule 23(b)(3) *and* certification of their injunctive relief

15

claim under 23(b)(2).[38] "It is possible to certify the injunctive aspects of the suit under Rule

16

23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of

17

class-wide equitable relief and an opportunity for each affected person to exercise control over

18

the damages aspects.'"[39] The Class members are entitled to injunctive relief to remedy "policies

19

or practices that are generally applicable to [them] as a whole." *Parsons,* 754 F.3d at 688.

20

21

---

22

[36] *See* Manning Reply Decl., Ex. 93 at 2:5-14; Manning Opening Decl., Ex. 70.

[37] *See* Manning Reply Decl., Ex. 87 at 35:9-24.

23

[38] In *Herskowitz,* plaintiffs sought "an injunction solely to enable individual class members to seek refunds from Apple," which is "practically indistinguishable from an order that Apple pay Plaintiffs money." 301 F.R.D. at 482. Here, the injunctive relief sought is distinct from

24

monetary relief and would change "policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

25

[39] *In re TFT-LCD Antitrust Litig*., 267 F.R.D. 583, 596 (N.D. Cal. 2010); *see also Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) (certifying

26

both Rule 23(b)(2) and 23(b)(3) classes in false advertising case); *Ellis v. Costco Wholesale Corp*., 285 F.R.D. 492, 538, no. 37 (N.D. Cal. 2012) ("in an appropriate case, a Rule 23(b)(2)

27

class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy.") (internal quotations omitted).

28

1

III.     CONCLUSION

2

For these reasons and those set forth in their moving papers, Plaintiffs respectfully

3

request that the Court grant their motion.

4

Dated: July 13, 2018                          Respectfully submitted,

5

By:     /s/ Jill M. Manning
                Jill M. Manning

6

7

STEYER LOWENTHAL BOODROOKAS
   ALVAREZ & SMITH LLP
Allan Steyer (State Bar No. 100318)

8

D. Scott Macrae (State Bar No. 104663)
One California Street, Suite 300

9

San Francisco, CA 94111
Telephone: (415) 421-3400

10

asteyer@steyerlaw.com
jmanning@steyerlaw.com

11

smacrae@steyerlaw.com

12

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (State Bar No. 96241)

13

Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
44 Montgomery Street, Suite 2450

14

San Francisco, CA 94104
Telephone: (415) 433-9000

15

bsimon@pswlaw.com
dwarshaw@pswlaw.com

16

asimon@pswlaw.com

17

FRIEDMAN OSTER & TEJTEL PLLC
David F.E. Tejtel (*admitted pro hac vice*)

18

240 East 79th Street, Suite A
New York, New York 10075

19

Telephone: (646) 661-5881
Email: dtejtel@fotpllc.com

20

CALDWELL CASSADY & CURRY

21

Bradley W. Caldwell (*admitted pro hac vice*)
Jason D. Cassady (*admitted pro hac vice*)

22

John Austin Curry (*admitted pro hac vice*)
2101 Cedar Springs Road, Suite 1000

23

Dallas, Texas 75201
Telephone: (214) 888-4848

24

bcaldwell@caldwellcc.com
jcassady@caldwellcc.com

25

acurry@caldwellcc.com

26

*Counsel for Plaintiffs and Proposed Counsel for
the Class*

27

28

-16-

1

**CERTIFICATE OF SERVICE**

2

On July 13, 2018, I electronically filed the foregoing with the Clerk of the Court by

3

using the CM/ECF system which will send notice of electronic filing to all persons registered

4

for ECF.

5

By: */s/ Suneel Jain*_____

6

Suneel Jain

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-