# EXHIBIT 6

STEYER LOWENTHAL BOODROOKAS
    ALVAREZ & SMITH LLP
Allan Steyer (State Bar No. 100318)
Jill M. Manning (State Bar No. 178849)
D. Scott Macrae (State Bar No. 104663)
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile:   (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (State Bar No. 96241)
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
dwarshaw@pswlaw.com
asimon@pswlaw.com
[Additional counsel listed on signature page]

*Attorneys for Plaintiffs*
*Christina Grace and Ken Potter*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>APPLE, INC.,<br><br>            Defendant. | Case No. 5:17-cv-00551-LHK-NC<br><br>**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES** |

APL-GRACE_00000015; APL-GRACE_00000018; APL-GRACE_00010198; APL-GRACE_00012808; APL-GRACE_00013049; APL-GRACE_00015517; APL-GRACE_00042431; APL-GRACE_00051571; APL-GRACE_00052567; APL-GRACE_00052811; APL-GRACE_00099304; APL-GRACE_00099793; APL-GRACE_00148220.

Plaintiffs will supplement this response, as appropriate, in due course.

**INTERROGATORY NO. 17:**

State each act that You contend Apple took after the sale of Your iPhone 4 to You to effect a trespass.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiffs object to this Interrogatory to the extent it seeks information protected by attorney-client privilege, work product doctrine, or any other available legal privileges or protections. Plaintiffs object to this Interrogatory as premature, overly broad and burdensome insofar as it purports to obligate Plaintiffs to state "each act," particularly given that fact discovery is ongoing and Plaintiffs, *inter alia*, (i) are continuing to review and analyze the documents produced by Apple to date; (ii) are awaiting Apple's response to discovery requests served by Plaintiffs; (iii) are awaiting the production of additional documents, the production of which has been requested by Plaintiffs; (iv) have noticed and/or intend to notice the depositions of individuals involved with and/or familiar with the subject matter of this Interrogatory; and (v) may be seeking additional discovery, as necessary, relating to the subject matter of this Interrogatory.

Subject to and without waiver of the foregoing objections and responses, and reserving all rights to amend and/or supplement this response, Plaintiffs state that:

- The FaceTime Break was fully-anticipated by Apple long before its occurrence, yet Apple knowingly and intentionally elected not to prevent it. No later than February 2013, Apple began discussing the impending iPhone Device CA expiration, which would occur upon the pre-planned, pre-programmed date of April 16, 2014. On February 22, 2013,

1  Apple personnel, including Apple's PKI Services team, discussed the impending iPhone Device CA expiration during a meeting. That same day, Apple confirmed that it was actively working on ascertaining the full impact of the iPhone Device CA expiration.

- On April 16, 2013, Apple recognized that it was now less than one year away from the FaceTime Break, and further recognized that the iPhone Device CA certificate being checked not only at activation but also at run time meant that iPhone features that checked the certificate—of which FaceTime was one—would likely stop working upon expiration of the iPhone Device CA certificate. Also on April 16, 2013, Apple confirmed that it was actively analyzing issues related to the impending FaceTime Break. As Apple continued to analyze the issue in April and May 2013, it enhanced its understanding of the ramifications of the impending FaceTime Break. Among other things, Apple discussed preventing the FaceTime Break by renewing the iPhone Device CA certificate prior to its programmed, scheduled and anticipated April 16, 2014 expiration. Mr. Justin Wood, Engineer Manager on the FaceTime client team, summarized the impact of the impending FaceTime Break as early as May 24, 2013 in an email chain titled "Re: Expiring iPhone Device Sub-CA": "When validation fails, we expect FaceTime to fail…."

- Apple continued to analyze the anticipated FaceTime Break and its impact, and as of October 11, 2013, Apple's analysis of the iPhone Device CA certificate reaffirmed not only that the iPhone Device CA certificate would expire on April 16, 2014 as programmed, scheduled and expected by Apple, but also that features that checked the expiration of the iPhone Device CA certificate (as FaceTime was known to do) would cease to function when the appointed April 16, 2014 expiration date arrived. Apple's analysis further revealed that because the iPhone Device CA certificate was hard-coded onto the device in FaceTime, once Apple allowed the iPhone Device CA certificate to expire, new certificates could not be issued and FaceTime would cease to function on those devices.

