Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

--o0o--

CHRISTINA GRACE AND KEN POTTER,
Individually and on Behalf of All     Case No.
Others Similarly Situated,
                                         5:17-cv-00551-LHK-NC
           Plaintiffs,
vs.

APPLE, INC.

           Defendant.
_____/


HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF

DALLAS BLAKE DE ATLEY

WEDNESDAY, APRIL 18, 2018


Reported by:  LUCY CARRILLO-GRUBBS, CSR #6766
               RPR-RMR-CRR-RPR-CCRR


CERTIFIED TRANSCRIPT

Page 210

```
 1        ATTORNEY PILMER:  Objection.
 2        THE WITNESS:  -- if I traveled back in time?  I
 3   don't understand your question.  Would you mind
 4   repeating it?
 5        ATTORNEY CURRY:  Okay.
 6        Q.  Did you at some point actually issue a new
 7   iPhone device CA with a new expiration date?
 8        A.  Excuse me.  In the -- I believe it was in
 9   October of 2013, after we discovered that the
10   expiration of the device certificate was leading to
11   FaceTime calls and as part of that investigation we
12   understood how the expiration of the iPhone device
13   CA was going to affect its clients, we did reissue
14   the CA.
15        Q.  How long did that take?
16        A.  To reissue the certificate?
17        Q.  Yes, sir.
18        A.  The actual act of reissuing it?
19        Q.  Yes, sir.
20        A.  I would include within that the
21   investigation work to understand its impact and the
22   work to go do that, I think that was on the order
23   of weeks.
24        Q.  Okay.
25            Not including all the work to -- leading
```

hglitigation.com 

GRACE: DALLAS BLAKE DE ATLEY - HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY

Page 211

1  up to it, how long did it take to actually issue a
2  new iPhone device CA with a new expiration date?
3       ATTORNEY PILMER:  Object to the form.
4       THE WITNESS:  If I remember correctly, that
5  work was done -- once we understood exactly what we
6  needed to do, that work was done in one business
7  day to reissue the new iPhone device CA.
8       BY ATTORNEY CURRY:
9       Q.  Is that iPhone device CA still being used
10 to issue device certificates today?
11      ATTORNEY PILMER:  Objection, beyond the scope.
12      THE WITNESS:  I believe it is.
13      BY ATTORNEY CURRY:
14      Q.  And do you know when iOS 6.1.3 was
15 released?
16      ATTORNEY PILMER:  Objection, beyond the scope.
17      THE WITNESS:  I do not remember specifically.
18 I would have to go back and check.
19      BY ATTORNEY CURRY:
20      Q.  If you had known about the device
21 certificate issue before iOS 6.1.3 was released,
22 you could have issued a new iPhone -- Apple iPhone
23 device CA in one business day and started issuing
24 certificates based on that, correct?
25      ATTORNEY PILMER:  Object to the form, beyond

hglitigation.com 

1    ATTORNEY CURRY:  We'll leave the 30(b)(6) open
2    for the scope of the topics that the witness was
3    unable to testify to and unprepared to testify to.
4    But sitting here, with the witness prepared as he
5    is, we have no further questions.
6        ATTORNEY PILMER:  We're going to take a quick
7    break before we conclude.
8        ATTORNEY CURRY:  Okay.
9        VIDEOTAPE OPERATOR:  The time is 4:01 p.m., we
10   are off the record.
11       (Recess taken.)
12       VIDEOTAPE OPERATOR:  The time is 4:04 p.m., we
13   are on the record.
14                         -o-
15                      EXAMINATION
16   BY ATTORNEY PILMER:
17       Q.  So, Mr. De Atley, in answering questions
18   from plaintiffs' counsel earlier, you mentioned a
19   conversation that you had with Kurt Knight in
20   preparation for your deposition, correct?
21       A.  Yes.
22       Q.  And can -- do you recall that the topic of
23   that conversation was about executives who may have
24   had some visibility into the -- to the certificate
25   expiration issue?

Page 231

```
 1      A.  Yes.
 2      Q.  Can you tell us, please, who those
 3  executives were and what you understand that to
 4  mean?
 5      A.  In the context of our conversation with
 6  Kurt, he was referring to a conversation that
 7  Patrick Gates had with Craig Federighi, Eddy Cue
 8  and Greg Joswiak.
 9      Q.  And are those three gentlemen the
10  executives that you understood that e-mail to be
11  referring to?
12      A.  Based on my conversation with Kurt, yes.
13      ATTORNEY PILMER:  Okay, I have no further
14  questions.
15                      -o-
16                   EXAMINATION
17      BY ATTORNEY CURRY:
18      Q.  Did Mr. Knight tell you what was discussed
19  between Patrick Gates and Craig Federighi, Eddy Cue
20  and Joswiak?
21      A.  No, I don't believe he did.
22      Q.  Did you ask him?
23      A.  I don't recall asking him, no.
24      ATTORNEY CURRY:  Okay.  Subject to my other
25  comments about leaving the deposition open, I have
```



```
 1                    REPORTER'S CERTIFICATE
 2      I certify that the foregoing proceedings in the
 3   within-entitled cause were reported at the time and
 4   place therein named; that said proceedings were
 5   reported by me, a duly Certified Shorthand Reporter
 6   of the State of California, and were thereafter
 7   transcribed into typewriting
 8            I further certify that I am not of counsel
 9   or attorney for either or any of the parties to
10   said cause of action, nor in any way interested in
11   the outcome of the cause named in said cause of
12   action.
13      IN WITNESS WHEREOF, I have hereunto set my hand
14   this 23rd day of April, 2018.
15      Witness did not request to read and sign.
16
17
18            [signature: Lucy Carrillo-Grubbs]
19        _____
          LUCY CARRILLO-GRUBBS, CRP, CSR
20        Certified Shorthand Reporter
          Certificate No. 6766
21        Dallas: 69
22
23
24
25
```

**233**