No. 18-_____

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

CHRISTINA GRACE and KEN POTTER,
Individually and on Behalf of All Others Similarly Situated
*Plaintiffs/Petitioners*,

vs.

APPLE, INC.
*Defendant/Respondent.*

On Petition for Permission to Appeal from an Order
of the United States District Court for the Northern District of California
The Honorable Judge Lucy H. Koh, presiding
Case No. 5:17-cv-00551-LHK

## PLAINTIFFS-PETITIONERS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL DENIAL OF NATIONWIDE CLASS CERTIFICATION

ALLAN STEYER
JILL M. MANNING
D. SCOTT MACRAE
STEYER LOWENTHAL
BOODROOKAS ALVAREZ &
SMITH LLP
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234

BRUCE L. SIMON
DANIEL L. WARSHAW
ALEXANDER L. SIMON
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

*Counsel for Plaintiffs-Petitioners*
*(Additional Counsel Listed on Inside Cover)*

DAVID F.E. TEJTEL
FRIEDMAN OSTER & TEJTEL
PLLC
240 East 79th Street, Suite A
New York, NY 10075
Telephone: (646) 661-5881

BRADLEY W. CALDWELL
JASON D. CASSADY
JOHN AUSTIN CURRY
CALDWELL CASSADY & CURRY
2101 Cedar Springs Road, Suite 1000
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

*Additional Counsel for Plaintiffs-Petitioners*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioners, Christina Grace and Ken Potter, are not a "corporate party," do not issue stock, and are not controlled by any publicly held corporation.

Dated: November 5, 2018  Respectfully Submitted,

        STEYER LOWENTHAL BOODROOKAS
        ALVAREZ & SMITH LLP

      By: */s/ Jill M. Manning*

        Jill M. Manning (178849)
        One California Street, Suite 300
        San Francisco, CA 94111
        Telephone: (415) 421-3400
        Facsimile: (415) 421-2234
        jmanning@steyerlaw.com

# **TABLE OF CONTENTS**

**Page**

I.      QUESTIONS PRESENTED ........................................................................ 1

II.     INTRODUCTION ..................................................................................... 2

III.    STANDARD OF REVIEW ........................................................................ 5

IV.     PROCEDURAL HISTORY ....................................................................... 6

V.      STATEMENT OF FACTS ......................................................................... 6

VI.     DISCUSSION ........................................................................................... 9

        A.    This Petition is Timely ................................................................. 9

        B.    The District Court Abused its Discretion by Denying
              Certification of a Nationwide Class ............................................... 9

              1.   California Law Applies Nationwide to All Claims Under
                   the Parties' Choice-of-Law Agreement ............................. 9

                   a.   The Proposed Nationwide Class Falls Under the Scope
                        of the Choice-of-Law Provision ................................ 10

                   b.   The Parties' Choice-of-Law Agreement is Enforceable ........... 11

              2.   The District Court Erroneously Applied the Governmental
                   Interest Test ..................................................................... 13

                   a.   The District Court Erred in its "Place of the Wrong"
                        Analysis ................................................................ 15

                   b.   The District Court Erred in Failing to Balance Relative
                        Impairment .............................................................. 18

              3.   There are No "Material" Conflicts Among States' Trespass
                   to Chattels Laws that Would Affect the Outcome of This Case ........... 20

i

VII.   RELIEF SOUGHT.......................................................................................... 24

VIII.  CONCLUSION.............................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                   **Page**

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ... 5

*Clothesrigger, Inc. v. GTE Co.*,
191 Cal. App. 3d 605 (1987) ... 17, 19

*Hurtado v. Superior Court*,
P.2d 666 (Cal. 1974) ... 19

*In re Apple Inc. Device Performance Litig.*,
No. 18-MD-02827-EJD, 2018 WL 4772311 (N.D. Cal Oct. 1, 2018) ... 11

*In re Complaint of Bankers Trust Co.*,
752 F.2d 874 (3d Cir. 1984) ... 20

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ... 23

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ... 23

*Lambert v. Nutraceutical Corp.*,
870 F.3d 1170 (9th Cir. 2017) ... 9

*Lozano v. AT & T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) ... 23

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ... 4, 13, 14, 15, 16, 20, 19, 22

*McCann v. Foster Wheeler LLC*,
225 P.3d 516 (2010) ... 13, 14, 16, 18

*Microsoft Corp. v. Baker*,
137 S. Ct. 1702 (2017) ... 5

*Nedlloyd Lines B.V. v. Superior Court,*
    834 P.2d 1148 (1992) ................................................................. 9, 10, 11, 12

*Netscape Commc'ns Corp. v. St. Paul Mercury Ins. Co.,*
    No. C 06-00198 JW, 2010 WL 11519412 (N.D. Cal. July 16, 2010) ........ 22

