1
2
3
4
5
6
7
8
9
10                          UNITED STATES DISTRICT COURT

11                        NORTHERN DISTRICT OF CALIFORNIA

12                                SAN JOSE DIVISION

13   CHRISTINA GRACE and KEN POTTER,        Case No. 5:17-cv-00551-LHK-NC
     Individually and on Behalf Of All Others
14   Similarly Situated,                    **CLASS ACTION**

15                        Plaintiffs,        **JOINT PRETRIAL STATEMENT AND
                                             PROPOSED ORDER**
16          v.
                                             Date:    January 16, 2020
17   APPLE INC.,                             Time:    1:30pm
                                             Place:   Courtroom 4, 5th Floor
18                        Defendant.         Judge:   The Honorable Lucy H. Koh

19
20
21
22
23
24
25
26
27
28

Pursuant to the Court's Guidelines for Final Pretrial Conference in Jury Trials, the parties submit the following Joint Proposed Pretrial Statement and Order.

## I.    SUBSTANCE OF THE ACTION

This is a class action.  The parties to this action are Plaintiffs Christina Grace ("Grace") and Ken Potter ("Potter"), individually and on behalf of all others similarly situated (*i.e.*, owners of non-jailbroken Apple iPhone 4 and 4S devices in California who were running iOS 6 or an earlier version of iOS on their device on April 16, 2014) (the "Class"), and Defendant Apple Inc. ("Apple"), a California corporation with its headquarters in Cupertino, California.

Plaintiffs allege that Apple's conduct in intentionally causing the FaceTime feature to stop working on Plaintiffs' and Class Members' iPhone 4 and iPhone 4S devices in order to save money caused those devices to lose value. Plaintiffs assert claims against Apple for trespass to chattels under California law and for violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200.

Apple denies these allegations.  Apple contends that it did not intentionally cause FaceTime to stop functioning on any class members' devices, that a solution to any FaceTime outage was at all times available to class members in the form of an iOS 7 update, and that iOS 7 was fully compatible with class members' iPhone 4 and 4S devices.  Apple also contends that iPhone customers do not own the iOS software, and agree to allow Apple to modify and update the software at Apple's discretion.  Plaintiffs also failed to mitigate any alleged harm— there is no dispute that they could have upgraded if they wanted FaceTime.  Finally, Plaintiffs are seeking purely economic losses to their iPhones—not harm to any other persons or property—and their alleged damages are therefore barred by the economic loss rule.

The operative pleadings are Plaintiffs' Amended Complaint (Dkt. No. 36) and Apple's Answer (Dkt. 66).

## II.    RELIEF SOUGHT

Plaintiffs seek damages, restitution, punitive damages, and injunctive relief. Specifically, Plaintiffs seek:

- A judgment that Apple committed a trespass to chattels in connection with the

1    FaceTime Break;

2    • A judgment that Apple violated the UCL in connection with the FaceTime

3    Break;

4    • Actual damages from Apple's unlawful conduct;

5    • Punitive damages pursuant to California Civil Code § 3294;

6    • Pre-judgment and post-judgment interest as authorized by law;

7    • Restitution as authorized under the UCL, including disgorgement of Apple's

8    wrongfully obtained financial benefit received and unjustly retained;

9    • Reasonable attorneys' fees pursuant to, *inter alia*, Cal Code Civ. Proc. § 1021.5;

10   • Reasonable costs;

11   • Appropriate injunctive relief; and

12   • Any other remedy to which Plaintiffs and/or the Class may be entitled.

13   Apple denies liability, and disputes that Plaintiffs are entitled to any such relief.  Apple

14   specifically disputes, among other things, that:

15   • Disgorgement is an available remedy under the UCL;

16   • Attorneys' fees are available to Plaintiffs here under Cal Code Civ. Proc.

17   § 1021.5.

18   Apple respectfully requests that this Court dismiss Plaintiffs' claims with prejudice,

19   enter judgment against Plaintiffs and in favor of Apple, decline to award Plaintiffs' requested

20   relief, and award Apple its costs and reasonable attorneys' fees.

