JOSHUA H. LERNER, SBN 220755
jlerner@gibsondunn.com
VICTORIA L. WEATHERFORD, SBN 267499
vweatherford@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

EUGENE NOVIKOV, SBN 257849
enovikov@durietangri.com
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415.362.6666

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

APPLE INC.,

Defendant.

CASE NO. 5:17-CV-00551-LHK (NC)

**REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY**

Date: January 16, 2020
Time: 1:30 pm
Place: Dept.: Courtroom 8—4th Floor
Judge: Hon. Lucy H. Koh

Dr. Hastings's expert testimony and Dr. Jones's performance and perceptibility opinions should be excluded from trial.

## I. DR. HASTINGS'S OPINIONS MUST BE EXCLUDED

The problem with Plaintiffs' damages case has crystalized now that we are on the eve of trial: Plaintiffs do not have a damages case that fits the class certified by the Court. Apple has previously pointed out that Plaintiffs have sought to measure the damages suffered by individual members of the Plaintiff class by measuring iPhones' diminution in value in the wholesale business-to-business market. The Court accepted Plaintiffs' argument that the business-to-business market is a "proxy" for the diminution in value of phones in the hands of individual consumers. But now Plaintiffs have substantially compounded that problem by attempting to apply trends in the ***nationwide*** business-to-business market to a ***regional*** consumer market. Even if Plaintiffs' "proxy" argument worked when going from a nationwide B-to-B market to a nationwide consumer market, Plaintiffs have no basis for treating the former as a "proxy" for a ***California*** consumer market. Their expert has admitted that the statewide consumer market could differ from the nationwide market in ways she did not even investigate, much less opine about. She should not be permitted to present a damages theory that is, at this point, entirely divorced from the damages she is attempting to measure.

The burden is on Plaintiffs to establish Dr. Hastings's opinions are relevant to the issues in this case, based on reliable methods and assumptions, and admissible under Rules 702 and 403 of the Federal Rules of Evidence. *Rovid v. Graco Children's Prods.*, No. 17-cv-01506-PJH, 2018 U.S. Dist. LEXIS 192449, at *7 (N.D. Cal. Nov. 9, 2018); *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). It is not sufficient for Plaintiffs to merely recite that regression analyses are regularly accepted by the courts. Regression is a basic statistical technique taught to first-year undergrads. Plaintiffs need an expert opinion on damages tied to the market certified ***in this case***, and it is precisely an ***application*** of regression analysis to the market she is attempting to measure that Dr. Hastings does not provide. *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031 (N.D. Cal. 2001) (excluding expert's economic model because it failed to measure competition in the relevant geographic markets, and the expert "made no effort to base his model on actual purchasing data from plaintiffs").

It is undisputed that Dr. Hastings has not modified her nationwide model since class certification to account for the certified California class.[1] Instead, she and Plaintiffs have merely asserted, without any analysis, that the same "proxy" argument through which they attempted to use the nationwide B-to-B market to measure nationwide consumer diminution in value can also be used to calculate diminution in value for the California class. But there has to be a basis to make that leap. Here, there is no dispute that Dr. Hastings has not done the analysis to determine whether and how the California consumer market differs from the nationwide consumer market she previously attempted to measure. What is more, she repeatedly admitted that the two could differ substantially, and that she did not investigate what those differences were. Dr. Hastings conceded that regional differences in economic conditions and business objectives of consumer buyback retailers could lead to California consumers receiving more value for their used iPhones than consumers in other states. Dkt. No. 331-6 (2018.09.20 Hastings Dep. Tr.) at 79:18-80:15. She also admitted that regional consumer characteristics, such as Californians' higher average income or the different average quality and condition of phones they own, could matter to the prices they could obtain for their phones relative to people in other places. *Id*. 81-82; Lerner Decl. Ex. 1 (2018.09.20 Hastings Dep. Tr at 83:1-9). Yet despite admitting that these factors could materially alter the damages California customers ***actually*** suffered, she did not attempt to study or account for them in her analysis. She simply asserted that her nationwide model of measuring consumer damages by proxy was just as good despite the certified class having been limited to California.[2]

---

[1] Plaintiffs lean on this Court's class certification ruling, Dkt. No. 269, but this Court previously evaluated Dr. Hastings's methodology for a *nationwide* class under Rule 23 of the Federal Rules of Civil Procedure and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), not a *California* class under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Id*.

