# EXHIBIT D

Page 1

1             UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4                     --o0o--

5  CHRISTINA GRACE AND KEN POTTER,
   Individually and on Behalf of All    Case No.
6  Others Similarly Situated,
                                        5:17-cv-00551-LHK-NC
7                 Plaintiffs,
   vs.
8
   APPLE, INC.
9
                  Defendant.
10 _____/

11

12

13      HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

14            VIDEOTAPED DEPOSITION OF

15               DALLAS BLAKE DE ATLEY

16            WEDNESDAY, APRIL 18, 2018

17

18

19  Reported by:  LUCY CARRILLO-GRUBBS, CSR #6766
                 RPR-RMR-CRR-RPR-CCRR
20

21

22

23                                   
24

25

hglitigation.com                              hg

1    BE IT REMEMBERED that on WEDNESDAY, APRIL 18,
2    2018, commencing at the hour of 8:58 a.m. in the
3    law offices of KIRKLAND & ELLIS, 3330 Hillview
4    Avenue, Palo Alto, California, before me, LUCY
5    CARRILLO-GRUBBS, a Certified Shorthand Reporter in
6    and for the State of California, personally
7    appeared
8                    DALLAS BLAKE DE ATLEY
9    called as a witness herein, who, having been duly
10   sworn, was thereupon examined and interrogated as
11   hereinafter set forth.
12                       ---oOo---
13      VIDEOTAPE OPERATOR:  Good morning.  We're now
14   going on the video record.  Today is April 18,
15   2018.  The time is approximately 8:57 a.m.
16          The location is 3330 Hillview Avenue, Palo
17   Alto, California.  My name is Mariah Nieves.  I'm
18   the video specialist representing HG Litigation
19   Services.
20          The civil action number is
21   5:17-cv-00551-LHK NC in the matter of Christina and
22   Ken Potter versus Apple, Inc., and the deponent is
23   Dallas De Atley.
24          The video deposition is requested by the
25   plaintiffs' counsel -- counsel.

Page 7

1  Will counsel please identify themselves
2  for the record.
3      ATTORNEY CURRY:  Austin Curry for plaintiffs.
4  With me is Warren McCarty and Jill Manning.  Warren
5  McCarty and I are with Caldwell Cassady & Curry and
6  Ms. Manning is with Steyer Lowenthal.
7      ATTORNEY PILMER:  Alex Pilmer with Kirkland &
8  Ellis on behalf of Apple.  Present also is Gabe
9  Zeldin from Apple.
10     VIDEOTAPE OPERATOR:  Thank you.
11       Will the court reporter please swear in
12  the witness.
13           DALLAS BLAKE DE ATLEY,
14  having been first duly sworn by the Reporter to
15  tell the truth, the whole truth, and nothing but
16       the truth, testified as follows:
17                    -o-
18               EXAMINATION
19  BY ATTORNEY CURRY:
20  **Q.  Good morning.**
21  A.  Good morning.
22  **Q.  Please state your name and address for the**
23  **record.**
24  A.  My name is Dallas Blake De Atley.  My
25  address is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, that's in

Page 14

```
 1  morning and completed sometime around 3:00 in the
 2  afternoon.
 3      Q.  And were the people you met with
 4  Mr. Pilmer and Mr. Zeldin?
 5      A.  Yes, the two gentlemen sitting to my left
 6  today, I met with yesterday.
 7      Q.  Anyone else?
 8      A.  I don't believe so, no.
 9      Q.  And when did you speak with Mr. Knight?
10      A.  I spoke with Mr. Knight last week.
11      Q.  And was that on the phone or in person or
12  through some other means?
13      A.  I spoke with Mr. Knight on the phone.
14      Q.  How long was that call?
15      A.  I think that call was a few minutes.
16      Q.  Who all was on that call?
17      A.  I believe it was Mr. Knight and myself and
18  counsel to my left.  I don't recall who else was on
19  the call.
20      Q.  And what did you speak with Mr. Knight
21  about in your call with him?
22      A.  I asked Mr. Knight about an e-mail that he
23  had sent.
24      Q.  And what was your question to Mr. Knight?
25      A.  If I remember, I wanted to understand what
```

Page 15

```
 1   Mr. Knight had referred to in his e-mail about --
 2        Q.   Excellent exec visibility?
 3        A.   Yes, that was the phrase, yes.
 4        Q.   And what was Mr. Knight's response to you?
 5        A.   Mr. Knight believed that that was in
 6   reference to a conversation he had with Patrick
 7   Gates.
 8        Q.   Was Mr. Knight telling you that the exec
 9   visibility referred to Mr. Gates in that e-mail?
10        A.   Mr. Knight believed that Patrick Gates had
11   updated other people on the issue at hand.
12        Q.   I want to make sure I understand this.
13             You asked Mr. Knight about an e-mail in
14   which he had written about excellent exec
15   visibility, correct?
16        A.   If I remember correctly, the e-mail itself
17   was written by David Biderman.
18        Q.   I see.
19             So Mr. Knight hadn't written the -- the
20   phrase "excellent exec visibility"?
21        A.   I would have to look at the e-mail again
22   to see if that had been a quote Mr. Biderman made
23   of another e-mail Mr. Knight made.  I cannot
24   remember the exact syntax.
25        Q.   And who is Mr. Biderman?
```



