ALLAN STEYER (State Bar No. 100318)
JILL M. MANNING (State Bar No. 178849)
D. SCOTT MACRAE (State Bar No. 104663)
**STEYER LOWENTHAL BOODROOKAS**
  **ALVAREZ & SMITH LLP**
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 424-3400
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

DANIEL L. WARSHAW (State Bar No. 185365)
ALEXANDER L. SIMON (State Bar No. 305734)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
dwarshaw@pswlaw.com
asimon@pswlaw.com

[Additional counsel listed on signature page]

*Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE AND KEN POTTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:17-cv-00551-LHK<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiffs submit the following proposed findings of fact and conclusions of law.

**FINDINGS OF FACT**

**1.1    iPhone Background**

1. Apple Inc. ("Apple") is a California corporation.
2. Apple designs, markets and sells iPhone devices.
3. Apple released the iPhone 4 device on June 24, 2010.
4. Apple released the iPhone 4S device on October 14, 2011.
5. iPhone devices operate through the iOS operating system and have an iOS version preinstalled on them, and iPhone users may install newer iOS versions and updates thereto.
6. Apple released iOS 6 on September 19, 2012.
7. Apple released iOS 7 on September 18, 2013.

**1.2    iOS Security**

1. iOS uses digital certificates, which help ensure security for transmitted data.
2. Certificates are designed with expiration dates for security reasons.
3. When a certificate expires, services that check its expiration date will fail.
4. Apple designed FaceTime to use the iPhone Device CA (the "Certificate").

**1.3    FaceTime**

8. The iPhone 4 was the first iPhone device to offer FaceTime, a conferencing feature that allows iPhone users to engage in real-time video and audio calls.
9. FaceTime has been widely used since its introduction in 2010, with an estimated 15 to 20 million FaceTime calls daily in 2013.
10. Apple prominently promoted FaceTime in its iPhone 4 advertising campaign.
11. FaceTime was one of the most important features driving customers' decision to purchase iPhone 4 and 4S devices.
12. Initially, FaceTime connected real-time video and audio calls in one of two ways: (1) the peer-to-peer method ("P2P"), or (2) the relay method.
13. The P2P method connected FaceTime calls by directly connecting users' devices; the relay method connected FaceTime calls through servers that relayed data to the devices.

1

14. The two methods occurred in parallel, although the P2P method was the default.

15. In 2012, roughly 80% of FaceTime calls were connected through the P2P method.

16. FaceTime calls connected through the P2P method had no cost to Apple.

17. FaceTime calls connected through the relay method required Apple to pay Akamai Technologies ("Akamai") for use of its servers, which relayed the calls.

**1.4   Events Preceding The FaceTime Break**

18. To avoid paying royalties, Apple eliminated the peer-to-peer method for FaceTime calls and instead used only the relay method.

19. Beginning in June 2013, all FaceTime calls on devices using iOS 6 or earlier iOS versions connected via the relay method 100% of the time, substantially increasing Apple's fees to use Akamai's relay servers.

20. On January 15, 2013, Apple's fees to Akamai were ███████.

21. By April 1, 2013, Apple's fees to Akamai were ███████.

22. In early 2013, Apple began to explore options for decreasing relay usage.

23. In March 2013, Apple's stated goal was to ████████████████████████████████████████████████████████████████.

24. In early 2013, Apple learned that the Certificate would expire on April 16, 2014.

25. Apple's "standard practice" and industry protocol mandated re-issuing digital certificates prior to their expiration, including the standard "X.509" certificate policy.

26. Apple's Public Key Infrastructure ("PKI") services team "issue[s] and manage[s] digital certificates for Apple," and checks the expiration dates of digital certificates.

27. The PKI services team determines whether a certificate is still needed and helps determine whether to create "a new version of that certificate when their certificate expires."

28. In April 2013, Apple's PKI team identified a need to determine what may break when the Certificate would expire on April 16, 2014.

29. Apple's PKI services team recommended Apple "determine the plan for renewing th[e] [Certificate] before its expiration."

30. By October 2013, Apple's PKI team was aware that FaceTime, which checked the expiration date of the Certificate, would fail when the Certificate expired.

31. Apple referred to the pending Certificate expiration as a "time bomb."

32. Apple could have resolved the Certificate expiration issue for iOS 6 users by "changing the [FaceTime] code."

33. Apple also could have "created new certificates for at least portions of the chain and used those with updated expiration dates" to resolve the issue for iOS 6 users.

34. Apple developed a fix to avoid a FaceTime outage only in iOS 7, not in earlier iOS versions.

35. On November 14, 2013, Apple released iOS 7.0.4, in which Apple programmed FaceTime to ignore the Certificate expiration date, such that FaceTime would not fail.

