JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

EUGENE NOVIKOV, SBN 257849
  enovikov@durietangri.com
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:   415.362.6666

*Attorneys For Defendant* APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 5:17-CV-00551-LHK (NC)<br><br>**DEFENDANT APPLE INC.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Ctrm:   8 – 4th Floor<br>Judge:   Honorable Lucy H. Koh |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to the Court's Pretrial Conference Order (Dkt. 374) Defendant Apple Inc. ("Apple") respectfully submits its first Proposed Findings of Fact and Conclusions of Law concerning Plaintiffs' claim for restitution under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  By submitting these Proposed Findings of Fact and Conclusions of Law, Apple does not admit the truth of any of Plaintiffs' factual allegations described here, as Plaintiffs bear the burden of proof at trial.  Apple retains all rights to supplement, modify, and expand upon these in its second proposed findings of fact and conclusions of law to be submitted after trial pursuant to the Court's Pretrial Conference Order.  *See* Dkt. 374 at 2.

### I. FINDINGS OF FACT

1. Apple is a corporation organized under the laws of the State of California, with its headquarters in Cupertino, California.

2. iPhone was designed and sold by Apple.  It was first released in 2007.  The operating system of iPhone is called iOS.  During development of the original iOS in 2007, Apple set expiration dates for certificates used in the iOS system, including an expiration date of April 16, 2014 for a certificate called the iPhone Device Sub-CA Certificate.

3. Apple released iPhone 4 on June 24, 2010.  iPhone 4 was the first iPhone device to offer FaceTime, which enabled iPhone users to make video calls.  When FaceTime launched, it used the iPhone Device Sub-CA certificate to verify that a bona fide iPhone user was on the other side of the call being connected.  Apple released iPhone 4S on October 14, 2011.

4. Because FaceTime used the iPhone Device Sub-CA certificate as part of the process of connecting calls, and because that certificate was set to expire on April 16, 2014, FaceTime would have stopped working on that date absent a fix.

5. On September 18, 2013, Apple released iOS 7.  Apple provided iOS 7 free of charge to users of iPhone 4, iPhone 4S, and other models.  iOS 7 provided numerous additional functions and enhancements. On November 14, 2013, Apple released iOS 7.0.4, which fixed the problem that—if not corrected—would have caused interruption to FaceTime when the iPhone Device Sub-CA certificate eventually expired.  The fix allowed FaceTime to continue working without interruption.

6.      On April 16, 2014, the iPhone Device Sub-CA certificate expired.  When the iPhone Device Sub-CA certificate expired on April 16, 2014, FaceTime stopped working for owners of Apple's iPhone 4 and iPhone 4S devices who had not taken advantage of the free upgrade to iOS 7 and were still running Apple's iOS 6 or an earlier version of iOS.

7.      Users who had previously updated the operating system on their iPhone devices to iOS 7.0.4 or later did not experience any FaceTime interruption.  Users of iPhone 4 and iPhone 4S who experienced a FaceTime interruption were able to immediately download an update to the then-current version of iOS 7, which restored FaceTime functionality to their devices.

8.      Plaintiffs Christina Grace and Ken Potter ("Plaintiffs") are residents of California.  Both Plaintiffs declined the free option to upgrade their iPhone 4 or 4S devices to iOS 7.

9.      Plaintiffs assert that Apple intentionally caused the FaceTime feature to stop working on Plaintiffs' and Class Members' iPhone 4 and iPhone 4S devices and that this constituted an "unfair" business practice in violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200.

10.     Plaintiffs have offered no evidence to show that Apple intentionally caused FaceTime to stop functioning on their iPhone 4 and 4S devices or on any class members' iPhone 4 and 4S devices.  To the contrary, the evidence demonstrates that Apple diligently worked to avoid and ultimately provide a solution to the FaceTime outage (contained in the free-of-charge iOS 7 update).

