ALLAN STEYER (Bar No. 100318)
JILL M. MANNING (Bar No. 178849)
D. SCOTT MACRAE (Bar No. 104663)
**STEYER LOWENTHAL BOODROOKAS**
  **ALVAREZ & SMITH LLP**
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 424-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

CLIFFORD H. PEARSON (Bar. No. 108523)
DANIEL L. WARSHAW (Bar No. 185365)
THOMAS J. NOLAN (Bar No. 66992)
ALEXANDER L. SIMON (Bar No. 305734)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
asimon@pswlaw.com

*Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>APPLE INC.,<br><br>          Defendant. | CASE NO. 5:17-cv-00551-LHK-NC<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 8, 4th Floor |

1      TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on September 3, 2020, at 1:30 p.m., or as soon thereafter as

3  the matter may be heard in the Courtroom of the Honorable Lucy H. Koh, United States District

4  Court, Northern District of California, San Jose Division, 280 South 1st Street, San Jose, CA 95113,

5  Plaintiffs Christina Grace and Ken Potter ("Plaintiffs") will and hereby do move the Court, pursuant

6  to Federal Rule of Civil Procedure 23(e), for the entry of an Order:

7      1.      Preliminarily approving the Settlement Agreement between Plaintiffs and Defendant

8  Apple Inc. ("Apple");

9      2.      Approving the form, manner, and content of the notice for the proposed settlement

10 to the Class;

11     3.      Appointing Epiq Systems, Inc. as the Settlement Administrator;

12     4.      Appointing Jill M. Manning, Daniel L. Warshaw, David F.E. Tejtel, and John Austin

13 Curry as Class Counsel on behalf of their firms;

14     5.      Setting a Fairness Hearing date and briefing schedule for final approval of the

15 Settlement and consideration of Class Counsel's fee application; and

16     6.      Finding Apple has started the process of complying with 28 U.S.C. § 1715(b).

17     The grounds for this motion are that the proposed settlement is within the necessary range

18 of reasonableness to justify granting preliminary approval pursuant to Rule 23(e).  This motion is

19 based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement,

20 the Memorandum of Points and Authorities, the Declaration of Daniel L. Warshaw filed herewith,

21 the pleading and papers on file in this action, and such oral argument and documentary evidence as

22 may be presented at the hearing on this motion.

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ..................................................................................................2

    A.    Plaintiffs' Claims ....................................................................................2

    B.    Procedural History .................................................................................2

    C.    Mediation and Settlement .....................................................................3

    D.    Monetary Remedies ..............................................................................4

III.  SUMMARY OF THE SETTLEMENT .................................................................4

    A.    Monetary Relief .....................................................................................5

    B.    Narrowly Tailored Release ....................................................................6

    C.    Cost of Settlement Administration and Class Notice ............................6

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .................7

    A.    Standard for Preliminary Approval .......................................................7

    B.    The Settlement Provides Substantial Relief to the Class and is Well Within the Range of Reasonableness .................................................................8

          1.    The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation .................................9

          2.    The Amount Offered in Settlement ...........................................10

          3.    The Risk of Maintaining Class Action Status Through Trial ......................12

          4.    The Extent of Discovery Completed and the Stage of the Proceedings ...........................................13

          5.    The Experience and Views of Counsel .......................................15

          6.    The Presence of a Government Participant .................................16

          7.    The Reaction of the Class Members to the Proposed Settlement .................16

          8.    Other Factors .............................................................................16

          9.    Comparable Cases ......................................................................17

    C.    The Rule 23(e)(2) Factors Are Met .......................................................18

          1.    The Class Representatives and Class Counsel have Vigorously Represented the Class ..........................................18

930238.2                        i                  Case No. 5:17-cv-00551-LHK-NC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2.   The Class Representatives' Interests are Aligned with and are Not Antagonistic to the Other Class Members' Interests.....................................19

3.   The Settlement was Negotiated at Arm's-Length ......................................19

4.   The Relief Provided for the Class is Adequate. ...........................................19

V.   BECAUSE THE COURT ALREADY CERTIFIED THE CLASS, IT NEED NOT UNDERTAKE A RULE 23 ANALYSIS ...............................................................20

VI.   THE SETTLEMENT PROVIDES PROPER NOTICE TO THE CLASS .........................20

VII.   ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS.......................................21

1.   "Percentage-of-the-Fund" Method ..............................................................22

2.   Lodestar Cross-Check ..................................................................................22

3.   Incentive Awards.........................................................................................23

VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE...............24

IX.   CONCLUSION .........................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Amchem Prod., Inc. v. Windsor*,
5
    521 U.S. 591 (1997) ............................................................................................. 20

6

*In re Anthem, Inc. Data Breach Litig.*,
7
    327 F.R.D. 299 (N.D. Cal. 2018) ................................................................... 12, 15

8

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............... 23

9

*Arelvarez v. Farmers Ins. Exch.*,
10
    No. 3:14-CV-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ........... 23

11

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ......................................................................... 23

12

*Betancourt v. Advantage Human Resourcing, Inc.*,
13
    No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016)..................... 12

14

*In re Bluetooth Headset Prod. Liab. Litig.*,
15
    654 F.3d 935 (9th Cir. 2011)................................................................................. 22

16

*In Re Carrier IQ, Inc. Consumer Privacy Litig.*,
    Case No. 3:12-md-02330-EMC (N.D. Cal.) .......................................................... 17

17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
18
    2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ......................................................... 22

19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
20
    361 F.3d 566 (9th Cir. 2004)............................................................................ 7, 8

21

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)......................................................................... 7, 15

22

*Dickey v. Advanced Micro Devices, Inc.*,
23
    No. 15-CV-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) ................. 11

24

*Glass v. UBS Fin. Servs., Inc.*,
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............... 10, 16
25

26

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)............... 11

27

*Gross v. Symantec Corp.*,
28
    No. 3:12-CV-00154-CRB, 2014 WL 12641996 (N.D. Cal. Mar. 21, 2014) ......... 11

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................ 8, 10

*Hendricks v. Starkist Co.*,
    No. 13- 00729, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ............................. 21

*Hickcox-Huffman v. US Airways, Inc.*,
    No. 10-CV-05193-VKD, 2019 WL 1571877 (N.D. Cal. Apr. 11, 2019) ............................. 23

*In re High-Tech Employee Antitrust Litig.*,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................................ 22

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................ 16

*Lehman v. Transbay Joint Powers Authority*,
    Case No. CGC-16-553758 (San Francisco Sup. Ct.) ............................................. 6

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) .................................................................................. 23

*Mullane v. Cen. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .............................................................................................. 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 7, 8

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................... 15

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................. 13

*Pierce v. Rosetta Stone, Ltd.*,
    No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) .................................. 13

*Ramirez v. TransUnion LLC*,
    951 F.3d 1008 (9th Cir. 2020) .............................................................................. 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................... 10, 12, 22

*Schneider v. Chipotle Mexican Grill, Inc.*,
    No. 16-CV-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 31, 2020) .................................. 12

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .............................................................................. 21

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ............................. 12

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ....................................................................................... 7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................... 7

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................... 8

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ......................................................................... 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................................. 21, 22

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ................................ 22

**Statutes & Rules**

28 U.S.C. § 1715(b) ................................................................................................. 2, 16, 21

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 20, 21

Fed. R. Civ. P. 23(e) ........................................................................................................... 7

Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 20

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................ 20

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................................ 15

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................ 19

Fed. R. Civ. P. 23(e)(3) ..................................................................................................... 19

Fed. R. Civ. P. 23(f) ................................................................................................... 2, 3, 13

Fed. R. Civ. P. 23(h) .......................................................................................................... 21

Fed. R. Civ. P. 30(a)(2) ...................................................................................................... 14

**Other Authorities**

4 Newberg on Class Actions § 13:15 (5th ed.) ....................................................................... 7

4 Newberg on Class Actions § 13.45 (5th ed.) .............................................................. 15

Moore's Fed. Prac. § 23.165 (3d ed. 2009) .................................................................. 8

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

After over three years of hard-fought litigation, Plaintiffs and Apple Inc. ("Apple") have reached agreement to resolve this action (the "Action") on a class-wide basis.  The Settlement was reached after not only aggressive litigation but also extensive arm's-length negotiations—including four in-person mediation sessions with an experienced mediator and a United States District Court Magistrate Judge, and substantial additional negotiations.  The final settlement was reached after a mediator's proposal crafted by a Magistrate Judge.  The settlement provides significant monetary relief to all Class Members.

