ALLAN STEYER (Bar No. 100318)
JILL M. MANNING (Bar No. 178849)
D. SCOTT MACRAE (Bar No. 104663)
**STEYER LOWENTHAL BOODROOKAS
    ALVAREZ & SMITH LLP**
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 424-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

CLIFFORD H. PEARSON (Bar. No. 108523)
DANIEL L. WARSHAW (Bar No. 185365)
THOMAS J. NOLAN (Bar No. 66992)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com

[Additional counsel list on signature page]

*Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CHRISTINA GRACE and KEN POTTER Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 5:17-cv-00551-LHK-NC<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:**      February 8, 2021<br>**Time:**      1:30 p.m.<br>**Courtroom:**  8 |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 8, 2021 at 1:30 p.m. or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Lucy H. Koh, United States District Court, Northern District of California, San Jose Division, 280 South 1st Street, San Jose, CA 95113, Plaintiffs Christina Grace and Ken Potter ("Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order granting final approval of the Settlement Agreement between Plaintiffs and Defendant Apple Inc. ("Apple").

The grounds for this motion are that the proposed settlement is within the necessary range of reasonableness to justify granting final approval pursuant to Federal Rule of Civil Procedure 23(e). This motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Declaration of Daniel L. Warshaw, the Declaration of Cameron R. Azari, the pleadings and papers on file in this action, and such oral and documentary evidence as may be presented at the hearing on this motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

# TABLE OF CONTENTS

**Page**

3      I.      INTRODUCTION ................................................................................................1

4      II.      BACKGROUND ..................................................................................................2

5            A.      Plaintiffs' Claims .....................................................................................2

6            B.      Procedural History ...................................................................................3

7      III.      SUMMARY OF THE SETTLEMENT ...............................................................4

8            A.      Mediation and Settlement ........................................................................4

9            B.      The Proposed Settlement Class ................................................................4

10           C.      Monetary Relief .......................................................................................5

11           D.      Narrowly Tailored Release ......................................................................5

12

13           E.      Class Notice and the Cost of Settlement Administration .........................6

14     IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ............7

15           A.      The Settlement is Fair, Reasonable and Adequate ..................................7

16                    1.      The Strength of Plaintiffs' Case Compared to the Risk, Expense,
                             Complexity, and Likely Duration of Further Litigation ................................8

17

18                    2.      The Amount Offered in Settlement ............................................................10

19                    3.      The Risk of Maintaining Class Action Status Through Trial.......................12

20                    4.      The Extent of Discovery Completed and the Stage of the Proceedings.......12

21                    5.      The Experience and Views of Counsel ......................................................13

22                    6.      The Reaction of the Class Members to the Proposed Settlement.................15

23                            (a)      The Sole Objector is a Disbarred California Attorney and
                                      Professional Objector Who is Not a Class Member........................15

24

25                    7.      The Settlement is Not the Product of Collusion..........................................21

26           B.      The Settlement Class Satisfies Rule 23 and Should be Finally Certified ...............22

27                    1.      The Class Representatives and Class Counsel have Vigorously
                             Represented the Class...................................................................................23

28

2. The Class Representatives' Interests are Aligned with and are Not Antagonistic to the Other Class Members' Interests ................................... 24

3. The Settlement was Negotiated at Arm's-Length ........................................ 24

4. The Relief Provided for the Class is Adequate ........................................... 25

V. CONCLUSION .................................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*AIG, Inc. v. ACE INA Holdings, Inc.*,
5      Nos. 07-2898, 09-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)....................................18

6

*In re Anthem, Inc. Data Breach Litig.*,
7      327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................11, 14, 21

8

*In re Apple Sec. Litig.*,
      No. 5:06-CV-05208-JF (HRL), 2011 WL 1877988 (N.D. Cal. May 17, 2011) ....................18

9

*Betancourt v. Advantage Human Resourcing, Inc.*,
10      No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016)....................................11

11

*In re Bluetooth Headset Prods. Liab. Litig.*,
      654 F.3d 935 (9th Cir. 2011)............................................................................................8, 21

12

*Brown v. Hain Celestial Grp., Inc.*,
13      3:11-CV-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016)........................................16

14

*Castaneda v. Burger King Corp.*,
15      No. C 08-04262 WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010).................................20

16

*Caudle v. Sprint/United Mgmt. Co.*,
      No. C 17-06874 WHA, 2019 WL 6841239 (N.D. Cal. Dec. 16, 2019) .................................11

17

18

*Chambers v. Whirlpool Corp.*,
      214 F. Supp. 3d 877 (C.D. Cal. 2016).................................................................................17

19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
20      361 F.3d 566 (9th Cir. 2004)......................................................................................2, 7, 8, 23

21

*Class Plaintiffs v. City of Seattle*,
      955 F.2d 1268 (9th Cir. 1992)...............................................................................................7

22

*Cobell v. Salazar*,
23      679 F.3d 909 (D.C. Cir. 2012) ...........................................................................................18

24

*Collins v. Quincy Bioscience, LLC*,
      No. 19-22864-Civ (MGC) (S.D. Fla.), Dkt. No. 176 .........................................................21

25

26

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
      No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)...............................15

27

*G. F. v. Contra Costa Cty.*,
28      No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................21

*Gay v. Tom's of Maine, Inc.*,
No. 0:14-cv-60604-KMM, Dkt. No. 43 (S.D. Fla. Mar. 11, 2016)........................................ 16

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................. 9, 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 10, 23

*Hillis v. Equifax Consumer Servs., Inc.*,
No. 104-CV-3400-TCB, 2007 WL 1953464 (N.D. Ga. June 12, 2007) ................................. 17

*Hooker v. Sirius XM Radio Inc.*,
No. 4:13-cv-00003-AWA-LRL, Dkt. No. 209 ...................................................................... 16

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................................... 20

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09CV1088 BTM KSC, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) .................... 16, 17

*Jennings v. Open Door Mktg., LLC*,
No. 15-CV-04080-KAW, 2018 WL 4773057 (N.D. Cal. Oct. 3, 2018) ................................. 19

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................................. 17

*Lane v. Facebook, Inc.*,
709 F.3d 791 (9th Cir. 2013) ................................................................................................. 17

*Larsen v. Trader Joe's Co.*,
No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................ 14

*Legg v. Lab. Corp. of Am.*,
No. 14-61543-CV, 2016 WL 3944069 (S.D. Fla. Feb. 18, 2016)......................................... 16

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................... 12, 21

*McDonald v. CP OpCo, LLC*,
No. 17-CV-04915-HSG, 2019 WL 2088421 (N.D. Cal. May 13, 2019) ............................... 11

*Moore v. Verizon Commc'ns, Inc.*,
No. C 09-1823 SBA, 2013 WL 450365 (N.D. Cal. Feb. 5. 2013) ....................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................................... 10

*In re Nexus 6P Prod. Liab. Litig.*,
No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ............................... 20

*Nicholas der-Hacopian v. Darktrace, Inc.*,
  No. 18-CV-06726-HSG, 2020 WL 7260054 (N.D. Cal. Dec. 10, 2020) ................................ 21

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) ........................................................................................ 12

*In re NVIDIA GPU Litig.*,
  539 F. App'x 822 (9th Cir. 2013) ........................................................................................ 17

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
  910 F. Supp. 2d 891 (E.D. La. 2010) ................................................................................. 18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................. 14

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ............................................................................................ 18

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ............................................................................................ 12

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ................................ 17

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................... 7, 10, 11

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
  No. 19-CV-06088-LB, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) ................................. 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
  No. 16-CV-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ................................. 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
  No. 16-CV-02200-HSG, 2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) ................................ 20

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................................................ 20

*Spann v. J.C. Penney Corp.*,
  No. SA CV 12-0215 FMO, 2016 U.S. Dist. LEXIS 137184 (C.D. Cal. Sep. 30, 2016) ........ 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................................. 22

*Stovall-Gusman v. W.W. Granger, Inc.*,
  No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) .............................. 11

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .............................................................................................. 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................. 20

*Wal-Mart Stores, Inc. v. Buholzer*,
   156 F. App'x 346 (2d Cir. 2005) ........................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................. 22

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 CIV 3288(DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ................................ 17

**Other Authorities**

4 Newberg on Class Actions § 13.45 (5th ed.) ............................................................. 14

Fed. R. Civ. P. 23(a) ............................................................................................... 22

Fed. R. Civ. P. 23(e) ......................................................................................... *passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3     The Settlement Class Members' reaction to the Settlement was overwhelmingly positive.  Of

4  the approximately 3.2 million Settlement Class Members, only nine opted out and only one—a

5  disbarred attorney who is a serial objector and not a member of the class—filed an objection.  Over

6  ninety-nine percent (99%) of the Settlement Class Members were prequalified to participate in the

7  Settlement using Apple's records, received direct notice of the Settlement, and do not need to submit

8  a claim form to participate in the Settlement.  These persons will automatically receive a payment for

9  each of their qualifying devices.  The small balance of the Settlement Class Members (0.2%) who

10  were not prequalified by Apple and will not receive an automatic payment had the opportunity to

11  participate in the Settlement by submitting an Application for Inclusion, which 3,358 individuals did.