- In mid-October 2013, Apple continued its analysis of the impending expiration of the iPhone Device CA, including during meetings convened on October 15, 2013 and October 18, 2013 to discuss that issue. Apple further confirmed during this period that the impending expiration of the iPhone Device CA would cause FaceTime to fail for all affected devices. Apple also identified and considered various options for avoiding and/or fixing the FaceTime Break, including (i) re-certification of the iPhone Device CA with a new expiration date, which would prevent the iPhone Device CA from expiring on April 16, 2014, thereby avoiding the FaceTime Break; (ii) a device-side fix whereby FaceTime would no longer check the iPhone Device CA; and (iii) issuance of a new device identity for iOS 6.x (as Apple had previously done in iOS 7). With respect to the device-side fix whereby FaceTime would no longer check the iPhone Device CA certificate expiration, Apple contemplated only offering the solution for iPod Touch 4th Generation devices, and therefore withholding the fix from, *inter alia*, iPhone 4 and 4S devices. Apple also discussed whether to extend to iOS 6 users a fix that Apple provided to iOS 7 users in response to the expiration of a certificate three years after activation of the user's device, the expiration of which would cause FaceTime to stop working absent implementation of certain available remedial measures. Apple determined that it would fix the three-year expiration issue in iOS 7, which would force iPhone 4 and 4S users using iOS 6 and earlier to migrate to iOS 7. Apple recognized and noted that users might be unhappy with the forced migration. Apple further recognized that even if it were to provide those users a fix for the three-year certificate expiration issue, absent a fix for the FaceTime Break, all those customers would fall victim to the FaceTime Break programmed, scheduled and anticipated by Apple to occur on April 16, 2014, and would be forced to migrate to iOS 7 in order to restore FaceTime on their device. As such, Apple determined that providing those users the contemplated solution to the three-year expiration issue was not recommended. In reaching that affirmative decision, Apple expressly recognized that its refusal to provide users on iOS 6 and earlier a fix would

-8-

leave them with "no recourse," and that they would all fall victim to the FaceTime Break on April 16, 2014, which would prevent FaceTime from working on their devices absent migration to iOS 7.

- During this period in October 2013, Apple worked to convene emergency meetings to discuss the impending FaceTime Break that would result from the expiration of the iPhone Device CA certificate on April 16, 2014 as programmed, scheduled and expected by Apple, and to address and consider the severe impact that the FaceTime Break would inflict on its victims. Although Apple had identified how to fix the FaceTime Break, it affirmatively decided to withhold any fix from iPhone 4 and iPhone 4S users on iOS 6 and earlier. Instead, Apple elected to provide the fix only to users who migrated to iOS 7, and to users with iOS 6 on the iPod Touch 4th Generation. Apple could have provided iPhone 4 and 4S users on iOS 6 the same fix provided to iPod Touch 4th Generation users on iOS 6, but affirmatively decided not to, meaning that the only way for iPhone 4 and 4S users with iOS 6 and earlier to restore FaceTime on their devices after the planned and anticipated FaceTime Break that Apple had programmed to occur on April 16, 2014 would be for those users to migrate to iOS 7. Apple's decision to affirmatively withhold from iPhone 4 and 4S users on iOS 6 and earlier a fix for the FaceTime Break was motivated in whole or in part by Apple's desire to reduce relay usage, as set forth in Plaintiffs' amended responses and objections to Defendant's Interrogatory No. 8. Plaintiffs expressly incorporate into their response to this Interrogatory the facts and documents set forth and/or referenced in Plaintiffs' response to Defendant's Interrogatory No. 8.