*Offshore Rental Co., Inc. v. Continental Oil Co.,*
    22 Cal. 3d 157 (1978) ................................................................. 18

*Pecover v. Electronic Arts Inc.,*
    2010 WL 8742757, at *20 (N.D. Cal. Dec. 21, 2010) ............................. 19

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ................................................................. 14

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,*
    946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497
    (9th Cir. 2015) ................................................................. 22

*Pokorny v. Quixtar, Inc.,*
    601 F.3d 987 (9th Cir. 2010) ....................................................... 20

*Quintana v. Harris,*
    663 F.2d 78 (10th Cir. 1981) ....................................................... 23

*Rutledge v. Hewlett-Packard Co.,*
    238 Cal. App. 4th 1164 (2015) ..................................................... 16

*Sack v. Low,*
    478 F.2d 360 (2d Cir. 1973) ........................................................ 16

*Samuel v. University of Pittsburgh,*
    538 F.2d 991 (3d Cir. 1976) ......................................................... 24

*Soc. Servs. Union, Local 535, Serv. Employees Int'l Union, AFL-CIO v.*
    *Santa Clara Cty.*, 609 F.2d 944 (9th Cir. 1979) ......................... 22

*True Health Chiropractic, Inc. v. McKesson Corp.,*
    896 F.3d 923 (9th Cir. 2018) ....................................................... 23

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &*
    *Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802, 808 (9th Cir. 2010) ............................................................ 21

*Veridian Credit Union v. Eddie Bauer, LLC,*
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) .................................................. 17

*Wash. Mut. Bank, FA v. Superior Court*,
    15 P.3d 1071 (Cal. 2001) ........................................................ 10, 13, 19, 20

*Wershba v. Apple Computer, Inc.*,
    91 Cal.App.4th 230 (2001) ................................................................. 17, 19

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure

    23(a) ........................................................................................................... 3

    23(b)(2) ...................................................................................................... 3

    23(b)(3) .................................................................................................... 24

    23(f) ............................................................................................... 2, 5, 9, 24

## OTHER AUTHORITIES

Restatement (First) of Conflict of Laws
    § 377 (1934).............................................................................................. 16

Restatement (Second) of Conflict of Laws
    § 187 (1971)...................................................................................... 9, 12, 13

# I.     QUESTIONS PRESENTED

1. Was it manifest error for the court below (the "District Court") to disregard Plaintiffs' argument that Apple's standard iOS "Terms of Service" Agreement mandates that this dispute "be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles"?

2. Was it manifest error for the District Court to incorrectly conduct the choice-of-law analysis and fail to apply California law nationwide?

3. Was it manifest error for the District Court to conclude that a "material" conflict existed among the nationwide trespass to chattels laws?

Christina Grace and Ken Potter ("Plaintiffs") respectfully submit this petition (the "Petition") requesting permission under Federal Rule of Civil Procedure 23(f) to appeal the District Court's September 18, 2018 order granting in part and denying in part their motion for class certification (the "Order").

## II.   INTRODUCTION

This case arises from Apple's wrongful conduct in intentionally and surreptitiously "breaking" the popular FaceTime feature for millions of its customers on April 16, 2014 (the "FaceTime Break" or the "Break").  As Apple engineers admitted in contemporaneous emails, Apple "broke" FaceTime by selectively exploiting a routine digital certificate expiration, something that Apple's engineers called their "time bomb."  The FaceTime Break was the culmination of Apple's longstanding clandestine plan to reduce "as much as possible" its mounting relay usage costs by "forc[ing] folks with older devices to update to iOS7."  Thus, on the appointed day, Apple "broke" FaceTime for Plaintiffs and millions of other iPhone 4 and 4S device owners throughout the United States, rendering them, as one Apple engineer concisely summarized the day of the FaceTime Break, "basically screwed."[1]

---

[1] Specifically, the victims faced a Hobson's choice: (i) permanently lose FaceTime on their devices; (ii) download iOS 7 software that Apple knew would significantly and irreversibly impair the functionality of their devices; or (iii) purchase a new Apple device that would restore their ability to use FaceTime.

It is undisputed that Apple broke FaceTime for every iPhone 4 and 4S user nationwide that was running a pre-iOS 7 version on April 16, 2014.  Accordingly, Plaintiffs sought certification of a nationwide class applying California law.  The District Court found that Plaintiffs met each requirement of Federal Ruleof Civil Procedure 23(a) and 23(b)(2), and certified a California-only class.  In denying nationwide certification, the District Court abused its discretion in three respects, each providing an independent basis for reversal.