21   **III.    UNDISPUTED FACTS**

22   1.    Christina Grace is a resident of California who resides in Marin County,

23   California.

24   2.    Ken Potter is a resident of California who resides in San Diego County,

25   California.

26   3.    The Court has certified a class consisting of "[a]ll owners of non-jailbroken Apple

27   iPhone 4 or Apple iPhone 4S devices in California who on April 16, 2014, had

28   iOS 6 or earlier operating systems on their iPhone 4 or iPhone 4S devices."

4.   Apple is a corporation organized under the laws of the State of California, with its headquarters in Cupertino, California.

5.   iPhone was designed and sold by Apple.

6.   During development of the original iOS in 2007, Apple set expiration dates for certificates used in the iOS system, including the iPhone Device Sub-CA Certificate.

7.   In 2010, when FaceTime launched, it used the iPhone Device Sub-CA certificate.

8.   Apple released iPhone 4 on June 24, 2010.  iPhone 4 was the first iPhone device to offer FaceTime.

9.   Apple released iPhone 4S on October 14, 2011.  Apple connected FaceTime calls through either: 1) the peer-to-peer method ("P2P"), where a direct connection is formed between the caller and the callee; or 2) the "relay method," where the caller and callee connect to a server that relays the data on behalf of the devices.

10.   The P2P FaceTime calls were free in the sense that Apple did not pay for the connection.

11.   On April 16, 2014, the iPhone Device Sub-CA certificate expired.

12.   When the iPhone Device Sub-CA certificate expired on April 16, 2014, FaceTime stopped working for owners of Apple's iPhone 4 and iPhone 4S devices who were running Apple's iOS 6 or an earlier version of iOS.

13.   Users who had previously updated the operating system on their iPhone devices to iOS 7.0.4 or later did not experience any FaceTime interruption.

14.   Users who experienced a FaceTime interruption were able to download an update to iOS 7.0.4 or later, which restored FaceTime functionality to iPhone 4 and 4S devices.

15.   As of April 16, 2014, Plaintiff Grace owned one 16 GB iPhone 4 running iOS 5. Plaintiff Grace purchased this iPhone before the FaceTime Break.

16.   Plaintiff Potter owned one 16 GB iPhone 4 that ran iOS 6 or earlier.  Plaintiff Potter purchased his 16 GB iPhone 4 before the FaceTime Break.

IV.    **DISPUTED FACTUAL ISSUES**

Joint Statement

The following disputed factual issues remain to be resolved:

1.  Whether Apple is liable for trespass to chattels by intentionally interfering with Class members' possession of their iPhone 4 and iPhone 4S devices in connection with the April 16, 2014 expiration of the iPhone Device Sub-CA.

2.  Whether Apple acted with "oppression, fraud or malice" in connection with the April 16, 2014 expiration of the iPhone Device Sub-CA.

3.  Whether Apple violated the UCL by engaging in unfair business acts and/or practices in connection with the April 16, 2014 expiration of the iPhone Device Sub-CA.

4.  The amount of damages to which Plaintiffs and the Class are entitled.

5.  The amount of restitution to which Plaintiffs and the Class are entitled.

6.  Whether Plaintiffs are entitled to injunctive relief.

7.  Whether Plaintiffs are entitled to punitive damages.

8.  Whether in addition to one 16 GB iPhone 4 that ran iOS 6 or earlier, Plaintiff Potter also owned one jailbroken 32 GB iPhone 4 running iOS 4.3.3, and whether Plaintiff Potter purchased this 16 GB iPhone 4 before the FaceTime Break.

9.  Whether both Plaintiffs also owned other Apple devices that suffered no FaceTime interruption.

10. Whether Apple designed FaceTime to use the iPhone Device Sub-CA certificate in 2010.

11. Whether Apple released iOS 4 with FaceTime on June 21, 2010.

12. Whether Apple initially set the iPhone Device Sub-CA certificate to expire in 14.5 years.

13. Whether Apple subsequently amended the expiration date and set the iPhone Device Sub-CA certificate to expire in 7 years, on April 16, 2014.

14. Whether a jury returned a verdict that Apple's FaceTime feature infringes certain patents owned by VirnetX, Inc. ("VirnetX") by using a method to connect FaceTime

calls known as the "peer to peer" method on November 7, 2012.