[2] While Apple's expert, Dr. Neil Malhotra, did not analyze the actual effect of regional differences on prices either (the source of Plaintiffs' "I actually don't have any opinions on that" quote), Dkt. 352-3 (2018.09.25 Malhotra Dep. Tr.) at 46:10:13, he testified that differences in disposable income could result in a unique and different California market compared to any other of the 50 states, and further that the high variance across Dr. Hastings's *nationwide* data sets led to the conclusion it was unlikely each of the 50 states would have "similar results or similar functionings of the market." Lerner Decl. Ex. 3 (2018.09.25 Malhotra Tr.) at 45:22-53:6 [page 46 excluded]; see Lerner Decl. Ex. 2 (2018.08.28 Hastings Merits Rpt. at 27-28).

This lack of any established connection between the nationwide market that Dr. Hastings relies on and California renders Dr. Hastings' opinions inadmissible at trial. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (Rule 702 imposes a reliability standard that "requires a valid ... connection to the pertinent inquiry as a precondition to admissibility.") (*quoting Daubert*, 509 U.S. at 592). The cases that Plaintiffs cite also do nothing to solve their problem. To begin with, in *Giuliano*, the challenged expert's analysis was relevant to the case because he analyzed *both* the market Plaintiffs claimed was relevant *and* the market Sandisk claimed was relevant to show monopolization power. *Guiliano v. Sandisk Corp.*, 2015 WL 10890654, at *8 (N.D. Cal. May 14, 2015). He also "specifically analyzed . . . the relationship between" the two markets. *Id*. *9. Similarly, in *In re Lidoderm Antitrust Litig.*, one expert's opinions were admissible because he could "carv[e] out purchases made by entities or individuals who are not included within the class definitions," a task it is undisputed Dr. Hastings is unable to perform here. 2017 WL 679367, at *1 (N.D. Cal. Feb. 21, 2017). Here, Dr. Hastings does not merely use one market (wholesale business-to-business) to opine about a different one (individual consumer buyback or sale) but further stretches that analogy to bridge a nationwide-regional divide without any basis at all for doing so. These are not problems that go to the mere weight of Dr. Hastings' testimony; Dr. Hastings has no basis *at all* to tie the only market she analyzed to the California class certified here. *Am. Booksellers*, 135 F. Supp. 2d 1031. It is precisely the function of this Court's gatekeeping role to keep out expert opinions such as this that are not sufficiently tied to the facts of this case. Dr. Hastings's opinions must be excluded.

## II. DR. JONES'S PERFORMANCE OPINIONS MUST BE EXCLUDED

Plaintiffs state that in offering his opinions that performance regressions in iOS 7 on Plaintiffs' devices would have been "perceptible" to them, Dr. Jones "compared performance metrics," "studied," performed "detailed computations," and "carefully focused" his "analysis" of Apple's data. It is thus helpful to be specific about what Dr. Jones' "analysis" and "detailed computations" actually entailed. Dr. Jones started with a large set of performance metrics for iOS 6 on one hand and iOS 7 on the other hand, reflecting how quickly the system performed very specific tasks under very specific circumstances. Dkt. No. 331-8 (Jones Rpt.) at 83. Dr. Jones repeatedly

stated under oath and in his report that he did not understand what those tasks and circumstances where—and thus, *a fortiori*, whether and how they reflect ***any*** actual user's experience much less that of all users or the average user.[3] After weeding out some tests that seemed to him clearly irrelevant or duplicative, he then "created a column of the difference between the [iOS 7] result and the [iOS 6] result" for each test. He also "created a column of the percentage change from the [iOS 6] result to [iOS 7] result relative to the [iOS 6] result." *Id*. at 85. These are the "detailed computations" to which Plaintiffs refer: arranging data in columns in an excel spreadsheet and performing subtraction and division to measure the absolute and percentage change from one to the other.