Page 16

```
 1    A.   David Biderman is an engineer at Apple.
 2    Q.   Do you know his job title?
 3    A.   I do not know his exact job title.
 4    Q.   So in any event, regardless of who wrote
 5  the phrase "excellent exec visibility," is it true
 6  that you asked Mr. Knight about that e-mail and
 7  Mr. Knight indicated that what was being referred
 8  to was that Mr. Patrick Gates had spoken with
 9  executives at Apple?
10    A.   I don't know if Mr. Gates directly spoke
11  with executives or communicated with them via
12  e-mail or another method.
13    Q.   Regardless of the method of communication,
14  is it your understanding that in the e-mail that's
15  referring to excellent exec visibility, that is
16  referencing Mr. Knight's understanding that Patrick
17  Gates had spoken with or communicated with in some
18  form to executives at Apple?
19       ATTORNEY PILMER:  I'll object to the form.
20            But you can answer.
21       THE WITNESS:  It is my understanding that
22  Mr. Knight believed that Patrick Gates had
23  communicated with executives about the issue.
24       BY ATTORNEY CURRY:
25    Q.   Do you know which executives?
```



GRACE: DALLAS BLAKE DE ATLEY - HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY

Page 17

```
 1        A.   I do not know which specific executives
 2   Patrick may have been communicating with.
 3        Q.   Did you look at any documents in
 4   preparation for your deposition today?
 5        A.   I did review documents in preparation for
 6   my deposition today.
 7        Q.   Which documents?
 8        A.   I do not recall the specific names or
 9   identifiers of the documents themselves.
10        Q.   What do the documents that you reviewed
11   generally relate to?
12        A.   The documents, in general, were e-mails.
13        Q.   How many documents did you review in
14   preparation for your deposition today?
15        A.   I don't remember the exact number of
16   documents.  I know it was more than three, I think
17   less than ten, but I don't remember the exact
18   number.
19        Q.   And they were all e-mails?
20        A.   I believe most of the documents were
21   e-mails.  I don't know exactly which ones may not
22   have been an e-mail.
23        Q.   And what do the e-mails you refer to or
24   relate to that you reviewed in preparation for your
25   deposition today?
```



Page 100

```
 1   me just restart, then.
 2        Q.   There was a period of time, probably,
 3   what, June of 2013 when device certificates start
 4   expiring, correct?
 5        A.   I don't recall the original expiration
 6   dates that we were made aware of when we were
 7   investigating the FaceTime call failures in October
 8   of 2013.
 9        Q.   Okay.
10             Well, let's just jump to October 2013.  At
11   that time, you're saying that that was the first
12   time you understood that the expiration of device
13   certificates was causing FaceTime calls to fail,
14   correct?
15        A.   I believe that is the time when I
16   realized, yes, the expiration of the device
17   certificate was affecting FaceTime calls, yeah.
18        Q.   And as part of that investigation in
19   October of 2013, you also realized that the Apple
20   iPhone device CA was going to expire, and that was
21   going to cause a problem for FaceTime as well,
22   correct?
23        A.   I don't remember if that was the first
24   time we recognized that the iPhone device CA was
25   going to expire.  But it did come up during the
```



Page 101

```
 1   subsequent investigations into the FaceTime call
 2   failures.
 3        Q.   How long did those subsequent
 4   investigations take place after October of 2013?
 5        A.   The investigations into -- into which
 6   issue?
 7        Q.   The expiration of the Apple iPhone device
 8   CA.
 9        A.   Well, from that point in October until the
10   expiration itself occurred the next year, we were
11   discussing the expiration of the iPhone device CA.
12        Q.   Who was involved in those discussions?
13        A.   The primary discussions that I had were on
14   my team with a manager who reported to me named
15   Jacques Vidrine.
16        Q.   Who else?
17        A.   Another manager who reported to me was
18   Andrew Whalley.
19        Q.   W-h-a-l-l-e-y?
20        A.   Yes.
21        Q.   Who else?
22        A.   I believe we had conversations with Erik
23   Neuenschwander.  I do not --
24        ATTORNEY PILMER:  Spelled just like it sounds.
25        ATTORNEY CURRY:  I made that same joke like
```

GRACE: DALLAS BLAKE DE ATLEY - HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY

Page 105

1  would be about a year away from that point, when
2  the iPhone device CA would expire.
3      Q.  And you realized this, but who else
4  realized this in February of 2013 that the Apple
5  iPhone device CA certificate was going to expire in
6  April of 2014?
7      A.  I believe it was brought to our attention
8  by the PKI services team or an engineer reporting
9  to Erik Neuenschwander's team.
10     Q.  So what actual people had awareness at
11 that time in February 2013 that the Apple iPhone
12 device CA was going to expire?
13     A.  At that time it would have been myself and
14 Mr. Whalley and Mr. Vidrine and the engineers from
15 the PKI services team, and Erik Neuenschwander's
16 team.
17     Q.  What is Erik Neuenschwander's team?
18     A.  At that time he managed a team that
19 focused on privacy and product security.
20     Q.  At that time was Mr. Neuenschwander's team
21 all based out of Cupertino?
22     A.  I believe most of his team was based out
23 of Cupertino.  I don't know if all of them were
24 based out of Cupertino.
25     Q.  Who were the engineers at PKI services in



Page 169

```
 1      A.  Could you repeat your previous question as
 2  a result?
 3      Q.  I will, and I'll restate it.
 4          If you were to compile a list of the most
 5  responsive and most involved people in responding
 6  to the April 16th, 2014 Apple iPhone device CA
 7  expiration, who would be on your list?
 8      ATTORNEY PILMER:  Same objections, form and
 9  scope.
10      THE WITNESS:  If I were to compile a list of
11  the people who responded to the expiration of the
12  iPhone device CA in April of 2014, I would start
13  with myself, Jacques Vidrine, and Andrew Whalley.
14      BY ATTORNEY CURRY:
15      Q.  Anyone else?
16      A.  I would include Erik Neuenschwander.
17      Q.  You're just doing that to mess with the
18  court reporter.
19          Anyone else?
20      A.  At that --
21      ATTORNEY PILMER:  Same objections.
22      THE WITNESS:  -- point I would have to go look
23  at my communications regarding that issue and see
24  whom else I was communicating with.
25      ATTORNEY CURRY:  Okay.
```



Page 191

1  THE WITNESS:  I don't recall other features
2  that I've worked with Patrick on in particular.
3  BY ATTORNEY CURRY:
4  Q.  Did you ever discuss the certificates
5  expiring with Mr. Gates?
6  A.  If I recall, we had a conversation around
7  the time the iPhone device CA expired in April of
8  2014.
9  Q.  What was the nature of that conversation
10 that you had with Mr. Gates?
11 A.  If I remember, I wanted to double-check
12 that the FaceTime call failures that were being
13 reported at that time were related to users who had
14 not upgraded to newer versions of iOS, and that we
15 weren't looking at a different issue we weren't
16 aware of.
17 Q.  And how did you communicate with Mr. Gates
18 for that discussion?
19 A.  I don't recall if that conversation was
20 specifically in e-mail or iMessage.
21 Q.  And what did Mr. Gates respond to you?
22 A.  I believe he confirmed that it was not a
23 different issue than the one we had expected.
24 Q.  Do you have a list of deposition topics,
25 can you find that in your pile?



Page 231

1    A.   Yes.
2    Q.   Can you tell us, please, who those
3  executives were and what you understand that to
4  mean?
5    A.   In the context of our conversation with
6  Kurt, he was referring to a conversation that
7  Patrick Gates had with Craig Federighi, Eddy Cue
8  and Greg Joswiak.
9    Q.   And are those three gentlemen the
10 executives that you understood that e-mail to be
11 referring to?
12   A.   Based on my conversation with Kurt, yes.
13   ATTORNEY PILMER:  Okay, I have no further
14 questions.
15                        -o-
16                     EXAMINATION
17   BY ATTORNEY CURRY:
18   Q.   Did Mr. Knight tell you what was discussed
19 between Patrick Gates and Craig Federighi, Eddy Cue
20 and Joswiak?
21   A.   No, I don't believe he did.
22   Q.   Did you ask him?
23   A.   I don't recall asking him, no.
24   ATTORNEY CURRY:  Okay.  Subject to my other
25 comments about leaving the deposition open, I have

```
 1              REPORTER'S CERTIFICATE
 2     I certify that the foregoing proceedings in the
 3   within-entitled cause were reported at the time and
 4   place therein named; that said proceedings were
 5   reported by me, a duly Certified Shorthand Reporter
 6   of the State of California, and were thereafter
 7   transcribed into typewriting
 8          I further certify that I am not of counsel
 9   or attorney for either or any of the parties to
10   said cause of action, nor in any way interested in
11   the outcome of the cause named in said cause of
12   action.
13     IN WITNESS WHEREOF, I have hereunto set my hand
14   this 23rd day of April, 2018.
15     Witness did not request to read and sign.
16
17
18          [signature: Lucy Carrillo-Grubbs]
19          _____
             LUCY CARRILLO-GRUBBS, CRP, CSR
20           Certified Shorthand Reporter
             Certificate No. 6766
21           Dallas: 69
22
23
24
25
```

**233**