36. iOS 7 caused performance degradation and functionality impairment on iPhone 4 and 4S devices, including issues with the Wi-Fi and Bluetooth controller, reduced battery life, lagged application functionality, a poor user interface, and system crashes. The impairments were measurable, substantial and widely reported, and were tracked and documented by Apple.

37. Users who transitioned to iOS 7 could not revert back to earlier versions of iOS.

38. To avoid impairing their device's functionality, millions of iPhone 4 and 4s users resisted migrating to iOS 7 after its release, such that Apple's fees to Akamai remained high.

**1.5   The FaceTime Break**

39. At 22:54:45 GMT on April 16, 2014, the Certificate expired, resulting in the inability to use FaceTime for all of the millions of Apple customers whose iPhone 4 and 4s devices were operating on a pre-iOS 7 version of iOS (the "Break").

40. By allowing the Certificate to expire on April 16, 2014, Apple intentionally deviated from its "standard practice" of re-issuing digital certificates prior to their expiration.

41. In his notes from April 17, 2014, Apple engineer Dallas DeAtley wrote, "iPhone Device CA expired, hilarity ensues."

42. Apple decided "to issue a new Sub-CA to iMessage to keep it working."

3

43. An Apple engineer stated the day of the Break that iPhone 4 and 4S users with iOS 6 or earlier were "basically screwed … and they represented ▮ of our relay traffic."

44. The Break was the culmination of Apple's plan to "▮▮▮▮▮▮▮▮▮▮▮▮" by "forc[ing] folks with older devices to update to iOS7."

45. Following the Break, Apple's relay usage fees significantly decreased and Apple engineers celebrated the immediate, sharp drop in relay usage planned and achieved by Apple.

46. Following the Break, iPhone 4 and 4s users operating on iOS 6 or earlier operating systems had three options: (1) continue using their device without the ability to use FaceTime; (2) transition to iOS 7, which would subject their device to significantly impaired functionality; or (3) purchase a new Apple device on which FaceTime would work.

47. Numerous Apple customers reacted to the Break by contacting Apple to inquire and complain about their inability to make FaceTime calls, and internet searches regarding the Break spiked and calls to Apple customer care increased tenfold shortly after April 16, 2014.

48. In response to an email sent by an Apple Engineering Manager to his team two months after the Break stating, "I understand we did something in April around iOS 6 to reduce relay utilization. Does this ring a bell for any of you? Got details?", an Apple engineer stated: "iOS6 was the biggest user of relay bandwidth. iOS7 uses a lot less. We broke all iOS6, and the only way to get FaceTime working again is to upgrade to iOS7."

49. The Apple executives who oversaw the Break and had great "visibility" over the situation issued a directive that Apple falsely blame the Break on a "bug".

### 1.6 The Market for Used Smartphones

50. The market for used smartphones is robust, developed, and competitive.

51. Over 81.3 million used smartphones were sold in 2015, and the used smartphones market is forecasted to reach 222.6 million units in 2020.

52. The market value of used phones can be measured using sales price data for phones sold in the competitive market for used smartphones.

53. Resellers, carriers and cellular phone retailers provide this information to customers to help them make informed trade-in and resale decisions.

54. The value of a used smartphone on these platforms is typically determined through a series of questions that assess the characteristics of the phone that impact its value.

**1.7  Damages**

55. The FaceTime Break decreased used iPhone 4 and 4S prices by 11.45% to 23.45%.

56. The mean price of iPhone 4 and iPhone 4S devices sold to the used market during the month prior to the FaceTime Break was between $89.88 and $160.42.

57. The Class is comprised of at least ▮▮▮ iPhone 4 and 4S devices.

58. Per device diminution in value is estimated at between $15.44 and $21.08.

59. Class-wide diminution in value is estimated at between $▮▮▮.

## CONCLUSIONS OF LAW

**I.   PLAINTIFFS HAVE ESTABLISHED ARTICLE III STANDING**

1. The evidence establishes economic injury under the UCL and therefore injury in fact. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 324 (2011) (stating "the UCL's standing requirements appear to be more stringent than the federal standing requirements" as "economic injury is but one among many types of injury in fact" (citation omitted)).  The evidence also establishes that Apple's intentional conduct caused Plaintiffs' injuries and that restitution will redress those injuries.  Plaintiffs therefore have standing under Article III.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**II.  PLAINTIFFS HAVE ESTABLISHED STATUTORY UCL STANDING**

2. To establish statutory standing under the UCL, Plaintiffs must demonstrate the loss of money or property "as a result of [] unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset*, 51 Cal. 4th 310, 330.  A plaintiff can demonstrate "economic injury from unfair competition" by establishing intentional conduct that caused some diminution of value to a plaintiff's device. *Donohue v. Apple Inc.*, 871 F. Supp. 2d 913, 919 (N.D. Cal. 2012).