11.     Plaintiffs have also offered no evidence that iOS 7 was incompatible with their iPhone 4 and 4S devices or with any of class members' iPhone 4 and 4S devices.

12.     Moreover, iPhone customers, including Plaintiffs here, were made aware that iOS-reliant functions like FaceTime may not be available indefinitely for the working life of their iPhones and that Apple may modify and update the software at Apple's discretion, including the update to the lapse in FaceTime for users running its older iOS 6 software.

13.     Plaintiffs have also offered no evidence to show that Apple's conduct here was on balance "unfair" when considering Apple's justifications for the conduct under the circumstances.  Plaintiffs have also offered no evidence to show that the gravity of the harm to them outweighs those

justifications.  Plaintiffs have also offered no evidence to show that they suffered any loss, or that they are entitled to restitution of any funds in Apple's possession in which they have a possessory interest.

14. After considering the evidence admitted at trial, the Court finds that Plaintiffs failed to prove by a preponderance of the evidence that Apple's conduct was unfair such that Apple may be held liable for unfair business practices pursuant to the UCL.  Plaintiffs also failed to prove by a preponderance of the evidence that Apple violated any laws or offended any public policy tethered to specific constitutional, statutory, or regulatory provisions.  Moreover, after weighing the utility of Apple's conduct against the gravity of the alleged harm to the alleged victims, the Court finds that Plaintiffs failed to prove by a preponderance of the evidence that Apple engaged in immoral, unethical, oppressive, or unscrupulous business practices.  Plaintiffs also failed to prove by a preponderance of the evidence that the consumer injury is substantial, and that any harm here is not outweighed by the countervailing benefits.  Finally, Plaintiffs have offered no evidence to show they are entitled to restitution.

15. Apple has also presented uncontroverted evidence that Plaintiffs waived any right to complain and/or are estopped from complaining about the need to upgrade their iOS software in order to avoid an interruption to FaceTime.  All Plaintiffs agreed to the iOS 6 Software License Agreement, in which they acknowledged that iOS software may be updated or replaced, that updates may not include all existing functions, and that services may be interrupted.  In addition, the evidence compels the conclusion that Apple acted in good faith by diligently working to avoid and provide a solution to the FaceTime interruption issue.

## II.     CONCLUSIONS OF LAW

1. California's UCL prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.  Because a "UCL action is equitable in nature," the Court, rather than a jury, must decide whether there was a UCL violation. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  As such, under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013).  In the instant case, the

Court previously declined to certify an injunctive class under Rule 23(b)(2), and as result, Plaintiffs may seek only restitution under the UCL.

2.  The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Each "prong" of the UCL provides a "separate and distinct theory of liability." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Plaintiffs here proceed only under the unfair prong of the UCL.  *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2019 WL 3944988, at *10 (N.D. Cal. Aug. 21, 2019).

3.  While the precise definition of "unfair" in the consumer context is somewhat unsettled, the conduct at issue must either (1) "offend [ ] an established public policy or [be] immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" (*Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1268 (2006)); (2) be "tethered to specific constitutional, statutory or regulatory provisions" (*id.* at 1271); or (3) cause "substantial" consumer injury that "is not outweighed by countervailing benefits" and which consumers could themselves not "have reasonably avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006).

4.  Plaintiffs "rely upon the [third] 'balancing test.'" *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *14–15 (N.D. Cal. July 28, 2017).  Under the balancing inquiry, "[t]he test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).  The Court therefore will use that framework to analyze the evidence.

5.  Plaintiffs have failed to meet their burden that Apple's conduct, on balance, was unfair to impose liability under the UCL as an "unfair business" practice.  As a result, Plaintiffs also have failed to meet their burden to show they are entitled to any restitution.

6.  Courts refuse to impose liability for "unfairness" where the defendant offers "reasons" to show its conduct was "justif[ied]" by legitimate concerns.  *S. Bay Chevrolet*, 72 Cal. App. 4th at 886; *accord Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 461 F. Supp. 2d 1188, 1195–97 (C.D. Cal. 2006), *aff'd*, 525 F.3d 822 (9th Cir. 2008) (practice not unfair given "legitimate business

reason[s]" for it); *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 649–50 (2008) (holding that "evidence that any injury to some consumers was offset by countervailing benefits to consumers and competition" precluded UCL unfairness claim).