Under the terms of the proposed settlement, Apple will fund an $18 million non-reversionary Settlement Fund.[1]  After subtracting from the Settlement Fund the costs of notice and claims administration, attorney's fees and expenses, and incentive awards, the proceeds of the fund will be distributed automatically by electronic and paper checks.  Settlement Class Members[2] will not need to submit a claim in order to receive payment.

The proposed settlement is fair, reasonable and adequate and meets all requirements for preliminary approval.  Absent a settlement, the Class would be subject to the risk of uncertainty at trial and on appeal, and would incur additional expenses through further litigation.  Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement, attached as Exhibit 1 to the Declaration of Daniel L. Warshaw in Support of Motion for Preliminary Approval of Class Action Settlement ("Warshaw Decl."), and enter an order that:

    1.      Preliminarily approves the Settlement Agreement between Plaintiffs and Defendant Apple;

    2.      Approves the form, manner, and content of the notice for the proposed settlement to

---

[1] All terms referenced herein are defined in the Settlement Agreement.

[2] "Settlement Class Members" are the persons identified in Apple's records as Class Members because they owned an iPhone 4 or 4S device that was running on iOS 6 or an earlier version of iOS on April 16, 2014 in California.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

the Class;

      3.     Appoints Epiq Systems, Inc. ("Epiq") as the Settlement Administrator;

      4.     Appoints Jill M. Manning, Daniel L. Warshaw, David F.E. Tejtel, and John Austin Curry as Class Counsel on behalf of their firms;

      5.     Sets a Fairness Hearing date and briefing schedule for final approval of the Settlement and consideration of Class Counsel's fee application; and

      6.     Finds Apple has started the process of complying with 28 U.S.C. § 1715(b).

## II.    BACKGROUND

### A.    Plaintiffs' Claims

Plaintiff Christina Grace filed this Action on February 2, 2017, and filed the Amended Complaint adding Plaintiff Ken Potter on April 5, 2017.  The Amended Complaint alleges "a consumer class action brought by Plaintiffs on behalf of themselves and all others similarly situated who owned an Apple iPhone 4 or iPhone 4S that was operating on iOS 6 or an earlier operating system, and therefore lost the ability to use Apple's 'FaceTime' video conferencing feature when Apple intentionally broke FaceTime for iOS 6 and earlier operating systems on April 16, 2014."  Dkt. No. 36.  Plaintiffs assert two causes of action: trespass to chattels under California law, and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL").  *Id.*  Plaintiffs' Amended Complaint seeks damages, restitution, and injunctive relief.  *Id.*

Apple denies the allegations.

### B.    Procedural History

The parties vigorously litigated this case.  As set forth in greater detail below, the parties engaged in significant motion practice, including a motion to dismiss, a motion for class certification, a Rule 23(f) petition, 12 discovery motions, a summary judgment motion, 6 motions *in limine* and a *Daubert* motion to exclude the testimony and opinions of Plaintiffs' two experts. The parties also engaged in extensive discovery, including 78 requests for production of documents, 68 interrogatories, 350 requests for admission, production of 224,693 documents, review of databases produced in discovery that contained millions of records, review of Apple's source code, 17 depositions, forensic imaging of the Class Representatives' three iPhone devices, 7 expert

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   reports, and numerous non-party document requests and deposition subpoenas.

2       On July 28, 2017, the Court denied Apple's Motion to Dismiss the Amended Complaint.

3   Dkt. No. 65.  On September 19, 2018, the Court issued a Class Certification Order certifying a class

4   pursuant to Fed. R. Civ. P. 23(b)(3) defined as "[a]ll owners of non-jailbroken Apple iPhone 4 or

5   Apple iPhone 4S devices in California who on April 16, 2014, had iOS 6 or earlier operating systems

6   on their iPhone 4 or iPhone 4S devices."  Dkt. No. 269.  The Court denied certification of a

7   nationwide class and did not certify an injunctive relief class under the UCL.  *Id.*  On November 6,

8   2018, Plaintiffs filed a petition pursuant to Fed. R. Civ. P. 23(f) seeking permission to appeal the

9   Court's denial of certification of a nationwide class.  Dkt. No. 290.  On March 20, 2019, the Ninth

10  Circuit denied permission to appeal.  Dkt. No. 295.  On August 21, 2019, the Court denied Apple's

11  Summary Judgment Motion.  Dkt. No. 306.  On April 29, 2019 the Court set the case for trial on

12  April 6, 2020; however, the trial date was vacated pursuant to General Order No. 72.  Dkt. Nos. 301,

13  410.

14      **C.      Mediation and Settlement**

15      On November 9, 2018, the parties attended an all-day mediation session before the

16  Honorable William J. Cahill (Ret.), at JAMS in San Francisco.  Warshaw Decl., ¶ 4.  The parties

17  were unable to reach a settlement.  *Id.*  After denying Apple's motion for summary judgment, the

18  Court ordered the parties to return to mediation.  On October 22, 2019, the parties returned to JAMS

19  for a mediation before Judge Cahill but were again unable to reach agreement on all terms of a

20  settlement.  *Id.*, ¶ 5.  After the second mediation, Judge Cahill engaged in extensive settlement

21  discussions with each party but ultimately a settlement was not reached.  *Id.*, ¶ 6.  As the litigation

22  progressed closer to trial, the Court ordered the Parties to attend a settlement conference before the

23  Honorable Nathanael Cousins.  Dkt. No. 325.  On December 5, 2019, Magistrate Judge Cousins

24  held an all-day settlement conference, but the parties were unable to resolve the case.  Warshaw

25  Decl., ¶ 7.  After extensive follow-up discussions, the parties attended a second in-person settlement

26  conference with Magistrate Judge Cousins on January 16, 2020, which also failed to result in a

27  settlement.  *Id.*, ¶ 8.  Magistrate Judge Cousins continued conferring with the parties and, on January

28  31, 2020, made a mediator's proposal.  *Id.*, ¶ 9.  On February 6, 2020, Magistrate Judge Cousins

3
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   informed the parties that both parties had accepted the mediator's proposal.  *Id.*, ¶ 10.

2       **D.**    **Monetary Remedies**

3       Plaintiffs seek damages and restitution on a class-wide basis for the diminution in value of

4   their iPhone 4 and 4S devices caused by the FaceTime Break.[3]  Plaintiffs retained Dr. Justine S.