12  Pursuant to Federal Rule of Civil Procedure 23(e), the Parties now seek final approval of the

13  Settlement.[1]

14     Under the terms of the Settlement, Apple will fund an $18 million non-reversionary cash

15  Settlement Fund.   After deducting from the Settlement Fund the costs of notice and claims

16  administration, attorneys' fees and expenses, and incentive awards, the proceeds of the fund will be

17  distributed automatically by electronic and/or paper checks.

18     On September 10, 2020, this Court issued an Order preliminarily approving this class action

19  Settlement.  *See* Dkt. No. 426 ("Preliminary Approval Order").  The Preliminary Approval Order was

20  the product of an extensive inquiry by the Court, which engaged with Class Counsel during a nearly

21  90-minute hearing regarding myriad aspects of the proposed Settlement, and requested and received

22  supplemental briefing providing further detailed information regarding the proposed Settlement (*see*

23  Dkt. No. 424).

24     Pursuant to the Notice Plan set forth in the Preliminary Approval Order and Settlement

25  Agreement, Epiq, the Claims Administrator appointed by the Court, has sent direct notice to the

26  3,222,856 Class Members.  *See* Declaration of Cameron R. Azari ("Azari Decl."), ¶¶ 14-23.  The

27

28

---

[1] All capitalized terms referenced herein are defined in the Settlement Agreement.

1   Notice reached 97% of the Settlement Class.  *Id.*, ¶ 23.  Additionally, Epiq received 3,358

2   Applications for Inclusion ("Applications") in the Class from persons who believe they have a device

3   that falls within the Class definition.  *Id.*, ¶ 24.  Only nine Settlement Class Members opted out of the

4   settlement, and only one objection was filed.  *Id.*, ¶¶ 36-37.  Accordingly, Epiq has successfully

5   effectuated the Court-approved Notice Plan and the response of Class Members has been extremely

6   positive.

7         As previously set forth in Plaintiffs' Motion for Preliminary Approval (Dkt. No. 414), the

8   "*Churchill* factors" strongly support final approval of the proposed Settlement.  *See Churchill Vill.,*

9   *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  The Settlement is fair, reasonable and

10  adequate and meets all requirements for final approval.  It provides for immediate monetary relief to

11  the Settlement Class Members whose devices are alleged to have been impacted by the April 16, 2014

12  Facetime Break.  Absent a settlement, the Class would face the task of maintaining class certification

13  through trial, the expense and uncertainty of trial, and the risk of appeal.  Accordingly, the Court

14  should grant final approval of the Settlement.

15  **II.    BACKGROUND**

16        **A.    Plaintiffs' Claims**

17        Plaintiff Christina Grace filed this Action on February 2, 2017, and filed the Amended

18  Complaint, which added Plaintiff Ken Potter, on April 5, 2017.  The Amended Complaint alleges "a

19  consumer class action brought by Plaintiffs on behalf of themselves and all others similarly situated

20  who owned an Apple iPhone 4 or iPhone 4S that was operating on iOS 6 or an earlier operating

21  system, and therefore lost the ability to use Apple's 'FaceTime' video conferencing feature when

22  Apple intentionally broke FaceTime for iOS 6 and earlier operating systems on April 16, 2014." Dkt.

23  No. 36.  Plaintiffs assert two causes of action: trespass to chattels under California law, and violation

24  of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL").  *Id.*

25  In addition to injunctive relief, Plaintiffs seek damages and restitution on a class-wide basis for the

26  diminution in value of their iPhone 4 and 4S devices allegedly caused by the FaceTime Break.[2]

27  

28  [2] The "FaceTime Break" refers to the April 16, 2014 expiration of the certificate that allowed the
FaceTime feature to function on iPhone 4 and 4S devices running on iOS 6 or an earlier version.

1  Plaintiffs retained Dr. Justine S. Hastings, Ph.D., to calculate aggregate class-wide damages measured

2  by the diminution in value of Class Members' iPhone 4 and 4S devices caused by the FaceTime

3  Break.  Dkt. No. 174.  Dr. Hastings' econometric damages model produced an estimate of the impact

4  of the FaceTime Break on prices of used iPhone 4 and 4S models and concluded that Apple's conduct

5  impacted the prices by, on average, $18.30 per device.

6      Apple denies the allegations and challenged the propriety of the damages model, which among

7  other things was based on data pertaining solely to business-to-business transactions rather than

8  transactions involving class members or those similarly situated.

9      **B.**    **Procedural History**

10      This case was vigorously litigated.  The parties engaged in significant motion practice,

11  including a motion to dismiss, a motion for class certification, a Federal Rule of Civil Procedure

12  ("Rule") 23(f) petition, 12 discovery motions, a summary judgment motion, 6 motions *in limine* and

13  a *Daubert* motion to exclude the testimony and opinions of Plaintiffs' two experts.  Declaration of

14  Daniel L. Warshaw in Support of Motion for Final Approval of Class Action Settlement ("Warshaw

15  Decl."), ¶ 18.   On July 28, 2017, the Court denied Apple's Motion to Dismiss the Amended

16  Complaint.  Dkt. No. 65.  On September 19, 2018, the Court issued a Class Certification Order

17  certifying a class pursuant to Rule 23(b)(3) defined as "[a]ll owners of non-jailbroken Apple iPhone

18  4 or Apple iPhone 4S devices in California who on April 16, 2014, had iOS 6 or earlier operating

19  systems on their iPhone 4 or iPhone 4S devices."  Dkt. No. 269.  The Court denied certification of a

20  nationwide class and did not certify an injunctive relief class under the UCL.  *Id.*  On November 6,

21  2018, Plaintiffs filed a petition pursuant to Rule 23(f) seeking permission to appeal the Court's denial

22  of certification of a nationwide class.  Dkt. No. 290.  On March 20, 2019, the Ninth Circuit denied

23  permission to appeal.  Dkt. No. 295.  On April 29, 2019 the Court set the case for trial on April 6,

24  2020; however, the trial date was vacated.  Dkt. Nos. 301, 410.  On August 21, 2019, the Court denied

25  Apple's Summary Judgment Motion.  Dkt. No. 306.  On September 10, 2020, the Court issued the

26  Preliminary Approval Order (Dkt. No. 426) following a nearly 90-minute hearing regarding all

27  aspects of the proposed Settlement and supplemental briefing (Dkt. No. 424).

28  / / /

1    III.    **SUMMARY OF THE SETTLEMENT**

2         A.    **Mediation and Settlement**

3         On November 9, 2018, the parties attended an all-day Court-ordered mediation session before

4    the Honorable William J. Cahill (Ret.), at JAMS in San Francisco.  Warshaw Decl., ¶ 3.  The parties

5    were unable to reach a settlement.  *Id*.  After denying Apple's motion for summary judgment, the

6    Court ordered the parties to return to mediation.  On October 22, 2019, the parties returned to JAMS

7    for a mediation before Judge Cahill but were again unable to reach agreement on all terms of a

8    settlement.  *Id*., ¶ 4.  After the second mediation, Judge Cahill engaged in extensive settlement

9    discussions with each party but ultimately a settlement was not reached.  *Id*., ¶ 5.  As the litigation

10   progressed closer to trial, the Court ordered the Parties to attend a settlement conference before the

11   Honorable Nathanael Cousins.  Dkt. No. 325.  On December 5, 2019, Magistrate Judge Cousins held

12   an all-day settlement conference, but the parties were again unable to resolve the case.  Warshaw

13   Decl., ¶ 6.  After extensive follow-up discussions, the parties attended a second in-person settlement

14   conference with Magistrate Judge Cousins on January 16, 2020, which also did not result in a

15   settlement.  *Id*., ¶ 7.  Magistrate Judge Cousins continued conferring with the parties and, on January

16   31, 2020, made a mediator's proposal.  *Id*., ¶ 8.  On February 6, 2020, Magistrate Judge Cousins

17   informed the parties that both parties had accepted the mediator's proposal.  *Id*., ¶ 9.