- Apple was careful in its discussions regarding its plans to migrate FaceTime away from relayed calls with the release of iOS 7. Indeed, as early as March 7, 2013, Apple instructed its personnel not to discuss over email the possibility of providing iOS 6 iPhone users with the ability to make direct peer-to-peer FaceTime calls. Further, Apple

included on its January 5, 2018 privilege log over two dozen documents specifically related to relay usage from the period of December 2012 to March 2013.

- In the days leading up to the preordained and highly-anticipated April 16, 2014 FaceTime Break, Apple personnel expressed concern about the gravity of the impending FaceTime Break. On April 2, 2014, Jacques Vidrine sent an email stating "let me just voice my concern here. Maybe someone can talk me off the ledge by convincing me this is not as big a deal as I think." Nevertheless, Apple once again affirmatively decided, consistent with its previous affirmative decisions regarding the impending FaceTime Break, (i) to withhold from iPhone 4 and 4S users on iOS 6 and earlier any fix for the FaceTime Break, and (ii) not to take any action to prevent the FaceTime Break from occurring.

- On April 16, 2014—the day preordained by Apple on which FaceTime was scheduled and expected to break—Apple employees awaited the FaceTime Break to strike millions of Apple's customers, exchanging emails containing messages such as, "Well, today's the day!"

- On April 16, 2014, beginning at 22:54:45 2014 GMT, as programmed, scheduled and expected by Apple, the iPhone Device CA certificate expired, breaking FaceTime for all iPhone 4 and 4S users on iOS 6 and earlier.

- As Apple expressly recognized on the April 16, 2014 day of the FaceTime Break, as a result of the FaceTime Break, "all users with [iOS] 6.0 and older c[ould]n't make FaceTime [calls] any longer," which left them, as Apple admitted, "basically screwed[.]"

- Handwritten notes of Apple employee Dallas De Atley dated April 17, 2014 reflect Apple's view that when the "iPhone Device CA expired, hilarity ensue[d]." Similarly, the day of the FaceTime Break, Apple internally circulated the following cartoon in connection with the FaceTime Break:

-10-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES



- As Apple expressly recognized on April 17, 2014, there was excellent Apple executive visibility into the FaceTime Break and its aftermath, including from Apple executives Craig Federighi, Eddy Cue and Greg Joswiak.

- Rather than extending a fix to the victims of the FaceTime Break, Apple once again affirmatively decided to withhold any such fix. Nor did Apple extend to the victims of the FaceTime Break any other remedial and/or compensatory offering. Instead, Apple—including Apple executives Craig Federighi, Eddy Cue and Greg Joswiak—focused their efforts on discussing how to evade the potential public backlash against Apple resulting from the FaceTime Break, ultimately deciding that Apple should falsely blame the FaceTime Break on a "bug."

- Months after the FaceTime Break, Apple admitted that it had intentionally and affirmatively broken FaceTime. On June 18, 2014, Patrick Gates sent an email to various Apple personnel stating "I understand we did something in April around iOS 6 to reduce relay utilization," and asking for "details" regarding what Apple "did…in April around iOS 6 to reduce relay utilization." Apple engineer Gokul Thirumalai reminded Gates that "We broke all iOS6, and the only way to get FaceTime working again is to upgrade to iOS7."

In addition to the specific facts set forth above, Plaintiffs also direct Defendant to the facts, already known to Apple, that are reflected and/or referenced within documents produced