*First*, the District Court failed to address Plaintiffs' argument that Apple's standard iOS "Terms of Service" Agreements (the "iOS Agreements")—upon which Apple relies in defending this action—include a California choice-of-law provision mandating that the agreements "be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles."  California law is clear that this provision is enforceable and that Apple intended for California law to govern customer disputes, such as this one, "relating to" the iOS software.

*Second*, separate and apart from the California choice-of-law provision in the iOS Agreements, applying California law to the claims of non-California residents in this action is neither arbitrary nor unfair.  California law applies nationwide based on the governmental interest test, as California is the place of the wrong and California's interests will be more impaired than those of other states if

its law is not applied.  Indeed, Apple is a California corporation headquartered in

Cupertino, California, and the undisputed evidence demonstrates that every Apple

employee involved in the conduct underlying the FaceTime Break engaged in that

conduct in California.

*Third*, the District Court misapplied this Court's analysis in *Mazza v.*

*American Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012).   The District Court

incorrectly relied on *Mazza* in applying the "place of the wrong" analysis to the

claims in this case and, in doing so, incorrectly concluded that Apple's wrongful

conduct occurred where class members happened to be physically located when

FaceTime stopped working, such that foreign states have a greater interest in

applying their laws than California.  Moreover, finding one "material" conflict in

trespass to chattels common law among the 50 states (*i.e.*, whereas forty-seven

states require actual harm for a trespass to chattels claim, three states require

merely nominal damages), the District Court incorrectly concluded that California

law could not be applied nationwide.  However, Plaintiffs submitted evidence and

an econometric damages model (accepted by the District Court) demonstrating that

Apple's misconduct caused uniform, actual harm nationwide by devaluing *all*

affected devices in every state.  Thus, there is no conflict between the states—

much less a material conflict—because every device suffered diminution in value

(and therefore actual harm) as a result of Apple's conduct and because every owner

will recover more than nominal damages. Even if the conflict identified by the District Court is deemed "material," however, it does not rebut nationwide certification because it is sufficiently manageable as to not defeat predominance.

Allowing this appeal is the only equitable result. Absent certification of a nationwide class, plaintiffs from states other than California would be required to file additional cases in the other 49 states to seek a remedy for the identical misconduct and harm challenged in this action. This inefficiency and risk of inconsistent rulings is precisely what the class action procedures were designed to prevent. Apple should be held accountable for California-based misconduct that uniformly harmed its customers nationwide.

## III.   STANDARD OF REVIEW

This Court "wields 'unfettered' discretion" under Rule 23(f) to grant review of a class certification order "on the basis of *any* consideration." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709-10 (2017) (emphasis in original). "Review of class certification decisions will be most appropriate when" the decision (i) "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review" or (ii) is "manifestly erroneous." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Both factors are present here.

## IV.   PROCEDURAL HISTORY

Plaintiff Grace initiated this Action on February 2, 2017 (ECF 1), and filed the First Amended Complaint adding Plaintiff Potter on April 5, 2017 (ECF 36). On September 18, 2018, the District Court issued the Order certifying a class consisting of "All owners of non-jailbroken Apple iPhone 4 or Apple iPhone 4S devices in California who on April 16, 2014, had iOS 6 or earlier operating systems on their iPhone 4 or iPhone 4S devices." ECF 269.  Plaintiffs filed a motion for reconsideration on October 2, 2018 (ECF 276), which the District Court denied on October 22, 2018.  ECF 287.

## V.   STATEMENT OF FACTS[2]

Released in 2010 in conjunction with the iPhone 4, FaceTime allows its users to engage in real-time audio/video calls.  Apple marketed the iPhone 4 by heavily touting FaceTime, heralding the device as "the new iPhone 4 featuring FaceTime."  FaceTime quickly became immensely popular, with Apple CEO Tim Cook reporting at a 2013 stockholders' meeting that 15 to 20 million FaceTime calls were made daily.  ECF 174, 12.

Apple initially connected FaceTime calls in one of two ways: (i) the peer-to-peer ("P2P") method, where a direct connection is formed between the caller and

---

[2] Unless otherwise indicated, all facts are taken from the Order.

the callee; and (ii) the "relay method," where the caller and callee connect to a server that relays the data on behalf of the devices. While P2P FaceTime calls were free to Apple, FaceTime calls connected through the "relay method" used servers owned by Akamai Technologies, Inc. ("Akamai") at Apple's expense.

For most of 2012, roughly 90-95% of FaceTime calls were connected through the "free" P2P method. On November 7, 2012, however, a jury found that Apple's use of the P2P method willfully infringed on patents owned by VirnetX, making Apple liable to pay an ongoing and substantial royalty for use of VirnetX's patents. To avoid this future liability, Apple shifted 100% of FaceTime calls to the non-infringing relay method, dramatically increasing Apple's relay usage and, in turn, Apple's payments to Akamai.