15. Whether VirnetX and Apple agreed that Apple could avoid infringing on the VirnetX patents by connecting FaceTime calls through a relay server.

16. Whether all FaceTime calls on Apple devices using iOS 6 or earlier operating systems connected via the relay method 100% of the time beginning in June 2013.

17. Whether Apple shifted 100% of FaceTime calls to the non-infringing relay method, increasing its relay usage and costs following the VirnetX verdict.

18. Whether Apple began exploring ways to reduce its relay usage and associated cost following the VirnetX verdict.

19. Whether, as of 2013 and 2014, Apple had a Public Key Infrastructure services team that issued and managed digital certificates for Apple, and would check the expiration dates for digital certificates.

20. Whether Apple began its certificate expiration review process with the iPhone Device Sub-CA certificate in early 2013.

21. Whether Apple was aware in 2013 that FaceTime and any other Apple service that checked the expiration date of the iPhone Device Sub-CA certificate would fail when the iPhone Device Sub-CA certificate expired.

22. Whether Apple's inquiry into what services would be affected by the iPhone Device Sub-CA certificate expiration was consistent with its practice and industry practice.

23. Whether Apple knew in early 2013 that the certificate that allowed FaceTime to function would expire on April 16, 2014.

24. Whether Apple was able to reduce its relay usage and associated costs by building into iOS 7 a mechanism that established a peer-to-peer method that used very little relay.

25. Whether iOS 7 significantly impaired the functionality of iPhone 4 and 4S devices.

26. Whether iPhone 4 and 4S users who migrated to iOS 7 were unable to revert back to earlier versions of iOS.

27. Whether FaceTime calls continued to use the relay method for iPhone 4 and 4S users

1    who did not upgrade their devices to iOS 7.

2    28. Whether iPhone 4 and 4S users were required to run iOS 7 or a later iOS in order to

3        use FaceTime on their iPhone 4 and 4S devices after the iPhone Device Sub-CA

4        certificate expired on April 16, 2014.

5    29. Whether the iPhone Device Sub-CA certificate's expiration on April 16, 2014

6        reduced the number of FaceTime calls placed by iPhone 4 and iPhone 4S devices

7        that used the relay method.

8    30. Whether Apple had developed a fix that would allow FaceTime to work on devices

9        running on iOS 6 but chose not to implement it.

10   31. Whether Apple's intention in not implementing the fix on devices running on iOS6

11       was to force users to upgrade to iOS 7 in order to reduce its relay usage.

12   32. Whether Apple planned to have the iPhone security certificate expire on April 16,

13       2014, whether it caused or intentionally permitted the certificate to expire on that

14       date, and whether it intended for a FaceTime interruption to take place for some

15       customers on that date.

16   33. Whether the iOS 7 remedy for the FaceTime interruption was adequate and

17       appropriate.

18   34. Whether iOS 7 functioned poorly or caused performance degradation in iPhone 4

19       and 4S devices.

20   35. Whether there was any connection between the security certificate expiration and

21       FaceTime interruption, or the remedy made available for the FaceTime interruption,

22       and the amount of relay server fees payable by Apple.

23   36. Whether Plaintiffs were harmed by the April 16, 2014 security certificate expiration

24       and FaceTime interruption.

25   37. The amount of damages, if any, to which the named Plaintiffs or the class are

26       entitled with respect to their non-jailbroken Apple iPhone 4 or Apple iPhone 4S

27       devices in California that on April 16, 2014, were operating iOS 6 or earlier

28       operating systems.

38. Whether Plaintiffs consented to the alleged trespass, whether Plaintiffs waived their claims here, whether Plaintiffs are estopped from seeking the relief they seek here, and whether Apple's alleged actions were necessary here.

39. Whether calls connected through the relay method caused Apple to pay for the relay usage.

## V.   AGREED STATEMENT

At this time, the parties do not believe that the action may be presented upon an agreed statement and have not agreed on any statement to be read to the jury, but the parties will continue to meet and confer and update the Court.

## VI.   STIPULATIONS

The parties intend to discuss stipulations, including concerning authenticity and admissibility of certain exhibits.

For these purposes, Apple is not disputing that: the Court has jurisdiction over this case and that venue is proper in this District; and the Court has personal jurisdiction over Apple.