Dr. Jones then further picked out certain test categories, concluding that they are particularly relevant despite, again, having no information about the environment in which they were performed or their applicability to the average user.[4] *Id*. at 87. He eyeballed the subtraction and division he performed for those tests, read the irrelevant third-party studies discussed in Apple's motion, looked at what Apple engineers have said publicly about the importance of app performance (not iOS performance), and generated (without explaining how) a conclusion that iOS 7 would have exhibited "perceptible" performance regressions. *Id*. at 88-90; Dkt. No. 333-7 (Jones Dep. Tr.) at 195:3-13; 199:17-203:12. He offered no opinion about to whom the regressions would have been "perceptible" or under what circumstances (despite having admitted at his deposition he admitted that "perceptibility" could vary depending on the individual user and his specific device). That does not meet the threshold for admissibility as expert testimony under Rule 702. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017) (excluding testimony of expert who "simply

---

[3] Dr. Jones's report explains that "Because Apple did not provide a narrative explanation of the Apple Performance Data, *there is a variety of information about it that I do not know*, including . . . *what exactly the benchmarks are testing (aside from educated deductions* based on the test names, my experience, some of Apple's public statements, and some of Apple's other produced documents)," "the condition of each device tested," what specific iOS versions were installed, or the devices' storage capacity. Dkt. No. 331-8 at 83-84.

[4] The selection was similarly based on guesswork about what the tests were measuring. Dr. Jones wrote that "Based on information I have seen in documents produced by Apple, I was able to identify certain benchmark test results that *I believe are similar to* data and tests discussed in these Apple documents," and "I note that, even though the benchmark tests are similarly named for [the two iOS versions], *it is possible that they are not measuring precisely the same operation*." Dkt. No. 331-8 at 82-83, 89 n.216 (emphases added).

adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel. Where is any specialized knowledge? There is none.”).

While Plaintiffs now point the finger at Apple for not producing information that supposedly would have helped Dr. Jones, in truth, Apple responded to Plaintiffs’ inquiries, and the letter Plaintiffs cite predates the depositions Plaintiffs took, including 30(b)(6) depositions.[5] Plaintiffs do not provide any authority—and Apple is unaware of any—that a party that declines to pursue potentially relevant information in discovery is excused of its burden to satisfy *Daubert* or Rule 702.

Finally, Plaintiffs’ assertion that Dr. Jones’s reliance on a third-party news article to cross-check his results is excusable because Apple’s expert Dr. Rubin “relied” on it too is patently false. Dr. Rubin referred to the article only in response to Dr. Jones’s use of it. *See* Dkt. No. 352-6.[6]

## III. CONCLUSION

For the foregoing reasons, Apple respectfully requests its motion be granted.

Dated: January 3, 2020

JOSHUA H. LERNER
VICTORIA L. WEATHERFORD
GIBSON, DUNN & CRUTCHER LLP

By: /s/ Victoria L. Weatherford
Victoria L. Weatherford

Attorneys for Defendant APPLE INC.

---

[5] While Plaintiffs imply without citation that Apple refused to respond to their June 6, 2018 letter asking for an explanation of Apple’s performance testing documents, the fact is that Apple did respond, pointing out that it had provided an explanation when it produced the documents. See Declaration of Joshua Lerner Ex. 4, Jul. 9, 2018 Email from Greene to Curry (attaching id. Ex. 5 Mar. 6, 2018 Email from Pilmer). Plaintiffs never replied seeking additional information or explanation.

[6] The entirety of Dr. Rubin’s discussion of the article is: “First, the Ars Technica article *on which Dr. Jones relies* notes that [remainder of sentence summarizing and quoting from the article]. *While I cannot comment on the reliability of Ars Technica’s reporting*, it does not indicate that iOS 7.1 performance on the iPhone 4 was inadequate.” (emphases added). Dkt. No. 352-6.