3. Apple's intentional conduct caused Plaintiffs to suffer a permanent loss of FaceTime on their devices on April 16, 2014, and in turn a significant diminution in value to their devices. Plaintiffs have thus established economic injury and have standing under the UCL.

### III.    PLAINTIFFS HAVE ESTABLISHED UNFAIRNESS UNDER THE UCL

4. The UCL creates a cause of action for unfair business practices. *Lozano v. AT&T Wireless Servs.*, Inc., 504 F.3d 718, 731 (9th Cir. 2007). The UCL's coverage is "sweeping, and its standard for wrongful business conduct is intentionally broad." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 810 (N.D. Cal. 2011) (citation and quotations omitted). Under the UCL, "a practice may be deemed unfair even if not specifically proscribed by some other law." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015).

5. The "balancing test" to determine unfairness under the UCL "involves an examination of [a business practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013). Unfairness is established by demonstrating the business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious" to consumers. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016).

6. The Break was "substantially injurious" to millions of Apple iPhone 4 and 4S users, as it significantly decreased the value of their devices. Further, Apple's conduct, including but not limited to, ignoring entreaties from its employees to consider the serious harm the Break would cause, mocking the millions of Break victims, then lying about the Break, was immoral, unethical, oppressive, unscrupulous, and unfair. Apple's sole justification for the Break was to reduce its relay costs to boost its profits. Apple has presented no evidence demonstrating its conduct "has any utility, much less that its utility outweighs the gravity of the harm to Plaintiffs." *Fraley*, 830 F. Supp. 2d at 813. *See also Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 994 (E.D. Cal. 2018) (affirming jury finding of unfairness where "the gravity of the harm was quite large . . . [and] Defendants did not argue for the utility of any of their conduct"). Plaintiffs have thus established unfairness under the UCL.

## IV.   PLAINTIFFS HAVE ESTABLISHED RESTITUTION UNDER THE UCL

7.   Restitution is available under the UCL. *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013). "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). "Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 1148; *see also In re Toyota Motor Corp. Unintended Marketing, Sales Practices, and Product Liability Litig.*, 754 F. Supp. 2d 1145, 1166 (C.D. Cal. 2010) ("[U]nder a 'benefit of the bargain' theory, Plaintiffs must allege overpayment, loss in value, or loss of usefulness." (citation and quotations omitted)).

8.   Because Apple accepted full payment for Plaintiffs' fully-functional devices and later permanently and intentionally broke FaceTime, Plaintiffs are entitled to an amount of those "profits unfairly obtained" at purchase that is equal to the diminution in value to their devices caused by Apple's unfair misconduct. *See Korea Supply*, 29 Cal. 4th at 1148.

## V.   PLAINTIFFS' DAMAGES MODEL PROPERLY MEASURES RESTITUTION UNDER THE UCL

9.   The UCL requires "only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd and remanded on other grounds*, 138 S. Ct. 2675 (2018). A proper UCL damages model measures damages attributable to a plaintiff's theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

10.   Plaintiffs' damages model properly calculates restitution under the UCL because it measures the diminution in value caused by the FaceTime Break as reflected by the decrease in the resale price of Plaintiffs' and Class Members' iPhone 4 and 4S devices.

Date:  March 6, 2020         STEYER LOWENTHAL BOODROOKAS
                             ALVAREZ & SMITH LLP


                             By:   */s/ Jill M. Manning*
                                   Jill M. Manning

7

Allan Steyer (State Bar No. 100318)
Jill M. Manning (State Bar No. 178849)
D. Scott Macrae (State Bar No. 104663)
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 424-3400
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

PEARSON, SIMON & WARSHAW, LLP
Daniel L. Warshaw (State Bar No. 185365)
Alexander L. Simon (State Bar No. 305734)
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
dwarshaw@pswlaw.com
asimon@pswlaw.com

FRIEDMAN OSTER & TEJTEL PLLC
David F.E. Tejtel (*pro hac vice*)
New York State Bar No. 4760123
493 Bedford Center Road, Suite 2D
Bedford Hills, NY 10507
Telephone: (646) 661-5881
dtejtel@fotpllc.com

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*pro hac vice*)
Jason D. Cassady (*pro hac vice*)
John Austin Curry (*pro hac vice*)
2121 N. Pearl Street, 12th Floor
Dallas, Texas 75201
Telephone: (214) 888-4848
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com

*Counsel for Plaintiffs and the Class*