7. Apple's conduct here was "justif[ied]" by "legitimate business reason[s]": Apple presented evidence that delivering a fix for the expiration of a hard-coded security certificate programmed into iPhone as part of a software update was the most practical solution that did not pose risks to network security. *Family Home*, 461 F. Supp. 2d at 1195 (holding that a practice was not unfair where it was "the only feasible way of ensuring that similar loans are not purchased in the future"); *Puentes*, 160 Cal. App. 4th at 649–50 (legitimate "market" realities justified allegedly unfair practice); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1176 (2002) (alleged unfair charge "not an unreasonable amount to protect the real estate security from damage or deterioration" in larger business scheme). The evidence confirmed that Apple's iOS network's security depends on a one-way, one-device system for updates that would make Plaintiffs' preferred method (i.e., creating a special iOS 6 release for iPhone 4 and 4S users who do not want to upgrade to iOS 7) unworkable from a security perspective because it would increase the risk to Apple's consumers of security breaches or large-scale network interruptions. That interest in security surely is substantial. Plaintiffs offered nothing to dispute it.

8. Moreover, Apple's conduct (and Apple's iOS update process generally) benefits all its consumers by reducing security risks and improving performance network-wide. Courts routinely consider such "benefit[s]" to consumers or stakeholders from the alleged unfair practice. *E.g.*, *In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1418–19 (2012) ("The installment fee is not unfair . . . . any harm in paying the installment fee is outweighed by the benefit to the insured of being able to pay premiums in installments instead of in large lump-sum payments."); *Family Home*, 461 F. Supp. 2d at 1197 (considering "benefits" to public from practice); *Puentes*, 160 Cal. App. 4th at 648–49 (granting summary judgment on UCL unfairness claim in part given "practice [at issue] benefited many consumers").

9. Providing such fixes as part of software updates is common industry practice. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) (considering industry standards in fairness

calculus); *Puentes*, 160 Cal. App. 4th at 648 (practice not unfair where "lenders nationwide uniformly employ the same practice"). Apple in fact *exceeds* the industry standard. Apple's hardware often outlasts it competitors in terms of compatibility with current software; notably, iPhone 4 and 4S devices have to date outlasted any phone on the market in this respect.

10. No evidence supports Plaintiffs' assertion that Apple had an improper "motive" for its conduct. *S. Bay Chevrolet*, 72 Cal. App. 4th at 886 (defendant's motive informs UCL unfairness analysis). Apple not only alerted consumers about the limitations on the iOS software and its potential impact on FaceTime but also provided a solution free of charge.

11. No evidence supports the notion that Apple intentionally broke FaceTime for any reason. No evidence supports Plaintiffs' theory that Apple wanted customers to suffer a FaceTime outage or to have an inferior experience with a new iOS. Moreover, although Plaintiffs' theory rests on the assumption that the performance of iOS 7 was inferior to that of iOS 6 on their devices (Dkt. 65 at 18), Plaintiffs have failed to adduce evidence that all class members experienced any such alleged performance issues. For this reason, Plaintiffs have also failed to prove the injury-in-fact of every class member, as Article III requires. *See Ramirez v. TransUnion LLC*, No. 17-17244, 2020 WL 946973, at *8 (9th Cir. Feb. 27, 2020) (holding "that each member of a class certified under Rule 23 must satisfy the bare minimum of Article III standing at the final judgment stage of a class action in order to recover monetary damages in federal court").