5   Hastings, Ph.D., to calculate aggregate class-wide damages measured by the diminution in value of

6   Class Members' iPhone 4 and 4S devices caused by the FaceTime Break.  Dr. Hastings constructed

7   an econometric damages model using transactional data produced by third-party resellers of smart

8   phone devices.  Dr. Hastings used multivariate regression analysis to compare smart phone prices

9   during the time period affected by the FaceTime Break to prices during the time when the market

10  was unaffected.  Dkt. No. 174.  The model produced an estimate of the impact of the FaceTime

11  Break on prices of used iPhone 4 and 4S models and concluded that Apple's conduct impacted the

12  prices by, on average, $18.30 per device.  The Court accepted Plaintiffs' damages model in its order

13  on class certification and in its order denying summary judgment.  Dkt. Nos. 269, 306.

14      Apple vigorously contests Plaintiffs' damages model and contends that Dr. Hastings inflated

15  damages by focusing on the "B to B" market rather than the consumer market.  Apple filed a *Daubert*

16  motion seeking to exclude Dr. Hastings' testimony and reports from the Action.  Dkt. No. 333.  The

17  Court has not ruled on that motion.

18  **III.**   **SUMMARY OF THE SETTLEMENT**

19      The Settlement Agreement provides for relief to the following Class Members:

20          All owners of non-jailbroken Apple iPhone 4 or Apple iPhone 4S
            devices who on April 16, 2014, had iOS 6 or earlier operating systems
21          on their iPhone 4 or iPhone 4S devices, and who were in California at
            that time.
22

23      The Class includes[4] approximately 3,600,000 devices (prior to additional data analysis that

24  _____

25  [3] The "FaceTime Break" refers to the April 16, 2014 expiration of the certificate that allowed the
26  FaceTime feature to function on iPhone 4 and 4S devices running on iOS 6 or an earlier version.

27  [4] The Class excludes (a) directors, officers, and employees of Apple or its subsidiaries and
    affiliated companies; (b) the Court and the Court's staff, as well as any appellate court to which
28

1   may remove some records without valid contact information, or records indicating fraudulent

2   accounts) that were affected by the FaceTime Break and whose owners are members of the class

3   certified by the Court.  Dkt. No. 269.  Because there is no way, using available records, to verify if

4   a user has jailbroken their phone, the Settlement Agreement provides that otherwise-qualifying

5   iPhone devices will be presumed to be non-jailbroken unless it can be determined through existing

6   records that they are jailbroken.  Thus, payment will inevitably be made to a small but indeterminate

7   number of individuals who have jailbroken their iPhone 4 or iPhone 4S devices.  The relevant expert

8   testimony in the Action indicates that the number of Settlement Class Members with jailbroken

9   phones is very low.

10          A.      **Monetary Relief**

11          Pursuant to the Settlement Agreement, the Settlement Administrator will provide payment

12   to Settlement Class Members by electronic or paper checks.  The Settlement Administrator will send

13   the checks by email to those Settlement Class Members for whom Apple has email addresses,

14   estimated to be over 90% of the Settlement Class, and by mail to those Settlement Class Members

15   for whom Apple has only physical addresses.  Settlement Agreement, ¶ 2.5.  While Apple and the

16   class administrator are still analyzing and validating the set of contact information for the class,

17   Apple believes that it has email or physical addresses for the vast majority of the valid accounts

18   associated with devices that are part of the class.  Thus, Settlement Class Members will not need to

19   submit any claim in order to receive payment from the Net Settlement Fund.  If an individual was

20   not identified as a Settlement Class Member according to Apple's records and did not receive an

21   email or postcard notice, they may apply to become a Settlement Class Member via submission of

22   a verified "Application for Inclusion in the Class."  Settlement Agreement, ¶ 6.3.

23          Each Settlement Class Member will receive one Class Payment for each of their qualifying

24

25   _____

26   this matter is ever assigned and its staff; (c) Apple Counsel, as well as their immediate family
    members, legal representatives, heirs, successors, or assigns; and (d) any individuals who timely
27   exclude themselves from the Class or whose claims have already been adjudicated to a final
    judgment.
28

1  iPhone 4 or iPhone 4S devices.  The amount of payments to each participating Settlement Class

2  Member will be calculated based on each Settlement Class Member's proportional share of the Net

3  Settlement Fund.  The Net Settlement Fund will be divided evenly by the total number of eligible

4  devices.  The Net Settlement Fund is the Settlement Fund of $18 million dollars less the costs of

5  notice and administering the settlement funds, attorneys' fees and expense reimbursement to Class

6  Counsel, and any incentive awards to the Class Representatives, as ordered by the Court.

7  The Net Settlement Fund created by the Settlement Agreement is designed to maximize

8  recovery for Settlement Class Members.  Each Settlement Class Member will receive a check, the

9  amount of which will depend on the amount of any attorneys' fees and expenses, incentive awards,

10  notice and administration expenses.  As such, all moneys available to the Net Settlement Fund will

11  be distributed to the Settlement Class Members.  Under no circumstances will any of the settlement

12  funds revert to Apple.  Settlement Agreement, Definitions ¶ BB.

13  **B.**    **<u>Narrowly Tailored Release</u>**

14  The Settlement Agreement contains a narrowly tailored release that is specifically limited to

15  all claims arising from, or related to, the facts underlying the Action and the certified California

16  Class.  Settlement Agreement, ¶ 8.1.  The Settlement Agreement is not intended to abridge the rights

17  of consumers in any other states who may have potential claims.  *Id*., Recitals, p. 5.

18  **C.**    **<u>Cost of Settlement Administration and Class Notice</u>**

19  Under the Settlement Agreement, all costs and expenses of administering the Settlement and

20  providing Notice in accordance with the Preliminary Approval Order shall be distributed from the

21  Settlement Fund.  Settlement Agreement, ¶ 2.3.  After a competitive bidding process involving three

22  potential administrators, the Parties selected Epiq as the Claims Administrator.[5]  Epiq provides class

23  action administration and legal notice programs, and Epiq and its principals have extensive

24

25  _____

26  [5] Class Counsel has retained Epiq as a Settlement Administrator in one other case over the last two

27  years.  Specifically, Steyer Lowenthal Boodrookas Alvarez & Smith LLP has retained Epiq as settlement class administrator in *Lehman v. Transbay Joint Powers Authority*, Case No. CGC-16-

28  553758 (San Francisco Sup. Ct.).

1  experience administering class action settlements, including many in this Circuit.[6]  The Settlement

2  Agreement proposes that the Court appoint Epiq  as the Settlement Administrator to administer the

3  notice and claims process.   The Parties conferred with Epiq regarding the most efficient and

4  effective manner of providing notice and distributing settlement funds to the Class.  Based on Epiq's

5  estimate, it will cost approximately $1.4 million for Epiq to fully administer the Settlement in this

6  Action.  Warshaw Decl., ¶ 25.  The proposed Notice Plan is described in the Settlement Agreement

7  generally and below in section VI.

8  **IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

9  **A.    Standard for Preliminary Approval**

10  Rule 23(e) requires court approval of any settlement of claims of a settlement class.  The

11  Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex

12  class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

13  Cir. 1992); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re*

14  *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

15  Preliminary approval should be granted where "the proposed settlement appears to be the

16  product of serious, informed, non-collusive negotiations, . . . has no obvious deficiencies, . . . does

17  not improperly grant preferential treatment to class representatives or segments of the class, and . . .