18        B.    **The Proposed Settlement Class**

19        The Settlement Agreement provides for relief to the following Class Members:

20             All owners of non-jailbroken Apple iPhone 4 or Apple iPhone 4S devices
               who on April 16, 2014, had iOS 6 or earlier operating systems on their
21             iPhone 4 or iPhone 4S devices, and who were in California at that time.

22        The Class includes[3] approximately 3.2 million individuals who were affected by the FaceTime

23   Break and who are members of the class certified by the Court.  Dkt. No. 269.[4]

24   _____

25   [3] The Class excludes (a) directors, officers, and employees of Apple or its subsidiaries and affiliated
     companies; (b) the Court, the Court staff, as well as any appellate court to which this matter is ever
26   assigned and its staff; (c) Apple Counsel, as well as their immediate family members, legal
     representatives, heirs, successors, or assigns; and (d) any individuals who timely exclude themselves
27   from the Class or whose claims have already been adjudicated to a final judgment.

28   [4] Because there is no way, using available records, to verify if a user has jailbroken their phone, the
     Settlement Agreement provides that otherwise-qualifying iPhone devices will be presumed to be non-

C.    **Monetary Relief**

Under the terms of the proposed settlement, Apple will fund an $18 million non-reversionary cash Settlement Fund.  After subtracting from the Settlement Fund the costs of notice and claims administration, attorneys' fees and expenses, and incentive awards, the proceeds of the Net Settlement Fund will be distributed automatically by the Settlement Administrator by electronic and/or paper checks.  Each Settlement Class Member will receive a Class Payment for each of their qualifying iPhone 4 or iPhone 4S devices.  Settlement Class Members did <u>not</u> need to submit a claim in order to receive their direct payment from the Net Settlement Fund.  The amount of payments to each participating Settlement Class Member will be calculated based on each Settlement Class Member's proportional share of the Net Settlement Fund, *i.e.*, the Net Settlement Fund balance divided by the total number of eligible devices.

The Settlement Agreement provides for a meet and confer process between the Parties to determine the most appropriate disposition of any unclaimed funds from uncashed checks following the initial payment.  Plaintiffs' position is that the Court should order a second distribution of any such unclaimed funds to Settlement Class Members who cashed checks from the first distribution, and that if, after the second distribution, unclaimed funds remain in the Settlement Fund, they should be donated to the Consumer Federation of America via *cy* pres.[5]  Apple's position is that unclaimed funds, if any, from uncashed checks should escheat to the State of California for the class members' benefit.  Pursuant to the Settlement Agreement, the Parties will brief this issue for the Court if necessary, but under no circumstances will any of the Settlement funds revert to Apple.

D.    **Narrowly Tailored Release**

The Settlement Agreement contains a narrowly tailored release that is specifically limited to claims arising from, or related to, the facts underlying the Action and the certified California Class.  Settlement Agreement at ¶ 8.1.  The Settlement Agreement is not intended to abridge the rights of consumers in other states who may have potential claims.  *Id*., Recitals, p. 5.

---

jailbroken unless it is determined through existing records that they are jailbroken.

[5] The *cy pres* recipient was one of the topics that the Court sought further information on following the preliminary approval hearing which was provided in the supplemental briefing (Dkt. No. 424).

**E.** **Class Notice and the Cost of Settlement Administration**

Epiq has effectuated the Notice Plan pursuant to the Court's Order and the Settlement Agreement by sending direct notice to the 3,222,856 Class Members.  *See* Azari Decl., ¶¶ 14-23, 38-42.  On October 9, 2020, Epiq disseminated 3,204,274 Email Notices to all potential Settlement Class Members for whom Apple provided an email address.  *Id*., ¶ 15.  For those Settlement Class Members for whom Apple did not have an email address but did have a physical mailing address, Epiq mailed 13,635 Postcard Notices via first-class mail that same day.  *Id*., ¶ 18.  This first round of Notice was sent to 99.8% of the Settlement Class.  On November 18, 2020, Epiq completed a second round of notice by mailing Postcard Notices to the persons whose emails were undeliverable.[6]  *Id*., ¶ 19.  Additionally, Epiq received 3,358 Applications from persons who believe they have a device that falls within the Class definition.  *Id*., ¶ 24.  These Applications for Inclusion were submitted via the settlement website or by mail.  The Claims Administrator sent the Applications for Inclusion to Apple for verification of class membership.  *Id*., ¶ 25.  Of the 3,358 Applications, 163 have been approved to date.[7]  *Id*., ¶ 26.

Additionally, on October 8, 2020, Epiq created a dedicated website for the Settlement.  *See* www.GraceClassAction.com.  *Id*., ¶ 32.  By visiting the settlement website, Settlement Class Members are able to obtain detailed information about the case, review documents related to the Settlement, and obtain answers to Frequently Asked Questions (FAQs).  Moreover, individuals who did not receive Notice of the Settlement via email or by physical mail had the opportunity to submit an Application for Inclusion either electronically or by printing the Application and mailing it to Epiq.  *Id.*  As of January 4, 2021, there have been 38,551 unique visitors to the settlement website and 71,058 website page views.  *Id.*, ¶ 33  Epiq also established a toll-free telephone number (1-866-977-0759) for Settlement Class Members to call for additional information about the Settlement, or request that a Long Form Notice be mailed to them, among other things.  *Id*., ¶ 34.  Epiq handled 752 calls to the toll-free number.  *Id.*  Epiq also established a mailing address to allow Settlement Class Members to request additional information about the Settlement.  *Id*., ¶ 35.

[6] The email addresses provided by Apple for 629,186 Class Members were undeliverable.
[7] 848 Applications are still pending confirmation by Apple.  Azari Decl., ¶ 26

1    When authorized by the Court, Epiq will send the checks by email to those Settlement Class

2    Members for whom it has a confirmed email address, and will mail checks to those Settlement Class

3    Members for whom it has a confirmed mailing address.  As set forth in Section III.C *supra*, under no

4    circumstances will any of the settlement funds revert to Apple.

5    At preliminary approval, Epiq estimated it would cost approximately $1.4 million for it to

6    fully administer the Settlement in this Action.  Warshaw Decl., ¶ 23.  The updated cost for settlement

7    administration is $1,406,119.  *Id.*; *see also* Azari Decl., ¶ 28.

8    **IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

9    Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of claims of

10    a settlement class.  The Ninth Circuit maintains a "strong judicial policy that favors settlements,

11    particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*,

12    955 F.2d 1268, 1276 (9th Cir. 1992); *see also Churchill*, 361 F.3d at 576; *In re Syncor ERISA Litig.*,

13    516 F.3d 1095, 1101 (9th Cir. 2008).

14    **A.    The Settlement is Fair, Reasonable and Adequate**

15    A proposed class action settlement may be approved if the Court, after allowing absent class

16    members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."

17    Fed. R. Civ. P. 23(e)(2).  When assessing a proposed settlement, "the court's intrusion upon what is

18    otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited

19    to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

20    overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole,

21    is fair, reasonable and adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

22    965 (9th Cir. 2009) (internal quotation omitted).

23    To assess whether a settlement merits final approval, courts in this Circuit typically consider

24    the following factors:

25        (1)    the strength of the plaintiff's case;

    (2)    the risk, expense, complexity, and likely duration of further litigation;

26        (3)    the risk of maintaining class action status throughout the trial;

    (4)    the amount offered in settlement;

27        (5)    the extent of discovery completed and the stage of the proceedings;

28        (6)    the experience and views of counsel;

1    (7)    the presence of a governmental participant;[8]
      (8)    the reaction of the class members to the proposed settlement; and
2      (9)    whether the settlement is a product of collusion among the parties.

3    *Churchill*, 361 F.3d at 575-76; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th

4    Cir. 2011). As discussed below, an analysis of these factors shows this Settlement to be advantageous

5    to the Class and worthy of judicial approval.