-11-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES

1  by Apple in this litigation, including the following: APL-GRACE_00000988, APL-
2  GRACE_00000994; APL-GRACE_00000995; APL-GRACE_00002942; APL-
3  GRACE_00003930; APL-GRACE_00003872; APL-GRACE_00005777; APL-
4  GRACE_00005793; APL-GRACE_00005801; APL-GRACE_00005807; APL-
5  GRACE_00008298; APL-GRACE_00008039; APL-GRACE_00008999; APL-
6  GRACE_00010314; APL-GRACE_00012731; APL-GRACE_00013050; APL-
7  GRACE_00013052; APL-GRACE_00013938; APL-GRACE_00013995; APL-
8  GRACE_00014721; APL-GRACE_00017420; APL-GRACE_00022187; APL-
9  GRACE_00025224; APL-GRACE_00025227; APL-GRACE_00034276; APL-
10 GRACE_00035672; APL-GRACE_00035674; APL-GRACE_00044231; APL-
11 GRACE_00044254; APL-GRACE_00049097; APL-GRACE_00052572; APL-
12 GRACE_00054991; APL-GRACE_00056772; APL-GRACE_00056875; APL-
13 GRACE_00056973; APL-GRACE_00099488, APL-GRACE_00099494; APL-
14 GRACE_00099495; APL-GRACE_00148842; APL-GRACE_00164166.
15     Plaintiffs will supplement this response, as appropriate, in due course.
16 **INTERROGATORY NO. 18:**
17     State how much of Your iPhone 4's purchase price You contend is attributable to the
18 phone offering a functional FaceTime feature.
19 **RESPONSE TO INTERROGATORY NO. 18:**
20     Plaintiffs object to this Interrogatory to the extent it seeks information protected by
21 attorney-client privilege, work product doctrine, or any other available legal privileges or
22 protections. Plaintiffs object to the phrase "attributable to the phone offering a functional
23 FaceTime feature" on the ground that it is vague and ambiguous. Plaintiffs object to this
24 Interrogatory as premature given that fact discovery is ongoing and Plaintiffs, *inter alia*, (i) are
25 continuing to review and analyze the documents produced by Apple to date; (ii) are awaiting
26 Apple's response to discovery requests served by Plaintiffs; (iii) are awaiting the production of
27 additional documents, the production of which has been requested by Plaintiffs; (iv) have
28

-12-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES

| | |
|---|---|
| DATED:  September 5, 2018 | STEYER LOWENTHAL BOODROOKAS ALVAREZ & SMITH LLP |
| | By: /s/ Jill M. Manning |
| | Jill M. Manning |

Allan Steyer (State Bar No. 100318)
Jill M. Manning (State Bar No. 178849)
D. Scott Macrae (State Bar No. 104663)
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (State Bar No. 96241)
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
bsimon@pswlaw.com
dwarshaw@pswlaw.com
asimon@pswlaw.com

FRIEDMAN OSTER & TEJTEL PLLC
David F.E. Tejtel (*admitted pro hac vice*)
240 East 79th Street, Suite A
New York, NY 10075
Telephone: (646) 661-5881
dtejtel@fotpllc.com

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*admitted pro hac vice*)
Jason D. Cassady (*admitted pro hac vice*)
John Austin Curry (*admitted pro hac vice*)
2101 Cedar Springs Road, Suite 1000
Dallas, TX 75201
Telephone: (214) 888-4848
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com

*Attorneys for Plaintiffs
Christina Grace and Ken Potter*

-14-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES

## VERIFICATION OF INTERROGATORY ANSWERS

I, Christina Grace, believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.  I verify under penalty of perjury that the foregoing is true and correct.  Executed on this _____ date of September, 2018, in Dillon Beach, California.

_____
Christina Grace

-15-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES

## VERIFICATION OF INTERROGATORY ANSWERS

I, Ken Potter, believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief. I verify under penalty of perjury that the foregoing is true and correct. Executed on this _____ date of September, 2018, in San Diego, California.

_____
Ken Potter

-16-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2018, I served foregoing PLAINTIFFS' OBECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES on Apple's counsel by email as set forth below:

R. Alexander Pilmer
Tanya L. Greene
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile (213) 680-8500
Email: alexander.pilmer@kirkland.com
tanya.greene@kirkland.com

Joseph A. Loy
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4980
Facsimile: (212) 446-6460
joseph.loy@kirkland.com

Joshua H. Lerner
Sonal N. Mehta
Eugene Novikov
Stephen Elkind
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300
jlerner@durietangri.com
smehta@durietangri.com
enovikov@durietangri.com
selkind@durietangri.com

                                        */s/ Suneel Jain*
                                           Suneel Jain

-17-
PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIFTH SET OF INTERROGATORIES