Apple immediately began searching for ways to reduce its relay usage and associated cost. One strategy involved modifying the next generation of iOS—iOS 7. But whereas iOS 7 presented a solution for Apple's relay usage issues, it significantly impaired the performance and functionality of iPhone 4 and 4S devices. Thus, numerous iPhone 4 and 4S owners resisted migrating to iOS 7, and Apple's relay usage and resulting payments to Akamai remained high. To force customers to "upgrade," Apple broke FaceTime by exploiting a digital certificate.

The iPhone Device Sub-CA (the "Certificate") was a digital certificate necessary for the operability of FaceTime and certain other iOS features. ECF 174

at 15.  In 2007, an Apple engineer accelerated the expiration date of the Certificate from October 2021 to April 16, 2014, and specifically contemplated renewal of the Certificate before expiration.  *Id*.  By early 2013, Apple's routine monitoring of upcoming certificate expirations revealed that the Certificate would expire on April 16, 2014, and would cause FaceTime to break if Apple contravened its "standard practice" of addressing certificate expirations to avoid any service outages.  *Id*. Disregarding several available fixes, Apple decided to fix FaceTime only for users who migrated to iOS 7 and for iOS 6 users on certain devices, and to withhold that same fix for Class members (*i.e.*, iPhone 4 and 4S devices on iOS 6 or earlier) in order to "force" them to migrate to iOS 7.  *Id*. at 16.

As Apple had engineered to occur, "[t]he certificate expirations started at: Apr 16 22:54:45 2014 GMT, impacting users that ha[d]n't upgraded" to iOS 7.  *Id*. at 17.  Thereafter, "all users with [iOS] 6.0 and older c[ould]n't make FaceTime any longer," such that, as one Apple employee succinctly stated mere hours after the FaceTime Break, tens of millions of Apple customers nationwide were "basically screwed . . . and they represented ~30% of our relay traffic."  *Id*.

An internal Apple email exchange from two months after the FaceTime Break confirms that Apple intentionally engineered the FaceTime Break, and that Apple did so to reduce relay usage.  Apple Engineering Manager Patrick Gates sent an email stating, "I understand we did something in April around iOS 6 to

reduce relay utilization.  Does this ring a bell for any of you?  Got details?"  ECF 174-69.  In response, one Apple engineer candidly admitted:  "iOS6 was the biggest user of relay bandwidth.  iOS7 uses a lot less.  We broke all iOS6, and the only way to get FaceTime working again is to upgrade to iOS7."  *Id.*

## VI.   DISCUSSION

### A. This Petition is Timely

Rule 23(f)'s fourteen-day deadline is not jurisdictional, and is equitably tolled by the filing of a motion for reconsideration.  *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1174 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 2675 (2018).  Plaintiffs timely filed a Motion for Reconsideration on October 2, 2018 (ECF 276), fourteen days after entry of the Order.  The District Court denied Plaintiffs' Motion for Reconsideration on October 22, 2018.  ECF 287.  This Petition's filing within fourteen days of the District Court's order denying reconsideration makes it timely.

### B. The District Court Abused its Discretion by Denying Certification of a Nationwide Class

#### 1.  California Law Applies Nationwide to All Claims Under the Parties' Choice-of-Law Agreement

When determining whether to enforce a choice-of-law provision in a contract, California follows Section 187 of the Restatement (Second) of Conflict of Laws (1971) ("§ 187"), which "reflect[s] a strong policy favoring enforcement of such provisions."  *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151

(Cal. 1992).  Under this test, a court should "first examine whether the advocate of the [choice-of-law] clause has met its burden of establishing that the various claims of putative class members fall within its scope," and second, whether the provision is enforceable.  *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1078 (Cal. 2001).

The District Court erred by failing to address the California choice-of-law provision in Apple's iOS Agreements, which provides:  "This License will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles."  ECF 40-1, Section 12; ECF 40-2, Section 12.  This provision mandates the application of California law nationwide.

### a.  The Proposed Nationwide Class Falls Under the Scope of the Choice-of-Law Provision

A proponent of a choice-of-law provision must show that the provision applies to the claims and that the claims arise from or relate to the agreement. *Wash. Mut.*, 15 P.3d at 1078.  The California Supreme Court construed the phrase "governed by" broadly to "encompass[] all causes of action arising from or related to that agreement, regardless of how they are characterized."  *Nedlloyd*, 834 P.2d at 1154-55.  The same analysis also applies "in the context of consumer adhesions contracts" like the iOS Agreements.  *Wash. Mut.*, 15 P.3d at 1079.

The iOS Agreements use the same "governed by" language that broadly encompasses "all causes of action arising from or related to that agreement,

regardless of how they are characterized." *Nedlloyd*, 834 P.2d at 1154-1155.