## VII.   WITNESSES TO BE CALLED.

Plaintiffs' and Apple's witness lists are attached as Exhibits 1 and 2, respectively.

## VIII.   EXHIBITS, SCHEDULES, SUMMARIES

Plaintiffs' and Apple's exhibit lists are attached as Exhibits 3 and 4, respectively.

## IX.   DISPUTED LEGAL ISSUES

### Plaintiffs' Separate Statement

Plaintiffs identify the following legal issues that, based on the parties' prior submissions, appear to be disputed:

1. Whether Apple's conduct in implementing the FaceTime Break, which caused FaceTime to cease to function on Plaintiffs' and Class Members' iPhone 4 and 4S devices, amounts to "intentional interference" with Plaintiffs' and the Class members' use of their iPhone 4 and iPhone 4S devices.

2. Whether Apple's conduct in implementing the FaceTime Break, which caused FaceTime to cease to function on Plaintiffs' and Class Members' iPhone 4 and 4S

devices, harmed Plaintiffs and the Class Members.

3.   Whether Apple's conduct in implementing the FaceTime Break, which caused FaceTime to cease to function on Plaintiffs' and Class Members' iPhone 4 and 4S devices, was a substantial factor in causing the devices to lose value.

4.   Whether Apple's conduct in implementing the FaceTime Break, which caused FaceTime to cease to function on Plaintiffs' and Class Members' iPhone 4 and 4S devices, was unfair under Cal. Bus & Prof. Code §§ 17200, *et seq*.

5.   Whether Apple's conduct in implementing the FaceTime Break, which caused FaceTime to cease to function on Plaintiffs' and Class Members' iPhone 4 and 4S devices, was done without any acceptable justification, whether business or otherwise.

6.   Whether Plaintiffs and the Class Members are entitled to injunctive relief.

7.   Whether Plaintiffs and the Class Members are entitled to punitive damages and, if so, the amount.

Plaintiffs further identify the following disputed legal issues that the Court has previously addressed and resolved in connection with prior orders.

- Whether Plaintiffs have Article III standing to pursue their claims.  Dkt. 65.
- Whether Plaintiffs have statutory standing to bring a UCL claim.  Dkt. 65.
- Whether Plaintiffs' claims are certifiable on a nationwide basis.  Dkt. 269.
- Whether Plaintiffs' claims are certifiable on a California-only basis.  Dkt. 269.
- Whether Apple can commit a trespass to chattels without committing an "affirmative post-purchase act."  Dkt. 306.
- Whether Plaintiffs' trespass to chattels claims are barred by the economic loss rule.  Dkt. 306.
- Whether Plaintiffs' damages model measures restitution under the UCL.  Dkts. 65, 306

Apple's Separate Statement

Apple identifies the following legal issues that, based on the parties' prior submissions, appear to be disputed:

1.  Apple's position is that UCL is an equitable claim for restitution, it will be resolved by the Court.

2.  Whether Plaintiffs consented to the actions they now claim constitute a trespass by agreeing to the iOS software license agreement.

3.  Whether Plaintiffs waived their claims by agreeing to the iOS software license agreement.

4.  Whether Plaintiffs are estopped from the seeking the relief they claim here.

5.  Whether Apple's alleged conduct here was necessary.

6.  Whether the trespass to chattels claim fails because Apple's conduct was necessary.

7.  Whether Apple's actions could constitute a trespass given that Apple, and not Plaintiffs or the class, owns the iOS software that is the subject of the FaceTime interruption.

8.  Whether FaceTime is a "service" under the iOS Software License Agreement.

9.  Whether Plaintiffs have shown by a preponderance of the evidence that Apple has committed trespass to chattels on their devices or other class members' devices.

10. Whether Plaintiffs failed to mitigate the alleged harm, to the extent any harm occurred.

11. The amount of damages, if any, to which the named Plaintiffs or the class are entitled.

12. Whether Plaintiffs' expert's damages analysis considered the correct factors and elements, including but not limited to the correct devices, correct market, and/or the proper bases for her analysis and date ranges.

13. Whether Apple's conduct was unfair under the UCL.

14. Whether Plaintiffs are entitled to restitution under the UCL, and if so, whether Plaintiffs have proposed a cognizable measure of restitution.