12. Plaintiffs moreover were notified in advance of the possibility that future updates would be necessary to continue using functions like FaceTime. The UCL "may not be violated under circumstances where, as here, both [parties] know, understand, agree and expect" the limitations in the iOS software. *S. Bay Chevrolet*, 72 Cal. App. 4th at 888. Here, too, "substantial evidence indicate[s that Apple and Plaintiffs] entered into . . . agreements knowing, understanding, agreeing and expecting that" their iPhones and the iOS software which controls FaceTime and other iPhone functions would not work indefinitely for the working life of the iPhone hardware. *Id*. Apple (via the Software License Agreement) had cautioned consumers that it could not guarantee that all "iOS"-reliant functions like FaceTime would keep working indefinitely. The first page of the Software License Agreement makes clear that "Apple, at its discretion, may make available future iOS Software Updates for [Plaintiffs']

iOS Device" and that the "'Original iOS Software' [on Plaintiffs' iOS device] . . . may be updated or replaced by feature enhancements" through later "'iOS Software Updates.'"  Dkt. 35-1 ¶ 1(a)-(b).  It also notes that "FaceTime . . . may not be available" at all times.  *Id*. ¶ 4(d).  That Apple provided for precisely that "upgrade" to fix the lapse in FaceTime thus cannot be an "unfair" practice.

13. In sum, the evidence admitted at trial shows that Apple's conduct was motivated by legitimate, independent business reasons, not any kind of plot to undermine FaceTime (and iPhone products) for consumers by intentionally having FaceTime fail.

14. On the other hand, the "harm" to the Plaintiffs here is nonexistent.[1]  Plaintiffs do not dispute that the remedy for the FaceTime lapse was offered free of charge.  And they have offered no evidence that updating to iOS 7 reduced the value of their devices or caused them any other kind of "harm."  "Because [Plaintiffs] reasonably could have avoided the alleged injury," there is no "claim under the unfairness prong of the UCL."  *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 598 (2009) ("the alleged injury here, namely, the imposition of successive late fees for successive months, reasonably could have been avoided had [plaintiff] made his monthly payments timely"); *In re Ins. Installment Fee Cases*, 211 Cal. App. 4th at 1419 ("[A]ny policyholder can avoid the 'harm' by opting to pay the premium in a lump sum rather than in installments.").

15. Finally, the evidence supports Apple's equitable defenses of waiver, estoppel, and good faith.  *See Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 179–81 (2000) (recognizing that "good faith, waiver, and estoppel" may be asserted in defense of a UCL claim).  Plaintiffs waived or are estopped from pursuing their claim because they agreed to the iOS 6 Software License Agreement, providing that iOS software may be updated or replaced, that updates may not include all existing functions, and that services may be interrupted.  Moreover, Apple acted in good faith by diligently working to avoid and provide a solution to the FaceTime interruption issue.

---

[1] That is particularly true with respect to the named Plaintiffs.  Christina Grace admitted that she did not know about the certificate-related FaceTime issue with her iPhone 4 device before being asked by Plaintiffs' lawyers to join this lawsuit.  After April 16, 2014, Ken Potter actually updated his iPhone to iOS 7.1.1, which had FaceTime functionality.  *See Donohue v. Apple, Inc*., 871 F. Supp. 2d 913, 921 (N.D. Cal. 2012) ("The court remains extremely skeptical about plaintiff's ability to prove diminution in value damages, particularly for purchasers of the iPhone 3G, 3GS and 4G for whom Apple's software update 'fixed' the alleged defect.").

16.     Plaintiffs' theory of liability at bottom would make Apple a guarantor for the iOS software functions (like FaceTime) indefinitely without allowing Apple to issue the very software updates necessary to maintain the usability of such functions.  That would be *against* public policy and would reduce benefits to consumers or competition by allowing plaintiffs' attorneys to force courts to police technology companies' routine decisions concerning their service, and thereby interfere with the pace of innovation.

Dated:     March 6, 2020            GIBSON, DUNN & CRUTCHER LLP


                                    By:     */s/ Joshua H. Lerner*
                                            Joshua H. Lerner

                                    *Attorneys for Defendant* APPLE INC.