18  falls within the range of possible approval."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d

19  1114, 1125 (E.D. Cal. 2009).   The Settlement satisfies all of these requirements, and justifies

20  publishing and sending notice of the Settlement to Class Members and scheduling final approval

21  proceedings.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007);

22  4 Newberg on Class Actions § 13:15 (5th ed.).  "[T]he very essence of a settlement is compromise,

23  'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv.*

24  *Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).   Thus, when analyzing a proposed settlement, the

25  amount of the settlement is "not to be judged against a hypothetical or speculative measure of what

26  _____

27  [6] Claims Administration, https://www.epiqglobal.com/en-us/experience/class-action-mass-

28  tort/class-action-administration/services/claims-administration (last visited April 24, 2020).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    might have been achieved by the negotiators." *Id.* at 625.

2        The approval of a proposed class action settlement "is committed to the sound discretion of

3    the trial judge." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In exercising this

4    discretion, however, courts must give "proper deference to the private consensual decision of the

5    parties" because:

6        the court's intrusion upon what is otherwise a private consensual agreement
         negotiated between the parties to a lawsuit must be limited to the extent necessary to
7        reach a reasoned judgment that the agreement is not the product of fraud or
         overreaching by, or collusion between, the negotiating parties, and the settlement,
8        taken as whole, is fair, reasonable and adequate to all concerned.

9    *Id.* at 1027.

10       In making a preliminary determination of the fairness, reasonableness, and adequacy of a

11   class action settlement, the trial court must balance several factors, including:

12       (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
         duration of further litigation; (3) the risk of maintaining class action status throughout
13       the trial; (4) the amount offered in settlement; (5) the extent of discovery completed
         and the stage of the proceedings; (6) the experience and views of counsel; (7) the
14       presence of a governmental participant; and (8) the reaction of the class members to
         the proposed settlement.
15

16   *Churchill Vill.*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th

17   Cir. 1993).  Preliminary approval does not require the trial court to answer the ultimate question of

18   whether a proposed settlement is fair, reasonable and adequate.  That final determination is made

19   only after class notice has been sent and Class Members have the opportunity to object to, or opt

20   out of, the settlement.  *See* Moore's Fed. Prac. § 23.165 (3d ed. 2009).

21       **B.    The Settlement Provides Substantial Relief to the Class and is Well**

22       **Within the Range of Reasonableness**

23       The Settlement in this case is fair, reasonable, and adequate and should be approved by the

24   Court because it provides substantial monetary relief to Class Members, *i.e.* an $18 million non-

25   revisionary fund.  As detailed below and consistent with this Court's Procedural Guidance for Class

26   Action Settlements, the factors to be considered by the Court weigh heavily in favor of preliminary

27   approval, because the Settlement Agreement adequately remedies the claims alleged by Plaintiffs in

28   this class action lawsuit.

1.   <u>The Strength of Plaintiffs' Case Compared to the Risk,</u>

<u>Expense, Complexity, and Likely Duration of Further</u>

<u>Litigation</u>

While Plaintiffs believe the claims they assert in this Action are strong, the complexity and risk of further litigation is substantial.  The risks of continuing this litigation include: (1) the possible success of Apple's vigorous defense to Plaintiffs' assertions that the challenged conduct constitutes a trespass to chattels and unfair business practice at trial or on appeal; (2) Apple successfully moving to decertify the litigation class; (3) Apple's aggressive challenges to Plaintiffs' damages methodology and the possibility that the Court would grant Apple's pending *Daubert* motion; (4) a possible adverse outcome at trial; and (5) risks on appeal.

Although risks and expenses apply to any lawsuit, these elements were significant in this case and weigh strongly in favor of approving the Settlement.  At trial, Apple would have asserted legal and factual defenses.  For example, Apple has argued throughout this Action that, *inter alia*, (i) it never acted with the intent to interfere with FaceTime, (ii) the certificate expiration that caused the FaceTime Break was a result of programming decisions made in 2007 and 2010, and (iii) it provided a fully satisfactory fix in the form of an update to the latest version of its operating system.  Apple has also argued that Plaintiffs lack an ownership interest in the personal property that was allegedly interfered with, and that it was impossible to ascertain customers who suffered a significant interference with FaceTime on a device they were actively using.  Apple also would have presented affirmative defenses, including that (i) Plaintiffs were estopped from claiming trespass to chattels, (ii) in utilizing digital certificates in connection with FaceTime, Apple acted out of necessity to prevent serious harm, (iii) Plaintiffs consented to the alleged interference, (iv) Plaintiffs failed to mitigate damages because they could have, but did not, take action to lessen their alleged damages, and (v) Apple's conduct was necessary and had a substantial business justification.  Further, as set forth in its *Daubert* motion, Apple challenges the opinions of Plaintiffs' two experts, Dr. Hastings and Dr. Mark Jones.  Dkt. No. 333.  Thus, Plaintiffs face the risk of proceeding to trial without expert opinion calculating damages arising from the FaceTime Break, and expert opinion relating to the FaceTime Break and its impact on the Apple devices.  Further, Apple's expert

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  submitted a report challenging Dr. Hastings' damages analysis and concluding that there were no

2  measurable damages caused by the FaceTime Break.

3       Finally, absent settlement, Plaintiffs would have to litigate this Action for a lengthy and

4  unknown duration of time in order to secure a recovery for the Class.  While Plaintiffs believe they

5  have sufficient evidence to prove liability and damages at trial, obtaining a verdict, whether by judge

6  or jury, is inherently uncertain.  Plaintiffs bear the burden in this case to prove their claims by a

7  preponderance of the evidence.  Moreover, it is exceedingly likely that a successful result at trial

8  would have resulted in post-trial appeal proceedings initiated by Apple.  *See Glass v. UBS Fin.*

9  *Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F.

10 App'x 452 (9th Cir. 2009) ("Regardless of how this Court might have ruled on the merits of the

11 legal issues, the losing party likely would have appealed, and the parties would have faced the

12 expense and uncertainty of litigating an appeal.").  This Settlement provides valuable monetary

13 relief to the Class without the delay and risk of further litigation.

14      The substantial relief obtained through this Settlement, balanced against the length, expense

15 and uncertainty of trial and post-trial proceedings, weighs in favor of approval.  *See Rodriguez v.*

16 *W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

17 *Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and

18 compare the significance of immediate recovery by way of the compromise to the mere possibility

19 of relief in the future, after protracted and expensive litigation.") (citation omitted); *Hanlon*, 150

20 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether

21 the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

22 collusion.").

23           2.    The Amount Offered in Settlement

24      The benefits offered by the Settlement Agreement weigh heavily in favor of preliminary

25 approval.  As detailed above, the Settlement Agreement creates an $18 million non-reversionary

26 common fund—nearly 30 percent of the total average damages initially estimated by Dr. Hastings—

27 and provides substantial monetary relief to Settlement Class Members.  The amount of the

28 settlement fund is fair, reasonable and adequate given the diminution in value damages calculated

930238.2               10           Case No. 5:17-cv-00551-LHK-NC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    by Dr. Hastings, Apple's defenses, and litigation and trial risks.

2      In exchange for a release of their claims, Settlement Class Members will receive for each

3    qualifying iPhone 4 and 4S device they own an equal share of the Net Settlement Amount.