6        The Settlement in this case is fair, reasonable, and adequate and should be approved by the

7    Court because it provides substantial monetary relief to Class Members, *i.e.* an $18 million non-

8    revisionary cash fund. As detailed below and consistent with this Court's Procedural Guidance for

9    Class Action Settlements, the factors to be considered by the Court weigh heavily in favor of

10   approval, because the Settlement Agreement adequately remedies the claims alleged by Plaintiffs in

11   this class action lawsuit.

12        1.    The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity,
                and Likely Duration of Further Litigation
13

14       While Plaintiffs believe their claims are strong, the risk, complexity and expense of further

15   litigation is substantial and weigh strongly in favor of approving the Settlement. The risks of

16   continuing this litigation include: (i) the possible success of Apple's vigorous defense at trial and/or

17   on appeal to Plaintiffs' assertions that the challenged conduct constitutes a trespass to chattels and

18   unfair business practice; (ii) Apple successfully moving to decertify the litigation class; (iii) Apple's

19   aggressive challenges to Plaintiffs' damages methodology and the possibility that the Court would

20   grant Apple's pending *Daubert* motion; (iv) a possible adverse outcome at trial; and (v) risks on

21   appeal.

22       At trial, Apple would have asserted legal and factual defenses. For example, Apple has argued

23   throughout this Action that, *inter alia*, (i) it never acted with the intent to interfere with FaceTime,

24   (ii) the certificate expiration that caused the FaceTime Break was a result of programming decisions

25   made in 2007 and 2010, and (iii) it provided a fully satisfactory fix in the form of an update to the

26
———————————————
27   [8] There is no government participant in this matter, therefore this factor is a non-issue. The
     appropriate federal and state officials will be notified pursuant to the Class Action Fairness Act, 28
28   U.S.C. § 1715, and given an opportunity to raise any objections or concerns they may have prior to
     final approval.

1   latest version of its operating system.  Apple has also argued that Plaintiffs lack an ownership interest

2   in the personal property that was allegedly interfered with, and that it was impossible to ascertain

3   customers who suffered a significant interference with FaceTime on a device they were actively

4   using.  Apple also would have presented affirmative defenses, including that:  (i) Plaintiffs were

5   estopped from claiming trespass to chattels; (ii) in utilizing digital certificates in connection with

6   FaceTime, Apple acted out of necessity to prevent serious harm; (iii) Plaintiffs consented to the

7   alleged interference; (iv) Plaintiffs failed to mitigate damages because they could have, but did not,

8   take action to lessen their alleged damages; and (v) Apple's conduct was necessary and had a

9   substantial business justification.

10      Further, as set forth in its *Daubert* motion, Apple challenges the opinions of Plaintiffs' two

11  experts, Dr. Hastings and Dr. Mark Jones.  Dkt. No. 333.  Thus, Plaintiffs face the risk of proceeding

12  to trial without expert opinion calculating damages arising from the FaceTime Break, and/or expert

13  opinion relating to the various technical aspects of FaceTime Break and its impact on the Apple

14  devices.  Further, Apple's expert submitted a report challenging Dr. Hastings' damages analysis and

15  concluding that there were no measurable damages caused by the FaceTime Break.

16      Finally, absent settlement, Plaintiffs would have to litigate this Action for a lengthy and

17  unknown duration of time in order to potentially secure a recovery for the Class.  While Plaintiffs

18  believe they have sufficient evidence to prove liability and damages at trial, obtaining a verdict,

19  whether by judge or jury, is inherently uncertain.  Plaintiffs bear the burden in this case to prove their

20  claims by a preponderance of the evidence.  Moreover, it is exceedingly likely that a successful result

21  at trial would have resulted in post-trial appeal proceedings initiated by Apple.  *See Glass v. UBS Fin.*

22  *Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F.

23  App'x 452 (9th Cir. 2009) ("Regardless of how this Court might have ruled on the merits of the legal

24  issues, the losing party likely would have appealed, and the parties would have faced the expense and

25  uncertainty of litigating an appeal.").  This Settlement provides valuable monetary relief to the Class

26  without the delay and risk of further litigation.

27      The substantial relief obtained through this Settlement, particularly when balanced against the

28  length, expense and uncertainty of trial and post-trial proceedings, weighs in favor of approval.  *See*

1    *Rodriguez*, 563 F.3d at 966; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526

2    (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance

3    of immediate recovery by way of the compromise to the mere possibility of relief in the future, after

4    protracted and expensive litigation.") (citation omitted); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

5    1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not

6    whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and

7    free from collusion.").

8                 2.      <u>The Amount Offered in Settlement</u>

9        The benefits offered by the Settlement Agreement weigh heavily in favor of final approval.

10    As detailed above, the Settlement Agreement creates an $18 million non-reversionary cash common

11    fund—nearly 30 percent of the total average damages initially estimated by Dr. Hastings—and

12    provides substantial monetary relief to Settlement Class Members. The amount of the settlement

13    fund is fair, reasonable and adequate given the diminution in value damages calculated by Dr.

14    Hastings, Apple's defenses, and litigation and trial risks.

15        In exchange for a release of their claims, Settlement Class Members will receive for each

16    qualifying iPhone 4 and 4S device they own an equal share of the Net Settlement Amount. Epiq

17    currently estimates that for each qualifying iPhone 4 or 4S device, Settlement Class Members will

18    receive an initial check for an estimated $3.13, assuming the Court approves Plaintiffs' motion for

19    attorneys' fees, costs and incentive awards without modification. Azari Decl., ¶ 31. In the event that

20    some Settlement Class Members do not cash their checks, the Settlement Agreement provides that

21    the Parties will meet and confer regarding distribution of the residue and, if necessary, brief their

22    respective positions, which could include a second distribution followed by *cy pres* (Plaintiffs'

23    position, if economically feasible), or escheatment to the State of California. (Apple's position).

24    Settlement Agreement, ¶ 2.7. In no event would any residue revert to Apple.

25        In the event that a *cy pres* mechanism is ultimately used to distribute any residual funds, the

26    Parties have selected, as set forth in the supplemental briefing following preliminary approval (Dkt.

27    No. 424), the Consumer Federation of America as the *cy pres* recipient. Neither the Parties nor their

28    counsel have any affiliation with the Consumer Federation of America. Warshaw Decl., ¶ 22.

The intent of the Settlement is to distribute the Settlement Fund efficiently and effectively to Settlement Class Members. Plaintiffs estimate that if *all* Settlement Class Members cash their checks and the Court approves Plaintiffs' motion for attorneys' fees, costs and incentive awards, the average damages amount received by each will be approximately $3.13, which represents 15 to 20 percent of Dr. Hastings' estimate of average per device diminution in value caused by the FaceTime Break. This amount falls well within the "range of reasonableness" under Ninth Circuit law. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (A "Settlement Fund represent[ing] approximately 14.5% of the projected recovery that Settlement Class Members would be entitled to if they prevailed on their claims . . . is within the range of reasonableness after taking into account the costs and risks of litigation."); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *5 (N.D. Cal. Jan. 28, 2016) ("9.7% of the total maximum potential recovery that class members would be entitled to if they prevailed on all claims . . . is 'within the range of reasonableness' . . . "); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% of what class might have been awarded had they succeeded at trial" is "'within the range of reasonableness' in light of the risks and costs of litigation."); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2020 WL 511953, at *10 (N.D. Cal. Jan. 31, 2020) (granting preliminary approval where "total settlement amount constitutes approximately 7.4% of the 'best-case' nationwide recovery").

Further, the Net Settlement Fund will be paid in cash, "which is a good indicator of a beneficial settlement." *Rodriguez*, 563 F.3d at 965. Moreover, Settlement Class Members do <u>not</u> need to submit a claims form or take any action in order to receive a settlement payment. Because Class Members are not required to submit claims, "settlement dollars will reach the class members in a timely and efficient manner." *McDonald v. CP OpCo, LLC*, No. 17-CV-04915-HSG, 2019 WL 2088421, at *4 (N.D. Cal. May 13, 2019) (granting final settlement approval); *see also Caudle v. Sprint/United Mgmt. Co.*, No. C 17-06874 WHA, 2019 WL 6841239, at *3 (N.D. Cal. Dec. 16, 2019) (approving class action settlement as fair, reasonable and adequate where "class members need do nothing — payments will be sent automatically upon approval of this proposed settlement."); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *6 (N.D. Cal.