Plaintiffs' claims plainly "relate[]" to the iOS Agreements, which not only directly

address the FaceTime feature itself, but also establish the fundamental relationship

between Apple and all iPhone users with respect to Apple's iOS software, which

formed the basis for Apple's implementation of the FaceTime Break through

which Apple self-admittedly "broke all iOS 6" in order to "force folks with older

devices to update to iOS7." *See* ECF 174-41.  Apple cannot legitimately dispute

this, as Apple itself sought judicial notice of the iOS Agreements and represented

they were "integral to the claims alleged."  ECF 39, 2.

Indeed, just weeks ago in *In re Apple Inc. Device Performance Litigation*,

No. 18-MD-02827-EJD, 2018 WL 4772311 (N.D. Cal. Oct. 1, 2018), the court

held that Apple's more recent iOS software license agreement, which included the

exact same choice-of-law language as the iOS Agreements, governed very similar

conduct by Apple.  The plaintiffs brought a trespass to chattels claim challenging

Apple's issuance of allegedly damaging iOS updates.  *Id.* at \*6.  The court found

the agreement both applicable and enforceable.  *Id.*

### b.  The Parties' Choice-of-Law Agreement Is Enforceable

Under California law, courts will enforce an applicable choice-of-law

provision "unless either (a) the chosen state has no substantial relationships to the

parties or the transaction and there is no reasonable basis for the parties' choice, or

(b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Nedlloyd*, 834 P.2d at 1151; *see also* § 187.

Here, the choice-of-law provision in the iOS Agreements is clearly enforceable. *First*, there is a substantial relationship to California because (i) Apple is a California corporation headquartered in Cupertino (ECF 66, ¶ 29); and (ii) all of the conduct underlying Plaintiffs' allegations occurred in California. ECF 269, 32 ("Apple does not dispute that Plaintiffs have sufficiently alleged that California has a constitutionally sufficient aggregation of contacts to the claims of each putative class member in this case").

*Second*, California has the greatest interest in applying its law to regulate this California-based misconduct involving one of California's largest companies. That alone is determinative, and the Court need not consider whether California law is contrary to a fundamental policy of any other state. *Nedlloyd*, 834 P.2d at 1151.

*Third*, applying California law would not offend other states' fundamental policies. Any conceivable material differences among states' laws—and there are none with regard to trespass to chattels (*see infra* Section B.3)—are neither "fundamental" nor a core part of any other state's fundamental policy. Indeed, the more significant the contacts with the applicable law's state (here, California), the

12

harder it is to demonstrate that the choice of law contravenes a fundamental policy of another state. § 187 cmt. g. Apple's ties to California are legion, and because trespass to chattels laws among states are substantially identical as they apply to the facts of this case, it is simply not conceivable that nationwide application of California law here would contravene the public policy of any other state.

Thus, the District Court erred in failing to engage in this analysis and failing to enforce the parties' selection of California law in the iOS Agreements.

## 2. The District Court Erroneously Applied the Governmental Interest Test

Even if there was no enforceable choice-of-law agreement between the parties, California law would apply based on application of the governmental interest test. The plaintiff bears the burden to demonstrate that application of California law comports with due process. *Mazza*, 666 F.3d at 589. Then "the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Id.* at 590 (quoting *Wash. Mut. Bank*, 15 P.3d at 1081). California law applies "so long as the interests of other states are not found to outweigh California's interest in having its law appl[y]." *Wash. Mut. Bank*, 15 P.3d at 1082.

California courts employ "a three-step governmental interest test." *Mazza*, 666 F.3d at 590 (citing *McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010)). *First*, the court asks whether the respective states' laws are different "with

regard to the particular issue in question." *McCann*, 225 P.3d at 527.  *Second*, if

the laws are materially different, the court asks "whether a true conflict exists,"

which requires examination of "each jurisdiction's interest in the application of its

own law under the circumstances of the particular case." *Id.  Third*, if a true

conflict exists, the court determines which state's interest would be more impaired

if its law were not applied. *Id.*

The District Court erred in finding a conflict because no material differences

exist between California's trespass to chattels law and the trespass to chattels laws

of other states.[3]  *See infra* Section B.3 (showing lack of material differences); *see

also Mazza*, 666 F.3d at 590 ("A problem only arises if differences in state law are

material, that is, if they make a difference in this litigation.").  Thus, the inquiry

should have ended at the first step of the governmental interest analysis for

Plaintiffs' trespass to chattels claims.

But regardless of whether there are material differences among states'

trespass to chattels laws (there are not), the District Court's determination that

California law should not apply to all claims nationwide was still error.  The third

prong of the governmental interest test requires application of California law

_____

[3] The District Court correctly concluded that California law may constitutionally be applied nationwide because Apple's principal place of business is in California, Apple's actions causing the FaceTime Break were in California, and Apple waived any argument to the contrary.  ECF 269, 32; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

Case 5:17-cv-00551-LHK   Document 290-1   Filed 11/06/18   Page 23 of 36

because (i) California is the place of the wrong and (ii) California's interests will be more impaired than those of other states if its law is not applied.