15. Whether Plaintiffs failed to mitigate the alleged harm, to the extent such harm occurred.

16. If Apple is found to have violated the UCL, whether Plaintiffs are entitled to

1    injunctive relief.

2    17. Whether Plaintiffs' expert's damages analysis considered the correct factors and

3        elements, including but not limited to the correct devices, correct market, and/or the

4        proper bases for her analysis and date ranges.

5    As for the matters that Plaintiffs claim are "resolved," Apple states as follows:

6    (1) the rulings on standing relate to whether standing was adequately pled;

7    (2) the rulings as to post-sale actions and the economic loss rule were rulings on summary

8    judgment (i.e., whether there is a genuine issue of material fact);

9    and (3) the rulings as to restitution were that Plaintiffs' damages model could theoretically

10   measure restitution, not that it actually measures the amount of restitution to which plaintiffs are

11   entitled.

12   Furthermore, a class may be decertified at any time during or after trial if requirements of

13   Rule 23 have not been met.  Thus, the following legal issues are in dispute:

14       a.    Plaintiffs cannot satisfy Rule 23(a)(3) typicality;

15       b.    Both of Plaintiffs' claims require individual inquiries and do not satisfy Rule

16   23(b)(3);

17       c.    A class action is not superior to other methods of adjudication under Rule

18   23(b)(3);

19       d.    Plaintiffs cannot show a class-wide method of proving damages.

20       e.    Plaintiffs appear to seek injunctive relief, but the Court denied certification of a

21   Rule 23(b)(2) class.

22   **X.**    **<u>FURTHER DISCOVERY OR MOTIONS</u>**

23   There are no pending motions before the Court.

24   The Parties do not intend to pursue further discovery.

25   The Parties are filing motions *in limine* concurrently with the present Pretrial Statement,

26   and intend to file oppositions to motions *in limine* on December 17, 2019.  Additionally, *Daubert*

27   motions were filed on December 12, 2019, to which the Parties intend to file their respective

28   oppositions on December 27, 2019, with reply briefs to follow on January 3, 2020, pursuant to

1    the Court's Order. No. 322.

2    **XI.    DISPUTED EVIDENTIARY ISSUES**

3        Plaintiffs' Separate Statement

4        Plaintiffs presently are aware of the evidentiary issues raised in their motions *in limine*,

5    filed concurrently with this Pretrial Statement on December 13, 2019. To the extent that

6    additional disputed evidentiary issues emerge as the parties further engage regarding trial

7    exhibits, witness lists, *motions in limine* and/or other trial-related subjects, Plaintiffs anticipate

8    that the parties will be able to meet and confer regarding such issues.  In an effort to avoid

9    potential evidentiary issues and increase trial efficiency, Plaintiffs propose the following

10   stipulations:

11           • A stipulation concerning the authenticity of emails and other internal Apple

12             documents produced by Apple in this action.

13           • A stipulation concerning the status as "business records" of emails and other

14             internal Apple documents produced by Apple in this action.

15       Apple's Separate Statement

16       Apple intends to meet and confer with Plaintiffs to the extent that additional evidentiary

17   issues arise, including with respect to the stipulations proposed herein with regard to the

18   documents specified on the parties' exhibit lists once such lists have been exchanged.  Apple

19   presently is aware of the evidentiary issues raised in its motions *in limine*, filed concurrently

20   with this Pretrial Statement on December 13, 2019, and in its *Daubert* motion filed on December

21   12, 2019.

22   **XII.    BIFURCATION, SEPARATE TRIAL OF ISSUES**

23       Plaintiffs' Separate Statement

24       Plaintiffs currently do not anticipate a need for a bifurcated trial, as Plaintiffs expect that

25   the evidence presented to the jury in connection with Plaintiffs' trespass to chattels claim will be

26   the same as the evidence presented to the Court in connection with Plaintiffs' UCL claim.[1]

27   _____

28   [1] Plaintiffs submit that to the extent divergences emerge with respect to the evidence the parties intend to present in connection with Plaintiffs' trespass to chattels claim on the one hand and Plaintiffs' UCL claim on the other, and to the extent the parties believe that any such divergences

1    Apple's Separate Statement

2        At this point, Apple is not contemplating bifurcation or separate trial of issues.  Apple

3    agrees that the UCL claim is an equitable claim for the Court's resolution and so would not

4    require bifurcating the trial.  Apple anticipates that there may be some evidence that is relevant to

5    the UCL claim only and should not be presented to the jury in order to avoid confusion and

6    prejudice.  Should that situation arise Apple will raise it with Plaintiffs and the Court promptly.