4    Plaintiffs' counsel estimate that for each qualifying iPhone 4 or 4S device, Settlement Class

5    Members will receive an initial check for approximately $3. In the likely event that some Settlement

6    Class Members do not cash their checks, the Settlement Agreement provides that the Parties will

7    meet and confer regarding distribution of the residue and present a joint proposal to the Court, which

8    could include a second distribution, a *cy pres* distribution or escheatment. Settlement Agreement,

9    ¶ 2.7. If the Parties cannot reach agreement on the appropriate treatment of unclaimed funds, they

10    will brief the matter for the Court's decision. In no event would any of the residue revert to Apple.

11    *Id.*

12      In the event that a *cy pres* mechanism is ultimately used to distribute any residual funds, the

13    Parties have selected the Rose Foundation, a 501(c)(3) charity, for the purposes of managing the

14    selection of an appropriate *cy pres* recipient whose work is closely related to the issues raised by

15    this Action and the objectives of the Settlement Agreement and for managing distribution of *cy pres*

16    funds. The Rose Foundation has been appointed "as trustee over 600 restitution and *cy pres* funds."[7]

17    *See Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2020 WL 870928, at *2 (N.D.

18    Cal. Feb. 21, 2020); *Gross v. Symantec Corp.*, No. 3:12-CV-00154-CRB, 2014 WL 12641996, at

19    *2 (N.D. Cal. Mar. 21, 2014); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-

20    CRB, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020). It would manage a structured

21    application process to identify suitable fund recipients and act as a neutral third-party trustee for

22    distributing the funds. The recipients selected by the Rose Foundation and distribution of funds

23    would be subject to approval by the Court. Neither the Parties nor their counsel have any affiliation

24    with the Rose Foundation. Warshaw Decl., ¶ 24.

25      The intent of the Settlement is to distribute the Settlement Fund efficiently and accurately to

26 ───────────────────

27 [7] Restitution and Cy Pres Fund Trustee, https://rosefdn.org/restitution-and-cy-pres-fund-trustee
28 (last visited April 27, 2020).

Settlement Class Members.  Plaintiffs estimate that if *all* Settlement Class Members cash their checks, the average damages amount received by each will be approximately fifteen to twenty percent of Dr. Hastings' estimate of average per device diminution in value caused by the FaceTime Break, which would fall well within the "range of reasonableness" under Ninth Circuit law.  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (A "Settlement Fund represent[ing] approximately 14.5% of the projected recovery that Settlement Class Members would be entitled to if they prevailed on their claims . . . is within the range of reasonableness after taking into account the costs and risks of litigation."); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *5 (N.D. Cal. Jan. 28, 2016) ("9.7% of the total maximum potential recovery that class members would be entitled to if they prevailed on all claims . . . is 'within the range of reasonableness' . . . "); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% of what class might have been awarded had they succeeded at trial" is "'within the range of reasonableness' in light of the risks and costs of litigation."); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2020 WL 511953, at *10 (N.D. Cal. Jan. 31, 2020) (granting preliminary approval where "total settlement amount constitutes approximately 7.4% of the 'best-case' nationwide recovery").

The negotiated $18 million cash common fund is fair and reasonable.  The Net Settlement Amount represents nearly 30 percent of the average estimated damages, and substantially more than the zero damages amount estimated by Apple's expert.  Further, the Net Settlement Fund will be paid in cash, "which is a good indicator of a beneficial settlement."  *Rodriguez*, 563 F.3d at 965. Moreover, Settlement Class Members do not need to submit a claims form or take any action in order to receive a settlement payment.  Plaintiffs submit that particularly when juxtaposed against the risks and costs of further litigation, the proposed settlement constitutes an excellent result for the Class.

3.      The Risk of Maintaining Class Action Status Through Trial

Plaintiffs believe this Action was properly certified as a class action by the Court and, despite Apple's denials, assert there is ample evidence to support their allegation that "Apple intentionally broke FaceTime for iOS 6 and earlier operating systems on April 16, 2014," including documents

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   and data produced by Apple, testimony from Apple witnesses, testimony from non-parties, and

2   analyses and opinions of Plaintiffs' experts.  For example, Plaintiffs' expert, Dr. Mark Jones, Ph.D.,

3   opined that the FaceTime Break was preventable and that it was caused by the expiration of a digital

4   certificate.  *See, generally* Jones Report.  Further, as discussed above, Plaintiffs' economist Dr.

5   Hastings constructed an econometric model estimating damages caused by Apple's conduct.

6        However, Apple has vigorously defended this Action.  Plaintiffs' ability to maintain class

7   certification through trial certainly poses a risk, especially in the event of an unforeseen intervening

8   change in the law.  Moreover, even if Plaintiffs were able to successfully prove their case at trial,

9   Apple would argue that there would be substantial difficulty in proving class-wide damages based

10  on, among other things, differences in each Class Member's particular use of their devices.  Apple

11  would further argue that every member of a class must satisfy the basic requirements of Article III

12  standing before the members may "be awarded individual monetary damages."  *Ramirez v.*

13  *TransUnion LLC*, 951 F.3d 1008, 1037 (9th Cir. 2020).  Although Plaintiffs are confident that this

14  Action would remain certified as a class action, the risk of failing to maintain class action status

15  throughout trial further weighs in favor of preliminary approval.  *Pierce v. Rosetta Stone, Ltd.*, No.

16  C 11-01283 SBA, 2013 WL 5402120, at *4 (N.D. Cal. Sept. 26, 2013) ("risks in obtaining and

17  maintaining class certification . . . weigh[] in favor of approving the settlement."); *Perez v. Asurion*

18  *Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (approving settlement, and noting that "[a]bsent

19  a settlement, Defendants would have defended these . . . lawsuits vigorously, with potential success

20  and no recovery of any kind for Plaintiffs.").

21          4.   The Extent of Discovery Completed and the Stage of the

22               Proceedings

23          The parties engaged in extensive discovery and motion practice that informed their decision

24  regarding the sufficiency of the Settlement Agreement.  This case has been vigorously litigated for

25  the past three years.  The parties engaged in significant motion practice, including a motion to

26  dismiss, a motion for class certification, a Rule 23(f) petition, 12 discovery motions (including

27  motions related to ESI), a summary judgment motion, a *Daubert* motion to exclude the testimony

28  and opinions of Plaintiffs' two experts, and motions *in limine*.  The parties also prepared and

1  submitted pretrial filings, including a joint pretrial statement, proposed jury instructions, verdict

2  forms and *voir dire* questions, trial exhibit lists and witness lists.

3          The parties engaged in extensive discovery.  Plaintiffs served 65 Requests for Production,

4  43 Interrogatories, and 42 Requests for Admission on Apple.  Warshaw Decl., ¶ 11.  The parties

5  engaged in extensive negotiations over search terms and ESI production, resulting in 6 motions to

6  compel, and Apple produced 1,025,596 pages of documents.  *Id.*, ¶ 12.  Plaintiffs took seven

7  depositions of Apple, including two Rule 30(b)(6) depositions, and four depositions of non-parties.[8]

8  *Id.*, ¶ 13.  There were seven depositions of the parties' five experts.  *Id.*, ¶ 14.  Plaintiffs' experts,

9  Dr. Hastings and Dr. Jones, were deposed twice and once, respectively.  *Id.*  Apple's experts, Ms.

10  Trexler and Dr. Malhotra were each deposed once, and Dr. Rubin was deposed twice.  *Id.*  Apple

11  deposed both Class Representatives.  *Id.*, ¶ 15.  Apple requested and the Court ordered (over

12  Plaintiffs' objection), forensic imaging of the Class Representatives' three iPhone 4 devices.  *Id.*, ¶

13  16.  The Class Representatives surrendered their devices for several months into the custody of a

14  neutral third party, who conducted forensic imaging consistent with the Court's Order.  *Id.*  The

15  neutral third party produced extensive data from the Plaintiffs' devices, including all data and

16  information regarding FaceTime, Wi-Fi use, Wi-Fi connection history, and Wi-Fi networks.  *Id.*

17  This production totaled over 370,000 files from within the Settings, Diagnostics, and Usages tabs,

18  or otherwise related to the phone settings in general.  *Id.*  *See also* Dkt. No. 154.