1  Aug. 27, 2020) (granting final approval of settlement with gross settlement amount of 7% of

2  maximum potential recovery where "settlement agreement provides that checks will be mailed

3  automatically to all settlement class members who do not opt out, without any requirement to submit

4  a claim form."); *Noll v. eBay, Inc*., 309 F.R.D. 593, 608 (N.D. Cal. 2015) (final approval of settlement

5  where "[e]ach settlement class member will automatically receive an account credit or a check.").

6       Plaintiffs submit that particularly when juxtaposed against the risks and costs of further

7  litigation, the Settlement constitutes an excellent result for the Class.

8                 3.    <u>The Risk of Maintaining Class Action Status Through Trial</u>

9       Plaintiffs believe this Action was properly certified as a class action by the Court and that

10  Plaintiffs' economist Dr. Hastings constructed an econometric model capable of proving damages on

11  a class-wide basis.

12       Nevertheless, Plaintiffs' ability to maintain class certification through trial certainly poses a

13  risk, especially in the event of an unforeseen intervening change in the law.  Even if Plaintiffs were

14  able to successfully prove their case at trial, Apple would argue that there would be substantial

15  difficulty in proving class-wide damages based on, among other things, differences in each Class

16  Member's particular use of their devices and the deficiencies in Plaintiffs' damages model based on

17  data about the business-to-business market.  Apple would further argue that every member of a class

18  must satisfy the basic requirements of Article III standing before the members may "be awarded

19  individual monetary damages."  *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1037 (9th Cir. 2020).

20  Although Plaintiffs are confident that this Action would remain certified as a class action, the risk of

21  failing to maintain class action status throughout trial further weighs in favor of final approval.  *In re*

22  *Linkedin User Privacy Litig*., 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("[T]he notion that a district

23  court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a

24  settlement.").

25                 4.    <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

26       The parties engaged in extensive discovery and motion practice that informed their decision

27  regarding the sufficiency of the Settlement Agreement.  This case has been vigorously litigated since

28  Plaintiff Grace filed it nearly four years ago, on February 2, 2017.  The Motion practice included a

1    motion to dismiss, a motion for class certification, a Rule 23(f) petition, 12 discovery motions

2    (including motions related to ESI), a summary judgment motion, a *Daubert* motion to exclude the

3    testimony and opinions of Plaintiffs' two experts, and six motions *in limine*.  The parties also prepared

4    and submitted pretrial filings, including a joint pretrial statement, proposed jury instructions, verdict

5    forms and *voir dire* questions, trial exhibit lists and witness lists.

6           The parties engaged in exhaustive discovery.  Plaintiffs served 65 Requests for Production,

7    43 Interrogatories, and 42 Requests for Admission on Apple.  Warshaw Decl., ¶ 10.  The parties

8    engaged in extensive negotiations over search terms and ESI production, resulting in 6 motions to

9    compel, and Apple produced 1,025,596 pages of documents.  *Id.*, ¶ 11.  Plaintiffs took seven non-

10   expert depositions of Apple, including two Rule 30(b)(6) depositions, and four depositions of non-

11   parties.[9]  *Id.*, ¶ 12.  There were seven depositions of the parties' five experts.  *Id.*, ¶ 13.  Plaintiffs'

12   experts, Dr. Hastings and Dr. Jones, were deposed twice and once, respectively.  *Id.*  Apple's experts,

13   Ms. Dana Trexler and Dr. Neil Malhotra were each deposed once, and Dr. Aviel Rubin was deposed

14   twice.  *Id.*  Apple deposed both Class Representatives.  *Id.*, ¶ 14.  Apple requested and the Court

15   ordered (over Plaintiffs' objection), forensic imaging of the Class Representatives' three iPhone 4

16   devices.  *Id.*, ¶ 15.  The Class Representatives surrendered their devices for several months into the

17   custody of a neutral third party, who conducted forensic imaging consistent with the Court's Order.

18   *Id.*  The neutral third party produced extensive data from the Plaintiffs' devices, including all data

19   and information regarding FaceTime, Wi-Fi use, Wi-Fi connection history, and Wi-Fi networks.  *Id.*

20   This production totaled over 370,000 files from within the Settings, Diagnostics, and Usages tabs, or

21   otherwise related to the phone settings in general.  *Id.*; *see also* Dkt. No. 154.

22          This thorough and lengthy discovery and motion practice allowed Plaintiffs and Apple to fully

23   evaluate the strengths and weakness of their respective positions in the litigation, and to assess their

24   respective likelihood of success at trial and beyond.

25                5.      The Experience and Views of Counsel

26          Final approval is further justified by the fact that Plaintiffs and the Class are represented by

27   

28   [9] Plaintiffs moved for relief from the ten-deposition limit set forth in Rule 30(a)(2), to take additional depositions of Apple.  The Court denied the request.  Dkt. No. 222.

1  court-appointed co-lead counsel from Pearson, Simon & Warshaw, LLP, Steyer Lowenthal

2  Boodrookas Alvarez & Smith LLP, Caldwell Cassady & Curry, and Friedman Oster & Tejtel PLC,

3  who together have extensive experience in class action and complex litigation, have negotiated

4  numerous other class action settlements, have tried cases to verdict against Apple and have the ability

5  to litigate this Action on a class-wide basis through trial and appeal.  Class Counsel secured

6  satisfactory terms of settlement only after a thorough investigation of the factual and legal issues

7  raised in this Action and believe that the Settlement is fair, adequate and reasonable.  Warshaw Decl.,

8  ¶ 24.  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."

9  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *see also Larsen v. Trader*

10  *Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) ("The opinions

11  of counsel should be given considerable weight both because of counsel's familiarity with this

12  litigation and previous experience with cases.").

13         Further, the Settlement Agreement was the product of extensive arm's-length and adversarial

14  settlement discussions between the parties that spanned many months and several mediations,

15  culminating in a mediator's proposal from Magistrate Judge Cousins that helped bridge the remaining

16  gaps.  Where a settlement is the product of arm's-length negotiations conducted by capable and

17  experienced counsel, the court begins its analysis with a presumption that the settlement is fair and

18  reasonable.  *See* 4 Newberg on Class Actions § 13.45 (5th ed.).  Further, "[c]ourts in this district have

19  recognized that 'the assistance of an experienced mediator in the settlement process confirms that the

20  settlement is non-collusive.'"  *In re Anthem*, 327 F.R.D. at 327; *see also Glass*, 2007 WL 221862, at

21  *5 ("The settlement was negotiated and approved by experienced counsel on both sides of the

22  litigation, with the assistance of a well-respected mediator . . . [and] this factor supports approval of

23  the settlement.").  As explained above, the Settlement Agreement was reached only after two in-

24  person mediations with Judge Cahill, two in-person settlement conferences with Magistrate Judge

25  Cousins, and extensive and prolonged negotiations conducted by phone and email.  Warshaw Decl.,

26  ¶¶ 3-9.  At the conclusion of those settlement negotiations, Magistrate Judge Cousins presented a

27  mediator's proposal, which the parties accepted.  *Id.*, ¶ 8.

28         Drawing upon their considerable experience and expertise, Class Counsel negotiated and

evaluated the Settlement, which resulted from a proposal by Magistrate Judge Cousins, and ultimately

determined that the Settlement provided significant and substantive relief to the Class in the face of

significant litigation risks, and therefore should be accepted.  *Id.*, ¶ 19.

> 6.   <u>The Reaction of the Class Members to the Proposed Settlement</u>

The Settlement has received widespread support and been positively received by Class

Members following the Notice.  Of course, one of the primary benefits of the Settlement is the fact

that Class Members do <u>not</u> need to respond or file a claim to receive proceeds of the Settlement.

Apple provided the Claims Administrator reliable contact information for millions of persons

reflected in Apple's records as having a qualifying device.  That information – email addresses and

physical addresses – was used to provide direct Notice in accordance with the Preliminary Approval

Order.   Of the 3,222,856 Class Members, Apple provided to the Claims Administrator email

addresses for 3,204,274, or 99.4%.  Azari Decl., ¶ 14.  Postcard Notices were sent to 13,635 Class

Members without email addresses.[10]  *Id.*, ¶ 18.  Apple did not have contact information for 4,947

Settlement Class Members, or 0.2%.  Those persons were able to access information about the

Settlement from the settlement website and file an Application for Inclusion.   The Claims

Administrator received 3,358 such Applications for Inclusion.  *Id.*, ¶ 24.  Only nine Class Members

opted out of the Settlement.  *Id.*, ¶ 36.