### a. The District Court Erred in its "Place of the Wrong" Analysis

The District Court erroneously applied the "place of the wrong" analysis, which led it to conclude incorrectly that "the place of the wrong here is where class members were exposed to the FaceTime Break." ECF 269, 41. The District Court's conclusion cannot be reconciled with California's choice-of-law principles and long-standing California precedent.

The District Court relied on *Mazza* to conclude that "a claim accrues where the harm is felt rather than where it originated," and to find that "the last event necessary to make Apple liable was the loss of FaceTime access on class members' iPhones, and that event took place wherever a given class member was on April 6, 2014." ECF 269, 40-41. However, *Mazza* is factually distinguishable because it is a false advertising case. In *Mazza*, this Court concluded that the last event necessary to make the defendant liable was the "communication of the advertisements to the claimants ***and their reliance thereon in purchasing vehicles***." *Mazza*, 666 F.3d at 594 (emphasis added). Accordingly, the ***conduct*** occurred in the class members' home states because that is where they were deceived, and where they completed the transactions at issue. *See id.* Courts in other jurisdictions routinely reach the same conclusion because "a cause of action

15

for fraud does not arise until loss is suffered," which means "the cause of action accrues *where* the loss is suffered." *Sack v. Low*, 478 F.2d 360, 366 (2d Cir. 1973); *see also* Restatement (First) of Conflict of Laws § 377 n.4 (1934) ("When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made.").

Unlike *Mazza*, Plaintiffs' claims in this case are not based on fraud, but rather intentional misconduct—all of which undisputedly occurred in California— through which Apple broke FaceTime for millions of its customers nationwide. *See McCann*, 225 P.3d at 527-32 (finding the "place of the wrong" for purposes of a governmental interest analysis is where the conduct occurred). As this Court held in *Mazza*, California has the "predominant interest" in regulating wrongful "conduct that occurs within its borders." 666 F.3d at 592. Permitting a nationwide class to seek damages under California law would fully serve that interest.

Moreover, in circumstances like those present here, California courts regularly apply California law to a nationwide class. For example, in *Rutledge v. Hewlett-Packard Co.*, a decision that post-dates *Mazza*, the court reversed the trial court's denial of certification of a nationwide class of consumers who purchased computers from HP, a California corporation, because "the alleged injuries occurred in California where HP conducted the repairs," and not in the states where plaintiffs resided. 238 Cal. App. 4th 1164, 1187-88 (2015). Similarly, in

*Wershba v. Apple Computer, Inc*., the court affirmed the application of California law, finding that "even though transactions may have occurred outside California, the representations upon which the causes of action rested . . . necessarily emanated from California."  91 Cal. App. 4th 230, 243 (2001).  The *Wershba* court further noted, citing *Clothesrigger, Inc. v. GTE Co*., 191 Cal. App. 3d 605 (1987), that "California courts normally may apply California's pro-consumer laws to consumers from other states:  'California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.'"  *Id*.

Moreover, the District Court's finding that the applicable law is that of the state where each class member happened to be located at the time of the FaceTime Break creates incongruous results.  Pursuant to the Order, if a Florida resident were traveling in Illinois on April 16, 2014, Illinois law would "fortuitous[ly]" apply to her claims even though Illinois has no connection to or interest in applying its law to her claims.  *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1153-54 (W.D. Wash. 2017) ("When . . . the location of the injury is fortuitous, the weight the court gives to the place where the alleged conduct causing the injury occurred increases.").  In that example, Illinois certainly would not have the *greatest interest* in applying its law to a Florida resident's claim against Apple.

Because this is not a fraud or misrepresentation case, the last event needed to create liability is either: (i) Apple originally accelerating the Certificate's expiration date; or (ii) Apple intentionally withholding from the class members the same FaceTime solution it provided to its other customers. Because *all* of that conduct undisputedly occurred in California, California is the place of the wrong.

### b. The District Court Erred in Failing to Balance Relative Impairment

In balancing the respective states' interests, the District Court relied solely on its analysis of the place of the wrong. ECF 269, 40-41. It neither weighed competing interests nor explained why other states' interests were greater than California's. *See id.* This was error because California's governmental interest test requires a determination of which state's interest would be more impaired if its law were not applied. *McCann*, 225 P.3d at 527. The District Court was required—but failed—to "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law." *Id.*

Under the comparative impairment approach, a state has a significant interest in regulating conduct that occurs within that state. *Id.* at 519. Other relevant considerations are "the history and current status of the states' laws" and "the function and purpose of those laws." *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 727 (Cal. 1978). States may also have an interest in "promoting freedom of investment and enterprise within [their] borders." *Id.* at 728.