7    **XIII.   ESTIMATE OF TRIAL TIME**

8        Pursuant to the Court's April 30, 2019 docket entry, trial is set for April 6, 2020, April 7,

9    2020, April 10, 2020, April 13, 2020, April 14, 2020, April 17, 2020 and April 21, 2020.

10   **XIV.   MISCELLANEOUS**

11       Joint Statement:

12       The Court's Standing Order addresses the effect of this Pretrial Statement.

13       Apple's Separate Statement

14       Apple proposes that the Court and Parties follow the following procedure when

15   displaying and discussing documents that have confidential information in open court.  The

16   examining attorney should direct the trial technician to display the confidential document only to

17   the witness and jury; the examining attorney should not read confidential information out loud;

18   and the examining attorney should direct the witness on the stand to direct the jury where to view

19   confidential information on the page without stating the confidential information out loud.

20   Dated:  December 16, 2019                STEYER LOWENTHAL BOODROOKAS
                                              ALVAREZ & SMITH LLP
21

22                                           By:   /s/ Jill M. Manning
23                                                 Jill M. Manning

24                                           Allan Steyer (Bar No. 100318)
                                             Jill M. Manning (Bar No. 178849)
25                                           D. Scott Macrae (Bar No. 104663)
                                             235 Pine Street, 15th Floor
26                                           San Francisco, CA 94104
                                             Telephone: (415) 424-3400
27

28   _____
     might warrant bifurcation, the parties will notify the Court immediately.

1

2

asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

3

PEARSON, SIMON & WARSHAW, LLP
Bruce L. Simon (Bar No. 96241)

4

Daniel L. Warshaw (Bar No. 185365)
Alexander L. Simon (Bar No. 305734)

5

350 Sansome Street, Suite 680
San Francisco, California 94104

6

Telephone: (415) 433-9000
bsimon@pswlaw.com

7

dwarshaw@pswlaw.com
asimon@pswlaw.com

8

9

FRIEDMAN OSTER & TEJTEL PLLC
David F.E. Tejtel (*admitted pro hac vice*)
493 Bedford Center Road, Suite 2D

10

Bedford Hills, NY 10507
Telephone: (888) 528-1108

11

dtejtel@fotpllc.com

12

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*admitted pro hac vice*)

13

Jason D. Cassady (*admitted pro hac vice*)
John Austin Curry (*admitted pro hac vice*)

14

2101 Cedar Springs Road, Suite 1000
Dallas, TX 75201

15

Telephone: (214) 888-4848
bcaldwell@caldwellcc.com

16

jcassady@caldwellcc.com
acurry@caldwellcc.com

17

*Counsel for Plaintiffs and the Class*

18

19

Dated:  December 16, 2019            GIBSON, DUNN & CRUTCHER LLP

20

By:   */s/ Joshua H. Lerner*
                Joshua H. Lerner

21

22

Joshua H. Lerner (Bar No. 220755)
555 Mission Street, Suite 3000

23

San Francisco, CA 94105-0921
Telephone: 415.393.8200

24

Facsimile:  415.393.8306
jlerner@gibsondunn.com

25

DURIE TANGRI LLP

26

Eugene Novikov (Bar No. 257849)
217 Leidesdorff Street

27

San Francisco, CA 94111
Telephone: 415.362.6666

28

enovikov@durietangri.com

*Counsel for Defendant Apple Inc.*

**<u>FILER'S ATTESTATION</u>**

I, Jill M. Manning, am the ECF User whose ID and password are being used to file this document and, in compliance with Local Rule 5-1(i)(3), hereby attest that all signatories concur with this filing.

Dated:  December 16, 2019                    By:   */s/ Jill M. Manning*
                                                          Jill M. Manning