19          The Court originally scheduled the close of fact discovery for August 17, 2018 and the close

20  of expert discovery for September 7, 2018.  Dkt. No. 54.  Because the Court granted Plaintiffs'

21  request to extend the discovery cutoff date until September 7, 2018 (Dkt. No. 125), both fact

22  discovery and expert discovery closed on that day.  The extensive discovery process enabled each

23  party to uncover evidence related to the claims and defenses—and to evaluate the evidence and

24  witnesses—in this Action.

25          This thorough and lengthy discovery and motion practice has allowed Plaintiffs and Apple

---

27  [8] Plaintiffs moved for relief from the ten-deposition limit set forth in Fed. R. Civ. P. 30(a)(2), to

28  take additional depositions of Apple.  The Court denied the request.  Dkt. No. 222.

1  to fully evaluate the strengths and weakness of their respective positions in the litigation, and to

2  assess their respective likelihood of success at trial and beyond.

3                     5.      <u>The Experience and Views of Counsel</u>

4          Preliminary approval is further justified by the fact that Plaintiffs and the Class are

5  represented by court appointed co-lead counsel from Pearson, Simon & Warshaw, LLP, Steyer

6  Lowenthal Boodrookas Alvarez & Smith LLP, Caldwell Cassady & Curry, and Friedman Oster &

7  Tejtel PLC, who together have extensive experience in class action and complex litigation, have

8  negotiated numerous other class action settlements, have successfully tried cases to verdict against

9  Apple, and have the ability to litigate this Action on a class-wide basis through trial and appeal.

10  Class Counsel secured satisfactory terms of settlement only after a thorough investigation of the

11  factual and legal issues raised in this Action.  Warshaw Decl., ¶ 17.

12          Further, the Settlement Agreement was the product of extensive arm's-length and adversarial

13  settlement discussions between the parties that spanned many months and several mediations.

14  "Before approving a class action settlement, the district court must reach a reasoned judgment that

15  the proposed agreement is not the product of fraud or overreaching by, or collusion among, the

16  negotiating parties."  *City of Seattle*, 955 F.2d at 1290 (citations omitted); *see also* Fed. R. Civ. P.

17  23(e)(2)(B).  Where a settlement is the product of arm's-length negotiations conducted by capable

18  and experienced counsel, the court begins its analysis with a presumption that the settlement is fair

19  and reasonable.  *See* 4 Newberg on Class Actions § 13.45 (5th ed.).  Further, "[c]ourts in this district

20  have recognized that 'the assistance of an experienced mediator in the settlement process confirms

21  that the settlement is non-collusive.'"  *In re Anthem*, 327 F.R.D. at 327 (citing *G. F. v. Contra Costa*

22  *Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015); *In re Pac. Enters. Sec.*

23  *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("[p]arties represented by competent counsel are better

24  positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

25  litigation.").  As explained above, the Settlement Agreement was reached only after two in-person

26  mediations with Judge Cahill, two in-person settlement conferences with Magistrate Judge Cousins,

27  and extensive and prolonged negotiations conducted by phone and over email.  At the conclusion

28  of those settlement negotiations, Magistrate Judge Cousins presented a mediator's proposal, which

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

the parties accepted.  Warshaw Decl., ¶ 10.

Drawing upon their considerable experience and expertise, Class Counsel negotiated and evaluated the Settlement, which resulted from a proposal by Magistrate Judge Cousins, and ultimately determined that the Settlement provided significant and substantive relief to the Class in the face of significant litigation risks, and therefore should be accepted.  Warshaw Decl., ¶ 18.[9]

### 6.  The Presence of a Government Participant

Plaintiffs investigated and pursued their claims independently.  The appropriate federal and state officials will be notified pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and given an opportunity to raise any objections or concerns they may have prior to final approval.

### 7.  The Reaction of the Class Members to the Proposed
### Settlement

Because notice has not yet been given, this factor is not yet implicated.  However, Class Representatives Christina Grace and Ken Potter both support the Settlement.

### 8.  Other Factors

The fact that over 90% of the Settlement Class Members of whom Apple has contact information will receive a check either by email or regular mail without needing to file a claim form or take any other action weighs strongly in favor of approving the Settlement.  In many consumer class actions, the defendant has little to no contact information for class members.  In those cases, the class members receive notice by publication and are required to submit a claim form in order to collect their share of the settlement fund.  Here, Apple possesses robust records providing contact information for the individuals who meet the Class definition, and those people are not required to do anything in order to receive settlement proceeds.  Apple has already verified their membership

---

[9] *See Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) ("The opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases."); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *5 ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator . . . [and] this factor supports approval of the settlement.").

1    in the Class and they will receive either an electronic check by email or a paper check by regular

2    mail.  The only thing the Settlement Class Members need to do is cash the check.  Should Apple's

3    records prove imperfect, people who believe themselves to be Settlement Class Members but are

4    not automatically notified will have an opportunity to apply to join the Settlement Class by

5    completing and submitting a simple form on the settlement website.  Settlement Agreement, ¶ 6.3.

6                          9.    Comparable Cases

7           Section 11 of the Court's Guidance for Class Action Settlements states that "[l]ead class

8    counsel should provide the following information for at least one of their past comparable class

9    settlements (i.e. settlements involving the same or similar clients, claims, and/or issues)."  Due to

10   the unique characteristics of this Action,[10] the only potentially comparable case handled by Class

11   Counsel is *In Re Carrier IQ, Inc. Consumer Privacy Litig*., Case No. 3:12-md-02330-EMC (N.D.

12   Cal.) ("*Carrier*").  However, while that case did relate to mobile devices, it addressed data privacy

13   claims on behalf of a nationwide class as opposed to the California-only trespass to chattels claim

14   at issue here.  Pearson, Simon & Warshaw, LLP was appointed co-lead counsel for the class.

15   Plaintiffs alleged that the Carrier IQ software embedded in the operating system of mobile phones

16   intercepted private communications and data on approximately 30 million class members.  The case

17   settled for $9 million, and a common fund was created for payment of claims, attorney's fees, costs,

18   and claims administration.  In contrast to the proposed Settlement of this Action, the defendants in

19   *Carrier* did not have contact information for the class, such that the class members did not receive

20   direct notice.  Rather, print notice was published in USA Today and People Magazine, and internet

21   notice was given through social media advertising and banner ads.  42,577 claim forms were

22   submitted, reflecting a response rate of 0.14%.  The average recovery per class member was $140.