> (a)   *The Sole Objector is a Disbarred California Attorney and Professional Objector Who is Not a Class Member*

Only one individual submitted an objection, Steven F. Helfand.  *See* Dkt. No. 428.  As a

preliminary matter, Mr. Helfand is well known as a serial "professional objector" and was disbarred

by the California State Bar in 2020 for seeking to mislead a judge, misappropriation, and acts

involving moral turpitude, among others, in the context of an objection to a class action settlement.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at

*42 (N.D. Ga. Mar. 17, 2020) (citing Notice of Disciplinary Charges, *In the Matter of Steven Franklyn*

---

[10] The Claims Administrator mailed an additional 596,229 Postcard Notices to those Class Members whose email addresses were invalid (after 2 attempts), but for whom a mailing address was provided. No mailing addresses were available for 32,957 of the 629,186 email bounces.  Azari Decl., ¶¶ 16, 19.

1  *Helfand*, No. 17-O-00411 and 17-O-00412 (State Bar Court of California; filed Sept. 24, 2018,

2  available at http://members.calbar.ca.gov/courtDocs/17-O-411.pdf (last visited Dec. 22, 2020)).

3  Moreover, Mr. Helfand is not a member of the Settlement Class.  Under Fed. R. Civ. P.

4  23(e)(5), any "*class member*" may object to a proposed class settlement.  "[N]on-class members

5  have no standing to object to the settlement of a class action."  *Moore v. Verizon Commc'ns, Inc.*,

6  No. C 09-1823 SBA, 2013 WL 450365, *4 (N.D. Cal. Feb. 5. 2013). "The party seeking to invoke

7  the Court's jurisdiction—in this case, the Objectors—has the burden of establishing standing."  *In*

8  *re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618, at *2

9  (S.D. Cal. Sept. 17, 2013) (citations omitted).  The Administrator has confirmed that Mr. Helfand

10  does not appear on the list of Settlement Class Members provided by Apple, and his "Application

11  for Inclusion in the Class" does not include a serial number of a qualifying device or an IMEI/MEID

12  number.  Accordingly, Mr. Helfand has submitted no evidence of his membership in the Class and

13  Epiq has confirmed that he is not a Class Member.  Azari Decl., ¶ 37.  Accordingly, Mr. Helfand

14  has no standing to object to the Settlement and Plaintiffs' motion to strike his objection is filed

15  concurrently herewith.

16  Further, Mr. Helfand has established a pattern of objecting to class action settlements despite

17  lacking standing to do so.  *See, e.g., Legg v. Lab. Corp. of Am.*, No. 14-61543-CV, 2016 WL

18  3944069, at *3 (S.D. Fla. Feb. 18, 2016) (finding that "objector[] Steven Helfand . . . [is] not [a]

19  member[] of the Settlement Class and therefore lack[s] standing to object to the Settlement");

20  *Hooker v. Sirius XM Radio Inc.*, No. 4:13-cv-00003-AWA-LRL, Dkt. No. 209, ¶ 20 (E.D. Va. Dec.

21  22, 2016) ("The Court finds that Mr. Helfand . . . [is] not [a] member[] of the Class."); *Brown v.*

22  *Hain Celestial Grp., Inc.*, 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016)

23  (noting that Mr. Helfand is a "professional objector" and that he has "provided no proof that he is a

24  class member[.]").

25  Further, Mr. Helfand's litigious history strongly suggests that he had no interest in

26  participating in the Settlement.  Rather, his goal is to delay approval of the settlement for personal

27  monetary gain.  As another federal court has determined, Mr. Helfand "is a well-known serial objector

28  who has represented himself and third parties in objecting to multiple class action settlements."  *Gay*

1    *v. Tom's of Maine, Inc.*, No. 0:14-cv-60604-KMM, Dkt. No. 43, at 4 n.1 (S.D. Fla. Mar. 11, 2016)

2    (citing *Chavez v. Netflix, Inc.*, 75 Cal. Rptr. 3d 413, 423-24 (Ct. App. 2008)); *Wal-Mart Stores, Inc.*

3    *v. Buholzer*, 156 F. App'x 346, 347 (2d Cir. 2005); *Lane v. Facebook, Inc.*, 709 F.3d 791, 792 (9th

4    Cir. 2013); *In re NVIDIA GPU Litig.*, 539 F. App'x 822, 823 (9th Cir. 2013); *In re WorldCom, Inc.*

5    *Sec. Litig.*, No. 02 CIV 3288(DLC), 2004 WL 2591402, at *9 (S.D.N.Y. Nov. 12, 2004); *Hillis v.*

6    *Equifax Consumer Servs., Inc.*, No. 104-CV-3400-TCB, 2007 WL 1953464, at *2 (N.D. Ga. June 12,

7    2007); *Lane v. Facebook, Inc.*, 696 F.3d 811, 816 (9th Cir. 2012)); *see also Spann v. J.C. Penney*

8    *Corp.*, No. SA CV 12-0215 FMO (KESx), 2016 U.S. Dist. LEXIS 137184, at *32 n.11 (C.D. Cal.

9    Sep. 30, 2016) (recognizing that Steven Helfand is a "known serial objector"); *Rodman v. Safeway*

10   *Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *7 n. 6 (N.D. Cal. Aug. 23, 2018) ("Helfand

11   frequently files objections in class action cases."); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d

12   877, 890 (C.D. Cal. 2016) (describing Helfand as a "serial objector").

13        Mr. Helfand's Objection is without merit, improper, and should be overruled.  Mr. Helfand's

14   one-page objection states a number of boilerplate statements and inaccuracies in purported support

15   of his objection, each of which are addressed below:

16        1.    *"I am a class member … .  I owned the phones in question."*  "Under Fed. R.

17   Civ. P. 23(e)(5), any class member may object to a proposed class settlement.  Thus, 'non-class

18   members have no standing to object.'  The party seeking to invoke the Court's jurisdiction—in this

19   case, the Objectors—has the burden of establishing standing." *In re Hydroxycut*, 2013 WL 5275618,

20   at *2 (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989), and *Steel Co. v. Citizens for a*

21   *Better Environment*, 523 U.S. 83, 103-04, (1998)).  Here, Mr. Helfand has failed to establish standing.

22   Even crediting Mr. Helfand's assertion that he "owned the phones in question," being a Class Member

23   involves more than mere ownership of an iPhone 4 or 4S device; it also requires that (i) the individual

24   was in the State of California on April 16, 2014, and (ii) that the device was running iOS 6 (or earlier)

25   on that date.  *See* Section III.B *supra*.  Mr. Helfand, a Florida resident, has proffered no

26   representations—let alone evidence—regarding (i) his whereabouts on April 16, 2014, or (ii) the

27   operating system that was installed on any purportedly qualifying device(s) on that date.  In addition,

28   Mr. Helfand's Application for Inclusion is defective, as he failed to provide any qualifying

information for his device.  Instead, Mr. Helfand submitted an Application for Inclusion with a series of zeros in lieu of serial number for an iPhone 4 or 4S.[11]  Azari Decl., ¶ 37.  Mr. Helfand is not included among the list of over 3.2 million Class Members developed from Apple's exhaustive records.  Therefore, based on Mr. Helfand's failure to establish class membership, he does not have standing to object to the Settlement.[12]  *See In re Apple Sec. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 WL 1877988, at *2 n.4 (N.D. Cal. May 17, 2011) (finding objector "lacks standing to object [because] he did not provide evidence to show that he is a class member.").  Assuming *arguendo* that standing is established (it is not), we address the balance of the objections below.