18

Because all of Apple's wrongful conduct occurred entirely in California, California would suffer the greatest impairment to its interests if California law did not apply. California alone has a compelling interest in addressing unfair and unlawful business practices committed in California. "The California Supreme Court has held that, in cases involving resident defendants, foreign states do not have a legitimate interest in limiting the amount of recovery for nonresident plaintiffs under California law." *Pecover v. Electronic Arts Inc*., 2010 WL 8742757, at \*20 (N.D. Cal. Dec. 21, 2010) (quoting *Hurtado v. Superior Court,* P.2d 666 (Cal. 1974)). Accordingly, because "California's consumer protection laws are among the strongest in the country[,]" "'California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.'" *Wershba*, 91 Cal. App. 4th at 242-43 (*quoting Clothesrigger*, 191 Cal. App. 3d at 616).

At bottom, the District Court identified no interest greater than California's that could require application of foreign law. *See Wash. Mut. Bank*, 15 P.3d at 1082 (stating that California law applies "so long as the interests of other states are not found to outweigh California's interest in having its law appl[y]"). Further, Apple had the burden to make such a showing, but it failed to do so. *Mazza*, 666 F.3d at 590. Therefore, the District Court manifestly erred by not applying California law nationwide.

### 3. There Are No "Material" Conflicts Among States' Trespass to Chattels Laws that Would Affect the Outcome of This Case

The District Court should have applied California law to Plaintiffs' trespass to chattels claim because Apple, the proponent of foreign law, did not meet its burden of showing: (i) a material conflict between California law and the law of another state; and (ii) that the interests of another state would be more impaired by the application of California law than California's interest would be impaired by the application of foreign law.

The burden is on the proponent of foreign law to "identify the applicable rule of law in each potentially concerned state and [] show it materially differs from the law of California." *Wash. Mut. Bank*, 15 P.3d at 1080. "'Any differences in [the states'] laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law.'" *Mazza*, 666 F.3d at 590-91 (quoting *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir. 1984)). Whether a difference in state law presents a material conflict depends on the plaintiff's theory of liability and the underlying facts of the case. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (finding it is defendant's burden to convince this Court of "material" differences in the law, as shown "on the facts of th[e] case.").

The District Court found a material difference among states' trespass to chattels laws because whereas California and 46 other states require actual harm to

recover for a trespass to chattels, three states (*i.e.*, North Carolina, Iowa and Florida) will *also* award nominal damages for a trespass to chattels without a showing of harm.  ECF 269, 37-38.  In finding this difference material, the District Court disregarded Plaintiffs' theory of liability and the facts of the case.

The District Court acknowledged that "'Plaintiffs' theory of liability is that the FaceTime Break reduced the market value of class members' iPhones,'" and accepted Plaintiffs' expert's econometric damages model, which established that the FaceTime Break devalued *all* class members' iPhone 4 and 4S devices.  ECF 269, 26, 31.  Because Plaintiffs' theory of liability and damages depends upon showing actual harm, the difference between California law and the law of the three nominal damages states is immaterial.  There can be no conflict in these circumstances because, if Plaintiffs prevail on their theory of liability, the residents of *all* states will recover actual damages based on the diminution in value caused by the FaceTime Break, and the availability of nominal damages in three states will not matter.

The District Court found the actual harm versus nominal harm distinction material by erroneously crediting Apple's theory that the FaceTime Break may have caused no harm to Class Members.  ECF 269, 37-38.  In doing so, the District Court erred.  *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593

F.3d 802, 808 (9th Cir. 2010) (reversing denial of certification where the court

ignored plaintiffs' actual legal theory and instead credited defendants' legal theory

in finding predominance lacking).  Properly applying Plaintiffs' theory of liability

to the facts of this case (*i.e.*, that the FaceTime Break caused actual harm), the

difference in state law is immaterial and California law properly applies to all

nationwide claims.[4]  Indeed, "[m]ere speculation as to conflicts that may develop at

the remedy stage is insufficient to support denial of initial class certification."  *Soc.*

*Servs. Union, Local 535, Serv. Employees Int'l Union, AFL-CIO v. County of*

*Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979).