23   *Cy pres* recipients were eligible for the residue of uncashed checks, in the amount of $255,605.48

24

25   _____

26   [10] As this Court noted at the May 17, 2017 Case Management Conference, few consumer class
     actions assert a claim for trespass to chattels.  Tr., at 5:16-18 ("I haven't seen a trespass cause of
27   action in one of these consumer class actions.")  Moreover, in few consumer class actions does the
     Defendant have contact information for 90% of the class members.
28

1     each. Plaintiffs' counsel were awarded attorneys' fees amounting to 25% of the common fund

2     ($2,225,000), and $108,933.72 in costs. The settlement administrator has been paid $605,311.40 to

3     date.

4          **C.**      **The Rule 23(e)(2) Factors Are Met**

5          Under Rule 23(e)(2), a court considering whether to grant approval of a class settlement

6     must also consider whether: (1) the class representatives and class counsel have adequately

7     represented the class; (2) the proposed settlement was negotiated at arm's-length; (3) the relief

8     provided for the class is adequate; and (4) the proposed settlement treats class members equitably

9     relative to each other. Fed. R. Civ. P. 23(e)(2). These factors overlap substantially with the

10    *Churchill* factors discussed above, and likewise support the granting of this Motion.

11                 1.      The Class Representatives and Class Counsel have

12                         Vigorously Represented the Class

13          Jill M. Manning, Daniel L. Warshaw, David F.E. Tejtel, and John Austin Curry were

14     appointed as Interim Class Counsel on September 18, 2018 (Dkt. No. 269), have continued acting

15     as class counsel throughout the litigation of this Action, and have provided excellent representation

16     to the Class for over three years. As set forth in more detail in the Warshaw Declaration at ¶ 19, in

17     litigating this Action, Counsel, *inter alia*:

18               •      Identified and investigated Apple's conduct in causing the alleged
19                      FaceTime Break;

20               •      Met with clients and secured retainer agreements;

21               •      Drafted a complaint and amended complaint;

22               •      Overcame a motion to dismiss;

23               •      Undertook extensive and hotly contested discovery;

24               •      Obtained the necessary sales data from third parties by subpoena after
                       comprehensive negotiations in order to prepare a damages model;

25               •      Retained experts to opine on merits and damages issues, and prepared
26                        multiple expert reports;

27               •      Deposed Apple's experts;

28               •      Obtained certification of a California Class;

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

- Successfully opposed a potentially dispositive motion for summary judgment;

- Participated in four in-person mediation sessions and extensive follow up discussions; and

- Prepared for trial.

2.  <u>The Class Representatives' Interests are Aligned with and are Not Antagonistic to the Other Class Members' Interests.</u>

Each Class Representative committed substantial time to this Action, and each reviewed and approved of the proposed Settlement, finding it to be fair, reasonable, and adequate.  The Class Representatives have fairly and adequately protected the interests of the Class.  This consideration further supports approval of the Settlement.

3.  <u>The Settlement was Negotiated at Arm's-Length</u>

As detailed above in Section II.C, the Settlement resulted from extensive, arm's-length negotiations with two experienced and well-respected jurists and was reached following a mediator's proposal from a Magistrate Judge.  Warshaw Decl., ¶ 20.  Accordingly, this factor is met.

4.  <u>The Relief Provided for the Class is Adequate.</u>

Rule 23(e)(2)(C) directs the Court to consider whether the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3).

The costs, risks, and delay of trial and appeal are discussed *supra* at Section IV.B.1.  The effectiveness of the proposed notice and claims process is discussed *supra* at Section III.C.  Apart from the Settlement Agreement and the Confidential Attachment thereto identified in paragraph 6.6, there are no agreements requiring disclosure under Rule 23(e)(3).  Attorney's fees are discussed *infra* at Section VII.

V.    **BECAUSE THE COURT ALREADY CERTIFIED THE CLASS, IT NEED NOT UNDERTAKE A RULE 23 ANALYSIS**

The Court certified a California class of "[a]ll owners of non-jailbroken Apple iPhone 4 or Apple iPhone 4S devices who on April 16, 2014, had iOS 6 or earlier operating systems on their iPhone 4 or iPhone 4S devices, and who were in California at that time."   Dkt. No. 269. Accordingly, the Court need not repeat a Rule 23 analysis here.

VI.    **THE SETTLEMENT PROVIDES PROPER NOTICE TO THE CLASS**

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" any settlement. Fed. R. Civ. P. 23(e)(1)(B).  Notice to the class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The notice must contain the following information: (1) the nature of the action; (2) the definition of the class; (3) the class claims, issues, or defenses; (4) that any Class Member may appear at the fairness hearing through an attorney; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner from requesting exclusion' and (7) the binding effect of a judgment on Class Members.  Fed. R. Civ. P. 23(c)(2)(B).

Here, Apple has contact information (either email addresses, physical addresses or both) for nearly all Settlement Class Members.  Therefore, the primary means of notice in this Action will be direct notice via email to Class Members.  Settlement Agreement, ¶ 6.2.3.  For all Class Members whose email is returned as undeliverable or otherwise do not have a valid email address on file, the Settlement Administrator will send Postcard Notice via U.S. Mail.  *Id.*, ¶ 6.2.4.

The Settlement Administrator will establish a Settlement Website and post the operative complaint and answer, the Settlement Agreement, the Long-Form Notice, the Preliminary Approval Order, Plaintiffs' Motion for Attorneys' Fees and Costs, a set of frequently asked questions, information on how to object or request exclusion, and contact information of Class Counsel and the Settlement Administrator.  Warshaw Decl., ¶ 21.  The Settlement Website will also include an "Application for Inclusion in the Class" that may be submitted by individuals who believe

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  themselves to be Settlement Class Members but who have not received email or mail notice.  The

2  Email Notice and Postcard Notice will contain the Settlement Website address.  Class Members will

3  be able to access the Settlement Website to participate in the settlement and exercise their rights

4  thereunder.

5  The content of the notice complies with the requirements of Rule 23(c)(2)(B).  As seen in

6  the Full Notice, Email Notice and Postcard Notice attached to the Settlement Agreement, the notice

7  describes the nature of the Action, states the definition of the class, explains the binding effect of

8  the judgment on Class Members, and provides all the necessary information for Class Members to

9  appear at the fairness hearing, file a claim, object to the settlement, and/or exclude themselves from

10  the class.  *See* Exhibits A-C to the Settlement Agreement.

11  Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Apple has agreed to provide

12  notice to the appropriate federal and state officials upon the filing of this proposed settlement.

13  Accordingly, the Court should approve the proposed notice plan.

14  **VII.    ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

15  Class Counsel will apply for an award of reasonable attorneys' fees in an amount not to

16  exceed 30% of the common fund, or $5,400,000, and for a reimbursement of expenses and verified

17  costs not to exceed $1,100,000.   Settlement Agreement, ¶ 7.1.   Any attorneys' fees and costs

18  awarded to Class Counsel will be paid from the Settlement Fund.  Class Counsel's estimated lodestar

19  through February 2020 is $8,398,910.  Warshaw Decl., ¶ 22.  Therefore, the maximum fee request

20  results in a "negative multiplier" of 0.64.  *Id*.

21  In a class action settlement, a court may award reasonable attorneys' fees as authorized by

22  law or by the parties' agreement.  *See* Fed. R. Civ. P. 23(h); *Hendricks v. Starkist Co*., No. 13-

23  00729, 2016 WL 5462423, at *10 (N.D. Cal. Sept. 29, 2016), aff'd, 2018 WL 5115482 (9th Cir.