2.    *"The settlement is an opt-in, one.  This is not allowed."*  This assertion is simply not true.  As fully explained and briefed at the preliminary approval stage and in this Motion, this is an "opt-<u>out</u>" settlement.  The Notice and Settlement payments to approximately 3.2 million Class Members are fully automated and the Class Members do not have to do anything to receive payment.  *See* Section II *supra*.  Nine of these approximately 3.2 million Class Members elected to opt out.[13]  For the 0.2% of Class Members whose information was not provided by Apple, a clear and efficient process exists for them to file an Application for Inclusion, which 3,358 individuals have

[11] Mr. Helfand asks "Who on earth is still using an Iphone [sic] 4 or Iphone [sic] 4S?"  For avoidance of doubt, it is not a requirement of the Settlement that a Class Member still own or use the phone(s) in question.  Nor is it a requirement that they have "the serial number, the receipt or the packaging[.]"  Indeed, as discussed, the Parties have leveraged data obtained from Apple concerning the composition of the Class to craft the Settlement in a manner that provides substantial compensation to Class Members with the least amount of required action on their part.  For the vast majority of Class Members (*i.e.*, ~ 99.8%), the Settlement requires no action at all.

[12] As discussed above, Mr. Helfand has made numerous objections where he failed to establish standing.

[13] If Mr. Helfand were a Class Member, he too could have opted out.  "For those few objectors unhappy with the Settlement, their remedy was simple: opt out.  The 'court will not dismantle this settlement for the sake of one class member's unique demands, particularly when the class member ... had the right (and the means) to opt out and pursue its individual claims without disturbing the settlement for the rest of the class.'  *AIG, Inc. v. ACE INA Holdings, Inc.*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *11-12 (N.D. Ill. Feb. 28, 2012); *Cobell v. Salazar*, 679 F.3d 909, 920 (D.C. Cir. 2012) ('Indeed, the existence of the opt-out alternative effectively negates any inference that those who did not exercise that option considered the settlement unfair.'); *cf. Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ('[T]he named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands.').''  *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 938-939 (E.D. La. 2010).

1    done.  *Id.*  If this is the process Mr. Helfand is characterizing as an "opt-in" settlement, his objection

2    must be overruled because it applies to a fraction of one percent of the Class (less than 5,000

3    individuals out of over 3.2 million).

4              3.        *"The confidentiality provision is designed to stymie claims and defeat class*

5    *member access to the settlement.  The notice was inadequate."*  Nothing about this Settlement is

6    confidential except Class Member data, which is personal, sensitive and completely irrelevant to the

7    Settlement or its merits.  Mr. Helfand's argument on this point is nonsensical and should be

8    disregarded.  The Parties have presented this Court with the Settlement and all details related thereto,

9    including a robust Notice Plan, and the Court preliminarily approved the Settlement after an extensive

10   hearing and supplemental briefing.  *See* Sections II and III *supra*.  The Notice included a detailed

11   explanation of the Settlement and Class Members could easily access the Settlement itself on the

12   Settlement Website.  Indeed, out of over 3.2 million known Class Members who received direct notice

13   of the Settlement, Mr. Helfand—who did not receive direct notice—was the only individual to object.

14   *See* Azari Decl., ¶ 37.  To the extent that Mr. Helfand is referring to Section 1 of the Settlement

15   Agreement regarding publicity, that provision does not prohibit disclosure of the Settlement, but

16   instead provides that "[t]he Parties may respond to inquiries from the press and tell the public in

17   general only that this Action 'has been resolved between the parties' and refer to the Settlement

18   Website" where the Settlement Agreement is posted.  Such provisions do not discourage participation

19   in class actions.  *See Jennings v. Open Door Mktg.*, *LLC*, No. 15-CV-04080-KAW, 2018 WL

20   4773057, at *8 (N.D. Cal. Oct. 3, 2018) (granting final approval of settlement agreement "that

21   restricts the parties from publicizing the agreement, such as by issuing press releases or press

22   statements.").  It is unlikely that additional publicity would have resulted in any additional Class

23   Members being included, as the parties lacked contact information for less than 0.2%.  Indeed, the

24   Notice Plan was clearly effective because Mr. Helfand did not receive direct Notice, yet nevertheless

25   was informed of the Settlement.  Further, Section 1 of the Settlement Agreement did not prohibit

26   disclosure of the Settlement.  Because the Notice Plan was designed to directly reach 99.8% of Class

27   Members and provided an effective process for the remaining 0.2%, as well as easy access to the

28   Settlement Agreement, Mr. Helfand's unsupported allegations should be disregarded.

4.      *"The attorneys fees are too much; for too little work."*   This matter was litigated for nearly four years up to the eve of trial, through multiple dispositive motions, a dozen discovery motions, numerous depositions, and myriad other litigation activity.   *See* Section II.B *supra*.   Aside from taking this case to trial, no litigation stone was left unturned.   *Id.*   Class Counsel has devoted more than 9,650 hours to this litigation and expended over $1 million in out-of-pocket costs on a pure contingency basis.   *See* Dkt. No. 429.   Class Counsel has requested that fees be calculated using the "percentage-of-the-fund" method.   *See id.*   The percentage-of-the-fund method is the most appropriate way to calculate a reasonable fee where, as here, contingency fee litigation has produced a cash common fund.   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery").   Although Class Counsel has requested a fee of 30 percent (which reflects an upward adjustment from the 25 percent benchmark), the fee amount requested represents an effective <u>negative</u> multiplier of 0.67 on Class Counsel's cumulative lodestar.   *See* Dkt. No. 429.   Indeed, courts in the Ninth Circuit—including this Court—often award fees in excess of the 25 percent benchmark. *See, e.g.*, *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (30% fee); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2020 WL 6484833, at *12 (N.D. Cal. Nov. 4, 2020) (30% fee); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (30% fee); *Castaneda v. Burger King Corp.*, No. C 08-04262 WHA, 2010 WL 2735091, at *1 (N.D. Cal. July 12, 2010) (33% fee).   As more fully set forth in Plaintiffs' fee motion,[14] case law strongly supports a significant upward adjustment from the benchmark, and the 30% fee requested here.   *See id.*   Mr. Helfand's 10-word objection to Class Counsel's fee request (which had not even been filed at the time Mr. Helfand filed his objection) must be rejected.[15]

---

[14] Apple filed an opposition to the fee motion for reasons unrelated to those set out by Mr. Helfand.

[15] Mr. Helfand also objects to the fee award on the grounds that it "is based on the wrong law." Because Class Counsel's fee motion was not filed at the time Mr. Helfand filed his objection, his argument has no basis in law or fact.   Plaintiffs are in fact seeking attorneys' fees based on Ninth Circuit authority.   *See* Dkt. No. 429 (citing *Hendricks v. Starkist Co.*, No. 13-00729-HSG, 2016 WL 5462423, at *10 (N.D. Cal. Sept. 29, 2016), *aff'd*, 2018 WL 5115482 (9th Cir. Oct. 19, 2018); *Rodriguez*, 563 F.3d at 967).

5.     *Cy pres recipient*.  Mr. Helfand objected to the Rose Foundation as the *cy pres* recipient. Following the preliminary approval hearing, Class Counsel submitted supplemental briefing and the Court approved the Consumer Federation of America as the potential *cy pres* recipient.  Dkt. Nos. 424, 426.  Thus, this part of the Objection is moot.

Based on the foregoing, Mr. Helfand's lone objection among a Settlement Class exceeding 3.2 million members should be overruled and stricken (*see* concurrently filed Motion to Strike) because:  (i) Mr. Helfand is not a Class Member, and (ii) his objection has no merit and appears to be another one of his numerous (possibly over 50 based on Mr. Helfand's own sworn deposition testimony)[16] objections to class action lawsuits across the country.

The Class's overwhelming support of the Settlement in light of the robust, Court-approved Notice Plan supports final approval.  *See In re Anthem,* 327 F.R.D. at 321 ("[T]he positive response from the Class favors approval of the Settlement."); *In re Linkedin*, 309 F.R.D. at 589 ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *Nicholas der-Hacopian v. Darktrace, Inc*., No. 18-CV-06726-HSG, 2020 WL 7260054, at *6 (N.D. Cal. Dec. 10, 2020) ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'").

### 7.     The Settlement is Not the Product of Collusion

As the Settlement was negotiated and agreed to *after* Plaintiffs' motion for class certification was granted (*see* Dkt. No. 269), this factor need not be considered.  *See In re Bluetooth*, 654 F.3d at 946.  Indeed, the Settlement was the result of extensive arm's-length negotiations—including four in-person mediation sessions with an experienced mediator, as well as a Magistrate Judge, and additional negotiations—and was only reached after hard-fought litigation for almost four years.  *See G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the

---

[16] Mr. Helfand has filed "[p]robably, like, 50" objections to class action settlements, "[i]t might have been more." *See Collins v. Quincy Bioscience, LLC*, No. 19-22864-Civ (MGC) (S.D. Fla.), Dkt. No. 176, p. 17, Ex. A at p. 41.