    And yet, even if it were correct that three states' trespass to chattels law

differs materially from that of the other 47 states, the District Court erred by failing

to consider whether the conflict destroys predominance or makes the nationwide

class unmanageable.  *See Mazza*, 666 F.3d at 594 (allowing that, on remand, the

trial court could certify subclasses for class members in different states, with

different jury instruction for materially different bodies of state law).  The single

difference in trespass to chattels law does not overcome the predominance of legal

---

[4] *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc*., 946 F. Supp. 2d 957, 978 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015) (applying California law because the "laws of the two jurisdictions do not differ materially"); *Netscape Commc'ns Corp. v. St. Paul Mercury Ins. Co*., No. C 06-00198 JW, 2010 WL 11519412, at *4 (N.D. Cal. July 16, 2010) (finding the fact that prejudgment interest was mandatory in California and discretionary in Virginia was not material).

and factual issues or make a nationwide or multistate class unmanageable.  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) ("[T]he crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues.").

Plaintiffs moved for reconsideration of the Order, proposing certification of two trespass to chattels subclasses: (i) a subclass including the forty-seven states that require "actual harm"; and (ii) a subclass including the three states that only require "nominal damages."[5]  As set forth in that motion, the District Court committed manifest error by failing to consider and apply those subclasses to manage the differences among state laws.  *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 928 (9th Cir. 2018) (granting 23(f) petition and reversing in part denial of class certification where district court should have

---

[5] This case is distinguishable from *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 729-30 (9th Cir. 2007), where the plaintiff failed to request sub-classes until appeal.  In their class certification reply brief, Plaintiffs explained that the difference in state law could be remedied relatively easily "on a special verdict form or 'through other mechanisms routinely employed in complex litigations like this one.'"  ECF 225, 13 (citing *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *24 (N.D. Cal. Feb. 21, 2017)).  In their motion for reconsideration, Plaintiffs proposed two subclasses and demonstrated that both complied with Rule 23.  ECF 276, 13-20.  Plaintiffs should not be required "automatically to propose subclasses whenever an opposing party objects to the scope of the originally proposed class" but should be afforded "a reasonable opportunity to propose subclasses after denial of class certification."  *Quintana v. Harris*, 663 F.2d 78, 80 (10th Cir. 1981). Plaintiffs made such a proposal and it was denied by the District Court without explanation.  ECF 287.

certified possible subclass); *Samuel v. Univ. of Pittsburgh*, 538 F.2d 991, 996 (3d Cir. 1976) (finding district court abused its discretion by not investigating the possible usefulness of subclasses before decertification was ordered).

## VII.   RELIEF SOUGHT

Plaintiffs seek review and reversal of the District Court's Order denying certification of a nationwide class.

## VIII.  CONCLUSION

The District Court committed manifest error in denying certification of a nationwide class applying California law pursuant to Rule 23(b)(3).  Accordingly, Plaintiffs respectfully request the Court grant their petition for Rule 23(f) interlocutory review.

DATED: November 5, 2018    By:    _____*/s/ Jill M. Manning*_____
                                                  Jill M. Manning

Allan Steyer (State Bar No. 100318)
Jill M. Manning (State Bar No. 178849)
D. Scott Macrae (State Bar No. 104663)
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234

Bruce L. Simon (State Bar No. 96241)
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

David F.E. Tejtel
FRIEDMAN OSTER & TEJTEL PLLC
240 East 79th Street, Suite A
New York, NY 10075
Telephone: (646) 661-5881

Bradley W. Caldwell
Jason D. Cassady
John Austin Curry
CALDWELL CASSADY & CURRY
2101 Cedar Springs Road, Suite 1000
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

*Attorneys for Petitioners/Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 32-1 and Federal Rule of Appellate Procedure 27(d), I certify that this Petition is proportionately spaced in Times New Roman, has a typeface of 14 points, was created in Word format, and is 5517 words. This brief therefore complies with the word limitation established by Ninth Circuit Rule 5-2(b)-(c), which sets a 20-page limit on petitions for permission to appeal (excluding the accompanying documents required by Rule 5(b)(1)(E)), in conjunction with Ninth Circuit Rule 32-3(2), which allows the filing of a proportionally spaced brief "in which the word count divided by 280 does not exceed the designated page limit."

Dated: November 5, 2018     By:     */s/ Jill M. Manning*

Jill M. Manning (State Bar No. 178849)
STEYER LOWENTHAL BOODROOKAS ALVAREZ & SMITH LLP
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
jmanning@steyerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2018, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

I further certify that I have served a copy of the foregoing upon counsel of

record via electronic mail as set forth below:

Joseph A. Loy
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4980
joseph.loy@kirkland.com

R. Alexander Pilmer
Tanya Greene
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (212) 446-4806
alexander.pilmer@kirkland.com
tanya.greene@kirkland.com

Joshua H. Lerner
Sonal N. Mehta
Eugene Novikov
Stephen Elkind
Raghav Krishnapriyan
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
jlerner@durietangri.com
smehta@durietangri.com
enovikov@durietangri.com
selkind@durietangri.com
rkrishnapriyan@durietangri.com

Dated: November 5, 2018                    */s/ Jill M. Manning*