24  Oct. 19, 2018) (court may award reasonable attorneys' fees and costs where "a litigant proceeding

25  in a representative capacity secures a 'substantial benefit' for a class of persons").  The two primary

26  methods for determining a reasonable fee are the "lodestar" and "percentage-of-the-fund" methods.

27  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz.*

28  *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("the choice between lodestar and percentage

calculation depends on the circumstances, but . . . 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'").  The attorney fee request is reasonable under either method.

### 1.  "Percentage-of-the-Fund" Method

The Ninth Circuit requires "only that fee awards be reasonable in the circumstances." *Rodriguez,* 563 F.3d at 967.  Using the percentage-of-the-fund method, "the court typically begins with the 9th Circuit 'benchmark' of 25%, and then explains what special circumstances justify a deviation upward or downward from that benchmark." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 721680, *34 (N.D. Cal. Jan. 28, 2016).  In deciding whether to adjust the 25% benchmark, the court considers the following criteria in a common fund case: (a) the results achieved for the Class; (b) the complexity of the case and the risk and expense to counsel; (c) the skill, experience and performance of counsel; (d) the contingent nature of the fee; and (e) the fees awarded in comparable cases. *Vizcaino*, 290 F.3d at 1048–1049; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

### 2.  Lodestar Cross-Check

"To guard against an unreasonable result, the Ninth Circuit encourages district courts to 'cross-check[] their calculations against a second method.'" *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, *6 (N.D. Cal. Sept. 2, 2015) (citations omitted).  Class Counsel's estimated lodestar through February 2020 is $8,398,910.  Therefore, the fee request results in a "negative multiplier" of 0.64.  Warshaw Decl., ¶ 22.  This amount falls below the range commonly approved in the Ninth Circuit. *See In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (discussing a survey of "attorney's fees awards in common fund cases ranging from $50 to 200 million between 1996 and 2001" and finding that in "the vast majority of cases (20 of 24, or 83%), the multiplier ranged from 1.0–4.0.") (citing *Vizcaino*, 290 F.3d at 1052-54).

In sum, the relief provided to the Classes, including a maximum award of attorney's fees representing 64% of counsel's current lodestar, strongly supports granting this Motion.

3.      Incentive Awards

Class Counsel also will apply for incentive awards for the two Class Representatives, Christina Grace and Ken Potter, of up to $7,500 each, for a total cost of no more than $15,000. Settlement Agreement, ¶ 7.2.  If approved by the Court, these incentive awards will be paid from the Settlement Fund.  The individual settlement awards are designed to compensate the Class Representatives for their service to the Class and for their commitment and time spent working on the Action.  The two Class Representatives have actively participated in this litigation for more than three years, including (i) reviewing the pleadings and responding to discovery requests, (ii) surrendering their iPhone devices to a third-party neutral for forensic imaging for a period of several months, (iii) preparing for and being deposed, (iv) conferring with Class Counsel during mediation and settlement conferences, and (v) regularly consulting with Class Counsel regarding the progress of the Action.  Warshaw Decl., ¶ 23.  The requested incentive awards fall well within the range authorized by the Ninth Circuit and approved in this District.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015) (collecting cases showing that incentive awards typically range between $2,500 and $10,000); *Hickcox-Huffman v. US Airways, Inc.*, No. 10-CV-05193-VKD, 2019 WL 1571877, at *2 (N.D. Cal. Apr. 11, 2019) ("the amount of $10,000.00 is fair and reasonable in light of the amount of personal time devoted to fulfilling her duties as the class representative in this action."); *Arelvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (finding a $10,000 service awards fair and reasonable in light of the fact that the amount is a small percentage, (0.002%), of the overall recovery); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *31 (N.D. Cal. Aug. 17, 2018) (awarding $7,500 incentive payments to the 29 representative plaintiffs who had their computers forensically examined).

The Notice explains that the Plaintiffs intend to file a motion for attorneys' fees, costs, and incentive awards so that Class Members will be aware of the proposed requests.  The motion for attorneys' fees, costs, and incentive awards will be filed at least thirty-five days before the deadline for objections.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding that Class Members should have adequate time to review motion for attorneys' fees before

1  the deadline for objections).

2  **VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

3         The last step in the settlement approval process is the final approval hearing, at which the

4  Court may hear all the evidence and argument necessary to evaluate the proposed settlement.  At

5  that hearing, proponents of the settlement may explain and describe their terms and conditions and

6  offer argument in support of settlement approval.  Members of the Class—or their counsel—may

7  be heard in support or in opposition to the settlement.  Plaintiffs propose the following schedule of

8  final approval consistent with the Settlement Agreement:

| Deadline | Action |
|---|---|
| Within 30 days after entry of the Order Granting Preliminary Approval (the "Notice Date") | Establish Settlement Website, Provide Email Notice and Commence Online Media Notice Plan |
| Within 21 days after the Notice Date | Provide Supplemental Notice to the Class Members Whose Email Notice were Returned Undeliverable via U.S. Mail |
| Within 46 days after the Notice Date | Deadline to file Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards |
| Within 60 days after the Notice Date | Deadline for Class Members to file a claim, opt-out, or object to the Settlement Agreement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards |
| At least 35 days before the Fairness Hearing | Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement and deadline for the parties to respond to any objection to Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards |
| Set by the Court | Final approval/fairness hearing |

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  IX.  **CONCLUSION**

2       Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary

3  approval of the Settlement Agreement, approve the proposed notice plan, and enter a final approval

4  hearing schedule.

5  DATED: April 27, 2020         Respectfully submitted,

6

7                     By:  */s/ Daniel L. Warshaw*
                              DANIEL L. WARSHAW

8

9                     PEARSON, SIMON & WARSHAW, LLP
                   Clifford H. Pearson (Bar No. 108523)

10                     Daniel L. Warshaw (Bar No. 185365)
                   Thomas J. Nolan (Bar No. 66992)

11                     Alexander L. Simon (Bar No. 305734)
                   15165 Ventura Boulevard, Suite 400

12                     Sherman Oaks, CA 91403
                   Telephone: (818) 788-8300

13                     cpearson@pswlaw.com

14                     tnolan@pswlaw.com
                   dwarshaw@pswlaw.com

15                     asimon@pswlaw.com

16                     PEARSON, SIMON & WARSHAW, LLP

17                     Bruce L. Simon (Bar No. 96241)
                   350 Sansome Street, Suite 680

18                     San Francisco, CA 94104
                   Telephone: (415) 433-9000

19                     bsimon@pswlaw.com

20                     STEYER LOWENTHAL BOODROOKAS

21                        ALVAREZ & SMITH LLP
                   Allan Steyer (Bar No. 100318)

22                     Jill M. Manning (State Bar No. 178849)
                   D. Scott Macrae (State Bar No. 104663)

23                     235 Pine Street, 15th Floor
                   San Francisco, CA 94104

24                     Telephone: (415) 424-3400

25                     asteyer@steyerlaw.com
                   jmanning@steyerlaw.com

26                     smacrae@steyerlaw.com

27                     FRIEDMAN OSTER & TEJTEL PLLC
                   David F.E. Tejtel (*admitted pro hac vice*)

28                     493 Bedford Center Road, Suite 2D

Bedford Hills, NY 10507
Telephone: (646) 661-5881
dtejtel@fotpllc.com

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*admitted pro hac vice*)
Jason D. Cassady (*admitted pro hac vice*)
John Austin Curry (*admitted pro hac vice*)
2121 N. Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com

*Counsel for Plaintiffs and the Class*