1   settlement is non-collusive.") (internal quotation marks omitted).  As more fully set forth in Sections

2   II and III *supra*, this factor supports final approval of the Settlement.

3         Based on the foregoing analysis of the *Churchill* factors, the Settlement merits final approval.

4         **B.**     **The Settlement Class Satisfies Rule 23 and Should be Finally Certified**

5         In its Preliminary Approval Order, the Court found that the Settlement Class met the

6   requirements of Rule 23 and preliminarily certified it based on its prior Order regarding class

7   certification (Dkt. No. 269).  *See* Preliminary Approval Order, pp. 4-5.  Plaintiffs now request that

8   the Court affirm its preliminary findings and render a final decision as to the appropriateness of class

9   certification.

10         The prerequisites for class certification under Rule 23(a) are numerosity, commonality,

11   typicality, and adequacy – each of which is satisfied here.  Fed. R. Civ. P. 23(a).  The Settlement

12   Class set forth above includes over 3.2 million members, and thus readily satisfies the numerosity

13   requirement.  *See* Fed. R. Civ. P. 23(a)(1).  The Court has found at the class certification stage that

14   "Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement."  Dkt. No. 269 at 12.  The issues

15   Plaintiffs identified at class certification as "depend[ing] upon a common contention," of such a

16   nature that "determination of its truth or falsity will resolve an issue that is central to the validity of

17   each [claim] in one stroke" apply equally to the Settlement Class.  *Wal-Mart Stores, Inc. v. Dukes*,

18   564 U.S. 338, 350 (2011).  The Court also held at the class certification stage that the final

19   requirements of Rule 23(a) – typicality and adequacy – were likewise satisfied with the Court's

20   definition of the Class.  The Class Representatives also have no conflicts with the class; have

21   participated actively in the case; and are represented by experienced attorneys who were previously

22   appointed by the Court to represent class members' interests.  As the Court found in its order granting

23   preliminary approval, class representatives Grace and Potter may be "appointed as Settlement Class

24   Representatives to implement the settlement in accordance with the Settlement Agreement.  *See*

25   Preliminary Approval Order, pp. 4-5; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)

26   (adequacy satisfied if plaintiffs and their counsel lack conflicts of interest and are willing to prosecute

27   the action vigorously on behalf of the class).

28         "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."

2  *Hanlon*, 150 F.3d at 1022.  Here, the Court likewise held at the class certification stage that a

3  California class was maintainable under Rule 23(b)(3) in this case, finding that common questions

4  predominated over any questions affecting only individual members and class resolution was superior

5  to other available methods for a fair resolution of the controversy.  Dkt. No. 269 at 16-43.  In its Order

6  granting preliminary approval, the Court found that "the proposed Settlement Class definition is

7  consistent with the Class previously certified and therefore meets the requirements of Federal Rule

8  of Civil Procedure 23 for the reasons set forth in the Order Granting in Part and Denying in Part

9  Motion for Class Certification."  Preliminary Approval Order at 5 (internal citations omitted).  There

10  is no reason to depart from that finding here.

11      Under Rule 23(e)(2), a court considering whether to grant approval of a class settlement must

12  also consider whether:  (i) the class representatives and class counsel have adequately represented the

13  class; (ii) the proposal was negotiated at arm's-length; (iii) the relief provided for the class is

14  adequate; and (iv) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P.

15  23(e)(2).  These factors overlap substantially with the *Churchill* factors discussed above, and likewise

16  support the granting of this Motion.  *See* Sections II and III *supra.*

17          1.    <u>The Class Representatives and Class Counsel have Vigorously Represented the Class</u>

18

19      Class Representatives Christina Grace and Ken Potter have vigorously represented the Class

20  since the outset of the litigation.  Among other things, over the more than three-year span of this

21  Action, the Class Representatives have: (i) responded to and produced documents, including personal

22  text messages and emails, in response to Apple's document requests; (ii) responded to interrogatories;

23  (iii) responded to RFAs; (iv) prepared for and endured full-day depositions; (v) provided, pursuant to

24  the Court's Order appointing a neutral third party,  certain iPhone devices for forensic imaging—and

25  subsequent searching—for a period of several months, pursuant to which 370,000 files and all data

26  and information regarding FaceTime, Wi-Fi use, Wi-Fi connection history, and Wi-Fi networks was

27  harvested from their devices; (vi) made themselves available by telephone for consultation during

28  each of the four mediation and settlement conferences; and (vii) otherwise devoted many hours

consulting with Class Counsel regarding fact development and strategy. *See* Declaration of Jill M. Manning in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Service Awards (Dkt. No. 429), ¶¶ 25-35.

Jill M. Manning, Daniel L. Warshaw, David F.E. Tejtel, and John Austin Curry were appointed as Interim Class Counsel on September 18, 2018 (Dkt. No. 269) and again in the Preliminary Approval Order and have provided excellent representation to the Class for four years. As set forth in more detail in the Warshaw Declaration at ¶ 18, in litigating this Action, Counsel, *inter alia*:

- Identified and investigated Apple's conduct in causing the alleged FaceTime Break;
- Met with clients and secured retainer agreements;
- Drafted a complaint and amended complaint;
- Overcame a motion to dismiss;
- Undertook extensive and hotly contested discovery;
- Obtained the necessary sales data from third parties by subpoena after comprehensive negotiations in order to prepare a damages model;
- Retained experts to opine on merits and damages issues, and prepared multiple expert reports;
- Deposed Apple's experts;
- Obtained certification of a California Class;
- Successfully opposed a potentially dispositive motion for summary judgment;
- Participated in four in-person mediation sessions and extensive follow up discussions; and
- Prepared for trial.

2.    The Class Representatives' Interests are Aligned with and are Not Antagonistic to the Other Class Members' Interests

Each Class Representative committed substantial time to this Action and each reviewed and approved of the proposed Settlement, finding it to be fair, reasonable, and adequate. The Class Representatives have fairly and adequately protected the interests of the Class. *Id.*, ¶ 21. This consideration further supports approval of the Settlement.

3.    The Settlement was Negotiated at Arm's-Length

As detailed above in Section III.A, the Settlement resulted from extensive, arm's-length negotiations with two experienced and well-respected jurists and was reached following a mediator's proposal from a Magistrate Judge. Warshaw Decl., ¶¶ 3-9. Accordingly, this factor is met.

4.    <u>The Relief Provided for the Class is Adequate</u>

Rule 23(e)(2)(C) directs the Court to consider whether the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3).

The costs, risks, and delay of trial and appeal are discussed *supra* at Section IV.A.1. The effectiveness of the proposed notice and claims process is discussed *supra* at Section III.E. Apart from the Settlement Agreement and the Confidential Attachment thereto identified in paragraph 6.6, there are no agreements requiring disclosure under Rule 23(e)(3).

Based on the foregoing, the Court should finally approve the Settlement Class.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Parties' Settlement and enter judgment consistent with its terms.

DATED: January 4, 2021                Respectfully submitted,


By:    _____ */s/ Daniel L. Warshaw*_____
                DANIEL L. WARSHAW

PEARSON, SIMON & WARSHAW, LLP
Clifford H. Pearson (Bar No. 108523)
Daniel L. Warshaw (Bar No. 185365)
Thomas J. Nolan (Bar No. 66992)
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
cpearson@pswlaw.com
tnolan@pswlaw.com
dwarshaw@pswlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
Allan Steyer (Bar No. 100318)
Jill M. Manning (Bar No. 178849)
D. Scott Macrae (Bar No. 104663)
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 424-3400
asteyer@steyerlaw.com
jmanning@steyerlaw.com
smacrae@steyerlaw.com

FRIEDMAN OSTER & TEJTEL PLLC
David F.E. Tejtel (*admitted pro hac vice*)
493 Bedford Center Road, Suite 2D
Bedford Hills, NY 10507
Telephone: (646) 661-5881
dtejtel@fotpllc.com

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*admitted pro hac vice*)
Jason D. Cassady (*admitted pro hac vice*)
John Austin Curry (*admitted pro hac vice*)
2121 N. Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com

*Counsel for Plaintiffs and the Class*